**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**FILED**

| | |
|---|---|
| **GEORGE MCREYNOLDS, on behalf of himself and all other similarly situated** ) ) ) ) | **MAR 1 0 2006** |
| **Plaintiff,** ) ) | **MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT** |
| **v.** ) ) | **Case No. 05C 6583** |
| **MERRILL LYNCH & CO., INC.,** ) ) | **Judge Gettleman Magistrate Judge Mason** |
| **Defendant.** ) | |

## ANSWER OF DEFENDANT MERRILL LYNCH & CO., INC.

Defendant Merrill Lynch & Co., Inc. ("Merrill Lynch"), by its attorneys, Weil, Gotshal &

Manges, LLP and Mayer, Brown, Rowe & Maw LLP, for its Answer to the Complaint of

Plaintiff George McReynolds ("McReynolds" or "Plaintiff") herein, states:

### JURISDICTION

1.     Jurisdiction is based on 28 U.S.C. §§1331 and 1343, and principles of pendent
and supplemental jurisdiction.

### ANSWER

Admits that Plaintiff seeks to invoke the jurisdiction of this Court under 28 U.S.C.

§§1331 and 1343, and principles of pendent and supplemental jurisdiction and states that the

allegations set forth in paragraph 1 of the Complaint constitute conclusions of law to which no

responsive pleading is required.

## PARTIES

2.      Plaintiff George McReynolds ("McReynolds") is a current employee of Merrill Lynch, & Co., Inc. ("Merrill Lynch" or "the firm").  McReynolds seeks to represent a nationwide class of similarly situated current and former employees of Merrill Lynch.

### ANSWER

Denies the allegations set forth in the first sentence of paragraph 2 of the Complaint, and

avers that McReynolds is an employee of Merrill Lynch, Pierce, Fenner & Smith, Incorporated

(rather than deny each further allegation that misidentifies Mr. McReynolds' employer,

Defendant will respond to each allegation as if Plaintiff had correctly identified Merrill Lynch,

Pierce, Fenner & Smith, Incorporated (hereinafter "Merrill Lynch") as Mr. McReynolds'

employer).  In response to the second sentence of paragraph 2 of the Complaint, Defendant

admits that Plaintiff seeks to represent a nationwide class, but denies that such other persons are

similarly situated to the Plaintiff.

3.      Defendant Merrill Lynch is a full service securities firm engaged in the retail and institutional sale of securities, options contracts and various other financial products.  Merrill Lynch employs in excess of 14,000 persons nationwide as financial advisors ("FA" or "broker") and is among the country's largest providers of brokerage and brokerage-related services. Merrill Lynch is a publicly traded Fortune 100 corporation incorporated in Delaware.  In 2004, Merrill Lynch had a net worth of over $30 billion and achieved net earnings that exceeded $4 billion.

### ANSWER

Admits the allegations set forth in paragraph 3 of the Complaint.

## FACTUAL ALLEGATIONS

### Merrill Lynch Systemically Excludes
### African-Americans From Employment Opportunities

4.      Merrill Lynch has engaged, and continues to engage, in systemic and pervasive race discrimination and retaliation against African-Americans, as well as unequal pay practices and unequal opportunities.

**ANSWER**

Denies the allegations set forth in paragraph 4 of the Complaint.

5.     Merrill Lynch's discriminatory treatment of African-Americans is also evidenced by the high attrition rate of African-American employees.

**ANSWER**

Denies the allegations set forth in paragraph 5 of the Complaint.

6.     Merrill Lynch's human resources department is ineffective at resolving complaints of race discrimination and, as a result, many African-Americans recognize the futility of lodging internal complaints.

**ANSWER**

Denies the allegations set forth in paragraph 6 of the Complaint.

**Pattern Allegations**

7.     Merrill Lynch's nationwide pattern and practice of discrimination and retaliatory conduct against African-Americans includes but is not limited to the following practices:

a)     failing to hire African-Americans;

b)     failing to promote African-Americans, including to management;

c)     underutilizing African-Americans in high paying jobs;

d)     steering African-Americans into clerical positions, investment advisor positions, or other non-producing roles;

e)     employing discriminatory recruiting, hiring and promotion practices;

f)     denying African-Americans the opportunity to participate in the Management Assessment Center and to become managers;

g)     taking race into account when making employment decisions, including but not limited to decisions regarding training, and decisions regarding transferring and assigning walk-ins, leads, referrals, departing brokers' books and initial public offerings ("IPOs").

h)     targeting the accounts and clients of African-American brokers and reassigning them to white brokers;

i)     failing to credit African-Americans for their experience on the same basis as non-African-Americans and failing to consider African-Americans for

3

timely promotions or title changes on the same basis as non African-Americans;

j)    employing policies and practices are that disproportionately to the disadvantage of African-American brokers and/or that reinforce and continue the effects of past discrimination, including but not limited to policies and practices regarding account distributions and partnerships;

k)    employing partnerships in a manner that excludes African-Americans from income-generating opportunities, including but not limited to refusing to include African-Americans in significant partnership opportunities;

l)    using partnerships to target the accounts of African-American brokers;

m)    using partnerships to deny African-American brokers the opportunity to receive valuable account distributions or to otherwise participate in lucrative business opportunities;

n)    systematically paying African-Americans lower wages and/or denying African-Americans opportunities to increase their earnings, including commissions;

o)    negligently hiring and/or retaining individuals with known propensities to discriminate against or harass African-Americans;

p)    creating an environment that is hostile and offensive to African-Americans;

q)    retaliating against African-Americans who complain of discrimination by, among other things, subjecting them to further discrimination, retaliation, verbal attacks, discipline, reassignment of their clients or accounts, and/or termination;

r)    making employment decisions based on racial stereotypes;

s)    adopting and implementing policies and practices that have a disparate impact against African-Americans;

t)    manipulating the length of service ("LOS") designation of non African-Americans to safeguard non African-Americans from termination or disciplinary action and/or to manipulate earnings and performance;

u)    terminating African-Americans on account of race and/or due to diminished performance and/or production that was lower than it would have been but for the unlawful conduct of Merrill Lynch; and

4

v)   defaming African-Americans to their clients and on their Uniform
Termination Notice For Securities Industry Registration Form U-5's
("Form U-5"), but issuing clean Form U-5's to non African-Americans
who were charged with disciplinary violations or race discrimination.

### ANSWER

Denies the allegations set forth in paragraph 7 of the Complaint, and all subparagraphs

thereto.

### Merrill Lynch's Workforce Statistics Have A Zero Chance
### Of Occurrence In A Race-Neutral Sampling

8.   In 1974, the Equal Employment Opportunity Commission filed suit against
Merrill Lynch regarding its failure to employ women and minorities as brokers. Merrill Lynch
agreed to the entry of a Consent Decree which required Merrill Lynch to increase its
representation of African-American brokers to 6.5%. More than 30 years later, Merrill Lynch
employs only approximately 2% African-Americans as brokers. The representation of African-
Americans at Merrill Lynch is greater than 20 standard deviations below the goal in the EEOC
Consent Decree and more than 10 standard deviations below the percentage representation in the
industry reflected in EEOC data.

### ANSWER

Admits the allegations set forth in the first sentence of paragraph 8 of the Complaint. In

response to the allegations set forth in the second sentence of paragraph 8 of the Complaint,

Defendant respectfully refers the Court to the 1974 Consent Decree as the best evidence of the

contents thereof. The allegations set forth in the third sentence of paragraph 8 of the Complaint

are so unclear as to make a logical response impossible. Denies the allegations set forth in the

fourth sentence of paragraph 8 of the Complaint, except denies knowledge or information

sufficient to form a belief as to the truth of the allegations concerning "EEOC data," as set forth

in the fourth sentence of paragraph 8 of the Complaint.

9.   Merrill Lynch has experienced a cumulative five-year attrition rate in excess of
25% for African-American brokers - a rate that significantly higher than the attrition rate for
non-minorities.

**ANSWER**

Denies knowledge or information sufficient to form a belief concerning the truth of the

allegations set forth in paragraph 9 of the Complaint, except admits that the historical rate of

attrition for African American Financial Advisors has exceeded the historical rate of attrition for

non-minority Financial Advisors.

10.    Merrill Lynch relies on a rewards system where production is used to distribute or
assign titles, offices, sales assistance, accounts, walk-ins, leads, referrals, client assets, IPOs,
partnerships, expense accounts and managerial support. African-Americans are
underrepresented in the first and highest quintile (as million dollar producers) and are over
represented in the fifth and lowest producing quintile. Moreover, acts of discrimination
compound in the quintile system to cause further injury.

**ANSWER**

Denies the allegations set forth in paragraph 10 of the Complaint.

11.    African-Americans are also excluded from partnerships with other brokers
because Merrill Lynch does not support or foster inter-racial partnerships.

**ANSWER**

Denies the allegations set forth in paragraph 11 of the Complaint.

**Racial Discrimination and Retaliation at Merrill Lynch is National in Scope**

12.    Although McReynolds worked at Merrill Lynch in its Nashville Branch Office,
more than 30 putative class members from across the country were interviewed by Stowell &
Friedman, Ltd., prior to the filing of this Complaint.

**ANSWER**

Denies knowledge or information sufficient to form a belief concerning the truth of the

allegations set forth in paragraph 12 of the Complaint, but admits that McReynolds works for

Merrill Lynch in its Nashville Branch Office.

13.    The putative class members who have spoken to Stowell & Friedman, Ltd.,
include current and former employees from, including but not limited to, Arizona, California,
Maryland, Georgia, Illinois, Missouri, North Carolina, New York, Pennsylvania, South Carolina,
Tennessee and Texas. Hundreds of additional putative class members reside throughout the

country, including in Illinois. The putative class members fit into four categories: 1) applicants; 2) broker-trainees; 3) brokers with 3-9 years with Merrill Lynch; and 4) brokers with in excess of 10 years of service with Merrill Lynch. The putative class members are relying on McReynolds, Stowell & Friedman, Ltd., and this lawsuit to protect their rights.

### ANSWER

Denies knowledge or information sufficient to form a belief concerning the truth of the allegations set forth in the first sentence of paragraph 13 of the Complaint. Denies knowledge or information sufficient to form a belief concerning the truth of the allegations set forth in the second sentence of paragraph 13 of the Complaint. In response to the allegations set forth in the third sentence of paragraph 13, admits that Plaintiff claims the putative class is comprised of "1) applicants; 2) broker-trainees; 3) brokers with 3-9 years with Merrill Lynch; and 4) brokers with in excess of 10 years of service with Merrill Lynch," except states that these allegations are inconsistent with the allegations set forth in the second sentence of paragraph 2 of the Complaint and paragraph 39 of the Complaint that Plaintiff seeks to represent a putative class of "employees and former employees." Admits the allegations set forth in the fourth sentence of paragraph 13 of the Complaint.

14.     Stowell & Friedman, Ltd., and the putative class placed Merrill Lynch on notice of the class wide allegations of racial discrimination through the firm's Employment Dispute Resolution ("EDR") process. The EDR was enacted in response to a class action gender discrimination suit, *Cremin et al. v. Merrill Lynch, 96 C 3773 (Castillo, J)*. McReynolds, Stowell & Friedman, Ltd., and the putative class members and Merrill Lynch are in ongoing discussions about improving the firm's diversity initiatives and otherwise creating a discrimination-free workplace.

### ANSWER

Denies the allegations set forth in the first sentence of paragraph 14 of the Complaint, except admits that Merrill Lynch received a complaint from Plaintiff, through his attorneys, in lieu of filing the complaint through Merrill Lynch's standard EDR process. Admits the allegations set forth in the second sentence of paragraph 14 of the Complaint. Denies the

allegations set forth in the third sentence of paragraph 14 of the Complaint, except admits that

Merrill Lynch has met with McReynolds, Stowell & Friedman, Ltd., and some of the putative

class members to discuss diversity initiatives at Merrill Lynch.

## Merrill Lynch's Discrimination and Retaliation Against African-Americans is Ongoing

15.     Merrill Lynch's pattern and practice of systematically discriminating and retaliating against African-Americans is ongoing as a continuing violation of the civil rights laws.

### ANSWER

Denies the allegations set forth in paragraph 15 of the Complaint.

## McReynolds Is An Appropriate Class Representative

16.     McReynolds began his employment with Merrill Lynch in 1983 and is currently a FA.

### ANSWER

Admits the allegations set forth in paragraph 16 of the Complaint.

17.     Notwithstanding his impressive job performance and consistent with the allegations of race discrimination against African-Americans, McReynolds is a victim of Merrill Lynch's pattern and practice of systemic and pervasive racial discrimination, including unequal pay and retaliation.

### ANSWER

Denies the allegations set forth in paragraph 17 of the Complaint.

## McReynold's Experiences Are Typical

18.     In early 2005, McReynolds formally raised a complaint of discrimination and retaliation against Merrill Lynch through the EDR program. In his EDR Complaint, McReynolds alleged that Merrill Lynch intentionally created a segregated workforce where African-Americans were steered into less desirable positions and were denied career opportunities routinely extended to non African-Americans. As a result, African Americans were denied not only job promotions and titles, but also increased earning and other benefits. In his EDR claim, McReynolds cited numerous examples of Merrill Lynch's segregated workforce.

**ANSWER**

Denies the allegations set forth in the first sentence of paragraph 18 of the Complaint, except admits that Merrill Lynch received a complaint from Plaintiff, through his attorneys, in lieu of filing the complaint through Merrill Lynch's standard EDR process. In response to the allegations set forth in the second sentence of paragraph 18 of the Complaint, Defendant respectfully refers the Court to Plaintiff's Initial Demand Letter of May 18, 2005 as the best evidence of the contents thereof. Denies the allegations set forth in the third sentence of paragraph 18 of the Complaint. In response to the allegations set forth in the fourth sentence of paragraph 18, Defendant respectfully refers the Court to Plaintiff's Initial Demand Letter of May 18, 2005 as the best evidence of the contents thereof.

19.     For example, when McReynolds was hired as a financial advisor in 1983 in Merrill Lynch's Nashville, Tennessee office, he was one of only two African-American brokers in the state of Tennessee. McReynolds remained the only African-American broker in his office until Cathy Bender ("Bender") was hired in 1987.[1] Despite the growth of the Nashville complex to approximately 65-70 brokers, the complex has never employed more than three African-American brokers at any one time.

**ANSWER**

Denies knowledge or information sufficient to form a belief concerning the truth of the allegations set forth in the first sentence of paragraph 19 of the Complaint, but admits that McReynolds was hired by Merrill Lynch in 1983. Admits the allegations set forth in the second sentence of paragraph 19, except denies knowledge or information sufficient to form a belief concerning the truth of the allegations set forth in footnote 1. Denies the allegations set forth in the third sentence of paragraph 19 of the Complaint.

---

[1] Bender was hired only as the result of a recommendation by McReynolds's wife, who happened to be the Commissioner of Commerce and Insurance for the State of Tennessee, a position with the responsibility for the issuance and trading of securities under the laws of Tennessee.

20.     Further, the Nashville complex recruits almost exclusively at predominantly white colleges and universities. Well-qualified African-American graduates are not welcomed by Merrill Lynch. To illustrate, in approximately 2002, white Managing Director of the Nashville-Memphis complex, Robert Shaffer ("Shaffer"), refused to interview an African-American graduate of West Point, Jeff Cleveland, who had been recommended by Bender. Having served nine years as an Army officer and spent four years in management at a large corporation, Cleveland was well qualified and eager to pursue a career at Merrill Lynch. According to Merrill Lynch's initiative, Shaffer was to interview Cleveland or introduce him to management at another office. Shaffer made no effort to hire Cleveland.

**ANSWER**

Denies the allegations set forth in the first sentence of paragraph 20 of the Complaint.

Denies the allegations set forth in the second sentence of paragraph 20 of the Complaint. Denies

knowledge or information sufficient to form a belief concerning the truth of the allegations set

forth in the third sentence of paragraph 20 of the Complaint. Denies knowledge or information

sufficient to form a belief concerning the truth of the allegations set forth in the fourth sentence

of paragraph 20 of the Complaint. Denies knowledge or information sufficient to form a belief

concerning the truth of the allegations set forth in the fifth sentence of paragraph 20 of the

Complaint. Denies knowledge or information sufficient to form a belief concerning the truth of

the allegations set forth in the sixth sentence of paragraph 20 of the Complaint.

21.     McReynolds's own efforts to enhance diversity at Merrill Lynch were likewise stymied. For example, McReynolds recruited and hired a number of African-American interns. However, Merrill Lynch made no effort to recruit McReynolds's interns to work for the firm after their internships were completed. To wit, one of the interns McReynolds hired moved to New York after his internship to join a sophisticated hedge fund; Merrill Lynch made no effort to retain him at Merrill Lynch.

**ANSWER**

Denies the allegations set forth in the first sentence of paragraph 21 of the Complaint. Denies knowledge or information sufficient to form a belief concerning the truth of the allegations set forth in the second sentence of paragraph 21 of the Complaint. Denies knowledge or information sufficient to form a belief concerning the truth of the allegations set forth in the third sentence of paragraph 21 of the Complaint. Denies knowledge or information sufficient to form a belief concerning the truth of the allegations set forth in the fourth sentence of paragraph 21 of the Complaint.

22.     Throughout McReynolds's employment, Merrill Lynch maintained a discriminatory system of account distributions and allocation of referrals, leads, walk-ins, call-ins, and IPOs as part of its pattern and practice of unlawful conduct.

**ANSWER**

Denies the allegations set forth in paragraph 22 of the Complaint.

23.     For example, rather than assigning accounts, leads or referrals to the more junior African-American brokers, Merrill Lynch managers told these brokers to prospect in the African-American community. Members of the African-American community were aware that Merrill Lynch was a revolving door for African-American brokers and were reluctant to place their assets with a financial advisor who was unlikely to be retained by Merrill Lynch.

**ANSWER**

Denies the allegations set forth paragraph 23 of the Complaint, and denies knowledge or information sufficient to form a belief concerning the truth of the allegations as to what "[m]embers of the African-American community were aware" of, as set forth in the second sentence of paragraph 23 of the Complaint.

24.     Consistent with its stereotypical views of African-Americans, the potential clients or referrals Merrill Lynch steered toward McReynolds and other African-American brokers were typically minorities or individuals with a low net worth.

**ANSWER**

Denies the allegations set forth in paragraph 24 of the Complaint.

25.    Additionally, Merrill Lynch has not provided McReynolds with the same quality or quantity of sales and administrative support that his white colleagues receive, including brokers with similar production. McReynolds has always shared a sales assistant, at times with as many as seven other brokers, including rookie brokers. These rookie brokers often require more time and attention of the sales assistants because of their inexperience. As a result, McReynolds has performed a substantial amount of administrative and sales support work, which diverted valuable time away from activities to develop his book of business.

**ANSWER**

Denies the allegations set forth in first sentence of paragraph 25 of the Complaint.

Admits the allegations set forth in the second sentence of paragraph 25 of the Complaint. Denies

knowledge or information sufficient to form a belief concerning the truth of the allegations set

forth in the third sentence of paragraph 25 of the Complaint, except admits that some rookie

brokers require more assistance from sales assistants than do more experienced Financial

Advisors. Denies knowledge or information sufficient to form a belief concerning the truth of

the allegations set forth in the fourth sentence of paragraph 25 of the Complaint.

26.    McReynolds further alleges in his EDR complaint that beneficial partnerships for African-American brokers were not encouraged. Any partnerships allowed were often to the detriment of the African-American broker.

**ANSWER**

In response to the allegations set forth in the first sentence of paragraph 26, Defendant

respectfully refers the Court to Plaintiff's Initial Demand Letter of May 18, 2005 as the best

evidence of the contents thereof. Denies the allegations set forth in the second sentence of

paragraph 26 of the Complaint.

27.    In October 2001, McReynolds was forced by Robert Kennedy ("Kennedy"), (then the Nashville Office Branch Manager) to enter into and surrender his accounts to a partnership with white rookie Professional Development Program ("PDP") brokers Charles Grummon ("Grummon") and Jonathon Evans ("Evans"). McReynolds believed that he had no choice but to

partner with Grummon and Evans and, relying on Kennedy's representations that McReynolds would benefit from the partnership, he reluctantly did what he was told.

**ANSWER**

Denies the allegations set forth in the first sentence of paragraph 27 of the Complaint.

Denies knowledge or information sufficient to form a belief concerning the truth of the

allegations set forth in the second sentence of paragraph 27 of the Complaint concerning

McReynolds' beliefs, and denies the allegations set forth in the second sentence of paragraph 27

of the Complaint concerning "Kennedy's representations."

28.   Contrary to Kennedy's representations, the partnership was highly detrimental to McReynolds. Although McReynolds had contributed the vast majority of the partnership assets, he received credit for less than half of the partnership's production. McReynolds's earnings and production decreased significantly as a result of the partnership. When the partnership dissolved, McReynolds received no account transfers to compensate him for the loss.

**ANSWER**

Denies the allegations set forth in paragraph 28 of the Complaint.

29.   Additionally, in approximately 1989-1990, McReynolds formed a partnership with Lona Spencer ("Spencer"), a white female broker in his office. McReynolds's white branch manager, Roy Williams ("Williams"), was resistant and hostile to the partnership although he supported other partnerships composed entirely of white male brokers.

**ANSWER**

Admits the allegations set forth in the first sentence of paragraph 29 of the Complaint.

Denies knowledge or information sufficient to form a belief concerning the truth of the

allegations set forth in the second sentence of paragraph 29 of the Complaint.

30.   That partnership ended when Spencer left Merrill Lynch. At the meeting announcing Spencer's departure, Williams announced to the entire office that any broker who wanted any of the accounts held by Spencer's partnership with McReynolds should contact Williams and they would get the account from McReynolds. Williams did not make similar statements when a white broker was the only broker remaining after the dissolution of a partnership. On the contrary, the white remaining brokers retained the assets of the partnership upon dissolution.

### ANSWER

Admits the allegations set forth in the first sentence of paragraph 30 of the Complaint.

Denies the allegations set forth in the second sentence of paragraph 30 of the Complaint.  Denies

the allegations set forth in the third sentence of paragraph 30 of the Complaint.   Denies

knowledge or information sufficient to form a belief concerning the truth of the allegations set

forth in the fourth sentence of paragraph 30 of the Complaint.

31.    Merrill Lynch also steers African-Americans into clerical positions, investment
advisor positions, or other non-producing roles.  For example, Kennedy told McReynolds that he
should surrender his broker position to become an investment advisor ("IA") for Grummon and
Evans.

### ANSWER

Denies the allegations set forth in paragraph 31 of the Complaint.

32.    Merrill Lynch also employs discriminatory promotional practices.  The
management assessment process is performed predominantly by white men and is replete with
racial stereotypes.  As a result of racial bias, the skills of African-Americans are overlooked and
undervalued.  To illustrate, McReynolds has never reported to an African-American manager
during his tenure at Merrill Lynch, and neither Shaffer nor anyone else at Merrill Lynch has ever
approached McReynolds regarding opportunities to join management, despite the fact that
McReynolds has over ten years of management experience.

### ANSWER

Denies the allegations set forth paragraph 32 of the Complaint, except admits that

McReynolds has never reported to an African-American manager and has never been approached

regarding opportunities to join management.

**McReynolds Suffers Economic Loss Today From This Differential Treatment**

33.     In spite of nearly twenty years of dedicated service to Merrill Lynch and its clients, McReynolds's office was taken away and he was moved to the bullpen in a cubicle immediately adjacent to the women's restroom.  Due to the traffic and noise by his cubicle, it is difficult for McReynolds to concentrate on his work or to speak to his clients without frequent interruption and distraction.  In addition, the cubicle is so small that McReynolds can meet with clients only if he is able to arrange for a conference room.

**ANSWER**

Denies the allegations set forth in the first sentence of paragraph 33 of the Complaint,

except avers that McReynolds was moved from an office to a board room/bullpen based on non-

discriminatory factors.  Denies knowledge or information sufficient to form a belief concerning

the truth of the allegations set forth in the second sentence of paragraph 33 of the Complaint.

Admits the allegations set forth in the third sentence of paragraph 33 of the Complaint.

**Systemic Racism**

34.     McReynolds, like other African-Americans at Merrill Lynch, also has been subjected to a hostile work environment where African-Americans are treated as inferior and are subjected to abusive and harassing treatment, comments and behavior.

**ANSWER**

Denies the allegations set forth in the paragraph 34 of the Complaint.

35.     For example, upon meeting McReynolds for the first time, Shaffer said, "Oh, you're the one," or words to that effect.  McReynolds asked him what he meant by the statement, to which Shaffer replied "oh, nothing."

**ANSWER**

Denies the allegations set forth in paragraph 35 of the Complaint.

36.     Merrill Lynch has also publicly disparaged African-American brokers in the Nashville complex.  For example, in the fall of 2004, at a meeting attended by all brokers and Shaffer, Merrill Lynch announced that all of the African-American brokers in the complex were in the 5th quintile.  In another meeting, supposedly aimed at diversity and mentoring, a representative from human resources announced that African-Americans were disproportionately in the bottom quintile of brokers at Merrill Lynch.   These public statements were not made with a critical eye toward improving Merrill Lynch's policies and practices, but instead simply served

to reinforce the perception among McReynolds's managers and peers that African-Americans are inferior and incapable of competing as brokers.

**ANSWER**

Denies the allegations set forth in the first sentence of paragraph 36 of the Complaint. Denies the allegations set forth in the second sentence of paragraph 36 of the Complaint, except admits that a meeting aimed at diversity took place and avers that any statements made concerning African-American brokers in the complex falling into the 5th quintile were made in an attempt to have a frank and honest discussion of how to improve diversity in the work place. Denies knowledge or information sufficient to form a belief concerning the truth of the allegations set forth in the third sentence of paragraph 36 of the Complaint. Denies the allegations set forth in the fourth sentence of paragraph 36 of the Complaint.

**McReynolds and the Putative Class**
**Suffered Injury as a Consequence of the Discrimination**

37.    McReynolds and the putative class lost wages and other benefits, suffered embarrassment and humiliation and their careers were irreparably injured as a result of Merrill Lynch's discriminatory conduct.

**ANSWER**

Denies the allegations set forth in paragraph 37 of the Complaint.

38.    Merrill Lynch's conduct was reckless and/or in willful violation of the civil rights laws.

**ANSWER**

Denies the allegations set forth in paragraph 38 of the Complaint.

## CLASS ALLEGATIONS

39.     The class of African-American employees and former employees who have been subjected to discrimination due to their race and have been subject to retaliation due to their opposition to discrimination is so numerous and geographically spread that joinder of all members is impracticable.

### ANSWER

Denies the allegations set forth in paragraph 39 of the Complaint.

40.     There are questions of law and fact common to the class.

### ANSWER

Denies the allegations set forth in paragraph 40 of the Complaint.

41.     The claims of McReynolds will fairly and adequately protect the interests of the class.

### ANSWER

Denies the allegations set forth in paragraph 41 of the Complaint.

42.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### ANSWER

Denies the allegations set forth in paragraph 42 of the Complaint.

## COUNT I

### RACIAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. Section 1981 (Against Merrill Lynch)

43.     McReynolds and all others similarly situated reallege paragraphs 1 through 42 and incorporate them by reference as paragraphs 1 through 42 of Count I of this Complaint.

**ANSWER**

Admits that Plaintiff purports to incorporate by reference the preceding paragraphs.

44.    Section 1977 of the Revised Statutes, 42 U.S.C. Section 1981 as amended guarantees all person the same right to make and enforce contracts as whites. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of contractual relationship.

**ANSWER**

In response to the allegations set forth in the first sentence of paragraph 44 of the

Complaint, Defendant respectfully refers the Court to the text of 42 U.S.C. § 1981 as the best

evidence of the contents thereof.  Defendant states that the allegations set forth in the second

sentence of paragraph 44 of the Complaint constitute conclusions of law to which no responsive

pleading is required.

45.    Merrill Lynch subjected McReynolds and all others similarly situated to racial discrimination in violation of 42 U.S.C. Section 1981.

**ANSWER**

Denies the allegations set forth in paragraph 45 of the Complaint.

**PRAYER FOR RELIEF**

**WHEREFORE**, McReynolds respectfully requests that this Court find in his favor and against Merrill Lynch as follows:

a.    Declare that the acts and conduct of Merrill Lynch violate 42 U.S.C. Section 1981;

b.    Declare that Merrill Lynch engaged in a pattern and practice of racial discrimination and certify a class of persons similarly situated to McReynolds eligible for relief;

c.    Order appropriate equitable relief and diversity initiatives to remedy the discrimination;

d.    Award McReynolds and all others similarly situated the value of all compensation and benefits lost as a result of Merrill Lynch's unlawful conduct;

e.      Award McReynolds and all others similarly situated the value of all compensation and benefits they will lose in the future as a result of Merrill Lynch's unlawful conduct;

f.      Award McReynolds and all others similarly situated compensatory damages;

g.      Award McReynolds and all others similarly situated punitive damages;

h.      Award McReynolds and all others similarly situated prejudgment interest;

i.      Award McReynolds and all others similarly situated attorneys' fees, costs and disbursements;

j.      Award McReynolds and all others similarly situated such other equitable and legal relief as this Court deems just and proper.

**ANSWER**

Defendant admits that Plaintiff prays that the Court award the relief as set forth in paragraphs "a" through "j" of the "Prayer," and denies that Plaintiff is entitled to any of the relief prayed for in the Prayer.

**DEFENSES**

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      Plaintiff lacks standing to raise some or all of the claims.

3.      Some, or all, of Plaintiff's claims are barred by applicable statutes of limitation.

4.      Plaintiff's claims on behalf of the purported class are barred by the Plaintiff's failure to meet all four of the mandatory requirements of Fed. R. Civ. P. 23(a), or any of the requirements of Fed. R. Civ. P. 23(b).

5.      The claims alleged by the Plaintiff are neither common nor typical of those claims, if any, of the members of the purported class.

6.      The Plaintiff is an inadequate representative of the purported class.

7.      The types of claims alleged by the Plaintiff are matters in which individual questions predominate and, accordingly, are not appropriate for class treatment.

8.      Plaintiff has failed to identify a pattern or practice of discrimination on the basis of race.

9.      Merrill Lynch had legitimate non-discriminatory reasons for the employment actions taken in connection with Plaintiff.

10.     Merrill Lynch denies that race or any other impermissible factor plays any role in its hiring, training, promotion, compensation, distribution of accounts, length of service designation procedures, or in any other policy or procedure that Plaintiff is, or may be, challenging.

11.     In the alternative, in the event that the Court or a jury concludes that race was a motivating factor in any of the employment decisions challenged by Plaintiff, which Merrill Lynch expressly denies, Merrill Lynch affirmatively avers that the same decisions would have been made even absent consideration of race.

12.     Merrill Lynch has taken reasonable care to prevent and remedy promptly any incidents of alleged racial discrimination and/or harassment brought to its attention; it has policies banning discrimination and/or harassment in the workplace and a reasonable and available procedure for handling complaints thereof, which provides for prompt and effective responsive action.  To the extent that Plaintiff has not availed himself of these policies or procedures or acted reasonably to otherwise avoid harm, his claims of racial discrimination and/or harassment by managers, supervisors, and/or co-workers are barred.  To the extent that Plaintiff has used these policies and procedures and his alleged concerns have been dealt with promptly and effectively, Plaintiff's claims are barred and/or he has suffered no damages as a result.

13.     Any instances of discriminatory or harassing conduct by co-workers, which Merrill Lynch denies, would have contravened Merrill Lynch's good faith efforts to enforce and follow anti-discrimination laws.  Merrill Lynch has issued policies and established procedures for complaints of alleged discrimination and/or harassment and have promulgated, taught, and enforced those policies and procedures in its workplaces.  Merrill Lynch has exercised reasonable care to prevent and correct promptly any discriminatory and/or harassing behavior. To the extent that Plaintiff is unable to prove that Merrill Lynch knew or should have known of the alleged discrimination and/or harassment and that Merrill Lynch failed to take prompt remedial action, he is barred from recovering from Merrill Lynch.

14.     To the extent that Merrill Lynch discovers during the course of this action that Plaintiff engaged in any conduct that would warrant discharge from Merrill Lynch, Plaintiff's right to recover damages beyond the date of that conduct are cut off.

15.     Plaintiff has failed to mitigate his damages.

16.     Plaintiff's claims are barred by the doctrines of laches and waiver.

17.     Plaintiff is not entitled to punitive damages because Merrill Lynch did not act with an evil motive or intent or with reckless or callous indifference to the federally protected rights of the Plaintiff.

18.     Merrill Lynch hereby reserves its right to assert other defenses and affirmative defenses as this action proceeds.

Dated: Chicago, Illinois
      March 10, 2006

MAYER, BROWN, ROWE & MAW LLP

Lori E. Lightfoot
71 S. Wacker Drive,
Chicago, IL 60606,
(312) 782-0600 (Phone)
(312) 701-7711 (Facsimile)

-and-

WEIL, GOTSHAL & MANGES LLP
Jeffrey S. Klein
Mindy J. Spector
Nicholas J. Pappas
767 Fifth Avenue
New York, NY 10153
(212) 310-8000 (Phone)
(212) 310-8007 (Facsimile)

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I, Lori E. Lightfoot, hereby certify that I caused a copy of the foregoing Answer of Defendant Merrill Lynch and Co. Inc., to be served upon:

Stowell & Friedman, Ltd.
Mary Stowell
Linda Friedman
312 S. Plymouth Court
Suite 1400
Chicago, Illinois  60604

via First Class Mail on or before 4:30 p.m. on March 10, 2006 by causing the same to be deposited into a mail receptacle.

Lori E. Lightfoot