## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE MCREYNOLDS, on behalf of himself and all other similarly situated | ) ) ) | |
| | ) | Case No. 05C 6583 |
| Plaintiff, | ) ) | |
| | ) | Judge Robert W. Gettleman |
| v. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| MERRILL LYNCH & CO., INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated (improperly referred to as "Merrill Lynch & Co., Inc." in the caption) files this Motion for a Protective Order ("Motion") pursuant to Rule 26(c)(2) of the Federal Rules of Civil Procedure, requesting that the Court enter an order directing that the November 1, 2006 deposition of E. Stanley O'Neal, the Chairman and Chief Executive Officer of Merrill Lynch, take place in New York City at a private office location or conference room facility that is mutually agreeable to the parties. Such a private location is far more conducive to creating an orderly and dignified atmosphere appropriate for a deposition than the luxury public hotel that Plaintiff has noticed for this deposition. The designation of a public hotel runs a significant risk of subverting the deposition process and creating a circus-like spectacle. In support thereof, Merrill Lynch respectfully states as follows:

## **INTRODUCTION**

Plaintiff has noticed the pre-trial deposition of Merrill Lynch's Chairman and Chief Executive Officer, for a large luxury landmark hotel in midtown Manhattan.[1] Merrill Lynch has agreed to make this deponent available for deposition on November 1, 2006. Depositions, by their nature, are not public events. Plaintiff, however, has rejected Merrill Lynch's request that the deposition be held at a private office. Depositions are customarily held at private office locations; there is no good reason for rejecting a private office location in this instance; and, Plaintiff has offered no reason for insisting that this deposition be held in a public hotel.

Plaintiff's insistence that the deposition be held at this popular luxury hotel threatens to turn it into a circus with the distraction and potential chaos from an unlimited number of putative class members, members of the press, demonstrators,[2] and any number of other hotel guests and conference attendees, in the hallways outside the deposition. There is no conceivable justification for insisting on this high-profile venue, where there is unfettered access to the hallways and foyers outside the room in which the deposition would take place, when there are countless alternative venues that would provide an orderly and dignified atmosphere conducive to the search for truth. Moreover, Merrill Lynch has also offered to assume the cost of moving the deposition to a private office or conference facility.

The deponent is a leader in the financial services arena. His deposition – which already has been announced to the media (and not by Merrill Lynch) – will likely attract many people. If there is unfettered access to the area outside the deposition room, every time he enters

---

[1] In the interest of preventing additional publicity about the details of the deposition, this motion does not identify the hotel by name.

[2] Plaintiff has already organized one demonstration in this case at a location in Chicago.

or exits the deposition, whether to consult with counsel, go to the restroom or simply take a break, anyone – including putative class members, demonstrators or the media – would be able to approach him to engage him in conversation, ask him questions, or try to take his photograph. He then would be faced with the Hobson's Choice of either responding to questions and comments from these individuals or refusing to discuss the case during his deposition and enduring criticism for doing so.

Either scenario is manifestly unfair to the deponent, and is completely avoidable by adhering to what is done in almost all depositions routinely conducted in cases throughout the country – conducting them in an appropriate private venue. Otherwise, the deponent will be distracted, and the deposition may be disrupted. For these reasons, Merrill Lynch respectfully requests that the Court intervene now to enter a protective order directing that this deposition take place at a private office location.

## FACTUAL BACKGROUND

As set forth in the accompanying Motion for Protective Order, dated October 17, 2006,[3] this case is a putative class action in which Plaintiff George McReynolds asserts various violations of 42 U.S.C. § 1981. The putative class is comprised of African-Americans who are or were employed as Financial Advisors at Merrill Lynch.

Plaintiff, through his counsel, has intentionally cultivated media attention about this litigation on numerous occasions. The day after Plaintiff filed a Motion for Leave to File First Amended Complaint *Instanter*, a news article appeared in the New York Times with details from the proposed amendment. *See* Patrick McGeehan, *On Wall Street, A Question of Bias*, N.Y. Times, July 14, 2006, annexed hereto as Exhibit "A." On September 12, 2006, the parties

---

[3] Merrill Lynch has filed a Motion for Protective Order to limit attendees at depositions to parties, their counsel and the court reporter. *See* Motion for Protective Order, dated October 17, 2006. That motion is also scheduled for presentment on October 25, 2006.

agreed to the date of this deposition, which Merrill Lynch's counsel confirmed in writing the following day.[4]  Two days later, on Friday September 15, a reporter from Dow Jones Newswires contacted the Media Relations department at Merrill Lynch, asking Merrill Lynch to confirm that the deposition had been scheduled for November 1, 2006 and seeking to attend the deposition. *See* E-mail from Evelyn Juan to Mark Herr, dated September 15, 2006, annexed hereto as Exhibit "B."  The next business day, on September 18, 2006, the Dow Jones News Service published an article by this reporter announcing the date of the deposition, and reflecting an interview with Plaintiff's counsel. *See* Evelyn Juan, *Merrill CEO O'Neal to Give Deposition in Race-Bias Suit,* Dow Jones News Service, Sept. 18, 2006, annexed hereto as Exhibit "C."  The article was further disseminated by the Associated Press Financial Wire and MarketWatch, among other outlets. *See* Ex. C.

On September 22, 2006, Plaintiff served an amended notice for the videotaped deposition of this deponent to be conducted at a prominent luxury hotel in midtown Manhattan. This hotel is a prime destination for tourists and New Yorkers alike: it is 47 stories tall; it has 1,425 guest rooms; it has 51 meeting rooms; and, it has seven restaurants.  Events taking place in the meeting rooms are announced to the public on an electronic display board.

On October 5, 2006, the first 30(b)(6) deposition of a Merrill Lynch employee was conducted at the same hotel at issue in this motion, by agreement of the parties. Notwithstanding the fact that this witness was merely providing rudimentary testimony on the subject of Merrill Lynch's compensation policies, and neither the deposition date nor the location had been made a matter of public record or disclosed by Merrill Lynch to the media, a reporter appeared and waited in the hallway outside the deposition while it was being conducted.

---

[4] Plaintiff served Notices of Videotaped Management Depositions on July 10, 2006, which sought this deposition, among other Merrill Lynch senior management.

On October 16, 2006, Merrill Lynch asked Plaintiff's counsel to conduct the next deposition – of its CEO – in a private office building or conference facility, instead of the hotel at which it had been noticed. On October 18, 2006, Merrill Lynch further offered to make available its conference center in Manhattan, and informed Plaintiff that it was amenable to any other private office location to which the parties can agree, including a law firm or a court reporter's office with adequate facilities – where depositions are typically conducted in civil litigation. Merrill Lynch also offered to pay for all costs associated with any expense of securing an appropriate site  Counsel for the plaintiff failed to respond to the proposal directly. In spite of this, on Thursday October 19, 2006, Merrill Lynch sent plaintiff's counsel a second proposal to resolve this issue and a separate issue concerning the number of attendees at the deposition. Plaintiff's counsel did not immediately respond to that second proposal. On Monday, October 23, 2006, Merrill Lynch, through counsel, sent another e-mail to plaintiff's counsel in an effort to resolve this issue without resort to court. At the time of filing this motion, the parties were not able to reach resolution.. Regrettably, Merrill Lynch feels compelled to seek a protective order from this Court to allow for the orderly conduct of this proceeding.

## ARGUMENT

It is well-settled that courts have the power to protect the integrity of discovery proceedings. *See e.g., Harlem River Consumers Coop., Inc. v. Associated Grocers of Harlem, Inc.,* 54 F.R.D. 551, 552-53 (S.D.N.Y. 1972) ("The court has the power and the duty under Rule 26(c) to insist that the discovery process be conducted in an orderly and dignified atmosphere, free from intrusive and distracting side shows which only burden the search for truth.").

Indeed, courts have broad discretion to enter a protective order that alters the time or place of a deposition pursuant to Rule 26(c)(2) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(c)(2) ("for good cause shown, the court . . . may make any order which justice

requires to protect a party or person from annoyance, embarrassment, oppression, or undue

burden . . . including . . . [that] disclosure or discovery may be had only on specified terms and

conditions, including a designation of the time or place"); *Sears v. Am. Entm't Group,* No. 94 C

0165, 1995 U.S. Dist. LEXIS 1754, at *3 (N.D. Ill. Feb. 10, 1995) ("The court has very broad

discretion under Rule 26(c)(2) to alter the place and time of deposition."); 6 James Wm. Moore

et al., *Moore's Federal Practice* § 26.105(3)(b) (2006) (same); 8A Charles Alan Wright & Arthur

R. Miller, *Federal Practice and Procedure* § 2112 (2006) (same).

Courts assess the particular facts of each case when considering a motion for a

protective order under Rule 26(c)(2) and have granted protective orders to change the location of

a deposition when "justice requires." Fed. R. Civ. P. 26(c)(2); *see e.g., Convolve, Inc. v.*

*Compaq Computer Corp.*, No. 00 Civ. 5141, 2004 U.S. Dist. LEXIS 16164, at *67–72 (S.D.N.Y.

Aug. 17, 2004) (approving special master's determination to permit Chief Executive Officer with

limited knowledge of facts giving rise to lawsuit to testify from any location he selected).

As a general matter, a party seeking to establish good cause for a protective order

needs to provide a factual basis for the relief rather than "stereotyped and conclusory

statements." *See Silva v. Fortis Benefits Ins. Co.*, 437 F. Supp. 2d 819, 827 (N.D. Ill. 2006).

Here, there is ample basis for the court to direct that this deposition take place at a private office

location. The deposition is likely to attract many people to the hotel in which it is currently

scheduled to take place. There also are hundreds of employees of Merrill Lynch, including some

putative class members, who work at offices located in Manhattan that may be interested in

showing up for this deposition. Moreover, it is highly likely that there will be significant media

presence at this deposition. Plaintiff has intentionally cultivated pre-deposition media attention –

major media outlets already have widely disseminated information about the details of this

deposition. *See* Ex. C. Reporters are likely to appear at the deposition to follow the story and

seek information about the deponent's testimony. The deponent welcomes questions from the media, but the day of his deposition is not the time for him or any other deponent to be answering reporters' questions. Rather, he should be given the opportunity to testify in an environment that is free of distraction and of people other than Plaintiff's counsel trying to ask him questions about the case or any other matter of interest to them.

In light of the widespread attention that this deposition will generate, Plaintiff's choice of a high-profile location is likely to transform this discovery proceeding into a public relations spectacle. As described above at page 4, the hotel Plaintiff has selected for the deposition accommodates thousands of people each day and provides unrestricted access to 51 meeting rooms by elevators that are open to the public. They can then linger in the hallway or simply sit outside the door to the deposition and wait for the deponent to appear. Plaintiff's counsel has not articulated any legitimate reason why this deposition needs to be taken at this location. It makes no sense at all to subject a witness to the possibility of a circus-like atmosphere when there are so many readily available alternatives.[5]

Another reason why a high-profile luxury hotel in New York City is not an appropriate location for this deposition is that it will be videotaped, and possibly played for the jury who ultimately hears the case. It would unfairly prejudice the jury to see a videotape of this deponent being deposed at a luxury hotel, particularly when this was not done at Merrill Lynch's request, and jury members are likely to understand that a luxury hotel is not a typical place for a deposition.

Although no one knows for sure what will happen at this deposition if it is conducted at this hotel, in light of Plaintiff's generation of media attention on this litigation and

---

[5] Unlike in a trial where there is a judge and court personnel to ensure an orderly proceeding, there are no such safeguards for a deposition in a civil litigation, other than the pre-deposition protective order being sought here.

the date of this deposition, it is highly likely that there will be a significant amount of media and other individuals drawn to the hotel to witness the event. As the deponent enters or exits the room, he will likely be approached by a number of people, and will not have a moment to pause and collect his thoughts. His opportunity to confer with counsel may be truncated by reporters or others peppering him with questions and observers engaging him in conversation. He will find himself in the untenable position of having to prolong the deposition by speaking with people in the hallways outside the deposition room or risking negative press by ignoring them. If the crowd were to become disruptive, Merrill Lynch could be required to seek court intervention for a protective order, which is a far less desirable alternative than obtaining such relief before the deposition and would waste the deponent's valuable time and necessitate his return for a second day of deposition.

In sum, there is simply no reason why this deposition cannot be taken in a private office location – like almost all depositions in all other civil litigations. No witness at a deposition should be required to focus on anything other than responding to questions posed by opposing counsel. It would be manifestly prejudicial to require this deponent to proceed with a deposition under these circumstances. Accordingly, this Court should ensure that this deposition will be conducted in an orderly manner that is free from distraction by granting Merrill Lynch's motion for a protective order.

## CONCLUSION

Because conducting the deposition of a prominent witness in a public forum has the potential to create a circus-like atmosphere and because there exist alternatives more appropriate to creating an orderly and dignified atmosphere for the deposition, Merrill Lynch respectfully requests that this Court issue a protective order directing that the deposition of E. Stanley O'Neal take place in New York City at a private office location or conference room

facility that is mutually agreeable to the parties, as well as any further relief to which it may be entitled.

MERRILL LYNCH & CO., INC.

By:___/s Lori E. Lightfoot_____

Mayer, Brown, Rowe & Maw LLP
Lori E. Lightfoot
71. S Wacker
Chicago, IL 60606
(312) 782-0600

and

Weil, Gotshal &Manges LLP
Jeffrey S. Klein
Nicholas J. Pappas
767 Fifth Ave.
New York, NY 10153
(212) 310-8000