IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE McREYNOLDS, on behalf of himself and all other similarly situated,<br>　　　　Plaintiff,<br><br>v.<br><br>MERRILL LYNCH & CO., INC.<br><br>　　　　Defendant. | Case No. 05 C 6583<br><br>Judge Robert W. Gettleman<br><br>Magistrate Judge Morton Denlow |

## MERRILL LYNCH'S MOTION FOR PROTECTIVE ORDER

Defendant Merrill Lynch, Pierce Fenner & Smith Incorporated (improperly referred to as Merrill Lynch & Co., Inc. in the caption and hereinafter referred to as "Merrill Lynch"), by and through its attorneys, pursuant to Federal Rule of Civil Procedure 26(c), hereby moves this honorable court for a protective order adopting Merrill Lynch's attached methodology for the identification of responsive electronic documents as proposed herein. In support of this motion, Merrill Lynch states as follows:

### Factual Background

1.　On November 18, 2005, Plaintiff George McReynolds ("Plaintiff"), on behalf of himself and all others similarly situated, filed a Complaint alleging that Merrill Lynch was engaged in a nationwide pattern or practice of race discrimination in violation of 42 U.S.C. §1981. Plaintiff filed a First Amended Complaint on July 13, 2005.[1]

---

[1] Plaintiff's counsel filed a motion to amend the First Amended Complaint so as to add sixteen other plaintiffs on November 6, 2006. That motion is presently pending before the Court.

2.    On January 24, 2006, Plaintiff served his First Request for Production of Documents upon Defendant ("Plaintiff's Requests") (attached hereto as Exhibit "A"). At that time, the parties had not yet participated in the initial planning conference required by Federal Rule of Civil Procedure 26(f), and in fact were engaged in substantive mediation discussions.

3.    The parties' mediation discussions concluded in or about early May 2006, and thereafter the parties participated in the Rule 26(f) planning conference. Accordingly, the discovery process began in earnest on or about May 10, 2006.

4.    Merrill Lynch filed its objections to Plaintiff's Requests on June 12, 2006 ("Merrill Lynch's Objections") (attached hereto as Exhibit "B"). Since on or about June 14, 2006, Merrill Lynch has repeatedly asked Plaintiff, through his counsel, to address the issue of electronic discovery. *See* June 14, 2006 Dray letter, attached hereto as Exhibit "C," at page 2. In that June 14, 2006 letter, among other issues, Merrill Lynch identified the voluminous amount of potentially responsive materials that were stored in electronic form and invited the Plaintiff to work with Merrill Lynch to address this issue by identifying, among other things, custodians, search terms, and date parameters. *Id.* ("Merrill Lynch is willing to engage in a reasonable amount of discovery…of electronic data," but given the extensive amount of information it possessed in electronic format, [i]t would be extremely costly and unduly burdensome for Merrill Lynch…to collect, review and produce all of the electronic data [Plaintiff has] requested.") Accordingly, Merrill Lynch requested that counsel for Plaintiff identify reasonable limitations to which Plaintiff would agree with respect to such discovery. *Id.* Specifically, Merrill Lynch asked Plaintiff to "identify a limited number of document custodians for whom he is

2

requesting production of e-mails and [to] propose the search terms and date parameters that Plaintiff would like to be applied to such e-mail." *Id.* Counsel for Plaintiff simply failed to respond to these requests.

5. From June 14, 2006 through on or about September 12, 2006, Merrill Lynch repeatedly attempted to engage the Plaintiff in a substantive meet and confer process on electronic document discovery – all to no avail. *See* 7/13/06 1:54p.m. Lightfoot email, attached hereto as Exhibit "D." For example, Merrill Lynch's July 13, 2006 communication on this issue went unanswered until August 8, 2006, at which time Plaintiff's counsel acknowledged that the topic needed to be addressed by noting "we are prepared to discuss reasonable limitations on production from e-mail archives," but not actually providing any specific recommendations or limitations. *See* 8/8/06 Friedman letter, attached hereto as Exhibit "E". Plaintiff also requested that Merrill Lynch conduct "a thorough search for responsive documents on the e-mail boxes and archives of any individual whom Plaintiff has noticed for deposition." *Id.* In response, on August 10, 2006, Merrill Lynch reiterated to counsel for Plaintiff the necessity of the parties coming to an agreement about the scope of defined search terms. *See* 8/10/06 Lightfoot letter, attached hereto as Exhibit "F."

6. It was not until on or about September 12, 2006, that Plaintiff first expressed a substantive willingness to address issues concerning the proper methodology for the collection and identification of potentially responsive electronic documents. However, those discussions did not result in a resolution. Merrill Lynch again contacted counsel for Plaintiff by letter on September 15, 2006, and proposed a set of search terms for the review of electronic documents. *See* 9/15/06 Lightfoot letter, attached hereto as

3

Exhibit "G." Merrill Lynch explained that the list was culled from terms articulated by Plaintiff himself in pleadings such as the First Amended Complaint, Plaintiff's First Request for the Production of Documents, the Amended 30(b)(6) Notices, and the riders to the other deposition notices served in the case. *Id.* Given that depositions of Merrill Lynch employees were then just two and half weeks away, Merrill Lynch requested that counsel for Plaintiff review the proposed search terms and provide feedback by the close of business on September 19, 2006. Counsel for Plaintiff failed to respond in any way to this correspondence.

7. Hoping that the issue might still be resolved, Merrill Lynch contacted counsel for Plaintiff again on the morning of September 20, 2006 asking for feedback on the proposed search terms by the close of business that day. *See* 9/20/06 Lightfoot email, attached hereto as Exhibit "H." Again, counsel for Plaintiff failed to respond.

8. Between September 20, 2006, and October 10, 2006, the Parties attempted to resolve the issue concerning the appropriate protocol for the identification of responsive electronic documents, including revisions by Merrill Lynch of its proposed list of search terms twice to add additional terms in response to Plaintiff's complaint that it was not broad enough. *See* 9/29/06 Dray letter, attached hereto as Exhibit "I;" *see* 10/10/06 Lightfoot letter, attached hereto as Exhibit "J." Notwithstanding these efforts, Plaintiff's counsel still refused to agree to the search term list, without even proposing an alternative or supplemental list of terms. Plaintiff's counsel instead complained that the search terms would not pick up all responsive documents.

9. As noted, Plaintiff's counsel had asked Merrill to produce responsive emails for deponents noticed by Plaintiff. In the absence of an agreement with Plaintiff's

4

counsel, on October 13, 2006, Merrill Lynch informed Plaintiff's counsel that with respect to the deposition of Merrill Lynch's Chief Executive Officer, scheduled for November 1, 2006, Merrill Lynch would use the search terms attached to its October 10, 2006 letter in order to locate responsive emails. *See* 10/13/06 Lehman letter, attached hereto as Exhibit "K." Plaintiff never objected to this use of the search terms. Merrill Lynch then began its review of this witnesses' emails and produced responsive emails on October 27-28, 2006 for his November 1, 2006 deposition. Plaintiff's counsel thereafter complained about the timeliness of the production of the emails.

10. On October 20, 2006, Merrill Lynch sent Plaintiff's counsel a proposal that addressed the review of electronic documents not containing English text, a protocol that is consistent with best practices identified both by e-discovery experts and by various courts across the country. *See* 10/20/06 Dray letter attached hereto as Exhibit "L."

11. Plaintiff responded on October 23, 2006. Rather than addressing the search term list or proposed method for review of electronic documents not containing English text, Plaintiff for the first time raised several completely new issues that the Parties had never discussed and which were in fact not even directly relevant to the issue of search terms. In essence, the letter was non-responsive to Merrill Lynch's October 20 proposal. The issues raised by Plaintiff included requests to (i) identify document custodians and sources of electronically stored information; (ii) confirm that Merrill Lynch has placed no limitations on the documents that it will collect; (iii) identify sources of inactive electronically stored information; and (iv) describe the steps taken by Merrill Lynch to preserve electronic information

12. In a final attempt to resolve this dispute, on November 3, 2006, Merrill Lynch sent a letter to Plaintiff's counsel, in which it reiterated its proposed search terms and protocol, referenced the custodians from which it had collected electronic documents,[2] and offered to address the new issues raised by Plaintiff's counsel in a separate meet and confer. *See* 11/3/06 Lehman letter, attached hereto as Exhibit "M." Merrill Lynch reiterated that the parties needed to reach closure on this important discovery issue because Merrill Lynch could not continue to defer full review and production of electronic documents, given the Court imposed discovery schedule, upcoming depositions, and Plaintiff's demand that documents be produced substantially in advance of its requested (and scheduled) depositions.[3]

13. By letter dated November 7, 2006, Plaintiff's counsel responded by merely reiterating the position set forth in its October 23 letter, and again refusing to address the search term list proposed by Merrill Lynch. *See* 11/7/06 Wood letter, attached hereto as Exhibit "N."

14. The Parties have exhausted all efforts to resolve this issue without the assistance of this Court. For these reasons, Merrill Lynch respectfully urges this Court to enter a protective order which adopts the search terms proposed by Merrill Lynch for the review of electronic documents. Time is of the essence in resolving this impasse between the parties. Depositions in this matter already have begun. In order to efficiently review

---

[2] Merrill Lynch has already gathered electronic documents from approximately 75 custodians. The sheer volume of custodians and documents necessitates that search terms rather than manual review be used to identify responsive documents.

[3] Notably, Merrill Lynch employees send or receive approximately 10,000 to 30,000 email messages per year.

and produce responsive documents for these depositions, and for both parties to be able to prepare for these depositions, Merrill Lynch needs a defined and sanctioned search term list for the review of electronic documents.

## Argument

The electronic document protocol that Merrill Lynch has proposed is consistent with best practices as identified by both e-discovery experts and courts across the country. The critical component of the Merrill Lynch protocol is the use of search terms which have universally been recognized as an efficient and appropriate means of identifying responsive electronic documents. *See The Sedona Principles; Best Practices Recommendations & Principles for Addressing Electronic Document Production*, Principle 11 (2003) ("A responding party may properly access and identify potentially responsive electronic data and documents by using reasonable selection criteria, such as search terms or samples."). Also, a number of district courts have held that parties are required to use, and agree on, search terms for identifying relevant electronic documents. In *Treppel v. Biovail Corp.*, 233 F.R.D. 363 (S.D.N.Y. 2006), for example, the plaintiff refused to stipulate to search terms to be utilized in searching electronic documents, arguing that "the use of search terms has no application to the standard discovery process of locating and producing accessible hard copy and electronic documents." *Id.* at 374. The District Court for the Southern District of New York rejected this argument:

> Even in a case involving exclusively hard copy documents, there is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations. Rather, it must conduct a diligent search, which involves developing a reasonably comprehensive search strategy. Such a strategy might, for example, include identifying key employees and reviewing any of their files that are likely to be relevant to the claims in the litigation * * * Defined search strategies are even more appropriate

> in cases involving electronic data, where the number of documents may be exponentially greater.

*Id.* (ordering the use of selected search terms as an "interim step"). *See also, Wiginton v. Ellis*, 2003 WL 22439865, at *6 (N.D. Ill. 2003) (rejecting the argument that it "would require thousands and thousands of hours to search through electronic data for relevant documents" and noting that "the IT department can conduct searches for e-mails containing particular key * * * words"); GRENIG & GLEISNER, eDISCOVERY & DIGITAL EVIDENCE §3:3 (2006) ("The parties shall reach agreement as to the method of searching, and the words, terms, and phrases to be searched"); ALI-ABA, DISCOVERY OF DIGITAL INFORMATION 415, 435 (2006) ("The parties shall reach agreement as to the method of searching, and the words, terms, and phrases to be searched with the assistance of the respective e-discovery liaisons, who are charged with familiarity with the parties' respective systems."). For these reasons, there can be no dispute that the use of search terms has become a sanctioned tool in the process of identifying relevant electronic documents.

Moreover, the particular search terms proposed by Merrill Lynch are appropriate and relevant to the issues in this case. The search terms proposed by Merrill Lynch were culled from terms articulated by Plaintiff himself in pleadings such as the First Amended Complaint, the Plaintiff's Request for the Production of Documents and document riders to Plaintiff's various deposition notices. Plaintiff has not disputed this fact.[4]

---

[4] In addition, with respect to document types that may not contain English text, Merrill Lynch further proposed to review such document types manually and, to the extent documents subject to such manual review do not contain English text and would not be

8

Use of search terms is particularly important to the review and production of emails and electronic documents. For example, Plaintiff's counsel requested that Merrill Lynch produce responsive emails for the five individuals who were noticed for depositions by Plaintiff. Typically, Merrill Lynch employees send or receive approximately 10,000 to 30,000 email messages per year. To the extent applicable and available for each individual, Merrill Lynch is retrieving emails from January 2001 onward, which represents an estimated 55,000 to 165,000 emails messages for each of these five individuals. In the absence of search terms, Merrill Lynch would not be able to review these emails without incurring an inordinate amount of unnecessary time and expense, and it would be virtually impossible to have them reviewed and produced well in advance of the depositions of these individuals. With respect to the first of these depositions, which already took place on November 1, after unsuccessfully attempting to negotiate search terms with Plaintiff for several weeks, Merrill Lynch informed Plaintiff on October 13, 2006 that it would apply Merrill Lynch's proposed search term list to the emails for this witness. As a result of the failure to agree upon applicable search terms, Merrill Lynch was not able to produce the relevant emails for this individual until the week before his deposition, resulting in complaints from Plaintiff's counsel as to the timeliness of the production.

Notwithstanding these complaints, since that deposition, Plaintiff has continued to refuse to agree upon a search term list. Plaintiff's counsel's purported

---

subject to a "hit" by search terms, to work with relevant custodians to determine if any such documents are in fact responsive in this case. All such responsive non-privileged documents identified through this manual search would be produced. *See* Exhibit I at 2.

9

rationale for refusing to address Merrill Lynch's proposed search term list is not reasonable. As Merrill Lynch already informed Plaintiff's counsel, Merrill Lynch has agreed to discuss the new issues Plaintiff raised regarding electronic discovery – including the types of electronic documents that it has collected and the steps it has and continues to take to preserve documents – but these are not issues or information that Plaintiff's counsel needs in order to reach agreement with Merrill Lynch on search terms for the electronic documents that already have been collected by Merrill Lynch, and which Merrill Lynch is attempting to review for production to Plaintiff in connection with closely approaching depositions.[5] Before Merrill Lynch endeavors to review and produce the emails for the other four individuals that Plaintiff has noticed for deposition, and the electronic documents collected from the 75 individuals whom Merrill Lynch determined had responsive documents, Merrill Lynch is left with no recourse but to seek the Court's intervention so that (i) these emails and documents can be reviewed and produced within a reasonable amount of time before each deposition and both parties will have an adequate amount of time to prepare for the depositions, and (ii) the deponents have some certainty that they will not be recalled to testify based on later production of their emails or other documents.

---

[5] Plaintiff's counsel's continued insistence that they cannot agree to search terms without Merrill Lynch first identifying custodians is not supportable. Merrill Lynch already has identified the names of all of the custodians from whom it is has collected and produced hard copy documents. With the exception of a few of these individuals who either had no responsive electronic documents or very few (and therefore they were printed and produced in hard copy), it has collected and continues to collect electronic documents from the same custodians. *See* 11/3/06 Lehman letter, attached hereto as Exhibit "M." Moreover, Merrill Lynch has agreed to continue to provide the source for all documents produced in this case – either in hard copy or electronic form – so the issue raised by Plaintiff's counsel regarding custodians is a red herring.

Taken in the aggregate, the search term list and electronic document protocol suggested by Merrill Lynch is not only consistent with best practices, it allows Merrill Lynch to move forward with the significant task of responding to Plaintiff's discovery requests in a reasonable and efficient manner.

WHEREFORE, Merrill Lynch respectfully requests that this Court enter a protective order adopting Merrill Lynch's attached methodology [same question as on the first page] for the identification of responsive electronic documents.

Respectfully Submitted,

       MAYER BROWN ROWE & MAW LLP

By: __/s Lori E. Lightfoot_____
   Lori E. Lightfoot
   Mayer Brown Rowe & Maw LLP
   71 S. Wacker Drive
   Chicago, Illinois 60606
   (312) 701-8680

   and

   Weil, Gotshal & Manges, LLP
   Jeffrey S. Klein
   Joseph Allerhand
   Nicholas J. Pappas
   767 Fifth Avenue
   New York, New York 10153
   (212) 310-8000

   Attorneys for Defendant

Dated: November 9, 2006