IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

GEORGE MCREYNOLDS, MAROC
HOWARD, LARUE GIBSON, JENNIFER
MADRID, FRANKIE ROSS, MARVA YORK
LESLIE BROWNE, HENRY WILSON,
LEROY BROWN, GLENN CAPEL,
CHRISTINA COLEMAN, J. YVES LABORDE,
MARSHELL MILLER, CARNELL MOORE,
MARK JOHNSON, CATHY BENDER-
JACKSON, and STEPHEN SMARTT,
Individually on behalf of themselves
and all others similarly situated,

               Plaintiffs,

- against -

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INCORPORATED,

               Defendant.

Case No. 05C6583

Hon. Robert W. Gettleman
Magistrate Judge Denlow

---

## DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rules of Civil Procedure 26(c), Defendant Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch") files this Motion for Protective Order. In support thereof, Merrill Lynch respectfully states:

### I.    INTRODUCTION

1. Merrill Lynch seeks a protective order under Rule 26(c) of the Federal Rules of Civil Procedure and requests that the Court either (1) quash the Amended Notice of Videotaped Deposition of Rule 30(b)(6) Witness (Teams, Client Transition Program, and Broker Training) served upon defendants on January 26, 2007 (the "Rule 30(b)(6) Notice," attached hereto as Exhibit A) or (2) order that the deposition requested by the

Plaintiffs be limited to the issues as defined in Merrill Lynch's letter to Plaintiffs dated February 16, 2007 (the "February 16th letter," attached hereto as Exhibit B).

2. Pursuant to Local Rule 37.2, prior to filing this motion to compel, counsel for Merrill Lynch, Nicholas J. Pappas, attempted to discuss these issues with Plaintiffs' counsel, Linda Friedman, by letter dated February 16, 2007, by telephone on February 27, 2007, and by letter dated February 28, 2007, in a good faith attempt to reach an accord, but the Plaintiffs were not responsive and refused to engage in such a discussion.

3. Merrill Lynch explained to Plaintiffs the multiple ways in which their Rule 30(b)(6) Notice is vague, overbroad, duplicative, and unduly burdensome. To require Merrill Lynch to attempt to prepare one or more witnesses to discuss the topics as defined in the deposition notice would be impracticable and would place an undue burden on Merrill Lynch. Accordingly, a protective order should be entered granting Merrill Lynch's requested relief.

## II. BACKGROUND

4. On January 18, 2007, Judge Gettleman entered an order extending the cutoff date for fact discovery as to class certification issues from March 15, 2007 to June 13, 2007 following a joint motion for an extension based on the parties' agreement as to their mutual need to complete the existing fact discovery both sides had already requested of each other.

5. On January 26, 2007, Plaintiffs served their Amended Notice Of Videotaped Deposition of Rule 30(b)(6) Witness (Teams, Client Transition Program, and Broker Training) (the "New Notice") which noticed the deposition for March 20, 2007.

(See Exhibit A). The New Notice greatly expands upon the work Merrill Lynch must do to complete such class discovery.

6. On February 16, 2007, Merrill Lynch responded to the New Notice with a detailed letter setting forth Merrill Lynch's objections and responses to the issues set forth in the New Notice. (See Exhibit B). Merrill Lynch expended a significant amount of time and effort in responding to the New Notice and it carefully set forth the extent to which it was able to comply with the New Notice and its reasons for objecting to other aspects of the New Notice.

7. Plaintiffs never responded substantively to any of the issues raised in the February 16th letter.

8. After receiving no response to the February 16th letter, on February 27, 2007, Defendant once again attempted by telephone to arrange for a time with Plaintiffs to discuss in detail the scope of the New Notice. (See the "February 28th letter," attached hereto as Exhibit C). Rather than agreeing to arrange such a time to discuss the issues raised in Merrill Lynch's February 16 letter, Plaintiffs stated that they "rejected" the contents of the letter in its entirety as an effort by Merrill Lynch to rewrite the New Notice. (See Exhibit C). When Defendant advised Plaintiffs that they were not in compliance with their obligation to meet and confer as required by the applicable rules, Plaintiffs stated that the telephone call satisfied their obligation, and refused to engage in further discussions regarding the specific issues Defendant identified regarding the New Notice. (See Exhibit C).

9. Following this telephone conversation, on February On February 27, 2007 at 10:55 p.m., Plaintiffs sent Defendant an email regarding the New Notice stating that

"[t]he notice is clear and does not need to be rewritten." (the "February 27th email," attached hereto as Exhibit D). Plaintiffs further reiterated that "everyone understands the notice. If there is some part of the notice that is confusing, please set that forth in a clear letter."

10. On February 28, 2007, Merrill Lynch sent a follow-up letter to Plaintiffs summarizing the correspondence on the issues surrounding the New Notice. (See Exhibit C). The letter stated that Defendants had already "set forth [their] concerns in a clear letter" in the February 16th letter and stated that an oral explanation by the Plaintiffs, rather than a redrafting, of the notice would not provide sufficient particularity for Merrill Lynch to properly prepare one or more witnesses, as required by the Federal Rules of Civil Procedure. (See Exhibit C). Given past disagreements regarding scope that have arisen during depositions, Merrill Lynch felt it was imperative to have a written agreement regarding the scope of the New Notice. Merrill Lynch requested that Plaintiffs immediately schedule a meet and confer and asked for a response to the letter by March 2, 2007.

11. Plaintiffs have not responded to the February 28, 2007 letter.

12. On March 19, 2007, Plaintiffs agreed that they would not insist on a deposition consistent with the March 20, 2007 date contained in the New Notice, but rather that the date for any deposition pursuant to the New Notice would be by agreement of the parties. On March 20, 2007, Merrill Lynch reiterated that it did not intend to prepare witnesses to testify as to the issues as stated in the New Notice, and that Merrill Lynch would seek a Protective Order. (See, the "March 20th letter" attached hereto as Exhibit E).

4

### III.   ARGUMENT

13. Rule 30(b)(6) authorizes litigants to name a business entity as a deponent with regard to specific areas of inquiry.  Rule 30(b)(6) further provides that the deposition notice must describe with "reasonable particularity" the matters on which examination is requested.

14. The Court may limit a Rule 30(b)(6) deposition notice, under the authority given by Rule 26(c), which states "for good cause shown, the court…may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense."

15. A party may show "good cause" to support a protective order limiting discovery by demonstrating that the discovery request requires the assumption of an excessive burden, that the topic is overbroad or duplicative of prior requested discovery, or the requested information can be obtained by other more efficient or less-intrusive means.  See, e.g., Beloit Liquidating Trust v. Century Indemnity Co., 2003 U.S. Dist. LEXIS 2082 (N.D. Ill. Feb. 13, 2003) (Granting protective order where a 30(b)(6) witness would provide the same information as previously provided, but providing a live witness would place a much greater burden on Beloit); SmithKline Beecham Corp. & Beecham Group, P.L.C. v. Apotex Corp., 2000 U.S. Dist. LEXIS 667, *23-31 (N.D. Ill. Jan. 21, 2000) (Denying motion to compel where 30(b)(6) deposition would impose an undue burden, would be "needlessly duplicative" and the Court was not convinced that the information sought had not already been produced).

16. Merrill Lynch seeks a protective order to quash or limit plaintiffs' requested deposition(s) on the topics set forth in the New Notice that are duplicative of

prior discovery, are not stated with sufficient particularity to allow Merrill Lynch to adequately prepare a witness, and which place undue burden on Merrill Lynch.[1]

      A.    **The Court should Quash the New Notice as to Topics that Are Duplicative of Prior Discovery**

      17.  A significant number of topics in the New Notice are duplicative of issues covered by previous depositions and which will be covered in other depositions that the parties previously have agreed upon. The Court should exercise its authority in limiting Plaintiffs' depositions to those topics that are not within the scope of other Rule 30(b)(6) depositions. It is unduly burdensome for Merrill Lynch to prepare multiple and/or different corporate representatives to testify on the same topic, and any further examination on such topics would be duplicative. Banks v. Office of the Senate Sergeant-At-Arms & Doorkeeper, 222 F.R.D. 7, 19 (D.D.C. 2004) (Court required parties to agree upon a list of deposition topics, and stated that if plaintiff went forward with the depositions "plaintiff is certifying…that he will not ask questions that duplicate questions previously asked of other witness or seek information that he already has by virtue of responses to other discovery devices"). This objection is applicable to Topics 1(e), 1(g), 4, 6, 11(a)-(d), 11(f), 12(a), and 12(b) of the New Notice. The topic and a summary of the previous deposition testimony are as follows:

          a.    Topic 1(e) requests the "compensation of Teams." Merrill Lynch has already provided two 30(b)(6) deponents on the topics of the compensation of FAs, and team members are compensated in the

---

[1] Although the New Notice seeks discovery for periods prior to January 2001, Merrill Lynch assumes that Plaintiffs are not pressing for a deponent on policies, practices and procedures that existed prior to January 2001, as the ongoing document production has been limited to this time period. Should Plaintiffs now insist on seeking deposition testimony under Rule 30(b)(6) for the pre-2001 time period, Merrill Lynch will file another motion for a protective order.

        same manner as non-teamed FAs. <u>See</u>, <u>e.g.</u>, Hogarty Dep. at pp. 97-101 (attached hereto as Exhibit F).

    b.    Topic 1(g), the "distribution of accounts, leads, referrals, walk-ins, call-ins, and/or initial public offerings to Teams or Team member, and Topic 1(h) the "distribution of the accounts or assets of Teams upon dissolution of Team or retirement or departure of Team member," are duplicative of 30(b)(6) depositions on the issues of the policies, practices and procedures regarding the distribution of accounts, leads, referrals, walk-ins or call-ins. <u>See</u>, <u>e.g.</u>, Sieg Dep. at pp. 47-61, 136-143, 172-182, 229-230 (Attached hereto as Exhibit G).

    c.    Topic 11(a), "requirements to enter and complete the POA program," is duplicative of the two 30(b)(6) depositions Plaintiffs have already conducted on FA Training and POA Compensation. <u>See</u>, <u>e.g.</u>, Cassidy Dep. at pp. 79-96 (Attached hereto as Exhibit H).

    d.    Topic 11(b) seeks testimony regarding the "[d]uties of POA candidates and those responsible for managing or supporting POA candidates and the POA program." Merrill Lynch can designate a witness on the "duties of POA candidates," however, an examination on the duties of "those responsible for managing or supporting" the POA Program, is duplicative of the agreed-upon 30(b)(6) deposition on Policies and Practices Regarding the Management of FAs as set forth in a letter to Plaintiffs dated September 18, 2006 ("September 18th letter," attached hereto as Exhibit I) and the 30(b)(6) deposition on the issue of FA training.[2] <u>See</u>, Exhibit I, September 18th letter issues 3-5 at pp. 3-4.

    e.    Topic 11(c) requests testimony as to the "success and attrition rates of POA candidates and any breakdown of these rates by race."[3]

---

[2] The 30(b)(6) Deposition on the Policies and Practices of Managing FAs was scheduled twice and cancelled both times by Plaintiffs. We are currently in discussions with Plaintiffs regarding the date and conditions of rescheduling. Plaintiffs should not circumvent this process by issuing a new deposition notice.

[3] Per Merrill Lynch's past practice, references to gender and ethnicity have been removed from our recitation of the New Notice. Plaintiffs are well-aware that Merrill Lynch has objected to the production of data and documents relating to gender, and since the inception of discovery in June 2006, Merrill Lynch has not produced documents or data relating solely to gender. Should Plaintiffs now insist on seeking deposition testimony under Rule 30(b)(6) for information regarding gender, Merrill Lynch will file another motion for a protective order. With regard to ethnicity, it is Merrill Lynch's

7

      Merrill Lynch has produced all such reports, and questions pertaining to this information were within the scope of the Diversity Data 30(b)(6) deposition conducted on December 20, 2006. Issue 11(c) does not state clearly what additional information, if any, Plaintiffs are seeking.

  f. Topic 11(d), "[r]evisions made to the POA Program… the reasons for those revisions, as well as the results of any studies regarding planned or actual revisions to the POA Program," is duplicative of other topics in this Deposition Notice, the 30(b)(6) deposition regarding FA training, and the 30(b)(6) deposition regarding POA Compensation. Issue 11(d) does not state clearly what additional information, if any, Plaintiffs are seeking.

  g. Topic 11(f) seeks a deposition on "all practices, policies and procedures regarding the POA program." This issue, in whole or in part, is duplicative of the 30(b)(6) deposition on POA Compensation and FA Training. Plaintiffs need to be clear as to the specific policy, practice or procedure within the POA Program that they wish to cover, that has not been covered by other depositions.

  h. Topics 12(a), "the identity of all persons who had material responsibility for the development of the CTP [Client Transition Program] and who approved the CTP," and 12(b), "when the CTP was instituted and became effective," are within the agreed-upon scope of the upcoming 30(b)(6) deposition on Human Resources Policies. See, Exhibit I at issue 12 at p. 7 and Exhibit B at p. 14.

B. **The Court Should Quash or Limit Topics that are Vague and Ambiguous and not Stated With Reasonable Particularity**

  18. On a variety of topics, Plaintiffs seek testimony regarding "all" analyses or studies or "all" materials given to FAs. Given the sheer volume of studies and materials generated by Merrill Lynch, and which have been produced in discovery thus far, it is impossible for Merrill Lynch to identify and prepare a witness to testify as to such topics, and it would similarly be impossible for one or more witnesses to learn the details of each

---

understanding that the information Plaintiffs seek is co-extensive with "race" in Merrill Lynch's data and documents. To the extent Plaintiffs seek a broader definition of "ethnicity," Merrill Lynch will file another motion for a protective order.

8

and every analysis, without more information from Plaintiffs as to what issues they seek to examine. See Innomed Labs, LLC v. Alza Corp., 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (Denying motion to compel as notice was not stated with sufficient particularity and the "purpose of this rule is to avoid the difficulties encountered by both sides when the party to be examined is unable to determine who within the corporation would be best able to provide the information sought").

      19. Plaintiffs have received a substantial volume of documents from Merrill Lynch on all the topics noticed for deposition. To the extent that they can identify the particular studies they would like to examine, Merrill Lynch can then assess whether it can adequately prepare one or more witnesses to testify as to those studies. This objection applies to the following Topics:

    a.    Topic 5: "[m]aterials made available to FAs, IAs, and members of management at Merrill Lynch regarding Teams"

    b.    Topic 6, "[t]he racial …composition of Teams; the representation of African Americans…and other minorities on Teams; and, the relative performance of Teams by race"

    c.    Topic 7: "[a]ll efforts to monitor analyze or study Teams by minority status"

    d.    Topic 11(e): "[a]ny efforts by Merrill Lynch to study or analyze the performance of participants in the POA program by…race…and/or to analyze the impact of any aspect of the POA program by…race"

    e.    Topic 11(i): "[a]ny disparate impact or self-critical studies of the POA program or Teams"

    f.    Topic 12(g): "any discussions, reports or analyses regarding the racial…impact of the CTP"

      20. In addition, Merrill Lynch requests that the Court enter an order limiting the following Topics to the extent that they include information with regard to

9

relationships or analyses that either do not exist, or which cannot be determined by Merrill Lynch with a reasonable degree of diligence. To the extent Plaintiffs base these requests upon specific documents produced in discovery, Plaintiffs should be required to provide greater specificity or other information that would place Merrill Lynch on notice of the issue sufficient to allow it to adequately prepare a witness. This objection applies to:

    a.    Topic 4 seeks "[a]ll policies, practices or systems used to monitor Teams at Merrill Lynch, including but not limited to any monitoring of the membership, performance, and racial…composition of Teams, as well as any monitoring of compliance with Merrill Lynch policies." Plaintiffs should clarify what they mean by "monitoring," as this word has been the subject of divergent views between the Parties in the past.

    b.    Topic 10 seeks "[a]ny information shared between or presented to or by Defendant's multicultural marketing and/or business development groups to or regarding teams and/or informal or virtual teams" and 11(h) requests "[a]ny relationship between or information shared by or presented to or by Defendant's multicultural marketing and/or business development groups to POA participants, coordinators, mentors, or managers." At this time, Merrill Lynch not aware of such a "relationship" or "information shared by or presented to or by," other than the general marketing materials produced to Plaintiffs. All materials generated and distributed by the Multicultural Marketing Group have been produced. Accordingly, Plaintiffs are in a position to identify particular documents they wish to examine to allow Merrill Lynch to adequately prepare a witness.

    c.    Topic 12(h): "any analysis of the impact of the CTP on various categories of Merrill Lynch employees and clients (including which FAs benefit or are harmed by the CTP, the impact of the CTP by LOS, quintile or production level, any studies of client retention, etc.)," Merrill Lynch is not aware of any such analysis conducted at the national level.

    d.    Topic 11(g) which seeks testimony regarding "[t]he content, location and persons responsible for monitoring data regarding the POA program," as vague and ambiguous. Plaintiffs should clarify what they mean by "monitoring," as this word has been the subject

        of divergent views between the Parties in the past. Furthermore, Plaintiffs may presuppose the existence of "monitoring" at a national level, and at this time, Merrill Lynch is not aware of such conduct taking place.

    e.    Topics 12(c), "the content, location and persons responsible for monitoring data regarding the CTP," 12(f), "all attempts by Merrill Lynch to monitor, audit, or review compliance with or participation in the CTP; any discussion or analysis of the success or efficacy of the CTP," and 12(i), "whether and how Merrill Lynch monitors participation in the CTP," require more information as Merrill Lynch is unaware of any "monitoring" of the CTP.

    f.    With regards to Topics 12(d), "the rationale for the creation of the CTP and of any revisions or proposed revisions to the CTP" and 12(e), "the substance and rationale of any revisions to the CTP," Merrill Lynch can designate a witness to testify as to the "rationale for the creation of the CTP," however, no "revisions" to the CTP have occurred since it was instituted in January 2006.

### C. The Court Should Limit Topics to the Extent That Preparing a Witness to Testify Would be Unduly Burdensome

21. With regard to any policy, practice, or procedure for which Plaintiff notices a deposition, Merrill Lynch seeks to limit the topics to the extent that the Plaintiffs request testimony regarding local office policies, practices and procedures regarding these topics, or the experiences of any particular financial advisors with respect to these arrangements. The Advisory Division consists of more than 600 offices that are managed by 135 Directors. It would be impracticable and unduly burdensome to require one or more witnesses to become knowledgeable with regard to the specific policies, practices, or procedures applied at the local level.

22. If Plaintiffs wish to investigate these local policies for a particular time period in a particular office, they may seek depositions of branch managers or by reviewing particular categories of documents from branch offices. Undertaking such depositions would be a burdensome exercise that was not contemplated by the parties in

setting a discovery deadline of June 13, 2007. Should Plaintiffs notice such depositions, the parties will need to meet and confer regarding the impact of the request on the discovery schedule.

## **CONCLUSION**

23. Merrill Lynch respectfully requests that the Court grant its Motion for a Protective Order.

Dated: April 12, 2007

By: __/s Therese C. King_____
MAYER, BROWN, ROWE & MAW LLP
Lori E. Lightfoot
Therese C. King
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600 (Phone)
(312) 701-7711 (Facsimile)

--and--

WEIL, GOTSHAL & MANGES LLP
Jeffrey S. Klein
Nicholas J. Pappas
Salvatore A. Romanello
767 Fifth Avenue
New York, NY 10153
(212) 310-8000 (Phone)
(212) 310-8007 (Facsimile)

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of Defendant's Motion for Protective Order was served upon counsel for Plaintiff addressed as follows:

> Linda Friedman
> Mary Stowell
> George Robot
> Stowell & Friedman, Ltd.
> 321 S. Plymouth Court, Suite 1400
> Chicago, Illinois 60604

via U.S. mail and e-mail on April 12, 2007.

By: \_\_\_\_\_s/ Therese C. King_____