## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE MCREYNOLDS, et al., on behalf of themselves and all others similarly situated | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 05C 6583 |
| v. | ) ) ) | Judge Robert W. Gettleman |
| MERRILL LYNCH, FENNER, PIERCE & SMITH | ) ) | Magistrate Judge Morton Denlow |
| Defendant. | ) | |

### PLAINTIFFS' MOTION FOR PROTECTIVE ORDER, TO COMPEL DEFENDANT TO IDENTIFY DOCUMENTS, AND FOR A DATE CERTAIN FOR DEFENDANT TO COMPLETE PRODUCTION

Plaintiffs, on behalf of all those similarly situated, respectfully request that this Court: (1) issue a protective order that each of the remaining Named Plaintiffs need not appear for his or her deposition until 30 days after Defendant has produced documents sought regarding the Named Plaintiff and his or her Merrill Lynch office and has identified information for materials produced regarding each Named Plaintiff; (2) order Defendant's counsel to meet with Plaintiffs' counsel to attempt to resolve technical issues regarding the search process for electronic discovery, most notably e-mail, which has resulted in the production of tens of thousands of pages of documents per Plaintiff (among other problems); and, (3) order Defendant to complete its production in response to Plaintiffs' outstanding discovery by a date certain. In support of Plaintiffs' motion, they state as follows:

1.  As the Court is aware, the parties presently are engaging in class certification discovery only. To date, Merrill Lynch has produced over one million pages of documents and has produced at least tens of thousands of documents per month for many consecutive months. Granted, this is a large and complex case, but the sheer volume of documents has resulted largely

from the electronic, search-term method of gathering and producing documents that Merrill Lynch insisted upon and asked this Court to order. Plaintiffs understand this is a "new era" of discovery, but in this case, electronic discovery has presented challenges to both parties and has had unexpected results. It was Plaintiffs' fear of these unintended results that led them to propose more of a standard method of discovery where Plaintiffs identify specific documents they want and Defendant contacts those who maintain these documents and then produces them.[1]

    2.    A litany of problems have arisen throughout electronic discovery, including repeated production of corrupted computer disks, disks that could not be opened, viewed, searched or printed, repeated vendor errors, un- or mislabeled production, and inaccurate or incomplete searches and reviews that resulted in relevant documents not being produced in a timely fashion. *See, e.g.,* Ex. 1. Many of these production issues have come on the eve of extremely important depositions taken by Plaintiffs, and Plaintiffs did not discover some of these errors until after they conducted the depositions. *See, e.g.,* Ex. 1.

    3.    In spite of these repeated obstacles, Plaintiffs have diligently pursued their affirmative class certification discovery. Although Plaintiffs sought to take most of the depositions they noticed beginning in the summer of 2006, Merrill Lynch did not begin producing the bulk of documents until July 2006 and would not estimate when it would complete production in response to Plaintiffs' first set of discovery requests. Indeed, even today, Merrill Lynch cannot tell Plaintiffs when it will complete production of responsive documents. As a result, Plaintiffs conducted depositions prior to a complete production not because this was the option they preferred, but because they had no real choice. Had Plaintiffs waited for Defendant to complete its production, they still would not have taken the first deposition in this case, despite the upcoming discovery deadline. To illustrate, Plaintiffs present just a few examples of

---

[1] The parties are currently attempting to pursue a "hybrid" approach to some of the outstanding discovery, which will hopefully prove more useful and less burdensome on both sides.

when the bulk of responsive documents and files from certain deponents were sent to Plaintiffs' counsel:

| Deponent | Deposition Date | Pages Produced | Date Production Sent |
|---|---|---|---|
| JOHN HOGARTY | 10/5/06 | 3,985 | 12/21/06 (post-deposition) |
| STAN O'NEAL (CEO) | 11/1/06 | **7 DVDs produced** | **10/24/06** |
| | | **4,128** | **10/27/06** |
| | | 384 | 10/28/06 |
| | | 16 | 10/29/06 |
| | | 35 | 10/30/06 |
| PHIL SIEG R. 30(b)(6) Deponent | 11/29/06; 12/1/06 | 34,228 | 11/17/06 **Disk corrupted** |
| | | 34,228 | 11/22/06 Disk corrupted |
| | | DVD | 12/27/06 (post-deposition) |
| | | **40,489** | **1/24/07 (post-deposition)** |
| | | 3,235 | 3/29/07 (post-deposition) |
| DAN SONTAG | 1/17/07 | **60,427** | **1/4/07** |
| | | **63,756** | **1/9/07** |
| | | **5,203** | **3/29/07 (post-deposition)** |
| | | 7 DVDs | 4/19/07 (post-deposition) |
| ROBERT MCCANN | 2/22/07 | 419 | 10/18/06 |
| | | 749 | 12/7/06 |
| | | 38,795 | 4/11/07 (post-deposition) |
| KIM PILLAR | 2/23/07 | **96,582** | **2/3/07** |
| | | 101 | 2/26/07 (post-deposition) |
| | | **5,243** | **4/4/07 (post-deposition)** |
| | | 729 | 4/19/07 (post-production) |
| MAC GARDNER | 3/8/07 | 32,687 | 2/22/07 |
| | | 2,142 | 2/26/07 |
| | | 32,687 | 3/1/07 (replaced corrupt DVD) |
| | | 670 | 3/2/07 |
| SUBHA BARRY | 4/12/07 | **30,564** | **3/2/07** |
| | | 9,435 | 4/4/07 |
| | | **55,585** | **4/5/07** |
| | | 74 | 4/6/07 |

4.  Even when Plaintiffs attempted to ensure that document production regarding certain witnesses was complete prior to depositions, Merrill Lynch produced relevant and responsive documents after these depositions. For example, Plaintiffs demanded complete

3

production of the documents sourced to Executive Vice President Bob McCann, Vice-Chairman and President of Merrill Lynch's Global Private Client Business, prior to conducting his deposition. *See, e.g.,* Ex. 2. After only a small (for this case) amount of documents was produced regarding Mr. McCann, Plaintiffs asked Merrill Lynch repeatedly to confirm that his production was complete. Merrill Lynch assured Plaintiffs that all of Mr. McCann's documents had been produced. *See, e.g.,* Ex. 2. Nevertheless, *after* Mr. McCann's deposition, Plaintiffs discovered that Merrill Lynch had not produced a substantial amount of Mr. McCann's documents. *See, e.g.,* Ex. 3. On April 11, 2007, nearly seven weeks after Mr. McCann's deposition, Merrill Lynch produced 38,795 pages of documents from Mr. McCann, more than 33 times what had been previously produced from Mr. McCann. *See, e.g.,* Ex. 4.

5. Indeed, throughout discovery, Plaintiffs have struggled mightily through these and other discovery issues, and have attempted to resolve discovery disputes without involvement of this Court. Plaintiffs' counsel spent hours conferring with Defendant's counsel face-to-face and telephonically. Plaintiffs' counsel also worked tirelessly reviewing the tens or hundreds of thousands of documents that arrive each week, in addition to working on other cases and honoring other commitments. Attorneys and staff have worked nights, weekends and holidays to attempt to keep up with the seemingly unending production, catch errors and prepare for depositions. Plaintiffs' counsel managed to proceed with depositions despite relevant production on the eve of these depositions, sometimes by asking Merrill Lynch to deliver documents to their homes and hotels. *See, e.g.,* Ex. 1. As referenced to above, many of the above documents were not fully usable when they reached Plaintiffs' counsel due to repeated vendor, computer or technical errors. Plaintiffs offered their own computer experts to assist Merrill Lynch in identifying technical problems and pleaded with Merrill Lynch to correct recurring production issues or hire a new vendor. *See, e.g.,* Ex. 5. Despite all these obstacles, Plaintiffs continued proceeding with discovery.

6. Now, however, Plaintiffs are faced with a discovery issue that they cannot overcome in a way that serves their clients and the putative class of people relying upon this litigation. Defendant has noticed the depositions of the sixteen Named Plaintiffs in this action. Pursuant to the Court's orders, these depositions are solely for the purposes of class certification discovery. Thus, these are depositions solely to determine their suitability to serve as class representatives, not depositions in their individual capacity or regarding their individual cases or damages.

7. After scheduling the first two Named Plaintiff depositions, Plaintiffs' counsel were stunned to receive over 70,000 pages of e-mails for Plaintiff Mark Johnson and over 116,000 pages of e-mails for Plaintiff Maroc Howard, a total of about 75 boxes of e-mails. The parties conferred and agreed that something was wrong with the e-mail production.[2] So that the depositions of these two witnesses could proceed, Merrill Lynch agreed to produce a "subset" of the documents it would use to question these witnesses while the parties attempted to reach a resolution of this issue.

8. On that basis, six of the Named Plaintiffs have already appeared for deposition: Mark Johnson, Maroc Howard, Cathy Bender-Jackson, Christina Coleman, Henry Wilson, and Les Browne. Plaintiffs' counsel produced these Named Plaintiffs in spite of receiving tens of thousands of documents regarding each Plaintiff from Merrill Lynch shortly before his or her deposition because Merrill Lynch agreed to a reasonable compromise while the parties attempted to determine a solution to the e-mail debacle, *i.e.*, Merrill Lynch identifying a subset of the voluminous e-mails it intended to question the Plaintiffs about during their depositions. These

---

[2] Plaintiffs identified a number of issues, including the continuing problems with Defendant's vendor. Plaintiffs' counsel presented Defendant's counsel with examples of duplicates produced again and again from a single person's e-mail file. Plaintiffs also believe the search terms are either not being applied correctly or are overly inclusive. Lacking access to Defendant's vendor, Plaintiffs asked Merrill Lynch to produce a list of results by search term so the parties could study the problem and see if the search terms could be refined and re-run.

5

"subsets" were produced approximately one week before the depositions. Plaintiffs' counsel even proceeded with a few of the depositions without such subsets when the e-mail productions were relatively "small" or when Merrill Lynch agreed to identify the documents that related to the deponent. *See, e.g.,* Ex. 6.

9. Merrill Lynch now refuses to address the e-mail production problems and has informed Plaintiffs that it will no longer identify a subset of relevant documents from the tens or hundreds of thousands of e-mails and will not provide basic information as to which documents in its production pertain to which Plaintiff. Merrill Lynch also refuses to identify the other documents that have been produced regarding each Named Plaintiff or source information regarding documents produced from each Named Plaintiff's branch office (*e.g.,* who retained a particular file produced from the Named Plaintiff's branch office).

10. The depositions of Named Plaintiffs Leroy Brown and Larue Gibson are scheduled next week for April 26, and April 27, respectively. On approximately April 5, Defendant produced over 200,000 pages of e-mails that relate to Mr. Gibson and over 74,000 pages of e-mails that relate to Mr. Brown. *See, e.g.,* Ex. 7 and Ex. 8. These e-mails alone constitute approximately 100 boxes of documents, and do not include any documents from these two Named Plaintiffs' offices or documents otherwise related to these two Named Plaintiffs.[3]

11. Plaintiffs' counsel have not been idle since these documents arrived. Plaintiffs prepared and defended the depositions of two Named Plaintiffs on April 4 and April 5 and flew to New York on April 11 to depose an important Merrill Lynch witness, Subha Barry, on April 12. Moreover, an additional 65,000 pages (over 25 boxes) of documents from Ms. Barry were produced less than a week before her deposition. In short, Plaintiffs have been working non-stop

---

[3] Plaintiffs believe that Defendant has either produced each Plaintiff's entire e-mail box or that there is an error in the search methodology used by Merrill Lynch. Most of Merrill Lynch's witnesses produced far fewer e-mails than have been produced for each Plaintiff, including Merrill Lynch's head of Human Resources.

reviewing hundreds of thousands of documents in an attempt to prepare to take and defend depositions in this case. But it simply is not possible for Plaintiffs' counsel to review this volume of documents and adequately prepare the Named Plaintiffs for deposition under the existing deposition schedule.

12. Plaintiffs understand that Defendant may have also reviewed the majority of these documents prior to their production. However, it is Defendant – not Plaintiffs – who controls the timing of the collection and production of these materials, as well as the depositions it has noticed. Defendant can therefore spend months reviewing and analyzing documents, only to produce them in insufficient time for Plaintiffs to have that same opportunity prior to depositions.

13. Eight of the remaining ten Named Plaintiff depositions are scheduled over the next four weeks. As the following chart indicates, Merrill Lynch expects Plaintiffs counsel to review *at least 465 boxes* of recent or newly produced materials in preparing the remaining ten Named Plaintiffs for their depositions on class certification issues:

| Named Plaintiff Deponent | Date of Deposition | E-Mail Production Letter Dates | Pages of E-Mails Produced | Produced Subset or Identified Docs By Plaintiff? |
|---|---|---|---|---|
| Mark Johnson | 3/21/07 | * 3/12/07 (e-mails) | 73,612 | Yes |
| Maroc Howard | 3/22/07 | * 3/12/07 (e-mails) | 116,745 | Yes – 3/14/07 |
| Christina Coleman | 3/26/07 | * 3/20/07 (subset only) | 343 | Yes – 3/20/07 |
| Cathy Bender-Jackson | 3/27/07 | * 3/19/07 (e-mails) | 90,471 | Yes – 3/21/07 |
| Henry Wilson | 4/4/07 | * 2/28/07 (e-mails) | 32,629 | No |
| Leslie Browne | 4/5/07 | * 3/15/07 (e-mails); * 4/3/07 –via e-mail | 24,925 73 | Yes |
| Leroy Brown | 4/26/07 | * 4/3/07 (e-mails) | 74,211 (30 boxes) | NO |
| LaRue Gibson | 4/27/07 | * 4/4/07 (e-mails) | 203,126 (81 boxes) | NO |
| J. Yves LaBorde | 5/1/07 | * 4/9/07 (e-mails) | 79,384 (32 boxes) | NO |
| Marva York | 5/2/07 | * 2/28/07 (e-mails) | 16,552 | NO |

| Named Plaintiff Deponent | Date of Deposition | E-Mail Production Letter Dates | Pages of E-Mails Produced | Produced Subset or Identified Docs By Plaintiff? |
|---|---|---|---|---|
| | | * 4/17/07 (e-mails) | 99,591 (47 boxes) | |
| **Marshell Miller** | 5/9/07 | * 3/29/07 (e-mails) | 90,289 (36 boxes) | NO |
| **Stephen Smartt** | 5/10/07 | * 3/29/07 (e-mails) | 40,545 (16 boxes) | NO |
| **Carnell Moore** | 5/16/07 | * 4/10/07 (e-mails) | 361,320 (145 boxes) | NO |
| **Frankie Ross** | 5/17/07 | * 4/10/07 (e-mails) | 194,939 (78 boxes) | NO |
| **Glenn Capel** | Not scheduled | Not Yet Produced | | NO |
| **Jennifer Madrid** | Not scheduled | * 2/28/07 (e-mails) | 11,296 (5 boxes) | NO |

This production is certain to grow, as Merrill Lynch has not yet produced documents for two of the Named Plaintiffs and will not represent it has completed production for any Named Plaintiff.

14. Plaintiffs offered to proceed with these depositions if Merrill Lynch would do what it had done on other occasions with regard to the Plaintiffs' depositions: identify the documents in the general production that relate to the Plaintiffs and their offices and identify a subset of the tens of thousands of e-mails that they may use to question the witnesses. But Merrill Lynch refuses to do so, claiming any such information is attorney work product (despite having provided this same type of information regarding other Named Plaintiffs).

15. Plaintiffs believe that Merrill Lynch's refusal to provide basic information about its production regarding Plaintiffs does not comply with the Court's directive to identify the nature and source of the documents produced so there be no "surprises" at depositions. To the extent Defendant has provided source information, it is so broad and vague as to be meaningless to its content.[4] Basic information about the documents that relate to the Plaintiffs is in the

---

[4] For example, documents that cite the source as "Advisory Website" may refer to documents about Plaintiffs or tens of thousands of policies and practices printed off of the website. To the extent Defendant ran a search for information about each Plaintiff on this website, it would be no burden to identify in the transmittal letter that the document relates to a given Plaintiff.

possession and ready availability of Merrill Lynch's counsel, as it has been for months. Defendant's counsel also has complete access to Merrill Lynch personnel and databases. Providing this information to Plaintiffs imposes no burden on Defendant and, indeed, Defendant has not claimed undue burden or hardship on this issue.

16. The depositions of the Named Plaintiffs are of obvious importance to this case. The Named Plaintiffs are representatives of and have duties to a putative class of at approximately 800 current and former African-American employees of Merrill Lynch. To date, the depositions of the Named Plaintiffs have been contentious, long, and grueling. Each of the depositions has lasted a full day; only one has ended before 8:00 pm, and one deposition even stretched over two full days. Merrill Lynch has aggressively pursued its goal of demonstrating that the Plaintiffs are not suitable to represent the class.[5] But Merrill Lynch should not be allowed to pursue that goal through unfair discovery tactics. Plaintiffs should not be forced to enter their depositions and give sworn testimony against an opponent armed with every document and e-mail ever written or received and unfettered access to the deponents' managers and colleagues, particularly when the depositions are solely for class certification depositions and not depositions regarding damages, liability, or their individual cases. Plaintiffs deserve a fair chance to attempt to level the playing field by having an opportunity to review and perhaps refresh their recollections as to some of those same documents. Merrill Lynch's production methods, combined with its refusal to identify a subset of materials as it had done in the past, deny the Named Plaintiffs yet to be deposed that chance.

17. The Named Plaintiffs, many of whom are current Merrill Lynch employees, have done an extraordinary job of representing the putative class. They met with Merrill Lynch

---

[5] Indeed, Plaintiffs believe Defendant has exceeded the permissible scope of Rule 23 class certification discovery on a number of occasions but has attempted to continue with the depositions rather than burden the Court; Plaintiffs reserves the right to raise this issue with the Court should this overreaching continue. This behavior, however, makes it more important that Plaintiffs have ample opportunity to prepare for their depositions.

representatives for months in a series of mediations across the country; they have traveled to attend depositions of Defendant's corporate representatives and executives; and they have devoted countless hours to assisting counsel in developing this case. They are extremely anxious to complete discovery so that this lawsuit can progress and they can get their "day in court" and an opportunity to change their working conditions at Merrill Lynch, but they want to be well-prepared for their depositions in order to continue representing the putative class to the best of their ability. As a result, they want to review the documents that relate to them in order to refresh their recollections and be able to provide responses in the appropriate context. But given the ongoing avalanche of production, for which there is no end in sight, neither Plaintiffs nor their counsel can possibly review the tens and sometimes hundreds of thousands of pages of materials in the time frame provided and prepare for Plaintiffs' depositions or complete their affirmative class certification discovery.

18. Indeed, as part of developing their own case, Plaintiffs must analyze these and other documents recently produced carefully and issue any necessary follow-up discovery, as well as complete the depositions they have noticed but not yet had the opportunity to conduct. As previously noted, Merrill Lynch is unable to represent when it will complete the production of responsive documents and data – with respect to any individual Named Plaintiff or otherwise. Plaintiffs therefore request that the Court order Merrill Lynch to identify a date certain when it will complete its production in response to Plaintiffs' outstanding requests for production so that Plaintiffs' counsel can properly defend their clients' depositions and help Plaintiffs prosecute this action.

19. The parties have met and conferred in person, over the phone and via correspondence in accordance with Local Rule 37 but have not been able to resolve these issues. *See, e.g.,* Ex. 9. Plaintiffs note that Defendant made similar requests for additional time to review documents and prepare their witnesses for deposition, and Plaintiffs have granted those

requests. For example, Merrill Lynch cancelled the scheduled depositions of Phil Sieg and Kim Pillar so that it could complete its review of documents and preparation of witnesses. *See, e.g.,* Ex. 10.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully ask that the Court grant their Motion and: (1) issue a protective order that each of the remaining Named Plaintiffs need not appear for his or her deposition until 30 days after Defendant has produced documents sought regarding the Named Plaintiff and his or her Merrill Lynch office and has identified information for materials produced regarding each Named Plaintiff; (2) order Defendant's counsel to meet with Plaintiffs' counsel to attempt to resolve technical issues regarding the search process for electronic discovery, most notably e-mail, which has resulted in the production of tens of thousands of documents per Plaintiff (among other problems); and, (3) order Defendant to complete its production in response to Plaintiffs' outstanding discovery by a date certain.

Electronically filed on April 23, 2007

                              Respectfully submitted on behalf of the Parties,

                              /s/ Suzanne E. Bish
                              One of the attorneys for Plaintiffs

Mary Stowell
Linda D. Friedman – ABA # 06190092
Suzanne E. Bish
Stowell & Friedman, Ltd.
321 South Plymouth Court
Suite 1400
Chicago, Illinois 60604
(312) 431-0888

344472-4

11

## CERTIFICATE OF SERVICE

I, Suzanne E. Bish, an attorney, hereby certify that on April 23, 2007, I caused a true and correct copy of attached Motion for Protective Order And Discovery Extension to be served via Electronic Mail on the following counsel of record:

Jeffrey S. Klein  
Nicholas J. Pappas  
Weil, Gotshal & Manges LLP  
767 Fifth Avenue  
New York, NY 10153  
phone: (212) 310-8790; fax: (212) 310-8007  
jeffrey.klein@weil.com  

Lori Lightfoot  
Mayer Brown Rowe & Maw  
71 S. Wacker Drive  
Chicago, IL 60606  
phone: (312) 782-0600; fax: (312) 701-7711  
llightfoot@mayerbrownrowe.com  

/s/ Suzanne E. Bish