IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
-----------------------------------------------------------x
GEORGE MCREYNOLDS, MAROC                :
HOWARD, LARUE GIBSON, JENNIFER          :
MADRID, FRANKIE ROSS, MARVA YORK        :
LESLIE BROWNE, HENRY WILSON,            :
LEROY BROWN, GLENN CAPEL,               :
CHRISTINA COLEMAN, J. YVES LABORDE,     :
MARSHELL MILLER, CARNELL MOORE,         :
MARK JOHNSON, CATHY BENDER-             :  Case No. 05C6583
JACKSON, and STEPHEN SMARTT,            :
Individually on behalf of themselves    :
and all others similarly situated,      :  Hon. Robert W. Gettleman
                                        :  Magistrate Judge Denlow
              Plaintiffs,               :
                                        :
- against -                             :
                                        :
MERRILL LYNCH, PIERCE, FENNER           :
& SMITH, INCORPORATED,                  :
                                        :
              Defendant.                :
-----------------------------------------------------------x
```

## MERRILL LYNCH MOTION TO COMPEL DISCOVERY RESPONSE

Pursuant to Federal Rules of Civil Procedure 26 and 37 and Local Rule 37.2, Defendant Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch") moves to compel the production of Plaintiffs' response to Interrogatory No. 2 of Defendant's Fourth Set of Interrogatories.[1] In support of this Motion, Merrill Lynch respectfully states:

---

[1] The present motion to compel is limited to Interrogatory No. 2. Merrill Lynch reserves the right to pursue a motion to compel as to Interrogatory No. 1 of Defendant's Fourth Set of Interrogatories at a later date, if necessary.

Case: 1:05-cv-06583 Document #: 108 Filed: 05/03/07 Page 2 of 10 PageID #:1110

## INTRODUCTION

1. Merrill Lynch served Plaintiffs with Defendant's Fourth Set of Interrogatories on January 2, 2007. Pursuant to Local Rule 37.2, prior to filing this motion to compel, counsel for Merrill Lynch, Salvatore A. Romanello and Lori E. Lightfoot, discussed these Interrogatories with Plaintiffs' counsel Linda Friedman on multiple occasions including by telephone on February 9, 2007 at 10:00 a.m. CST and February 16, 2007 at 10:00 a.m. CST, and again on May 3, 2007 in good faith attempts to resolve this dispute, but the parties were unable to reach an accord.

2. By its motion, Merrill Lynch now seeks this Court's intervention and respectfully requests that this Court compel Plaintiffs to respond to Interrogatory No. 2 of Defendant's Fourth Set of Interrogatories ("Interrogatory No. 2").

## FACTUAL SUMMARY

3. On January 2, 2007, Defendant served on Plaintiffs its Fourth Set of Interrogatories (attached hereto as Exhibit 1). Defendant's Fourth Set of Interrogatories included only two narrowly tailored questions that each individual Plaintiff was asked to respond to.

4. Interrogatory No. 1 states, "Identify what You believe to be the race of each client in Your book of business while You were employed as a Financial Advisor at Merrill Lynch. For each client who is not a natural person, list the name of Your principal contact with that client. List Your clients alphabetically by name and race."

5. Interrogatory No. 2 states, "For each of Your clients identified in Interrogatory No. 1 above, briefly summarize how You first met that client (e.g., through

the Chamber of Commerce, in church/synagogue/mosque, college roommate, etc.). List Your clients alphabetically by name and respective summary of how You first met."

6. Defendant had previously served fourteen interrogatories on George McReynolds and a total of twenty interrogatories on all Plaintiffs, twelve of which were virtually identical to the fourteen interrogatories already served on Plaintiff George McReynolds. Accordingly, only eight new interrogatories were served on George McReynolds. Combined with the original fourteen interrogatories served on George McReynolds, Merrill Lynch had served twenty-two interrogatories on Mr. McReynolds and twenty interrogatories on the other named Plaintiffs, including subparts, at the time it served all Plaintiffs with the two additional interrogatories in Defendant's Fourth Set of Interrogatories.

7. On February 5, 2007, Plaintiffs' counsel served Plaintiffs' Responses and Objections to Defendant's Fourth Set of Interrogatories (attached hereto as Exhibit 2). Plaintiffs made no attempt to answer either of the two interrogatories included therein, and, during subsequent meet and confers with Merrill Lynch's counsel, Plaintiffs have refused to answer the interrogatories absent a court order compelling them to do so.

8. Plaintiffs objected to Interrogatory No. 2 on the grounds that (1) it is duplicative of Defendant's Second and Third Set of Interrogatories, (2) it seeks "information that is beyond that necessary to determine Plaintiffs' suitability as class representatives, and seeks individual, and not class, discovery"; (3) that the race of Plaintiffs' clients or the manner in which Plaintiffs met their clients is not relevant to their status as class representatives or the class certification process; and (4) the requirement of Plaintiffs to list more than 7,500 accounts and provide detailed

information for each of these accounts is not an appropriate use of an Interrogatory under the Federal Rules of Civil Procedure. Plaintiffs also incorporated by reference all of the objections stated to Interrogatory No. 1.[2]

9. After receiving Plaintiffs' Responses and Objections to Defendant's Fourth Set of Interrogatories, Merrill Lynch's counsel arranged for a meet and confer with Plaintiffs' counsel, which took place on February 9, 2007. During that meet and confer, Merrill Lynch's counsel agreed to set forth Merrill Lynch's response to Plaintiffs' Objections. On February 12, 2007, Salvatore A. Romanello, on behalf of Merrill Lynch, sent Plaintiffs' counsel a letter setting forth Merrill Lynch's response (attached hereto as Exhibit 3). Nonetheless, during the February 16, 2007 meet and confer, Plaintiffs' counsel maintained their position that they would not respond to Merrill Lynch's Fourth Set of Interrogatories without a Court order requiring them to do so. At that juncture, it was apparent that the parties were at an impasse and Plaintiffs would not respond to this interrogatory absent a court order requiring them to do so. On May 3, 2007, counsel for Merrill Lynch again asked counsel for the Plaintiffs if they would voluntarily answer Interrogatory No. 2. Counsel for Plaintiffs indicated in effect that the Plaintiffs' maintained their prior objections to responding to this Interrogatory.

10. To date, six of the individual Plaintiffs have been deposed. The depositions, however, have not proven effective in obtaining facts regarding how Plaintiffs initially met each of their clients. Indeed, in order for Merrill Lynch to obtain

---

[2] Plaintiffs objected to Interrogatory No. 1 on the following grounds (1) it constituted a "manipulative use of the discovery process"; and (2) Defendant has exceeded the limit of 25 interrogatories per party, including subparts, as per Fed. R. Civ. P. 33. Plaintiffs also incorporated by reference all of the objections stated to Interrogatory No. 2.

complete disclosure of these relevant facts, Plaintiffs much provide responses to Interrogatory No. 2.

## ARGUMENT

11. Plaintiffs' argument for class certification centers around the notion that African-American Financial Advisors ("FAs") are disproportionately in the lower two quintiles for FA performance. They place blame for this on the policies, procedures and culture at Merrill Lynch, which Plaintiffs allege are discriminatory. Although Merrill Lynch vigorously contests the existence of any such discriminatory policies, Plaintiffs point to the performance disparity between white and African-American FAs as evidence that such policies necessarily exist. Indeed, Plaintiffs argue that it is these policies, with which each African-American FA is faced, that unify the purported class.

12. In defending against Plaintiffs' attempt to certify a class, Merrill Lynch must be able to defend itself from Plaintiffs' allegations that there are discriminatory policies at Merrill Lynch, as well as attack the appropriateness of class certification where the class is purportedly unified by the very policies that Merrill Lynch argues do not exist. Merrill Lynch is entitled to rebut Plaintiffs' theory and show that the real reasons that particular FAs fall into the lower quintiles are FA-specific, diverse and varied.

13. Interrogatory No. 2 of Merrill Lynch's Fourth Set of Interrogatories seeks information from Plaintiffs that requires them to set forth how each Plaintiff, respectively, met his/her clients. This data will enable Merrill Lynch to show that individual differences among each of the Plaintiffs with respect to how they identified and cultivated clients are directly relevant to their success as FAs, which goes to whether

5

Plaintiffs can establish the class certification prerequisites (e.g., typicality, commonality and predominance).

14. Specifically, the data will demonstrate that one reason that FAs may end up in the lower quintiles – irrespective of race – is the methods by which the FAs meet and nurture potential clients. This can be best examined by ascertaining how the various Plaintiff FAs met their clients, as requested in Interrogatory No. 2.

15. Plaintiffs' responses to Interrogatory No. 2 will demonstrate that it is differences among each of the Plaintiffs with respect to how they compiled their books of business that determines their quintile distribution rather than some allegedly discriminatory policies that Plaintiffs have invented as a means of explaining the disparity.

16. Furthermore, all of the objections stated by Plaintiffs are meritless. Regarding Plaintiffs' relevance objection, as discussed above, the individual differences between Plaintiffs with respect to how each Plaintiff met their clients is directly relevant to the issue of whether Plaintiffs can establish the prerequisites for class certification, such as typicality, commonality and predominance.

17. Plaintiffs' burden objection is also unavailing. Plaintiffs' burden argument appears to be that it will take time for each Plaintiff to review his or her client list and describe how he/she met each client. This is not a sufficient burden argument, even assuming that Plaintiffs in total service 7,500 Merrill Lynch clients, given that there are seventeen Plaintiffs. On average, each Plaintiff would have to provide information for less than 450 clients. Plaintiffs seek to represent a class of African-American financial advisors in a class action lawsuit alleging pervasive discrimination with respect

to each and every aspect of Merrill Lynch's business. Given the serious nature of the allegations in this case, and the very limited number of times that Plaintiffs have been requested to respond to Merrill Lynch's affirmative discovery, Plaintiffs' claim of burden in responding to these interrogatories is unavailing.

18. Merrill Lynch cannot adequately defend itself in class certification proceedings without receiving the information requested in Interrogatory No. 2. This information will undoubtedly shed light on the reason for Plaintiffs' quintile positions, which is central to Plaintiffs' arguments for class certification. Plaintiffs possess certain information about their respective client lists that is known only by the Plaintiffs. Therefore, the most efficient and most accurate way to develop such information is through Plaintiffs.[3] And, as stated above, depositions have proven ineffective in obtaining complete disclosure of these facts. Thus, Plaintiffs must respond to Interrogatory No. 2 in order for Merrill Lynch to obtain facts critical to their opposition to class certification.

19. Plaintiffs also contend that Defendant's Fourth Set of Interrogatories is duplicative of other discovery requests, without identifying how and why the requests are duplicative. Merrill Lynch has not previously asked Plaintiffs to identify how they met each of their clients. Accordingly, this objection is also without merit.

---

[3] During the parties' February 9, 2007 meet and confer, Plaintiffs' counsel referenced the difficulties faced by Plaintiffs who are former Merrill Lynch employees in reconstructing their list of Merrill Lynch clients. As previously expressed to Plaintiffs' counsel, for those former employees, Merrill Lynch would be willing to make an accommodation and provide them with such a list, to the extent they represent that they do not have that information, provided they agree to use the list only for purposes of responding to the interrogatory or otherwise prosecuting this action.

7

20. Plaintiffs' contention that Interrogatory No. 2 "constitute[s] a manipulative use of the discovery process," is simply wrong. Interrogatory No. 2 is directly relevant to the determination of whether Plaintiffs can establish the necessary prerequisites for class certification.

21. Plaintiffs' objection that Merrill Lynch exceeded its twenty-five interrogatory limitation is also meritless. Merrill Lynch initially served fourteen interrogatories on Plaintiff George McReynolds. Merrill Lynch thereafter served a total of twenty interrogatories on all Plaintiffs, twelve of which were virtually identical to the interrogatories already served on George McReynolds. Accordingly, only eight new interrogatories were served on George McReynolds. Combined with the original fourteen interrogatories served on George McReynolds, Merrill Lynch had served twenty-two interrogatories on Mr. McReynolds and twenty interrogatories on the other named Plaintiffs at the time of serving Defendant's Fourth Set of Interrogatories. Thus, Interrogatory No. 2 is the 24th interrogatory served on Mr. McReynolds and the 22nd interrogatory served on the remaining Plaintiffs. Merrill Lynch therefore has not exceeded the twenty-five interrogatory limitation, even including subparts. See Fed. R. Civ. P. 33 ("any party may serve upon any other party written interrogatories, not exceeding 25 in number").

22. Furthermore, during meet and confer discussions, Plaintiffs' counsel has raised two additional objections, each of which are similarly unavailing. First, Plaintiffs' state that the Merrill Lynch policy that restricts FAs from using client information for any non-business purpose prohibits them from providing the requested information. The Merrill Lynch policy in question, however, does not restrict Plaintiffs from disclosing the

8

requested information about Merrill Lynch clients in response to the interrogatories served on them by Merrill Lynch.

23. Second, Plaintiffs assert that Merrill Lynch already has the information it seeks. Merrill Lynch does not have this information, as only the Plaintiffs know how they met each of their clients. Therefore, the most efficient and effective way of obtaining such data is through Plaintiffs' responses to Interrogatory No. 2.

## CONCLUSION

24. Because the information sought in Interrogatory No. 2 is clearly relevant to the issue of whether Plaintiffs can establish the prerequisites for class certification, such as typicality, commonality and predominance, and because Plaintiffs' objections to this interrogatory are meritless, Merrill Lynch respectfully requests that the Court compel Plaintiffs to respond to Interrogatory No. 2 of Defendant's Fourth Set of Interrogatories within 10 days of the Court issuing an order granting this motion.

Dated: May 3, 2007

By: _/s Lori E. Lightfoot_____
MAYER, BROWN, ROWE & MAW LLP
Lori E. Lightfoot
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600 (Phone)
(312) 701-7711 (Facsimile)

--and--

WEIL, GOTSHAL & MANGES LLP
Jeffrey S. Klein
Nicholas J. Pappas
Salvatore A. Romanello
767 Fifth Avenue
New York, NY 10153

9

(212) 310-8000 (Phone)
(212) 310-8007 (Facsimile)