IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE McREYNOLDS, et al., ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 05 C 6583 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| MERRILL LYNCH, PIERCE, FENNER ) | |
| & SMITH INCORPORATED, ) | |
| ) | Magistrate Judge Morton Denlow |
| Defendant. ) | |

## MOTION TO COMPEL

Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), by and through its undersigned attorneys and pursuant to Fed. R. Civ. P. 30(d) and 37(a)(2)(B), hereby respectfully moves the Court to make a finding that Exhibit No. 6 used in the May 30, 2007 deposition of Plaintiff Leroy Brown is not an attorney-client privileged communication; compel Mr. Brown to reappear in Chicago for a continued deposition so that Merrill Lynch can ask questions about Exhibit No. 6 and any related questions; require Plaintiffs to pay Merrill Lynch's costs and fees in bringing this Motion due to Plaintiffs' improper invocation of attorney-client privilege and unilateral cessation of the Brown deposition; and other relief as set forth herein. In support of its Motion, Merrill Lynch respectfully states:

1.  On May 30, 2007, Merrill Lynch began deposing Mr. Leroy Brown, who is a named plaintiff in this lawsuit. During the course of the deposition, Merrill Lynch's undersigned counsel, Lori E. Lightfoot, attempted to ask Mr. Brown about a document that had been produced by Merrill Lynch to the Plaintiffs on April 4, 2007—almost eight weeks before the deposition—and bates-labeled MLEE 031 007778 to 007780, "Confidential – Attorney's Eyes Only" ("Deposition Exhibit No. 6"). A copy of Deposition Exhibit No. 6 has been filed under

seal simultaneously with this Motion as Exhibit A. Merrill Lynch obtained Deposition Exhibit No. 6 from Mr. Brown's Merrill Lynch e-mail account, which Merrill Lynch produced in this litigation in response to Plaintiffs' document requests. By the agreement of the Parties, thousands of documents from the named Plaintiffs' e-mail accounts at Merrill Lynch have been produced to the Plaintiffs and, in fact, the Plaintiffs also have produced a handful of e-mails from their Merrill Lynch accounts.

      2.      To inquire about the purpose for which Deposition Exhibit No. 6 was created, counsel for Merrill Lynch posed the following foundational question: "And you knew, sir, that in creating this document it would eventually be part of a [] submission that was sent to court in order for your lawyer to be able to argue about a reduction in your obligations under the divorce decree, is that correct?" *See* Dep. Tr. at 226-27, attached hereto as Exhibit B, and Deposition Videotape, attached hereto as Exhibit C.[1]

      3.      Before Mr. Brown could answer the pending question, Plaintiffs' counsel instructed Mr. Brown not to answer the question because, she asserted, she wanted to confer with her client to determine whether the Deposition Exhibit was privileged, ostensibly on the ground that it may be a communication between Mr. Brown and his divorce attorney. *See* Exhibit B at 227. Plaintiffs' counsel also objected to use of Deposition Exhibit No. 6 on the erroneous ground that it had only been produced the day before the deposition. *Id.* at 228-29. (In fact, it had been produced eight weeks before.) Merrill Lynch's counsel objected to the witness leaving the room while a question was pending. *Id.* at 228-30. Nevertheless, Plaintiffs' counsel left the room with Mr. Brown while the question was pending over Merrill Lynch's objection. *Id.* at 230.

---

[1] For the Court's convenience, Merrill Lynch has provided an excerpted portion of the videotaped deposition, which relays the question leading up to Plaintiffs' objection and the disagreement that ensued.

4. When the deposition resumed, Plaintiffs' counsel stated on the record that she was instructing Mr. Brown not to answer the pending question, and launched into an objection that lasted nearly three minutes. *See* Ex. B, Tr. 231-33 (noting start time of Ms. Friedman's speech at 18:00:52 and end time of 18:03:43). Among other things, Plaintiffs' counsel wrongly accused Merrill Lynch of taking the Deposition Exhibit from Mr. Brown's "hard drive." *Id*. She also claimed that – although Merrill Lynch had been using documents produced from Mr. Brown's public divorce filings since the start of the deposition without objection from Plaintiffs—she had not had an opportunity to review the 134 pages of documents that Merrill Lynch had produced the day before the deposition and, therefore, could not make a determination as to whether or not Deposition Exhibit No. 6 was privileged. *Id*. Plaintiffs' counsel at no time addressed the issue of whether her invocation of the privilege and instruction to the witness not to answer foundational questions was, in fact, proper.

5. While wholly irrelevant to the question of whether Deposition Exhibit No. 6 is privileged or not, it bears noting that the documents produced the day before Mr. Brown's deposition consisted solely of publicly-filed documents copied from the court file in Mr. Brown's divorce proceedings (consistent with Merrill Lynch's practice of producing any documents it may use in a deposition—whether publicly available or already in Plaintiffs' possession, as the divorce filings were). Although Merrill Lynch's counsel called Plaintiff's counsel to bring her attention to the 134 pages, which were e-mailed to her to expedite delivery, Plaintiffs' counsel had not taken the time to review them before the start of the deposition (although Plaintiffs have produced documents after 9:00 p.m. on the night before a deposition and have expected Merrill Lynch's counsel to review them before the deposition). Further, Plaintiffs failed to object to the use of the divorce filings on any grounds when Merrill Lynch

3

relied on one of the orders from the divorce filings as its first exhibit in Mr. Brown's deposition during the first hour of the deposition. Id. at 31-32. Rather, Plaintiffs' counsel only objected to the production—eight hours after the deposition began—when pressed for a reason as to why she would not allow Mr. Brown to testify about a document that was plainly relevant to his employment at Merrill Lynch, and which contained a statement directly contradicting Mr. Brown's testimony regarding his ability to bring in new accounts. See Exhibit A.

6. Attempting to correct the record, Merrill Lynch's counsel stated that the documents produced on May 29 "consist entirely of public records that were filed in connection with Mr. Brown's divorce, which presumably since they were documents that involved him he was privy to and were publicly available at any time." Ex. B at 233-34. She further noted that the Deposition Exhibit had been produced weeks, if not months, before the deposition as part of Mr. Brown's e-mail production. See id. at 235. Before Merrill Lynch's counsel could complete her clarifying statement, Plaintiffs' counsel interrupted her. Id. At that point, Merrill Lynch's counsel asked Plaintiffs' counsel to refrain from interrupting, and from obstructing the deposition with additional speaking objections. Id. Plaintiffs' counsel then ended the deposition, and stated that as a condition precedent to the resumption of the deposition, she would require Merrill Lynch's counsel to apologize to her. Id. Plaintiffs' counsel then left the deposition room and instructed her client, Mr. Brown, to do the same. Neither Mr. Brown or Plaintiffs' counsel returned to the room and the deposition ended there. Id. at 237. We urge the Court to watch the short video excerpt of the end of the deposition on May 30 to fully appreciate exactly what transpired and the inappropriate nature of the conduct of Plaintiffs' counsel.

7. By agreement of the parties, Mr. Brown's deposition resumed on May 31, 2007 at approximately 9:30 a.m. Within five minutes of the start of the deposition, and before Merrill

4

Lynch was able to finish asking a single question, Plaintiffs' counsel interrupted and made the following objection with respect to Deposition Exhibit No. 6: "At this point in time we are not going to allow any questions on Brown Exhibit 6. I believe it's attorney-client privilege (sic), so I will advise you of that fact." May 31, 2007 Transcript, attached hereto as <u>Exhibit D</u>, at 4. Merrill Lynch's counsel then stated that she had intended to ask a foundational question with respect to Exhibit No. 7. *Id.* at 4 ("I am entitled to ask those [foundational questions] at a minimum, and there is nothing on the face of Brown Exhibit No. 7 that suggests in anyway that this document is privileged . . . ."). After a colloquy between counsel regarding the propriety of Plaintiffs' counsel making an objection while no question was pending, Plaintiffs' counsel reiterated: "I was giving you the professional courtesy of informing you that we would not be answering any questions on Exhibit 6, but you may pose the question and I will take a break and confer with the client." *Id.* at 6. Merrill Lynch's counsel then reiterated that she had intended to ask a question about Deposition Exhibit No. 7, not No. 6, and the deposition proceeded.

8. In answering questions about Exhibit No. 7, Mr. Brown later confirmed that Deposition Exhibit No. 6 was a document he drafted and e-mailed as an attachment to his personal e-mail account from his Merrill Lynch e-mail account—not to his attorney—in September of 2002. *Id.* at 14-15. (Given Plaintiffs' counsel's vociferous objections about Exhibit No. 6 and instructions to the witness not to answer any questions about Exhibit No. 6, no inquiry about the substance of Exhibit 6 was possible). Mr. Brown further testified that he could not recall what Merrill Lynch's e-mail policy was at the time he attached the Deposition Exhibit to an e-mail in his Merrill Lynch account. *Id.* at 10. In addition, he was not familiar with, but would not disagree that, Merrill Lynch had an e-mail policy in place as of at least 1998. *Id.* 11.

5

9. In fact, Merrill Lynch's "Guidelines for Electronic Communications," attached hereto as <u>Exhibit E</u>, provides:

> Electronic communications, including connections to Internet and Intranet Web sites conducted using Merrill Lynch computing or network resources, ***are the property of Merrill Lynch and are subject to monitoring***.
>
> Employees should be aware that e-mail has certain characteristics warranting caution, including:
>
> - Unencrypted electronic email sent via the Internet is not secure. ***Never include any information in any electronic communication you want to keep private or confidential*** . . . .
>
> The sender of an e-mail message ***should have no expectation of privacy***. Not only does Merrill Lynch itself regularly monitor employee e-mail—but regulators and litigants can also obtain electronic messages when conducting investigations and discovery proceedings in litigation.

Exhibit D, at 4, 5 (emphasis added). *See also* March 29, 1999 Corporate Memo regarding Guidelines for Electronic Communications, attached hereto as <u>Exhibit F</u> (reiterating that employees "**should have no expectation of privacy when sending e-mail. Not only does Merrill Lynch retain and regularly monitor employee e-mail, but regulators and litigants may obtain e-mail when conducting investigations and discovery proceedings in litigation.**" (emphasis in original)).

10. By interrupting the deposition with long speaking objections, erroneously instructing the witness not to answer foundational questions, and unilaterally adjourning the deposition, Plaintiffs' counsel violated Fed. R. Civ. P. 30, which provides that "[a]ny objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner." It further provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." Moreover, if a witness refuses to answer a question during a

deposition, it is the *proponent's* prerogative to adjourn the deposition to seek a court order, if necessary—not the *witness'*—pursuant to Fed. R. Civ. P. 37(a)(2)(B). The party taking the deposition has the option of adjourning the deposition and seeking immediate judicial relief, or completing the deposition and then seeking relief.

11. Here, Plaintiffs unilaterally adjourned the deposition without allowing Merrill Lynch the option of continuing the deposition to ask different questions. Although the deposition resumed the following day by agreement of Merrill Lynch, Plaintiffs' tactics delayed the start of Plaintiff Smartt's deposition, which was scheduled to begin on May 31 at 10:00 a.m., and prevented Merrill Lynch from obtaining the foundational facts necessary to determine whether Plaintiffs' privilege claim was made in good faith or whether it would have to seek judicial relief.

12. Black letter law requires a party seeking to invoke the attorney-client privilege to carry the burden of showing that the communication at issue was made "to the attorney in confidence" and that it was "not intended to be disclosed by the attorney." *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). Thus, the purpose for which a communication was made—and whether it was intended to be kept confidential—are threshold questions to the privilege analysis. Here, Merrill Lynch attempted to learn the purpose for which Mr. Brown drafted the communication, but Plaintiffs' counsel not only instructed him not to answer *that* question, but ended the deposition altogether. Further, when the deposition resumed and before Merrill Lynch could ask a single question, Plaintiffs' counsel reiterated that she would not allow Mr. Brown to answer any questions about Deposition Exhibit No. 6. Accordingly, Plaintiffs precluded Merrill Lynch from probing the foundation for the privilege claim and asking questions such as whether Mr. Brown made the communication for the purpose of obtaining

legal advice (indeed, there is no request for legal advice on the face of the document), or whether Mr. Brown even sent the document to his attorney (as noted above, he testified that he e-mailed it to himself). Further, Merrill Lynch was not allowed to inquire into whether Mr. Brown waived the alleged privilege by disclosing the communication to anyone other than his attorney.

   13. Even if there were a good faith basis for asserting a privilege to Deposition Exhibit No. 6—and there is not[2]—Plaintiffs overstepped their bounds by effectively assuming the role of the Court by determining that there was a privilege and that Merrill Lynch could not inquire into the document any further. *See* Federal Practice & Procedure § 26:298 ("it is generally improper for counsel to . . . unilaterally adjourn the deposition . . . because it is not the prerogative of counsel, but of the court, to rule on objections."). Plaintiffs precluded Merrill Lynch from asking any foundational questions to determine whether the privilege, in fact, attached to the document and, if so, if there had been a waiver. Even after the deposition resumed, Plaintiffs' counsel repeatedly stated that she would not allow Mr. Brown to answer any questions about Deposition No. 6—before a question was even posed.

   14. Merrill Lynch, regrettably, has come before the Court on a similar issue just two months ago. During the deposition of named Plaintiff Mark Johnson, Plaintiffs' counsel instructed Mr. Johnson to not answer the foundational question of whether he had talked to Plaintiffs' counsel during a break (before he radically changed his deposition testimony). The Court ordered Mr. Johnson to answer the question. See April 4, 2007 transcript of Court's ruling attached hereto as <u>Exhibit G</u> at 12-13. Plaintiffs' counsel has now established a pattern of improperly instructing witnesses not to answer valid questions. Accordingly, Merrill Lynch now

---

[2] There are a host of reasons why the Deposition Exhibit cannot be privileged. Among them, the e-mail to which the Deposition Exhibit was attached states plainly that the e-mail "could be intercepted by a third party"—notifying the sender and receiver that the communication is not confidential. Further, pursuant to Merrill Lynch policy, in-coming and out-going e-mails of financial advisors like Mr. Brown are monitored by Merrill Lynch personnel and employees are instructed that they have no expectation of privacy in Merrill Lynch e-mails.

8

seeks the Court's assistance because it attempted to continue the deposition before Plaintiffs unilaterally shut it down, and given Plaintiffs' counsel's continued invocation of the privilege and instruction to the witness not to testify about Exhibit No. 6 during the resumption of the deposition, further attempts to meet and confer with Plaintiffs' counsel on this issue would be futile. *See Murata Mfg. Co. v. Bel Fuse, Inc.*, Case No. 03 C 2934, 2007 WL 1317100 (N.D. Ill. May 2, 2007) ("An appropriate circumstance for excusing non-compliance with rules is when compliance would have been an exercise in otiosity.").

15. Accordingly, Merrill Lynch requests that the Court make a determination as to whether in fact Exhibit No. 6 is privileged given the overwhelming evidence to the contrary and to reopen the deposition in order to allow Merrill Lynch to ask questions about Exhibit No. 6 and any related questions. Merrill Lynch further requests that the Court admonish Plaintiffs' counsel, consistent with its inherent powers to manage its docket efficiently, to refrain from obstructionist tactics in future depositions—such as interposing long speaking objections and unilaterally adjourning depositions. The close of class certification discovery is less than two weeks away and any delay in taking the Plaintiffs' depositions cannot be tolerated if the parties are to complete discovery on time.

WHEREFORE, Merrill Lynch respectfully moves this Honorable Court enter an order which: (i) grants its Motion; (ii) makes a finding that Exhibit No 6. is in fact not privileged; (iii) compels Mr. Brown to reappear in Chicago for a continued deposition so that Merrill Lynch can ask questions about Exhibit No. 6 and any related questions. (iv) requires Plaintiffs to pay Merrill Lynch's costs and fees in bringing this Motion; and (v) admonishes Plaintiffs' counsel to refrain from improperly obstructing future depositions through long speaking objections, improper privilege claims, and unilaterally terminating depositions.

Respectfully Submitted,

 /s Lori E. Lightfoot
Mayer Brown Rowe & Maw
71 S. Wacker
Chicago, Illinois  60606
(312) 782-0600
Jeffrey S. Klein
Nicholas Pappas
Salvatore Romanello
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000
Counsel for Merrill Lynch

## **Certificate of Service**

    The undersigned, an attorney, hereby certifies that on May 31, 2007 she caused a copy of the foregoing **Motion To Compel** to be served by ECF to each attorney having an email address on file with the Court and by messenger delivery to:

    Linda Friedman
    Stowell & Friedman
    321 S. Plymouth Court, 14th Floor
    Chicago, IL 60604


                                               _____/s/ Lori E. Lightfoot_____
                                                        Lori E. Lightfoot