**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEORGE MCREYNOLDS, et al., ) <br> on behalf of themselves and all others ) <br> similarly situated, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MERRILL LYNCH, PIERCE, FENNER ) <br> & SMITH INCORPORATED, ) <br> ) <br>     Defendant. ) | No. 05-C-6583 <br><br> Judge Robert W. Gettleman <br><br> Magistrate Judge Morton Denlow |

**MOTION TO ENFORCE COMPLIANCE BY DEFENDANT WITH THE PROTECTIVE
ORDER IN RELATION TO THE CONFIDENTIALITY OF MERRILL LYNCH E-MAILS**

    1.    On June 27, 2006, the Court entered an Agreed Protective Order regarding the confidentiality of discovery material (the "Protective Order") [Dkt. # 42] (Exhibit A), which allows parties to designate certain limited types of documents in their discovery production as "confidential" and thus subject to certain restriction on distribution.

    2.    Through the discovery process, Merrill Lynch has produced approximately 2,885,242 pages of documents, including approximately 2,561,124 pages of Merrill Lynch electronic documents.[1]

    3.    Remarkably, Merrill Lynch, a publicly-held corporation subject to regulatory and public scrutiny, has blindly marked documents "confidential" with a complete disregard of the Protective Order. This results in subjecting hundreds of thousands of pages of obviously public or otherwise non-confidential documents – including newspaper articles, forms, speeches, e-mails distributed company wide or nationally, presentations to the Merrill Lynch's Board of Directors or subcommittees thereto, and documents Merrill Lynch has already made available

---

[1] These approximations are based on Merrill Lynch's production through June 1. 2007.

publicly – to the terms of the Protective Order.² Accordingly, Plaintiffs' counsel are wading through the myriad of inappropriately designated documents in preparation for a motion before the Court to lift the seal on the documents improperly removed from the public's view.

4. By its own admissions, however, Merrill Lynch has made this process easier. First, Merrill Lynch's policy regarding e-mails sent through the World Wide Web from Merrill Lynch computers and through Merrill Lynch's own e-mail server (Exhibit C, E-mail Policy at 4) states:

> ***The sender of an e-mail message should have no expectation of privacy.*** Not only does Merrill Lynch itself regularly monitor employee e-mail – but regulators and litigants can also obtain electronic messages when conducting investigations and discovery proceedings in litigation. Users of e-mail should ask themselves '***How would I feel if this message were printed on the front page of the daily newspaper?***' If the answer makes you uncomfortable, the message needs to be revised, or perhaps ***not sent at all***. (emphasis added)

5. Second, Merrill Lynch reiterated this policy in its May 31, 2007 Motion to Compel (at p. 9). There, Merrill Lynch argued that a named-plaintiff forfeited the attorney-client privilege in an e-mail that he composed at work, sent to himself at his home e-mail address and intended to forward to his attorney later that night from his home computer.³ Thus, according to Merrill Lynch, because that communication occurred on Merrill Lynch's e-mail system, no

---

² Plaintiffs' agreement to enter into the Protective Order was not without substantial reservations. Indeed, Plaintiffs' counsel advised Merrill Lynch that their willingness to allow for a stipulated agreement was based wholly on Merrill Lynch's "repeated assurances that [it], through counsel, will use the confidential designation sparingly and only for documents that are genuinely confidential and that are not generally disseminated to Merrill Lynch employees, or to ***third parties*** other than clients." (Exhibit B, 6/21/06 letter to Defendant's Counsel) (emphasis added).

³ Plaintiffs' counsel have openly and candidly conceded that this e-mail may have been filed in court. Plaintiffs' counsel continue to investigate the issue and are attempting to locate the court docket to assist in making a determination on privilege.

expectation of privacy can be maintained and the e-mail was not confidential or privileged.

6.  Third, in Court, Ms. Lightfoot explained that, "it's *very clear* in *big bold letters* that *anybody* who uses a Merrill lynch computer for *any purpose* should have *zero expectation of privacy*." (Exhibit D, June 4, 2007 Tr. at 7) (emphasis added). Because Merrill Lynch does not consider any e-mail sent though its system "confidential," it can not now insist that there are thousands and thousands of e-mails and documents attached thereto that are "confidential" simply because its "says so."

7.  Thus, Plaintiffs move the Court to require Merrill Lynch to apply its e-mail policy to its own massive e-mail production. Presumably, anything sent through the Merrill Lynch e-mail system must have gone through the "front page of the daily newspaper" filter. Indeed, Merrill Lynch cannot credibly claim that these hundreds of thousands of e-mails are properly classified as "trade secrets" or protectable "proprietary information" under the Protective Order where any Merrill Lynch employee using a Merrill Lynch computer should have a "*zero expectation of privacy*." (Exhibit D, June 4, 2007 Tr. at 7) (emphasis added).

8.  As Plaintiffs intend to argue in their forthcoming Motion to lift the seal on certain discovery, removing confidential designations from e-mails that have "no expectation of privacy" in the first place so that they may be filed in open court is consistent with well-settled law. *See Nixon v. Warner*, 435 U.S. 589, 597, 98 S.Ct 1306, 1312 (1978) ("[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and proceedings."); *see also Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944-45 (7th Cir. 1999) (although pretrial discovery is usually conducted in private, "the public at large pays for the courts and therefore has an interest in what goes on at

all stages of a judicial proceeding."). Merrill Lynch's own expectation of privacy is further diminished by its standing as a mammoth, publicly-held securities company subject to regulatory scrutiny, the scrutiny of its shareholders and the scrutiny of investors at large.

9. Accordingly, Plaintiffs request the Court to Order Merrill Lynch to: (1) remove the redactions to e-mails produced in this litigation;[4] (2) remove the "confidential" and "attorney eyes only" designations assigned to e-mails produced in this litigation; and (3) show good cause on an e-mail-by-e-mail basis within ten (10) days for any e-mail it believes should remain confidential or privileged.[5]

WHEREFORE, Plaintiffs respectfully request that the Court grant their Motion to Enforce Compliance By Defendant with the Protective Order in Relation to the Confidentiality of Merrill Lynch E-mails.

> Respectfully submitted,
>
> STOWELL & FRIEDMAN, LTD.
>
> By:
> /s/ Linda D. Friedman

Electronically filed on June 7, 2007

---

[4] Ms. Lightfoot insisted that purported attorney-client communications delivered through the World Wide Web from Merrill Lynch computers and through Merrill Lynch's e-mail server are not entitled to any expectation of privacy. (Exhibit D, June 4, 2007 Tr. at 7-8) ("it's very clear in big bold letters that anybody who uses a Merrill lynch computer for any purpose should have zero expectation of privacy … there's no privilege that attaches to a communication from a client to an attorney that is intended to be disclosed to a third party") and Merrill Lynch admits that its e-mails are subject to monitoring and disclosure to "regulators" and "litigants." (Exhibit C, E-mail Policy at 4). That being the case, Merrill Lynch can no longer assert any privilege to its e-mail production and, thus, any redactions must be removed.

[5] Courts have recognized that the burden of maintaining a "confidential" document should remain on the party claiming confidentiality, and that such a principle is consistent with the Federal Rules of Civil Procedure. *See e.g., Proctor & Gamble Co. v. Nabisco Brands, Inc.*, 111 F.R.D. 326, 328 (D. Del. 1986) ("The producing party has the burden to establish the confidentiality of each contested document."); *In re Infant Formula Antitrust Litig.*, No. MDL 878, 1992 WL 503465, at *7 (N.D. Fla. Jan. 13, 1992) ("The party objecting to the removal of the 'confidential' designation bears the burden of proving that the materials fall within the protection afforded by the Federal Rules of Civil Procedure.").

Mary Stowell – Attorney No. 02750015
Linda D. Friedman – Attorney No. 06190092
Stowell & Friedman, Ltd.
321 Plymouth Court, Suite 1400
Chicago, IL 60604
(312) 431-0888

**CERTIFICATE OF SERVICE**

      I, Linda D. Friedman, an attorney, hereby certify that on June 7, 2007, I caused a true and correct copy of the attached Notice of Motion and Plaintiff's Motion to Enforce Compliance By Defendant with the Protective Order in Relation to the Confidentiality of Merrill Lynch E-mails via ECF on the following counsel of record:

| | |
|---|---|
| Jeffrey S. Klein | Lori Lightfoot |
| Nicholas J. Pappas | Mayer Brown Rowe & Maw |
| Salvatore Romanello | 71 S. Wacker Drive |
| Weil, Gotshal & Manges LLP | Chicago, IL 60606 |
| 767 Fifth Avenue | phone: (312) 782-0600 |
| New York, NY 10153 | fax: (312) 701-7711 |
| phone: (212) 310-8000 | llightfoot@mayerbrownrowe.com |
| fax: (212) 310-8007 | |
| jeffrey.klein@weil.com | |

                                              /s/ Linda D. Friedman

Mary Stowell - Attorney No. 02750015
Linda D. Friedman – Attorney No. 06190092
Stowell & Friedman, Ltd.
321 Plymouth Court, Suite 1400
Chicago, IL 60604
(312) 431-0888