**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEORGE MCREYNOLDS, et al., ) <br> on behalf of themselves and all others ) <br> similarly situated ) <br> ) <br>           Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MERRILL LYNCH, FENNER, PIERCE & ) <br> SMITH ) <br>           Defendant. ) | Case No. 05C 6583 <br><br> Judge Robert W. Gettleman <br> Magistrate Judge Morton Denlow |

**PLAINTIFFS' MOTION TO EXTEND CLASS CERTIFICATION DISCOVERY**

    Plaintiffs, on behalf of all those similarly situated, respectfully request that this Court extend the class certification discovery deadline of June 13, 2007 by 90 days.

    Plaintiffs allege that Merrill Lynch is engaged in a nationwide pattern and practice of race discrimination against its current and former African-American Financial Advisors and applicants. As a result of Defendant's systemic discrimination, African-Americans earn substantially less and receive fewer income-generating opportunities than their colleagues who are not African-American, suffer a nearly 80% attrition rate, and are virtually excluded from the brokerage and management ranks at Merrill Lynch. To remedy these inequities and provide equal treatment to all applicants and employees of Merrill Lynch, Plaintiffs seek to represent a class of over 800 similarly situated African-Americans across the United States. Plaintiffs and their counsel have worked diligently, but to represent the class to the fullest of their abilities and gather the discovery and prepare the record necessary for class certification, Plaintiffs require additional time to complete class certification discovery.

    Plaintiffs seek this extension so that the parties can attempt to resolve a number of outstanding discovery disputes and so that Plaintiffs have the opportunity to attain, complete, and

follow up on certain discovery. Over two million pages of documents have been produced to date on a rolling basis, as well as substantial workforce data – estimated by Defendant to be nearly 70,000 boxes worth of data. *See* Ex. A for production transmittal letters; chart at Ex. B of Defendant's production since January 2007. Within just the last two months, Defendant has produced over one million pages of documents to Plaintiffs. Throughout, the parties have continued to take and defend depositions, respond to written discovery, work through numerous technical difficulties with the electronic discovery process, and attempt to resolve questions and issues regarding the production of Defendant's workforce and customer data.

Defendant has recently told Plaintiffs that it intends to produce unidentified documents from nearly 40 Merrill Lynch branch offices prior to the discovery cutoff of June 13, 2007.[1] Based on the few offices produced to date, Plaintiffs estimate, conservatively, that this production will consist of over 2 million pages, and nearly 1,000 boxes of documents. Moreover, Defendant has informed Plaintiffs it will produce only hard copies, and not searchable electronic documents, as has been the parties' practice up to this juncture, further slowing the review process.

In addition, Plaintiffs are still waiting for important discovery Merrill Lynch had agreed to produce, including data and documents maintained by Merrill Lynch regarding applicants for Financial Advisor positions and regarding studies commissioned by Merrill Lynch to determine the racial and ethnic identity of its existing and potential customers. Finally, the parties are in the midst of conferring regarding certain outstanding discovery requests and interrogatories to determine whether additional motion practice is necessary. *See, e.g.,* Ex. C, June 6, 2007 Letter re: outstanding discovery matters. The nature, timing and sheer volume of Defendant's most recent and upcoming production does not provide ample opportunity for the parties to resolve

---

[1] Defendant had deposed the majority of the named plaintiffs before producing branch office discovery of the offices where the plaintiffs worked, among others; this discovery is relevant to plaintiffs and should have been produced prior to their depositions, as Plaintiffs had requested.

2

their outstanding discovery issues or for Plaintiffs to adequately review the production and follow up with either the Defendant or the Court before the close of discovery. Plaintiffs have obligations to the putative class and cannot risk discovery closing under these circumstances.

**ARGUMENT**

By order of this Court, class certification discovery is set to close on June 13, 2007. *See* Docket No. 80, 1/18/07 Order. Plaintiffs served their First Requests for Production and Notices for Rule 30(b)(6) Depositions and riders requesting the documents necessary to take those depositions on January 24, 2006.[2] *See* Ex. D, Plaintiff's First Requests for Production and Ex. E, Plaintiff's Rule 30(b)(6) Notices of Deposition. As this Court is aware, before discovery began the parties had participated in a series of mediations to explore the feasibility of an out-of-court resolution, which ended, unsuccessfully, in May of 2006.

Although Plaintiffs sought to take most of the depositions they noticed beginning in the summer of 2006, Merrill Lynch did not begin production in earnest until July 2006 on a "rolling" basis in response to Plaintiffs' first set of discovery requests. Defendant has controlled the timing of the collection and production of its discovery and has not represented when its production of responsive documents and data will be completed.[3] To date, Merrill Lynch has rolled its production of nearly three million pages of documents, producing hundreds of thousands of documents per month for many consecutive months. *See, e.g.,* Ex. B. In the course of this production, there have been repeated difficulties and errors in electronic discovery, further slowing the process.[4]

---

[2] This discovery is similar to discovery routinely served in large class cases and to discovery to which Merrill Lynch had previously responded in a very similar gender discrimination class action, *Cremin et al. v. Merrill Lynch* (N.D. Ill., Castillo, J.).

[3] As a result, Plaintiffs conducted depositions prior to a complete production, not because this was the option they preferred, but because they had no real choice. Had Plaintiffs waited for Defendant to complete its production, they still would not have taken the first deposition in this case, despite the upcoming discovery deadline. *See, e.g.,* Ex. H, for examples of when the bulk of responsive documents from certain deponents were *sent* to Plaintiffs' counsel.

[4] Throughout discovery, Plaintiffs have struggled mightily with various discovery problems and have attempted to resolve discovery disputes without involvement of this Court. Plaintiffs' counsel spent hours conferring with

Despite these obstacles, the parties have diligently pursued class certification discovery, taking over twenty depositions and propounding and responding to multiple sets of written discovery.[5] Both parties' counsel continue to work diligently to resolve open discovery issues as efficiently as possible while protecting their clients' interests. The parties usually communicate daily and have reached several discovery agreements. Notwithstanding the parties' efforts, important discovery remains outstanding and important issues remain to be resolved prior to the completion of class certification discovery. By way of example, Plaintiffs list several of the broader discovery issues that remain.

Depositions

As mentioned above, the parties have conducted a substantial number of depositions, including three just last week. Plaintiffs have taken the depositions of seven members of Defendant's management team and seven Rule 30(b)(6) depositions on a variety of relevant topics, and Defendant has taken the depositions of twelve of the sixteen named plaintiffs. As set forth in the below deposition schedule, the depositions of all but one of the remaining plaintiffs are scheduled to take place within the next 9 days. The original named plaintiff in this case, George McReynolds, underwent complicated heart surgery during the discovery period and suffered challenging medical setbacks. Mr. McReynolds, now recovering, is obviously invested in this case and wants to remain a class representative. Taking Mr. McReynolds' deposition before June 13, however, is not feasible or in his best interest. Plaintiffs appreciate Defendant's

---

Defendant's counsel face-to-face and telephonically and have worked diligently reviewing the tens or hundreds of thousands of documents that arrive each week, in addition to working on other cases. Attorneys and staff have worked nights, weekends and holidays to attempt to keep up with the production, catch errors and prepare for depositions. Plaintiffs' counsel managed to proceed with depositions despite relevant production on the eve of these depositions, sometimes by asking Merrill Lynch to deliver documents to their homes and hotels. *See, e.g.,* chart at Ex. H. Many of the above documents were not fully usable when they reached Plaintiffs' counsel due to repeated vendor, computer or technical errors. Plaintiffs offered their own computer experts to assist Merrill Lynch in identifying technical problems and pleaded with Merrill Lynch to correct recurring production issues or hire a new vendor. *See, e.g.,* Ex. F, Plaintiffs' Motion for Protective Order.

[5] Defendant has propounded and Plaintiffs have responded to four sets of interrogatories and two sets of requests for production. Plaintiffs have served three sets of requests for production and one set of interrogatories. The parties have outstanding disputes regarding this discovery, which Plaintiffs hope can be resolved without burdening the Court but many of which are not ripe for decision.

4

agreement to conduct Mr. McReynolds' deposition in Nashville, Tennessee, where he resides, but Defendant has requested that the deposition take place before the close of discovery. *See* Ex. G. Extending the discovery period will provide Mr. McReynolds additional time to recuperate and prepare for his deposition.

In addition, the parties cannot schedule the Rule 30(b)(6) deposition Plaintiffs noticed regarding Merrill Lynch's workforce, client, applicant flow, and compensation-related data until this data has been produced in its entirety (see discussion below regarding open data issues) and Plaintiffs have had an opportunity to review and test the data.

| *McReynolds et al. v. Merrill Lynch: Deposition Schedule* | | |
|---|---|---|
| **Date** | **Deposition/Event** | **Location** |
| October 5, 2006 | John Hogarty, Rule 30(b)(6) Compensation Managing Director – GPC Americas | New York |
| November 1, 2006 | E. Stanley O'Neal, Merrill Lynch CEO | New York |
| November 29, 2006 December 1, 2006 | William P. Sieg, Rule 30(b)(6) Management | New York |
| December 20, 2006 | Tamara Cassidy: Rule 30(b)(6) Witness Vice President / Office of Diversity | New York |
| December 20, 2006 | William Schetler, Rule 30(b)(6) Reporting Vice Pres – HR Management Support & Analysis | New York |
| January 16, 2007 | William P. Sieg: Rule 30(b)(6) Account Distributions | New York |
| January 17, 2007 | Daniel Sontag Senior Vice President – Americas Sales Region | New York |
| February 22, 2007 | Robert McCann – President, Global Private Client | New York |
| February 23, 2007 | Kim Pillar – Chief Administrative Officer | New York |
| March 8, 2007 | H. McIntyre Gardiner, Head of Americas Region and Global Bank Group, GPC | New York |
| March 21, 2007 | Mark Johnson – Named Plaintiff | Chicago |
| March 22, 2007; March 23, 2007 | Maroc Howard - Named Plaintiff | Chicago |
| March 26, 2007 | Christina Coleman – Named Plaintiff | Chicago |
| March 27, 2007 | Cathy Bender-Jackson – Named Plaintiff | Chicago |
| April 4, 2007 | Henry Wilson – Named Plaintiff | Chicago |
| April 5, 2007 | Leslie Browne – Named Plaintiff | Chicago |
| April 12, 2007 | Subha Barry – First Vice President | New York |
| May 17, 2007 | Frankie Ross – Plaintiff | Chicago |
| May 24, 2007 | Glenn Capel – Plaintiff | Chicago |
| May 30, 2007; May 31, 2007 | Leroy Brown – Plaintiff | Chicago |

| *McReynolds et al. v. Merrill Lynch: Deposition Schedule* | | |
|---|---|---|
| **Date** | **Deposition/Event** | **Location** |
| May 31, 2007 | Stephen Smartt – Plaintiff | Chicago |
| June 1, 2007 | Phil Sieg, Rule 30(b)(6) - Partnerships | New York |
| June 4, 2007 | Motions Noticed before Magistrate Judge Denlow - Defendant's Two Motions to Compel | Chicago |
| June 5, 2007 | Carnell Moore – Named Plaintiff | Chicago |
| June 6, 2007 | Marva York – Named Plaintiff | Chicago |
| June 8, 2007 | Jyoti Chopra, Head of Merrill Lynch's Multicultural Marketing Department | New York |
| June 11, 2007 | Motion Hearing and Case Status with Magistrate Denlow | Chicago |
| June 11, 2007 | Stu Altschuler, Rule 30(b)(6)(tentative) | New York |
| June 12, 2007 | Jennifer Madrid – Named Plaintiff | New York |
| June 13, 2007 (last day of discovery) | Larue Gibson – Named Plaintiff<br>Yves LaBorde[6] – Named Plaintiff | New York<br>Chicago |
| *NOTICED BUT NOT YET SCHEDULED* | Rule 30(b)(6) re: Merrill Lynch Data<br>Phillip Sieg, Managing Director and head of Strategic Leadership and Development (acc. to 1/16/07 Dep.)<br>George McReynolds, Named Plaintiff | |

<u>Outstanding Data Production and Issues</u>

As is standard in class cases, Plaintiffs requested discovery of workforce and compensation-related data, noticed a deposition and served interrogatories regarding the type, content and operation of data maintained by Merrill Lynch.[7] Merrill Lynch has produced a substantial amount of data but is still attempting to respond to Plaintiffs' inquiries regarding additional data fields, sources and the operation of the data produced to date. Merrill Lynch has not yet produced other important data, including data regarding applicants to Merrill Lynch,

---

[6] The attorney assigned to defend Mr. LaBorde's deposition lost a family member on June 6, and will be in Canada June 8 to 11 to attend the memorial and funeral services. In addition, Defendant has produced information indicating that it plans to exceed the appropriate scope of class certification depositions. As a result, Plaintiffs have asked Defendant to reschedule Mr. LaBorde's deposition. If the parties do not reach an agreement, Plaintiffs will move for a protective order.

[7] At this juncture, Merrill Lynch has objected to Plaintiffs' interrogatories and deposition notice on this topic; this is another issue the Plaintiffs hope to resolve without court intervention.

6

deferred compensation of brokers, and supplementary data to year-end 2006. Merrill Lynch has indicated that it may be willing to produce a witness to testify about its data production, if Plaintiffs narrow the scope of their original Notice. Plaintiffs are willing to do so, but cannot determine the scope, prepare for, and conduct a meaningful deposition on this topic until all of the data have been produced and they have had a chance to analyze that data.

<u>Branch Office Discovery</u>

Plaintiffs' discovery sought responsive information from Merrill Lynch, including information maintained at its branch offices throughout the country. In response to Defendant's concerns about the cost of branch office discovery, Plaintiffs proposed a number of options, including the idea of deferring branch office discovery until class merits discovery. At minimum, Plaintiffs insisted that they be permitted to participate in the selection of offices and scope of any branch office production. Plaintiffs also proposed the parties agree upon a sampling technique that would satisfy Merrill Lynch's objection to producing local office discovery from 600 offices but allow for a fair selection process. None of these options were acceptable to Defendant.

Merrill Lynch recently told Plaintiffs that it had completed local office discovery for approximately 30 offices, in addition to the offices of the 16 Named Plaintiffs, but refused to explain its reason or methodology for the selection of these offices. Plaintiffs suspect that Defendant, in conjunction with the experts it has retained in this case, has simply selected the offices that result in the most favorable statistical results. Plaintiffs object to Merrill Lynch's unilateral "cherry-picking" of offices from which to produce documents and its late production, with no apparent concern for cost, burden or prejudice. Plaintiffs intend to file a motion this week with Magistrate Denlow seeking either a bar on all branch office discovery or an order for additional branch office discovery. In the meantime, Plaintiffs expect to receive an additional

two million pages or so of branch office discovery (in hard copy form) prior to the close of discovery next week.

### Outstanding Responsive Discovery, Including E-Mails

After Defendant sought Plaintiffs' assistance to relieve the discovery cost and volume that resulted from the electronic search term discovery methodology Defendant insisted upon using to respond to Plaintiffs' initial discovery requests, Plaintiffs proposed, and Defendant agreed to, a workable compromise: Plaintiffs agreed to dramatically reduce the number of custodians from whom Defendant would produce responsive documents, from over 200 to 40, and Merrill Lynch agreed to ensure the production of certain identifiable documents and types of documents requested by Plaintiffs the "old fashioned" way, *i.e.* by talking to those responsible for certain functions and locating where they store the information requested.

Months later, Defendant unilaterally decided to end the production of e-mails and electronic documents from the majority of the 40 custodians that the parties had agreed upon. These custodians include the former heads of Defendant's Human Resources department and diversity function, as well as senior executives intimately involved in many key aspects of Plaintiffs' claims. Defendant has rejected Plaintiffs' further attempts at compromise. Plaintiffs, therefore, now must file a motion to compel before Magistrate Denlow seeking this important discovery the parties had agreed upon.

In addition, fewer than 10 days from the close of discovery, Defendant has not completed production of many of the other agreed-upon categories of documents and data. For example, Merrill Lynch has commissioned studies regarding the racial and ethnic identities of its clients and has represented that it will produce to Plaintiffs the data and other information it maintains regarding the demographic backgrounds of its clients. *See, e.g.,* Ex. I. This data has not yet been produced, nor have the documents or data regarding applicants to Merrill Lynch and other key discovery.

8

Plaintiffs' First Set of Interrogatories and Third Set of Requests for Production

In response to Plaintiffs' Third Set of Requests for Production, Merrill Lynch asserted rote, boilerplate objections and a response that it would supplement or produce only the "data and documents as to which the parties may agree after the[y] meet and confer to satisfy Merrill Lynch's objections."[8] *See* Ex. J, Defendant's Responses and Objections to Plaintiffs' Third Set of Requests for Production. The parties are in the midst of conferring to determine what additional discovery Defendant will agree to produce. Defendant's responses to Plaintiffs' First Set of Interrogatories were similarly opaque, although Defendant has indicated its intent to supplement its responses to many of Plaintiffs' interrogatories. *See* Ex. K, Defendant's Responses and Objections to Plaintiffs' First Set of Interrogatories. However, Defendant has not identified when these responses will be supplemented or what additional information it will provide. Merrill Lynch has agreed to further confer with Plaintiffs regarding the above discovery. Plaintiffs are hopeful that the parties can resolve many of their disputes cooperatively, or dramatically narrow any issues ultimately raised with the Court, given additional time to do so.

Third Party Subpoena Discovery

In addition to party discovery, Plaintiffs served subpoenas on third parties who maintain information relevant to this case. Plaintiffs allege that Merrill Lynch engages in racial steering of its African American Financial Advisors to African-American clients. *See, e.g.,* Docket No. 71, 11/05/06, Sec. Am. Complt. at 18. As a result, Plaintiffs subpoenaed a third party apparently retained by Merrill Lynch to identify the race, ethnicity and religion -- as well as other demographics -- of its client base. This party represented that responsive information existed and would be produced but appears to have changed its mind after communicating with

---

[8] Plaintiffs are therefore unable to determine what documents, if any, Defendant will produce and what documents it intends to withhold, or on what grounds.

9

Merrill Lynch attorneys. *See, e.g.,* Ex. L, S. Bish Letters to *Info*USA; Ex. M, S. Romanello Letter. As a result, Plaintiffs will likely be forced to move to compel this information, and perhaps the deposition called for in the subpoena. However, the third party is located in New Jersey, so Plaintiffs must conduct the proceedings in District Court in New Jersey.

Other Extenuating Circumstances

In addition to the above, Plaintiffs and their counsel have encountered a series of personal events of late that have made the discovery process more challenging. Of the team of lawyers working on this case, two members have lost family members in the last month, one attorney has had surgery, another's father has undergone surgery, and another's wife is scheduled for surgery on Monday. Under ordinary circumstances, Plaintiffs' counsel would not raise these issues with the Court and would simply make adjustments. Indeed, Plaintiffs' counsel has retained additional consultants and staff, but in light of the existing schedule and the enormous volume of discovery produced over the last few months, these additional resources are insufficient to allow for the completion of discovery by June 13, 2007.

**CONCLUSION**

Plaintiffs respectfully move for an extension of the class certification discovery period so that they can carefully analyze and follow up on Defendant's massive production, complete the depositions they have noticed but not yet had the opportunity to conduct, and resolve open discovery issues. The named Plaintiffs, many of whom are current employees, are eager to complete discovery and move forward with this lawsuit, but believe that an extension of the class discovery period is warranted under the circumstances and necessary for full and fair representation of the class.

The extension sought by Plaintiffs is just and will not prejudice any party. The Court has not set an expert discovery or class certification briefing schedule, so there will be no disruption

to the overall case schedule. Plaintiffs believe this extension will reduce the burden on the Court as well, as they are hopeful that given additional time, the parties will be able to cooperatively resolve the majority of their discovery disputes.

WHEREFORE, Plaintiffs respectfully ask that the Court grant their Motion and extend the class certification discovery period for an additional 90 days.

Electronically filed on June 7, 2007

> Respectfully submitted on behalf of the Parties,
>
> /s/ Linda D. Friedman
> One of the attorneys for Plaintiffs

Mary Stowell
Linda D. Friedman – ABA # 06190092
Suzanne E. Bish
Stowell & Friedman, Ltd.
321 South Plymouth Court
Suite 1400
Chicago, Illinois 60604
(312) 431-0888

345353v6

## **CERTIFICATE OF SERVICE**

I, Suzanne E. Bish, an attorney, hereby certify that on June 7, 2007, I caused a true and correct copy of attached Motion for Extension of Class Certification Discovery to be served via ECF on the following counsel of record:

| | |
|---|---|
| Jeffrey S. Klein | Lori Lightfoot |
| Nicholas J. Pappas | Mayer Brown Rowe & Maw |
| Weil, Gotshal & Manges LLP | 71 S. Wacker Drive |
| 767 Fifth Avenue | Chicago, IL 60606 |
| New York, NY 10153 | phone: (312) 782-0600; fax: (312) 701-7711 |
| phone: (212) 310-8790; fax: (212) 310-8007 | llightfoot@mayerbrownrowe.com |
| jeffrey.klein@weil.com | |

/s/ Suzanne E. Bish