IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

| | |
|---|---|
| GEORGE MCREYNOLDS, et al, - Individually on behalf of themselves and all others similarly situated, | Case No. 05C6583 |
| | Hon. Robert W. Gettleman |
| | Magistrate Judge Denlow |
| Plaintiffs, | |
| - against - | |
| MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, | |
| Defendant. | |

---

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO REMOVE CONFIDENTIALITY
DESIGNATIONS AS TO EMAIL PRODUCTION**

Defendant Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch"), submits this opposition to Plaintiffs' Motion to Enforce Compliance By Defendant With The Protective Order In Relation To The Confidentiality of Merrill Lynch Emails.

**PRELIMINARY STATEMENT**

In their motion for a protective order, plaintiffs ask the Court to remove the confidentiality designations from hundreds of thousands of unspecified emails produced in this case and designated confidential pursuant to the Agreed Protective Order, dated June 27, 2006. Plaintiffs' motion actually takes the facially untenable position that because Merrill Lynch reserves the right to review the emails of its employees, Merrill Lynch must make every email publicly available, even if it contains sensitive information about its clients and employees, including information about an investment banking client's consideration of an acquisition that is not yet announced publicly, an individual's financial plans, an employee's illness or an

employee's compensation. At the core of this incongruous proposition is plaintiffs' effort to confuse two issues -- the fact that Merrill Lynch employees have no expectation of privacy *vis a vis* Merrill Lynch because Merrill Lynch reserves the right, and is required, to review emails sent on its email system and the fact that Merrill Lynch has a legitimate expectation that emails sent on its system are protected from disclosure to third parties.

The Court should deny this request because 1) Merrill Lynch's policies do not destroy the confidentiality of email communications and make them accessible to the public at large, 2) companies do not forfeit their ability to maintain the confidentiality of email communications merely because their shares are traded publicly; 3) documents produced in litigation do not automatically become subject to public disclosure, and 4) plaintiffs' conclusory and false allegations as to allegedly inappropriate confidentiality designations does not justify the costly and burdensome re-review and re-designation of hundreds of thousands of pages of emails.

## ARGUMENT

### A. Merrill Lynch's Email Policy Does not Destroy the Confidentiality of Email Communications by Merrill Lynch Employees

1. The principal ground for the massive de-designation of hundreds of thousands of emails designated as confidential by Merrill Lynch is the statement in a Merrill Lynch booklet entitled "Guidelines for Electronic Communications" ("Guidelines") that "[t]he sender of an e-mail message ***should have no expectation of privacy***." Plaintiffs' argument is totally without merit because there is an obvious difference between an employee's ability to maintain "privacy" of emails from his or her employer and a business's ability to maintain confidentiality of specified categories of communications from the public at large. The Court should reject outright plaintiffs' misguided effort to conflate employee privacy, and confidentiality of non-public communications.

2.      The Guidelines' statement that senders of emails "should have no expectation of privacy" plainly alerted employees only that Merrill Lynch reserved the right to access, review and monitor emails on Merrill Lynch's email system. No rational reading of this language or the Guidelines as a whole suggests that the public at large has the right to see all email communications of Merrill Lynch's employees.

3.      The Guidelines themselves recognize the difference between personal privacy and confidentiality from the public at large. Had plaintiffs read the Guidelines more carefully, they would have read at page 1 that "all communications, information or materials delivered through e-mail or the World Wide Web. . .must be transmitted, stored and accessed in a manner that **_safeguards confidentiality_** and complies with applicable law."(emphasis added). At page 5, the Guidelines provide as examples of "what not to do" as "[t]ransmitting or posting material, **_non-public corporate information_** about Merrill Lynch or any company to any organization or individual not authorized to receive or possess it."

4.      Plaintiffs make similarly absurd arguments regarding the statement in the Guidelines which provides that "[u]sers of e-mail should ask themselves 'How would I feel if this message were printed on the front page of the daily newspaper?' If the answer makes you uncomfortable, the message needs to be revised, or perhaps not sent at all." On its face, in this statement Merrill Lynch merely suggests that its employees consider crafting the contents of their email communications to avoid making embarrassing or ill-thought-out statements that are inappropriate for written corporate communications. It puts employees on notice that communications that they believe are just between them and the recipient may find their way in the future into other hands through discovery requests in civil litigation or regulatory

enforcement inquiries. This statement does not support the broad waiver of confidentiality of email communications and make them accessible to the public at large as plaintiffs contend.

5. Plaintiffs' interpretation of the Guidelines would lead to absurd, unlawful results. For example, Merrill Lynch employees often possess confidential information of clients and must communicate such information over Merrill Lynch's email system. It would violate numerous state and federal laws for customers' financial plans, their investment objectives or innumerable other kinds of customer information to be made public simply because such information is communicated by email. See, e.g., Gramm Leach Bliley Financial Modernization Act, 15 U.S.C. § 6801(a) (declaring it to be "the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information."); Privacy of Consumer Financial Information (Regulation S-P), 17 C.F.R. § 248.1 et. seq. (2000); see generally, Right to Financial Privacy Act, 12 U.S.C. § 3401 et. seq.; HIPAA Standards for Privacy of Individually Identifiable Health Information (the Privacy Rule), 45 C.F.R. § 160 et. seq. (privacy regulations promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996). These same laws support industry rules requiring surveillance of the emails of certain employees of certain financial services firms. New York Stock Exchange Rule 342.17.[1]

---

[1] NYSE Rule 342.17 provides as follows: "**Review of communications with the public.**—Members and member organizations must develop written policies and procedures that are appropriate for their business, their size, structure and customers in connection with the review of communications with the public relating to their business. Where such policies and procedures for the review of public communications do not require pre-use review, they must include provision for the education and training of employees as to organizational policies and procedures, documentation of such education and training, and provide for surveillance and follow-up to ensure that such policies and procedures are implemented and adhered to." (emphasis added).

6. Neither do the Guidelines vitiate the confidentiality of emails that contain client information. Merrill Lynch distributes to its employees various confidentiality policies to ensure the privacy of client information. Attached hereto as Exhibit A is Merrill Lynch's Privacy Policy (an excerpt from the Private Client Financial Advisor Compliance Manual outlining requirements for all employees, consultants and vendors to maintain the confidentiality of client information). Attached hereto as Exhibit B is the Merrill Lynch Global Privacy Pledge (explaining Merrill Lynch's privacy commitment to current and former clients). These policies dictate, in accordance with client expectations, that Merrill Lynch employees must maintain client information as confidential.

7. Merrill Lynch employees deserve the same expectations of confidentiality *vis a vis* the public where email communications contain information as to compensation, benefits, performance evaluation and other private information. See, Detroit Edison Co. v. NLRB, 440 U.S. 301 (1978) (employees' aptitude test scores are confidential and not subject to disclosure); Tomscha v. Gen. Servs. Admin., 158 F. App'x. 329 (2d Cir. 2005) (denying FOIA request for access to employee job performance records because employees have substantial interest in maintaining privacy of performance evaluations); Fed. Labor Relations Auth. v. U.S. Dept. of Commerce, 962 F.2d 1055 (D.C. Cir. 1992) (maintaining privacy of employee performance evaluations); San Diego Trolley, Inc. v. The Superior Court of San Diego County, 105 Cal. Rptr. 2d 476 (Cal. Ct. App. 2001) (vacating discovery order on grounds that employee records are private information); Tiberino v. Spokane County, 13 P.3d 1104 (Wash. Ct. App. 2000) (former employee's emails exempt from public disclosure as they did not contain information of "public significance"); Missoulian v. Bd. of Regents of Higher Educ., 675 P.2d 962 (Mont. 1984) (employment records containing an employee's health problems, medical history, military

records, performance evaluations and test scores should be kept confidential); Trenton Times Corp. v. Bd. of Educ., 351 A.2d 30 (N.J. Super. Ct. App. Div. 1976) (personnel records and evaluations of school superintendent were private matters not subject to the public's right to know). Plaintiffs' are simply wrong to suggest that elimination of personal privacy of employees' email *vis a vis* Merrill Lynch means that email is thereby made subject to public disclosure.

8. In similar fashion, Merrill Lynch has pledged to its employees that it will protect the confidentiality of specific kinds of personal employee information *vis a vis* persons and entities outside Merrill Lynch. Attached hereto as Exhibit C is Merrill Lynch's Privacy Pledge to Employees and Contingent Workers. Again, Merrill Lynch expressly extends this confidentiality protection, while at the same time specifically retaining the right to engage in monitoring and surveillance of employee communications including email. Exhibit C at 2.

9. Plaintiffs further argue for the public disclosure of email communications from Merrill Lynch employees to in-house or outside counsel. The Court should reject this argument, because plaintiffs again confuse the fact that employees have no expectation of privacy in email communications *vis a vis* Merrill Lynch with Merrill Lynch's expectation of confidentiality in its communication with counsel. And the privilege belongs to Merrill Lynch, not the employee. As demonstrated above, plaintiffs' argument is legally and factually insupportable. It is black letter law that corporations are entitled to the benefits of the attorney-client privilege, and by extension the confidentiality of communications between a corporation and its counsel. See Upjohn Co. v. United States, 449 U.S. 383 (1981). The use of unencrypted email to transmit attorney-client communications does not waive the privilege or the confidentiality accorded to attorney-client communications since time immemorial. See, e.g., ABA Bar Association Standing Committee

on Ethics and Professional Responsibility, Formal Opinion 99-413 (March 10, 1999); NYS Bar Association Committee on Professional Ethics, Opinion 709 – 9/16/98.

10.  Plaintiffs wrongly point to arguments made by defense counsel in support of Merrill Lynch's May 31, 2007 motion to compel the reopening of Plaintiff Leroy Brown's deposition. That motion had nothing whatsoever to do with confidentiality as to email communications as to the public at large, but whether plaintiffs' counsel improperly instructed Mr. Brown not to answer a question at his deposition related to an email Mr. Brown sent from his Merrill Lynch email account to his home email account. See Def.'s Mot. to Compel ¶¶ 10-11. Merrill Lynch argued that Mr. Brown had no expectation of privacy, and thereby could not assert his personal attorney-client privilege with respect to communications to his personal attorney because he used Merrill Lynch's email system. See id. at ¶¶ 12-13. The absence of privacy, and the loss of Mr. Brown's personal attorney-client privilege in this email does not mean that the public at large can view Mr. Brown's email or the hundreds of thousands of emails produced in discovery.[2]

### B. Public Companies Do Not Forfeit the Confidentiality of their Employees' Communications When Undertaken by Email

11.  Plaintiffs wrongly argue that because Merrill Lynch is a public company, no confidentiality can attach to emails sent on Merrill Lynch's email system. Under Plaintiffs' theory, no matter how commercially or otherwise sensitive a document is, and no matter how irrelevant that document might be to the case, an adverse party would be entitled to publish that

---

[2] Plaintiffs' motion is curious in what it will produce. It is unlikely that Mr. Brown wants all of his email traffic accessible to the public at large, and given the personally embarrassing materials in the emails of a number of other plaintiffs, it is unlikely that they seek this result.

document to the world by virtue of the fact that it filed an unsworn complaint against Merrill Lynch. Plaintiffs have cited no legal authority for this bizarre proposition, nor could they.

### C. Documents Produced In Litigation Do Not Automatically Become Subject to Public Disclosure

12. Plaintiffs further argue that documents produced in federal court litigation is presumptively subject to public scrutiny. This is simply not the law. Documents that are produced during pre-trial discovery – as is the case here – are often "unrelated, or only tangentially related, to the underlying cause of action." Hobley v. Burge, 225 F.R.D. 221, 224 (N.D. Ill. 2004). Therefore, any confidentiality restraints placed on these documents "are not a restriction on a traditionally public source of information." Id. at 224; Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984) (finding that discovery material is not a traditionally public source of information); Baxter Int'l, Inc. v. Abbott Laboratories, 297 F.3d 544, 545 (7th Cir. 2002) ("[s]ecrecy is fine at the discovery stage, before material enters the judicial record."); Union Oil Co. of California v. Leavell, 220 F.3d 562, 568 (7th Cir. 2000) ("[p]ortions of discovery may be conducted in private to expedite disclosure . . .. Much of what passes between the parties remains out of public sight because discovery materials are not filed with the court. But most portions of discovery that are filed and form the basis of judicial action must eventually be released . . ."); see also Sassak v. Gorman, 2006 U.S. Dist. LEXIS 79889 (N.D. Ill. Oct. 31, 2006).

### D. The Relief Plaintiffs Seek Would Be Draconian, Unduly Burdensome and Unjust in Light of the Massive Discovery Burden Imposed by Plaintiffs Document Requests in this Case

13. Plaintiffs' requested relief – requiring Merrill Lynch to show cause within 10 days with respect to any email that it believes should be protected under the Agreed Protective Order – is an attempted abuse of the discovery process. Due to plaintiffs' onerous discovery requests,

Merrill Lynch has produced hundreds of thousands of pages of emails, most of which are completely irrelevant to this action, and certainly to the issue of class certification. Now, after having spent millions of dollars in complying with these overbroad requests, plaintiffs ask for Merrill Lynch to re-review its entire production, including the hundreds of thousands of pages of emails from plaintiffs' files, in ten days. Such relief is inappropriate, and as with the rest of plaintiffs' motion, should be denied.

## CONCLUSION

14. Plaintiffs' motion takes the absurd position that any email at any company whose shares are publicly traded is not confidential and that because Merrill Lynch reserves the right to monitor the emails of its employees those emails are not confidential *vis a vis* third parties. Such an absurd result would wreck havoc with thousands of public companies and investment banking firms around the world. For these reasons, and as more fully set forth above, Merrill Lynch requests that plaintiffs' motion be denied.

Dated: June 15, 2007

By: /s/ Lori E. Lightfoot_____
MAYER, BROWN, ROWE & MAW LLP
Lori E. Lightfoot
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600 (Phone)
(312) 701-7711 (Facsimile)

--and--

WEIL, GOTSHAL & MANGES LLP
Jeffrey S. Klein
Nicholas J. Pappas
Salvatore A. Romanello
767 Fifth Avenue
New York, NY 10153
(212) 310-8000 (Phone)
(212) 310-8007 (Facsimile)

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that a true and correct copy of Defendant's Memorandum In Opposition To Plaintiff's Motion To Remove Confidentiality Designations As To Email Production was served upon counsel for Plaintiffs addressed as follows:

>Linda Friedman
>Mary Stowell
>George Robot
>Stowell & Friedman, Ltd.
>321 S. Plymouth Court, Suite 1400
>Chicago, Illinois 60604

via facsimile and U.S. mail on June 15, 2007.


By: _____/s/ Lori E. Lightfoot_____