IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---------------------------------------------------------x
GEORGE MCREYNOLDS, et al, Individually :
and on behalf of all others similarly situated. : Case No. 05C6583
:
:
: Hon. Robert W. Gettleman
: Magistrate Judge Denlow
Plaintiffs, :
:
- against - :
:
MERRILL LYNCH, PIERCE, FENNER :
& SMITH, INCORPORATED, :
:
Defendant. :
---------------------------------------------------------x

**MERRILL LYNCH'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXTEND CLASS CERTIFICATION DISCOVERY**

**PRELIMINARY STATEMENT**

It is critical to place the remaining discovery issues in context. Pursuant to Judge Gettleman's Order dated May 16, 2006 approving the parties' Joint Status Report, discovery is limited to the facts necessary for the parties to brief class certification; merits discovery is postponed to a later date. The extension of discovery from March 15, 2007 to June 13, 2007, pursuant to Judge Gettleman's January 18, 2007 Order, was designed to finish class certification discovery. In the one year that this discovery has been on-going, Merrill Lynch has produced over 3.5 million pages of documents from 247 custodians in 41 different business groups, in addition to 1.045 terabytes of data (enough to fill 73,000 boxes). It has provided seven 30(b)(6) witnesses on a wide range of topics and has produced seven 30(b)(1) witnesses, including Merrill

Lynch's Chairman and CEO, and every senior executive responsible for the retail brokerage business at issue in this litigation.

Despite this unprecedented discovery, Plaintiffs not only continue to press for millions of more pages of documents from countless additional custodians, but will not even say at this late date that this is all they want, reserving the right to return to the well for unspecified additional requests.[1]

In sum, enough is enough. The burden should be on Plaintiffs to demonstrate that they really need more in order to move for class certification. And, they should justify why they waited until less than a week before discovery was scheduled to close to raise many of the issues they now put before this Court.[2]

---

[1] In filing a motion for extension of class certification discovery, Plaintiffs sought an additional 90 days. Merrill Lynch could not possibly comply with the Plaintiffs' unlimited requests in 90 days. Those requests are simply not reasonable, particularly in light of the fact that Judge Gettleman has set July 31, 2007 as the date by which the parties must present a briefing schedule for class certification. Neither side will be able to comply with Judge Gettleman's order if Plaintiffs' additional discovery requests are not substantially curtailed. In considering both the proper scope of any additional discovery and a certain and final close to class certification discovery in this matter, therefore, Merrill Lynch respectfully urges this Court to ask as to each additional request, "How is this relevant to class certification in light of the massive discovery production to date and the July 31, 2007 date with Judge Gettleman?"

[2] As detailed below, Plaintiffs made tactical decisions to remain silent on numerous issues until the very eve of the close of discovery, and Merrill Lynch reasonably relied on Plaintiffs' failure to challenge Merrill Lynch's positions. Courts in this Circuit have routinely refused to allow parties to benefit from this kind of brinksmanship in the face of a discovery deadline. *See Kanye West v. Eric "E-Smoove" Miller*, No. 05-C-4977, 2006 U.S. Dist. LEXIS 56243, at *13-17 (N.D. Ill. Aug. 11, 2006) (denying defendant's motion to compel production of documents because the motion was filed 11 days before the close of discovery and the moving party knew months prior to filing the motion that the nonmoving party refused to produce the requested documents). *See also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 341-343 (N.D. Ill. 2005) (denying in part class action plaintiffs' motions to compel because the motions were untimely filed on the day discovery closed, and the class could not claim any prejudice where they were on notice that the corporation objected to the discovery requests, they had the option to file a motion to compel months before the close of discovery, the materials sought by the class were irrelevant to the question of the timeliness of the motion to compel, and the class never filed a motion to enforce its document request).

## **ARGUMENT**

**I. PLAINTIFFS ARE ONLY ENTITLED TO LIMITED DISCOVERY WHICH CAN BE COMPLETED WITHIN 45 DAYS**

    A.    <u>Additional Branch Office Discovery Is Not Needed</u>

- From the beginning of discovery proceedings in June 2006, Merrill Lynch informed Plaintiffs that it was willing to collect and produce documents from a reasonable number of branch offices, but Plaintiffs resisted Merrill Lynch's many attempts to engage them on resolving the scope of branch office discovery. *See, e.g.,* Exhibit A (Compilation of Emails); Exhibit B (9/29/06 letter from Dray to Bish ("September 29 Letter")). During the Summer and Fall of 2006, to the extent that Plaintiffs addressed this issue at all, they stated that they had little to no interest in branch office discovery

- Nonetheless, Merrill Lynch persisted in its efforts to engage Plaintiffs in a discussion about branch office discovery. In January 2007, Merrill Lynch made sample collections from three branch offices available to Plaintiffs, including hard copy documents responsive to Plaintiffs' then outstanding discovery requests.

- After reviewing the documents, Plaintiffs informed Merrill Lynch that they believed no branch office discovery was needed, but that to the extent Merrill Lynch collected documents from branch offices, Plaintiffs wanted Merrill Lynch to collect and produce all documents from all 611 branch offices or none at all. Merrill Lynch rejected Plaintiffs' "all or nothing" demand in January 2007, and informed Plaintiffs that Merrill Lynch would simply collect from a limited set of offices and produce documents that were responsive to Plaintiffs' First Set of Class Requests for Production ("First Requests") from these branches (as it had previously agreed to do). This is exactly what Merrill Lynch has done – at tremendous expense it has collected documents from more than 40 branch offices that are responsive to Plaintiffs' First Requests.[3]

---

[3] To the extent that Plaintiffs seek information about the basis for its selection of branch offices from which Merrill Lynch produced documents, Merrill Lynch informed Plaintiffs more than one month ago that this information is work product. *See* Exhibit C (5/3/07 letter from Dray to Friedman). Merrill Lynch will certainly disclose this information during expert discovery if necessary. However, it is premature to require disclosure during the class certification phase of discovery.

B.   **Limited Email Discovery Can Be Accomplished in 45 Days**

- Plaintiffs incorrectly state that the parties had an agreement that Merrill Lynch would produce emails from 40 custodians. To be sure, Merrill Lynch sought such an agreement months ago. However, Merrill Lynch specifically predicated any such production on the premise that "we would attempt to cull down the search term list in order to get a more focused list of documents to review." *See* Exhibit D (1/30/07 12:33 p.m. email from Romanello to Friedman). No such global resolution was reached. At its sole expense, Merrill Lynch has already produced hundreds of thousands of emails for 8 senior management custodians and the 17 named Plaintiffs.

- On March 6, 2007, Merrill Lynch reiterated its offer to produce emails from most of the 40 custodians on the condition that the parties could agree upon a subset of search terms and relevant time periods for the requested employees. *See* Exhibit E (3/6/07 letter from Dray to Friedman ("March 6 Letter")).

- After receiving no response on this issue, on April 9, 2007, Merrill Lynch informed Plaintiffs that it would no longer be possible to produce these emails within the discovery period. *See* Exhibit F (4/9/07 letter from Dray to Friedman). The Parties have been discussing a different proposal on e-mails since April 2007.

- The parties have discussed a compromise whereby Merrill Lynch would search the emails for 5 additional custodians. The remaining issues with respect to these 5 custodians concern the scope of the search terms that will be used for each of them, and the time periods for which emails will be searched. Merrill Lynch will incur over $150,000 in costs simply to retrieve emails for the 5 custodians. In addition, Merrill Lynch will incur hundreds of thousands of dollars in costs to review the emails for responsiveness. It is therefore imperative that the search terms and scope of review be modified. The Court should order Plaintiffs to cooperate with Merrill Lynch to reduce the search term list on a custodian-by-custodian basis and resolve this issue within one week, to ensure production by July 31, 2007.

C.   **Production of Documents Responsive To Plaintiffs' First And Second Requests Will Be Completed Within 45 Days**

- The First Requests and Second Set of Class Requests ("Second Requests") have been the subject of numerous discussions between the parties. These discussions were completed in February 2007 and memorialized by Merrill Lynch in February and March. *See* Exhibit G (2/8/07 letter from Dray to Friedman ("February 8 Letter"); Exhibit E (March 6 Letter).

4

- In February and March, Merrill Lynch agreed to produce documents responsive to many of the requests identified in Plaintiffs' Brief. *See id.* Additional document categories have not been specifically identified in Plaintiffs' brief, so this discovery should be deemed complete. *See supra* note 1.

**D.      Plaintiffs Are Only Entitled To Limited Discovery Sought In The Third Requests**

- Plaintiffs propounded these discovery requests on March 15, 2007. Many of these requests sought by Plaintiffs in their Third Set of Class Requests for Production ("Third Requests") were initially propounded in whole or part in Plaintiffs' earlier document requests for which Merrill Lynch asserted its objections and positions as many as 10 months ago. *See, supra* note 1.

- Many of these requests are far afield from issues relevant to class certification.

- Moreover, the requests are incredibly broad, and indeed, in many instances would be virtually impossible to satisfy.

Merrill Lynch's specific responses to Plaintiffs' list of documents in dispute for the Third Requests are set forth below.

      1.      Personnel Files

- Plaintiffs seek thousands of personnel files from every member of the management team for each of the 611 branch offices for the entire six-year discovery period (Request No. 1), from senior employees in Human Resources and Diversity (Request No. 9), and managers against whom Merrill Lynch took action in response to any complaint of racial discrimination (Request No. 17).

- Plaintiffs have yet to explain how these additional personnel files are relevant to class certification. Also, these files are incredibly burdensome to collect. They number in the thousands, and are maintained throughout the United State in offices and storage facilities.

- Moreover, personnel files contain highly sensitive confidential information that courts protect from disclosure, with the exception of documents that are directly relevant to claims at issue in the litigation.[4] *See* Exhibit G at 3 (February 8 Letter).

---

[4] Courts in the Seventh Circuit have routinely limited the production of documents contained in employees' personnel files. *See, e.g., Ezell v. Potter*, 2006 U.S. Dist. Lexis 36929, at *7-8 (N.D. Ind. March 16, 2006) ("[P]rior complaints of alleged discrimination by [the plaintiff's supervisors] are relevant to this case. However, the plaintiff has failed to set forth what specific

5

2. <u>EEO Complaints And Documents Concerning Certain Senior Managers</u>

- Plaintiffs seek documents about changes in the positions or responsibilities of senior executives Kim Pillar (Request No. 7) and Subha Barry (Request No. 8), as well as documents about complaints of "differential treatment, discrimination or retaliation, wrongful discharge, or adverse action" by senior managers (including Pillar and Barry) who are or were employed in the Human Resources department or Office of Diversity (Request No. 10).

- Documents that Plaintiffs are seeking about Ms. Pillar and Ms. Barry are not relevant to class certification and constitute an improper fishing expedition. Moreover, Plaintiffs' counsel questioned Ms. Pillar and Ms. Barry extensively at their depositions on the reasons for their transitions to other positions.

3. <u>Compensation Documents and Data for Managers</u>

- Plaintiffs seek data and documents concerning the amount of compensation received by managers who have been reviewed under specific diversity goals ("Diversity CFOs") (Request No. 12) and documents or data containing information about all "subcategories of bonus compensation" for managers (Request No. 13).

- The total compensation of managers is wholly irrelevant to class certification issues. *See* Exhibit H (8/16/06 letter from Dray to Friedman, memorializing parties' discussion in which Plaintiffs agree to limit the production of documents concerning branch office managers to "head count, job history, office number, and offices to which managers were previously assigned."); Exhibit I at 2 (8/25/06 letter from Lightfoot to Friedman).

- Merrill Lynch is willing to produce documents sufficient to show the dollar amount of any increase or decrease in a manager's compensation as a result of their performance in meeting Diversity CFOs because of the relevance of that

---

information contained in the personnel files, beyond [discrimination] complaints, could possibly be relevant to his discrimination complaints."). *See also, Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994) (affirming the district court's decision to limit discovery of personnel files); *India Brewing, Inc. v. Miller Brewing Co.,* 27 F.R.D. 190, 193 (E.D. Wis. 2006) (denying the plaintiff's request for entire personnel files, as "[plaintiff] could have sought . . . information in the personnel files related to the contracts at issue in that case[.] But it . . . seeks documents that may be wholly unrelated to the claims or issues in this case."); *Stephens v. City of Chicago*, 203 F.R.D. 353, 359-60 (N.D. Ill. 2001) (emphasis in original) ("what would the *entire* personnel files of these employees, which would include such sundry and irrelevant matters as maternal, sick, or vacation leave papers, have to do with whether or not these individuals were more or less qualified for the positions than the plaintiff?").

6

aspect of a managers' compensation to this litigation. Plaintiffs are not entitled to any data or documents beyond that scope of production.

4. Diversity Advisory Council to Management ("ACTM") Documents

- Plaintiffs have broadly requested all letters and emails written by any person who is African-American and served on the Diversity ACTM, regarding a host of issues from complaints of race discrimination to diversity initiatives (Request No. 16).

- Merrill Lynch has produced thousands of pages of documents sought in prior requests concerning the subjects about which Plaintiffs are now seeking correspondence and emails from African-American members of the Diversity ACTM, such as documents that concern diversity at Merrill Lynch, diversity initiatives, and complaints of race discrimination against African-Americans. *See* Exhibit J (Request Nos. 20, 21, 22, 34, 49, and 50 of First Requests). Merrill Lynch also has produced minutes and presentations to the Financial Advisor ACTM and the Diversity ACTM and emails from senior management deposed in this litigation, including Kim Pillar, who participated directly and extensively in the Diversity ACTM and correspond with its members.

- Merrill Lynch has objected to any further production related to the Diversity ACTM. To the extent members of the Diversity ACTM did not send emails or letters to management, they are not relevant to class certification issues.

5. Additional Documents Concerning Complaints

- Plaintiffs again seek documents concerning complaints of race discrimination – documentation of reprimands, counseling, termination, dock in pay, or other action for any person who was the subject of a complaint of race discrimination (Request No. 18).

- Merrill Lynch has already produced many documents related to complaints of race discrimination against African-Americans, including investigative documents, correspondence, pleadings, position statements, awards, orders, and judgments. Merrill Lynch objected to production outside of these parameters on September 29, 2006, and Merrill Lynch informed Plaintiffs of the specific documents that it would produce concerning complaints. *See* Exhibit B at 9-10 (September 29 Letter).

6. Industry Association Documents About Diversity

- Plaintiffs seek documents and data provided to the Securities Industry Association ("SIA") and an organization known as Catalyst (Request Nos. 34, 36), as well as documents provided to any other organizations, seeking recognition or awards for its diversity efforts (Request No. 35).

7

- Requests Nos. 34 and 36 are duplicative of Request Nos. 10 and 11 of the Second Requests. *See* Exhibit K (Merrill Lynch's Objections and Responses to Plaintiffs' Second Requests). As it did in January 23, 2007, Merrill Lynch proposes producing correspondence and data from the custodians at Merrill Lynch who are primary liaisons to these organizations. *See* Exhibit G at 4 (February 8, 2007 Letter). Its position remains unchanged.

 7. Documents Concerning the Financial Advisory Center

- Plaintiffs have propounded broad requests for wide-ranging information concerning the Financial Advisory Center ("FAC"), from compensation and employment history for each employee to all demographic studies, analyses and reports about the FAC (Request Nos. 20-25).

- These documents are not relevant to the issues in this case and certainly not to class certification, as Plaintiffs have not asserted any claims concerning the FAC, and FAC employees are not members of the putative class.

 8. Documents Concerning Defenses to Class Certification

- Merrill Lynch already has agreed to produce exhibits it intends to use in opposing class certification subject to its general objections, other than rebuttal exhibits or summaries of documents or data that were already produced in discovery. *See* Exhibit L at Request No. 5 (Objections and Responses to Plaintiffs' Third Requests). Merrill Lynch reserves the right to produce documents, if necessary, in response to issues that Plaintiffs raise in their class certification briefing.

E. **Merrill Lynch Has Responded to Plaintiffs' First Set of Interrogatories And Can Supplement Its Responses Within A 45-Day Extension Period**

- Plaintiffs state in their brief that they "seek responses" to the Plaintiffs' First Set of Interrogatories ("Interrogatories"). This statement is followed by a list of many of the interrogatories they had propounded on March 15, 2007. On April 30, 2007, Merrill Lynch served its Objections and Responses to Plaintiffs' Interrogatories ("Responses"), a 37-page document that included detailed and responsive information. *See* Exhibit M (Responses). Contrary to Plaintiffs' suggestion, Merrill Lynch has provided responses to the Interrogatories. Moreover, Merrill Lynch intends to supplement its Responses on or before July 31, 2007.

 1. Data Regarding Employees and Employment Practices

- In Interrogatory Nos. 2, 3, 4 and 5 Plaintiffs have sought far-reaching information about all of the databases and data files at Merrill Lynch that relate to a lengthy list of subjects.

8

- At this late stage in the production, after more than 1.045 Terabytes of data (approximately 73,000 boxes) have been provided to Plaintiffs, there is no reason to engage in the enormous task of marshalling information about the myriad of databases and thousands of data files that could provide additional information on the topics Plaintiffs have identified. Plaintiffs have not identified any data that they lack for purposes of class certification. If they identify a particular type of data or information that they need, Merrill Lynch would consider providing such information. However, it is unreasonable for Merrill Lynch to have to identify every piece of data that it maintains related to its clients and employees.

    2.  Final Versions of Policies

- Plaintiffs seek the final versions of "personnel, Human Resources, [and] equal employment and compensation policies" in Interrogatory No. 6. Merrill Lynch has thousands of policies, and several different versions of those policies that have been in effect between January 1, 2001 and the present. The overwhelming majority of these policies have no relevance to this litigation, and it would be unduly burdensome to identify them all. In addition, Merrill Lynch objected to this Interrogatory because the descriptions of policies sought were vague and ambiguous. Despite these objections, Merrill Lynch attempted to respond to Interrogatory No. 6 by providing the Bates numbers of the final versions of compensation, account distribution and other policies. *See* Exhibit M at Response to Interrogatory No. 6.

    3.  Identification of Documents Reflecting Audits and Other Information Regarding Account Distributions

- In Interrogatory No. 7, Plaintiffs seek to have Merrill Lynch identify by Bates number "all documents reflecting any attempt by Merrill Lynch to study, review, monitor or audit its account transfer and/or account distribution policies." Merrill Lynch produced documents in this case in accordance with Rule 34 of the Federal Rules of Civil Procedure by producing them as they are kept in the usual course of business. As a result, both Plaintiffs and Merrill Lynch would have to perform the same task of searching the document production electronically to identify the Bates numbers for documents that Plaintiffs seek.

    4.  Additional Complaint Information

- Merrill Lynch already has agreed to provide additional information concerning complaints of race discrimination against African-Americans, pursuant to the parties' discussions, in response to Interrogatory No. 8. Specifically, Merrill Lynch will produce a chart of responsive, relevant information, subject to Merrill Lynch's general objections, that has been requested in this Interrogatory.

5.   Identification of Personnel Involved Who Reviewed Particular Data

- Plaintiffs have asked that Merrill Lynch identify "every person who presented, distributed, received, or viewed any [] data, presentation, analyses, and reports. . . .." provided by any Donnelley Marketing or Erlich Consulting, of any InfoUSA company (which provide market research). *See* Interrogatory No. 14. Among other objections, this request is overly broad and unduly burdensome. Notwithstanding its objections, Merrill Lynch has attempted to answer this interrogatory by identifying individuals who received and reviewed data from Donnelley Marketing. However, to identify any employee who received information from these companies would be unduly burdensome and in fact impossible to do.

F.   **Plaintiffs' Account of the Production of Data in Discovery is Inaccurate and Plaintiffs are Not Entitled to Additional Discovery of Data**

- Plaintiffs inaccurately portray Merrill Lynch's production of data during class certification discovery as a last-minute deluge and seek the opportunity to "work with this data and raise additional questions as necessary prior to the close of discovery." *See* Brief at 4.

- In June 2006, even before the parties had signed the Agreed Protective Order in this case, Plaintiffs sought production of a data dictionary so they could "shop" for data tables to request, and Merrill Lynch provided this information .

- Merrill Lynch started producing data in July of 2006 and continued with a steady stream when additional data was requested. A production log of the data files that Merrill Lynch has produced and the date of each production is annexed hereto as Exhibit N. By May 31, 2007, Merrill Lynch had produced 1.045 Terabytes – approximately 73,000 boxes – of data in response to Plaintiffs' many requests for data.

G.   **Follow-Up Discovery**

- Merrill Lynch vigorously opposes Plaintiffs' request to keep discovery open for "follow-up" – new requests for documents or depositions. The production of documents and the number of depositions for class certification has been massive. It is incomprehensible that, after propounding more than 200 document requests and taking 14 depositions, Plaintiffs could have omitted requests for documents or neglected to seek depositions of any witnesses whose testimony is necessary for class certification discovery.

H.   **Third Party Discovery**

- Plaintiffs' request for additional time to file a motion to compel documents from a third party mirrors their belated attempt to assert rights to discovery that they have waived through inaction. Plaintiffs served a subpoena on InfoUSA on April 10, 2007. If Plaintiffs had wished to compel production of these documents, they should have filed a

motion before the discovery deadline. Plaintiffs should not be permitted to benefit from their tactical choice not to take action in a timely manner.

I.  **Outstanding Discovery Issue Related To Plaintiffs**

- Merrill Lynch seeks to confirm deposition dates of class representatives George McReynolds and Yves Laborde, and requests that Marshall Miller be dismissed as a class representative, and that Plaintiffs not be allowed to submit any affidavit from Mr. Miller in support of their class certification motion.

- Merrill Lynch also seeks to have all Plaintiffs verify interrogatory responses, and to have a date set to recall Leroy Brown for deposition testimony, as previously ordered by the Court.

- Merrill Lynch is in the process of producing a sampling of no more that 60 clients for each class representative, and will ask those class representatives to identify how they met each of the clients listed in the sampling.

## CONCLUSION

With over 3.5 million pages of documents from 247 custodians in 41 different departments, 1.045 Terabytes of data, and 14 depositions, Plaintiffs have enough to make their motion. And they will be getting still more. The discovery deadline should be extended for 45 days solely for the purpose of permitting the parties to complete the discovery specifically set forth herein.

Dated: June 22, 2007

By: __/s/ Lori E. Lightfoot_____
MAYER, BROWN, ROWE & MAW LLP
Lori E. Lightfoot
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600 (Phone)
(312) 701-7711 (Facsimile)
*--and--*
WEIL, GOTSHAL & MANGES LLP
Jeffrey S. Klein
Nicholas J. Pappas
Salvatore A. Romanello
767 Fifth Avenue
New York, NY 10153
(212) 310-8000 (Phone)
(212) 310-8007 (Facsimile)

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that she caused a true and correct copy of Merrill Lynch's Supplemental Memorandum In Opposition To Plaintiffs' Motion To Extend Class Certification Discovery to be served upon counsel for Plaintiffs addressed as follows:

Linda Friedman<br>
Mary Stowell<br>
George Robot<br>
Stowell & Friedman, Ltd.<br>
321 S. Plymouth Court, Suite 1400<br>
Chicago, Illinois 60604

via ECF, email and U.S. mail on June 22, 2007.


By: ___/s/ Lori E. Lightfoot_____