# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GEORGE MCREYNOLDS, et al. ) <br> on behalf of themselves and all others ) <br> similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MERRILL LYNCH & Co., INC. ) <br> ) <br> Defendant. ) | Case No. 05 C 6583 <br><br> Judge Robert W. Gettleman <br><br> Magistrate Judge Morton Denlow |

## PLAINTIFFS' MOTION TO COMPEL RESPONSIVE DATA AND RELATED INFORMATION AND RELIEF

Plaintiffs file this Motion to Compel as a result of Defendant's eleventh-hour data production and errors and to attain complete, accurate data and information about that data for purposes of class certification. In support of their Motion to Compel, Plaintiffs state as follows:

1. Plaintiffs served their first requests for workforce and compensation data in this matter in January 2006, clearly identifying the population for which discovery was being sought as well as the information sought from 1994 to the present. The discovery was clear and similar to that served by Plaintiffs in the nationwide gender discrimination class action lawsuit, *Cremin v. Merrill Lynch* (N.D. Ill)(Castillo, J.) Plaintiffs presumed that Defendant, a multi-national financial services corporation with tens of thousands of employees in the business of managing trillions of dollars for millions of customers, would have no difficulty identifying the data sought in Plaintiffs' discovery.

2. Following an agreed stay from January through June while the parties explored settlement, Defendant commenced data production in July 2006 with no indication to Plaintiffs that they were unclear on the subject population of discovery. Indeed, the parties discussed and

1

Defendant made representations to Plaintiffs about the scope of the population contained in the data. Defendant also objected to producing any data or other discovery for the time period prior to 2001 on the grounds that this discovery was not relevant.[1]

3.     Since July 2006, Plaintiffs have received an enormous volume of data, measuring in hundreds of gigabytes. Plaintiffs have worked diligently to understand this data and ensure its completeness and reliability. Plaintiffs have discovered and promptly notified Defendant of many errors in the data production. Defendant has produced new, replacement data sets on a number of occasions, sometimes with no explanation as to the reason for the new production. These repeated errors and many false starts have cost Plaintiffs time and resources, but they have persevered and not raised these issues with the Court.

Defendant's Recent Production of Selective Pre-2001 Data

4.     On August 21, 2007, Defendant produced new data to Plaintiffs, including selected data for the year 2000 and for a "study population." *See* Ex. A, Aug. 21, 2007 Bonk Ltr. Defendant did not initially explain why it was producing data for the year 2000 or identify or describe the "study population" or who was studying that population. *See id; see also* Ex. B, Aug. 23, 2007 Bish Ltr., at 2; Ex. C, Friedman E-Mails. Throughout this litigation, Defendant has repeatedly contended that pre-2001 data and other discovery is not relevant and has refused to produce it. *Id.*

5.     On August 24, 2007, in response to Plaintiffs' questions, Defendant stated that it deemed selective production of year 2000 data helpful to its alleged statute of limitations

---

[1] Plaintiffs did not relinquish their requests, or their rights, for pre-2001 discovery. Indeed, every discovery request served by plaintiffs seeks information beginning at least as early as 1997. Plaintiffs agreed to analyze data from 2001 on in the interest of compromise and solely for purposes of class certification, on the understanding that both parties would be bound by the same time frame.

2

defense. Ex. D, Aug. 24, 2007 Dray Ltr., at 3. Defendant claimed the late production was attributable to the Supreme Court's ruling in *Ledbetter v. Goodyear Tire & Rubber Co.*, Case No. 05-1074. *Id.*[2] Defendant made no effort to explain the delay from the ruling date of May 29, 2007 to the late August production.

6. Defendant has refused Plaintiffs' request to produce all responsive data for the year 2000. *Id.* Having refused to produce pre-2001 data or documents throughout discovery, Defendant should not be permitted to change course at this late date and selectively produce certain 2000 data for a certain study group in a manner that is prejudicial to Plaintiffs.

7. Although Plaintiffs disagree with Defendant's reading of the *Ledbetter* case, Plaintiffs ask the Court to order Defendant to produce all responsive data and documents for the year 2000 or to bar Defendant from relying in any way upon subsets or "slices" of responsive data from 2000.

Defendant's Production of "Overly Inclusive" Data Population

8. On Friday, August 24, 2007, one business day before the close of class certification discovery, Defendant informed Plaintiffs that its data production was "erroneous" and overly inclusive with regard to the population. *See* Ex. E, Aug. 24, 2007 Bonk E-mail. Defendant told Plaintiffs that the data population included "Middle Market" brokers (so-called Institutional Advisory Division or "IAD" brokers) in addition to retail Financial Advisors. *Id.* Defendant has not provided any means of identifying these IAD brokers. *See* Ex. F, Aug. 27, 2007 Bish Ltr.

---

[2] This argument is not compelling for a number of reasons. The *Ledbetter* decision was issued three months ago based on legal arguments defendants have made in nearly every employment lawsuit for years. Indeed, Defendant raised this defense in its Answer to Plaintiffs' First Amended Complaint.

3

9. Plaintiffs and their experts have been working with the data production for some time and have expended a significant amount of time and resources in their analyses. Based on the progress Plaintiffs made, they agreed to Defendant's proposal that they complete and tender expert reports on or before November 5, 2007. At the time that agreement was reached, Plaintiffs had no idea that the data they had been using for nearly a year was overly inclusive.

10. Plaintiffs' expert reports are due November 5, 2007, and they need to provide their experts with complete, correct, and usable data for analysis. Further, the November 5, 2007 date was agreed upon with the understanding that the experts studying the data would be able to substantially complete their work in sufficient time for the non-data experts to consider those conclusions.

11. Plaintiffs respectfully request that the Court order Defendant to: (1) produce a detailed, written explanation of the population included in its data production to date and a data code that identifies individuals who allegedly should be excluded from that population; (2) produce a knowledgeable person prepared to answer Plaintiffs' questions and make written stipulations that will bind Defendant about the precise scope of its data production; (3) reimburse Plaintiffs for the costs they and their experts have incurred to date working with this erroneous data set; and (4) allow Plaintiffs to seek an extension of the expert report deadline if necessary so that Plaintiffs are not prejudiced by these circumstances.

<u>Other Open Data Questions and Issues</u>

12. Throughout the discovery process, Plaintiffs have attempted to resolve important data issues without burdening the Court so they and their experts can properly analyze the data in this case. Plaintiffs now seek the Court's assistance to gain necessary information and data for class certification.

13.     First, Plaintiffs have asked Defendant to provide certain compensation data and to answer questions so the parties can agree upon a meaningful definition of compensation for purposes of analysis. For example, Plaintiffs requested data reflecting the vested deferred compensation from earlier years, but Defendant denied the existence of such data. Plaintiffs needed this information to be able to back out or subtract the vested compensation earned but deferred from earlier years from the actual earnings in 2001 through 2006. On August 24, 2007, Defendant finally produced this vested deferred compensation data. Defendant has, however, steadfastly declined to provide Plaintiffs with a formula for how to compute actual earnings from the W-2 Medicare field. Plaintiffs ask the Court to order Defendant to provide this information to Plaintiffs or to bar Defendant from challenging the method Plaintiffs use to compute actual earnings in a given year.

14.     Second, Plaintiffs have sought answers to a number of other important questions about the data produced in this case. These questions have included items sought prior to, during and after depositions. Plaintiffs ask the Court to order Defendant to provide substantive, written responses to the requests made during depositions of Defendant's corporate representatives, which are summarized and identified in the official transcript of those depositions at Exhibit G, Tr. Summary of Requests. *See also,* Ex. H, Aug. 24, 2007 Robot E-mail.

15.     Third, as set forth in Defendant's Motion to Compel filed on this same date, Plaintiffs seek production of Merrill Lynch's applicant flow information and any underutilization studies in data or electronic format, rather than solely in the thousands of hard copies recently produced. *See* Motion to Compel Documents, Data and Interrogatory Responses, Issue No. 3, at 5-6. The Federal Rules of Civil Procedure require production of such discovery electronically, particularly where, as here, the Defendant maintains that information in electronic form.

16.	Finally, much of the data in this case has been produced late in discovery. As a result, Plaintiffs and their experts have not had the opportunity to fully analyze, use or link all of the various data. Should additional questions arise after the close of discovery, Plaintiffs ask the Court to order that Defendant meet and confer in good faith with Plaintiffs rather than be permitted to stand on a timeliness objection.

17.	WHEREFORE, for the reasons state herein, Plaintiffs respectfully ask this Court to grant its Motion to Compel and order the relief set forth herein.

Date: August 27, 2007

                          Respectfully submitted,

                          By:

                          /s/ Suzanne E. Bish

Mary Stowell – Attorney No. 02750015
Linda D. Friedman – Attorney No. 06190092
Suzanne E. Bish – Attorney No. 06242534
**STOWELL & FRIEDMAN**
321 S. Plymouth Court
Suite 1400
Chicago, Illinois 60604
(312) 431-0888

6