IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE MCREYNOLDS, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MERRILL LYNCH & Co., INC. <br><br> Defendant. | Case No. 05 C 6583 <br><br> Judge Robert W. Gettleman <br><br> Magistrate Judge Morton Denlow |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS, DATA, INTERROGATORY RESPONSES AND IDENTIFICATION OF RESPONSIVE INFORMATION**

On January 24, 2006, Plaintiffs served their first set of discovery requests seeking the documents and data they believed necessary for purposes of class certification.[1] Plaintiffs served additional discovery as they learned more from Defendant's production and testimony about the policies and practices of Defendant. Plaintiffs have worked diligently to keep up with the large production and record in this case and have attempted to resolve discovery issues cooperatively with minimal burden to this Court. Plaintiffs now seek the Court's assistance to garner additional discovery and information necessary for class certification.

After Plaintiffs filed their Motion to Extend Class Certification Discovery, (Docket No. 122), this Court directed the parties to present a list of outstanding discovery issues to assist the Court in ruling on Plaintiffs' Motion to Extend. After conferring extensively with Defendant, Plaintiffs filed a Supplemental Brief of Outstanding Discovery Issues in Support of Plaintiffs' Motion to Extend ("Supplemental Brief," Docket No. 136). Prior to this filing, Defendant agreed to produce several categories of documents, some of which are listed on page three of the

---

[1] Specifically, Plaintiffs served their First Requests for Production and Notices for Rule 30(b)(6) Depositions that included riders seeking the documents necessary to take those depositions.

1

Supplemental Brief, including but not limited to documents and data regarding Defendant's affirmative action plans and applicant flow. *See, e.g.,* Ex. A, July 18, 2007 Bish Ltr. Defendant also agreed to provide additional information to Plaintiffs and to continue to discuss certain other issues. *See id.*

Plaintiffs relied in good faith on Defendant's representations and did not raise with the Court issues about which the parties had reached agreement or agreed to discuss further. *See* Supplemental Brief at 2-3 ("There are only a few discrete discovery issues that Plaintiffs may bring to the Court's attention, but both sides have agreed to follow up on certain issues. Categories of documents that Defendant agreed to produce in the next month include…"). Indeed, during the Motion to Extend hearing, Merrill Lynch represented to the Court that it would produce the categories of documents set forth in Plaintiffs' Supplemental Brief. Due to time constraints, only a few of the disputed discovery issues were addressed during that hearing. For the issues that remained, the Court instructed the parties to attempt to reach agreement cooperatively but to notice a motion if they were unable to do so. Plaintiffs have attempted to attain the agreed-upon discovery, to resolve remaining discovery issues, and to confirm what information Defendant has produced and will produce, and the scope of that production. Plaintiffs file this Motion because their efforts have been unsuccessful.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure require liberal, cooperative, and largely self-executing discovery. Thus, discovery shall generally proceed so long as the matters sought in discovery are relevant. Fed. R. Civ. P. 26. As a number of courts have stated, "discovery requests will be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party. …[and] should be allowed unless it is clear that

2

the information sought can have no possible bearing on the claim or defense of any party." *Hill v. Dillard's Inc.*, 2002 U.S. Dist. LEXIS 950, 5-6 (D. Kan. 2002)(internal citations omitted). Indeed, "it is a well-established rule of law that discovery in discrimination cases should not be narrowly circumscribed" and that plaintiffs are allowed 'extensive' discovery to prove their cases." *Id. citing Rich v. Martin Marietta Corp.,* 522 F.2d at 343 (10th Cir. 1985).

## ARGUMENT

Plaintiffs have pursued a course of discovery necessary to present the Court with a clear record of Defendant's policies and practices, and their operation and impact on the class, so that the Court can decide class certification without unnecessary quibbles about the record. For the same reason, Plaintiffs have attempted to confirm what Defendant has and has not produced during discovery. Until recently, Plaintiffs understood that the parties had reached agreement with regard to most of the below categories of information and documents.

Plaintiffs have now learned that Defendant will not produce certain relevant discovery and information needed for class certification. As a result, Plaintiffs seek a Court order requiring Defendant to produce relevant documents, data and interrogatory responses and to identify basic information about its production.

**1.  Production and Identification of Defendant's 2001-2007 IPO and Related Policies.**

Plaintiffs allege that Defendant employs discriminatory policies regarding the distribution of IPOs and reserved or restricted shares and have sought production and identification of these policies during discovery. *See, e.g.,* Ex. B, June 6, 2007 Bish Ltr., at 3; Ex. C, Pls. First Set of RFPs, at Req. Nos. 15-17, 31, 32, 67; Ex. D, Pls. Int. No. 6. As they have informed Defendant, Plaintiffs searched the production and cannot locate final, complete policies for the period 2001 to the present, which they understand are called SEEDS and Friends and Families. Defendant has represented that there are no formal, annual policies akin to its compensation plans but

3

contends that it has produced written "explanatory materials" that govern the distribution of IPOs and related opportunities from 2001 to 2006. Contrary to Defendant's statements, however, its production letters do not clearly identify these "explanatory materials." Therefore, Plaintiffs seek an order that Defendant identify these explanatory materials by bates number, effective date, and by policy name or description.

2. **Production and Identification of Affirmative Action Plans, Underlying Studies and EEO-1 Reports.**

Although Defendant has repeatedly represented that it would produce a complete set of affirmative action plans ("AAPs"), supporting studies (including underutilization reports), and EEO-1 Reports from 2001 to the present, these items have not been produced in a complete or intelligible format.[2] Plaintiffs have had extensive oral and written discussions with Defendant about what they believe to be missing from Defendant's production. *See, e.g.,* Ex. E, April 27, 2007 E-mail chain; Ex. B, at 4. For example, it does not appear that Defendant has produced complete, company-wide affirmative action plans or any plans prior to 2003.[3] *See, e.g.,* Exs. E, B. As Plaintiffs have also explained, due to the manner in which responsive items have been produced, they cannot discern which studies are drafts, which are final, and which may be related to specific AAPs. In addition, Plaintiffs have provided specific examples of the confusion and uncertainty that have resulted from the manner of production.

Defendant has specific personnel responsible for its AAPs and related documents, which are presented to federal and local governments and must be maintained as a matter of law. It is

---

[2] Defendant does not dispute that its affirmative action plans, underlying analyses, and EEO-1 reports are relevant to Plaintiffs' allegations of systemic discrimination in hiring, compensation, treatment and promotion.
[3] Defendant has produced portions of certain plans that appear to be corporate or company-wide, but these are not complete as the underlying analyses are not included. For example, some of these plans state that "the analysis of applicant flow, hires, promotions and terminations by Job Group is contained following this narrative," but no such analyses follows.

4

difficult for Plaintiffs to believe that no person at Merrill Lynch maintains these documents in a comprehensive fashion. Plaintiffs therefore ask this Court to order Defendant to produce all affirmative action plans, supporting studies and Form EEO-1s in a complete, organized fashion, and otherwise produce all documents and data responsive to Request Nos. 27, 34, and 35 from Plaintiffs First Set of Requests for Production. *See* Ex. C. Plaintiffs also seek an order that Defendant compile and produce a list of its affirmative action plans in effect from 2001 to the present and identify each by bates number, along with the studies that correspond to each plan. If any responsive documents do not exist, Plaintiffs seek a statement of which specific reports do not exist or confirmation that Defendant had no AAPs and performed no studies in a given year.

**3.    Production of Applicant Flow Data in Electronic Form and Description of Applicant Data Maintained by Defendant In Response to Plaintiffs' Interrogatory No. 3.**

Plaintiffs allege that Defendant has and is engaged in discriminatory hiring practices on a nationwide basis. Plaintiffs understand that applicant flow data and information is maintained by Defendant, which is plainly relevant to Plaintiffs' allegations. Defendant does not object to producing applicant flow information and has recently begun to produce it, but only in hard copy form and not in a comprehensive or organized fashion. The applicant flow data that Defendant has produced to date consists of thousands of pages of spreadsheets that are difficult to read and to discern whether they are complete. *See, e.g.,* Exhibit F, sample applicant flow log. Before Plaintiffs can begin to properly analyze this information, they would have to spend hundreds of hours manually inputting it into a usable electronic format. In accordance with the discovery rules, Plaintiffs ask the Court to order Defendant to produce its applicant flow data in electronic format, including the applicant flow data that it has begun to produce in hard copy. This creates no burden for Defendant, which maintains the data electronically.

Plaintiffs have also repeatedly asked Defendant what applicant flow information it maintains at the corporate or national level or otherwise in a uniform format, but Defendant will not respond to this straightforward inquiry. Plaintiffs served the following interrogatory seeking standard information about the relevant applicant data maintained by Defendant:

> Pl. Int. No. 3: Identify and describe all data maintained from 1997 to the present in computer-readable form by Merrill Lynch that relates to applicants to Global Private Client, including, but not limited to, date/s of application, date of interview, personnel who conducted interview/s, date of hire, date of rejection, reason for rejection, current compensation, salary demand, level of education, prior work experience, qualifications, licensing, whether application completed or resume submitted, whether file maintained, background checks and results, person referred by (if any), relationships at Merrill Lynch, employment history, registrations, race or ethnic background, gender, or other demographic data. This request includes not only data maintained at the national level but also data maintained within the branch or district.

Ex. D, at 16.

In response to this Interrogatory, Defendant simply referenced by bates number thousands of pages of nonresponsive documents, which are largely comprised of what appear to be printouts of certain applicant flow information but that do not describe what information is maintained, where, or any of the other information requested. Ex. H, Def. Supp. Resp. at 6. In order to properly understand and analyze their hiring and related claims, Plaintiffs are entitled to discovery both of the applicant flow information maintained, in electronic format, and a description of this data. Plaintiffs ask the Court to compel a written response to this Interrogatory so that Plaintiffs can understand what data Defendant maintains regarding applicants.

6

4.     **Production of Management Assessment Files.**

Plaintiffs allege that Defendant employs management selection practices that systemically exclude African-Americans from management. One aspect of the challenged practices is Defendant's formal Management Assessment Center ("MAC"), where candidates are assessed on an annual or biannual basis based on exercises judged by Defendant's managers. Plaintiffs understood that Defendant agreed to produce the assessment materials and MAC files associated with each candidate from the *Cremin v. Merrill Lynch* gender litigation, from the 2000 assessment and from 2001 to the present. *See* Ex. I, S.Bish June 12, 2007 E-mail. To assist in this process and to ensure completeness, Defendant asked Plaintiffs to compile a list of *Cremin* MAC candidates and other managers, which Plaintiffs provided. *Id.* However, it appears that a substantial amount of the agreed-upon MAC files and materials have not yet been produced.

Plaintiffs also seek responsive documents from the May 2007 assessment, which Defendant is refusing to produce. Due to the very low number of African-Americans groomed for management and invited to the MAC, it is important that the May 2007 assessment materials and files be produced. Plaintiffs represent at least one client who attended this assessment and are entitled to review his MAC file, as well as the files of other attendees. Plaintiffs ask that the Court order Defendant to produce the MAC files from *Cremin v. Merrill Lynch,* and from 2000 – 2007, and to produce and identify the uniform, MAC packages provided to candidates and assessors at each assessment.

5.     **Production of Demographic Data Defendant Provided to SIA and Catalyst.**

Defendant previously represented to Plaintiffs that it would produce, in data or electronic form if available, the demographic data and information it provided to either the SIA or Catalyst as part of the industry reports generated by the SIA and information regarding any attempts by

7

Defendant to garner recognition for its diversity or multicultural business development activities.[4] *See, e.g.,* Ex. A, at 6. Plaintiffs request an order that Defendant produce this information, in electronic format, or identify this information by bates number if it claims to have produced it. If Defendant refuses to produce this information, Plaintiffs request an order that Defendant not be able to make any arguments regarding or otherwise rely on any reports, studies or work of the SIA, or on any "diversity awards."

**6.     Identification of Documents Regarding Defendant's Attempt to Monitor and Audit Account Transfer and Distribution Policies.**

Plaintiffs allege that Defendant has maintained policies and practices of distributing valuable accounts in a manner that systematically disadvantages African-Americans. Defendant claims that it relies on nondiscriminatory policies to transfer and distribute accounts.

Plaintiffs asked Defendant in Plaintiffs' Interrogatory No. 7 to "[i]dentify by production number all documents reflecting any attempt by Merrill Lynch to study, review, monitor or audit its account transfer and/or account distribution policies." Ex. D, at 25-26. Defendant has refused to respond to this Interrogatory claiming, erroneously, that Plaintiffs can identify these documents. Defendant has not produced documents regarding its account distribution audits as they are maintained in the ordinary course of business. Instead, it has largely used an electronic search method that pulls documents out of logical order and without electronic file identifiers. Due to the manner in which Defendant produced documents in this case, it is also extremely difficult, and frequently impossible, for Plaintiffs to identify where files begin or end and whether documents are drafts, complete or related. Plaintiffs are not familiar with the

---

[4] The Securities Industry Association ("SIA") is an industry organization whose activities include analyzing the demographic breakdown and diversity initiatives of the industry. The SIA has performed a number of diversity reports, upon which Defendant has indicated that it may seek to rely on in this case.

maintenance of Defendant's files and do not have access to ask its personnel questions about certain documents.

To the extent Defendant seeks to rely on its policies to defend against Plaintiffs' allegations, Plaintiffs are entitled to certainty regarding which documents relate to Defendant's efforts to monitor and enforce those policies. Thus, Plaintiffs seek an order requiring Defendant to identify by name, bates number and year the documents regarding its audits of the account transfer and distribution policies.

**7. Production of Documents Requested During Depositions.**

During depositions, Plaintiffs requested Defendant produce and identify by production number specific documents that their deponents relied on to answer questions or referred to in lieu of an answer. These documents were relevant and responsive to Plaintiffs' outstanding discovery requests, but Plaintiffs were unable to identify them in Defendant's production. Plaintiffs reiterated their requests on a number of occasions and asked Defendant to either produce the requested documents or to identify them in the production. *See* Ex. G, Aug. 23, 2007 Bish Ltr. Defendant has done neither. Thus, Plaintiffs ask the Court to order Defendant to produce the following documents and/or identify them by production number:

1. Letter from Bob Mulholland, and video and printout of PowerPoint presentation regarding changes in 2002 Compensation Plan and. *See, e.g.,* Hogarty Tr. at 31:12-19; Request Nos. 3, 4, 6 (Plaintiffs' First Set of RFP).
2. Excel spreadsheet, in electronic form, of impact or "back testing" of changes in 2001 and 2002 compensation plans. *See, e.g.,* Hogarty Tr. at 37:18 – 39:11; Responsive to Rider to Notice of Videotaped Deposition of Rule 30(b)(6) Witness (Human Resources Data, Policies and Procedures), at Request Nos. 2, 9.
3. The output and analysis regarding the small ticket policy with respect to POA compensation. *See, e.g.,* Cassidy Tr. at 108:14 – 110:8; Responsive to Request Nos. 63, 65 (Plaintiffs' First Set of RFP)
4. The e-mail published by Merrill Lynch identifying the effective date for the 2003 and 2004 account distribution policies. *See, e.g.,* Sieg 1/16/07 Tr. at 32:12 –

9

    33:23; Responsive to Request No. 14 (Plaintiffs' First Set of RFP); Plaintiffs' First Set of Interrogatories - #'s 6 and 7

5.  PowerPoint presentations used at the meetings communicating the changes in the Redistribution Policy in January of 2006. *See*, *e.g.,* Sieg 1/16/07 Tr. at 207:6 – 23; Responsive to Request No. 14 (Plaintiffs' First Set of RFP)

6.  The final Client Transition Program ("CTP") documents published in December 2005 (of Sieg 1/16/07 Dep. Ex. 5). *See*, *e.g.,* Sieg 1/16/07 Tr. at 228:22 – 229:18; Responsive to Request No. 14 (Plaintiffs' First Set of RFP); Rider to 30(b)(6) Notice on Teams, Client Transition Program, and Broker Training, Nos. 15-19.

7.  FA selection and other tests or examinations. *See*, *e.g.,* Pillar 2/23/07 Tr. at 124:3 – 126:3; Responsive to Request No. 33 (Plaintiffs' First Set of RFP).

8.  All other drafts or versions of Barry Dep. Ex. 3 from Barry's files. *See*, *e.g.,* Barry 4/12/07 Tr. at 137:24 – 142:8; Responsive to Request No. 1 (Plaintiffs' Second Set of RFP).

9.  The list of African American FAs who were part of the FA network. *See*, *e.g.,* Barry 4/12/07 Tr. at 257:15 – 258:16; Responsive to Request No. 1 (Plaintiffs' Second Set of RFP).

*See* Ex. G.

## **CONCLUSION**

For the reasons stated herein, Plaintiffs respectfully ask this Court to grant its Motion to Compel and order the relief set forth herein.

Date: August 27, 2007

                Respectfully submitted,

              By:  /s/ Suzanne E. Bish


Mary Stowell - Attorney No. 02750015
Linda D. Friedman – Attorney No. 06190092
Suzanne E. Bish – Attorney No. 06242534
Stowell & Friedman, Ltd.
321 Plymouth Court, Suite 1400
Chicago, IL 60604
(312) 431-0888

## **CERTIFICATE OF SERVICE**

      I, Suzanne E. Bish, an attorney, hereby certify that on August 27, 2007, I caused a true and correct copy of *Plaintiffs' Motion to Compel Production of Documents, Data, Interrogatory Responses and Identification of Responsive Information* to be served via ECF on the following counsel of record:

| | |
|---|---|
| Jeffrey S. Klein<br>Nicholas J. Pappas<br>Salvatore Romanello<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>phone: (212) 310-8000<br>fax: (212) 310-8007<br>jeffrey.klein@weil.com | Lori Lightfoot<br>Mayer Brown Rowe & Maw<br>71 S. Wacker Drive<br>Chicago, IL 60606<br>phone: (312) 782-0600<br>fax: (312) 701-7711<br>llightfoot@mayerbrownrowe.com |

                                                /s/ Suzanne E. Bish

Mary Stowell - Attorney No. 02750015
Linda D. Friedman – Attorney No. 06190092
Suzanne E. Bish – Attorney No. 06242534
Stowell & Friedman, Ltd.
321 Plymouth Court, Suite 1400
Chicago, IL 60604
(312) 431-0888