IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
-----------------------------------------------------------x
GEORGE MCREYNOLDS, et al,                    :
Individually on behalf of themselves         :
and all others similarly situated,           :   Case No. 05C6583
                                             :
                  Plaintiffs,                :   Hon. Robert W. Gettleman
                                             :   Magistrate Judge Denlow
- against -                                  :
                                             :
MERRILL LYNCH, PIERCE, FENNER               :
& SMITH, INCORPORATED,                       :
                                             :
                  Defendant.                 :
-----------------------------------------------------------x
```

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF DOCUMENTS, DATA, AND
<u>INTERROGATORY RESPONSES</u>**

## I.      <u>PRELIMINARY STATEMENT</u>

Defendant Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch") submits

this Memorandum of Law in Opposition to Plaintiffs' Motion To Compel Production of

Documents, Data, and Interrogatory Responses ("Motion").  During the class certification

discovery portion of this case, Plaintiffs have received an unprecedented amount of discovery.

Merrill Lynch has produced more than 4.5 million pages of documents and 1054 gigabytes of data,

and has produced witnesses for more than a dozen depositions, including depositions of the most

senior executives of Merrill Lynch.  Merrill Lynch and its attorneys have spent an inordinate

amount of time and effort responding to the incredibly burdensome "kitchen-sink" document

requests served by Plaintiffs.  Merrill Lynch has dutifully complied with its obligations, spending

millions of dollars to provide responses to the hundreds of document and data requests made by

Plaintiffs.

Despite this unprecedented production (or maybe because of it), Plaintiffs now ask this Court to revise the Federal Rules of Civil Procedure to effectively have Merrill Lynch do Plaintiffs' work for them. Plaintiffs' overbroad requests – and their refusal to narrow those requests – have resulted in the production of more documents than Plaintiffs care to review. Plaintiffs have therefore filed their Motion seeking to compel Merrill Lynch to wade through the production to identify documents for them.  Indeed, in some cases, Plaintiffs ask Merrill Lynch to re-identify documents that Merrill Lynch has already identified, even though it had no obligation to do so.  And, Plaintiffs seek to compel Merrill Lynch to produce documents it has already produced because apparently Plaintiffs have not taken the time to review what has already been produced prior to filing this Motion.

Merrill Lynch has produced documents, consistent with its obligation under the Federal Rules.  Merrill Lynch has no further obligation to specifically identify documents located in the production, particularly where Merrill Lynch has borne significant cost to produce the documents in searchable electronic format.

## II.    ARGUMENT

### A.    2001-2007 IPO and Related Policies

Plaintiffs allege in this case that Merrill Lynch's policy with respect to the allocation of shares of initial public offerings ("IPOs") discriminates against African American financial advisors.  However, not a single named Plaintiff has been able to identify Merrill Lynch's IPO policy that purportedly discriminates against African American financial advisors.  Nonetheless, Merrill Lynch has undertaken a search for policies and explanatory materials related to IPO allocations, and rankings of financial advisors to receive allocations ("SEEDS Rankings").  Merrill Lynch has produced all such documents that have been located.  Plaintiffs now want Merrill Lynch to wade through the massive production and review its letters accompanying the

2

production of documents to identify these materials. Were the Court to order Merrill Lynch to identify these materials, Merrill Lynch would need to review the entire production to ensure that every such document is identified. Nothing in the Federal Rules of Civil Procedure requires Merrill Lynch to do so, and Plaintiffs cite no authority to support their Motion in this regard. See Spector Freight Sys., Inc. v. Home Indem. Co., 58 F.R.D. 162, 164-165 (N.D. Ill. 1973) (denying defendant's motion to compel because the information was already available to defendant and the burden of time and money that plaintiff would have to spend in order to answer defendant's interrogatories outweighed the benefit of compelling answers); U.S.A. v. Kramer, 1992 U.S. Dist. LEXIS 7651, at *13 (D. N.J. 1992) ("the rules of discovery do not compel a party to do the interrogating party's investigation for him") (citations omitted).

### B. Production and Identification of Affirmative Action Plans, Underlying Studies and EEO-1 Reports

Plaintiffs effectively make four requests regarding affirmative action material in their Motion: (1) that Merrill Lynch produce all EEO-1 reports and affirmative action plans; (2) that Merrill Lynch produce complete affirmative action plans, including supporting documents; (3) that the affirmative action plans be produced in an "organized fashion," and (4) that Merrill Lynch compile a list of each affirmative action plan produced and identify the corresponding underlying report by bates stamp.

First, as Merrill Lynch has told Plaintiffs repeatedly, all affirmative actions plans that Merrill Lynch was able to locate have been produced. Likewise, all EEO-1 reports from 2001 – 2006 have, in fact, been produced. Merrill Lynch can only produce documents that it possesses, and can do no more than that. Merrill Lynch made the same point to Plaintiffs' counsel, yet Plaintiffs filed this Motion.

Second, to the extent Merrill Lynch has not produced supporting documents identified in certain affirmative action plans, it is because Merrill Lynch has not been able to locate those documents. The vast majority of plans produced by Merrill Lynch are complete and include all underlying reports. In those instances where Plaintiffs have identified gaps in the production, Merrill Lynch has filled those gaps to the extent that documents could be located. And, again, Merrill Lynch informed Plaintiffs' counsel of exactly that point, yet Plaintiffs have filed this Motion. Merrill Lynch has fulfilled its obligations with respect to this production, and simply cannot produce what it does not have.

Third, Plaintiffs' request that Merrill Lynch produce the affirmative action plans in "an organized fashion" is simply not supported by the Federal Rules of Civil Procedure. Merrill Lynch produced the affirmative action plans as they were kept in the ordinary course of business, consistent with Rule 34(b). Notably, as agreed to by the parties, Merrill Lynch has produced a cover letter with each production, identifying the custodian from whom documents were collected. See Exhibit A, transcript excerpts from October 10, 2006 and November 13, 2006 proceedings. Merrill Lynch has no further obligation to "organize" the documents for Plaintiffs, and Plaintiffs themselves can wade through the affirmative action plans and organize them in any way that they see fit. Plaintiffs simply do not have the right to demand that Merrill Lynch organize documents according to Plaintiffs' specifications. See Fed. R. Civ. P. 34(b)(ii). The costs of responding to Plaintiffs' voluminous and far reaching discovery requests has been enormous. Plaintiffs should not be permitted to add additional costs that have no basis in the Federal Rules.

Fourth, with regard to Plaintiffs' demand that Merrill Lynch identify each affirmative action plan and corresponding underlying report by bates number, this request also has no basis in the Federal Rules. See supra, section II. A. Plaintiffs have the same ability that Merrill Lynch has

to perform electronic searches of the production. Each affirmative action plan is clearly marked either "Affirmative Action Program" or "Affirmative Action Plan" in large typeface on the first page. Merrill Lynch has produced these documents in text-searchable format. While many underlying reports were produced with the plans, Plaintiffs should be able to identify those that were separately produced, as each report contains a reference to the year, location, and type of report in the upper-left hand corner.

### C. Applicant Flow Data

Plaintiffs do not dispute that Merrill Lynch has produced applicant flow data. Rather, Plaintiffs now would like Merrill Lynch to produce all such data in native form and identify all databases that Merrill Lynch maintains with respect to such data. Merrill Lynch has informed Plaintiffs on numerous occasions that it does not maintain a central database consisting of national applicant-flow information. Instead, Merrill Lynch maintains centralized applicant-flow information in electronic form only for certain local offices that have been audited. Merrill Lynch has produced all such centrally-maintained information. To the extent that any of these applicant flow logs are maintained in electronic format, Merrill Lynch is willing to provide such documents in native form provided that the information is readily available in native form and that Plaintiffs will agree that the information will be produced after any metadata has been removed.

Merrill Lynch has answered an interrogatory served by Plaintiffs wherein Merrill Lynch has identified by Bates number every applicant flow log that is centrally maintained and was produced from the custodian in electronic form. Other than identifying this information (which it has already done), Merrill Lynch does not know what else it could possibly do to respond to this Interrogatory.

D.    **Production of Management Assessment Files**[1]

Plaintiffs raise two issues regarding the files of MAC candidates ("MAC Files").  The first relates to concerns as to the completeness of Merrill Lynch's production of MAC Files.  Merrill Lynch had previously agreed to produce certain MAC Files from a list of MAC candidates that Plaintiffs' counsel provided from the Cremin litigation, a case in which they also served as plaintiffs' counsel.  See letter dated March 6, 2007 from Dray to Friedman, annexed as Exhibit B. ("Plaintiffs requested the production of MAC files for all managers who were employed by Merrill Lynch during the Relevant Time Period [of 2001-2006] but participated in MAC before the Relevant Time Period. . . . We have agreed to the production of these MAC files for this litigation").  Based on Plaintiffs' concern about potential deficiencies in this production, Merrill Lynch will revisit Plaintiffs' list of MAC candidates and cross-reference it with those that were produced.  Merrill Lynch will produce any missing files that it should have provided pursuant to its March 6, 2007 letter.[2]

The second issue relates to the production of 2007 MAC files.  Merrill Lynch never agreed to produce MAC Files from 2007.  Since class certification discovery commenced, the production of documents and data has been limited to the relevant time period of 2001-2006.  See, e.g., Exhibit B (March 6, 2007 letter from Dray to Friedman).  It was necessary to establish an end date

---

[1] Management Assessment Center ("MAC") refers to the Merrill Lynch's program for evaluating and assessing Financial Advisors for non-producing management positions within the Advisory Division of the Global Private Client organization.

[2] Merrill Lynch has not agreed to produce MAC Files for managers that attended MAC prior to the class period and who did not also hold a management position during the class period.

for the collection and production of documents as a practical matter, to ensure that class

certification discovery would end by the deadline.[3]

Additionally, Plaintiffs did not follow up on their request for the production of MAC

materials from 2007 until the discovery extension period. See July 18, 2007 letter from Bish to

Lightfoot, Dray and Romanello at 3, annexed as Exhibit C. Plaintiffs knew that Merrill Lynch

objected to the production of these documents beyond December 31, 2006. See Merrill Lynch's

Objections and Responses to Plaintiffs' Third Set of Class Requests for Production at Request No.

2, annexed as Exhibit D. Nonetheless they waited months to pursue this supplemental production.

They have waited too long to obtain this discovery. See Kanye West v. Eric "E-Smoove" Miller,

No. 05-C-4977, 2006 U.S. Dist. LEXIS 56243, at *13-17 (N.D. Ill. Aug. 11, 2006) (denying

defendant's motion to compel production of documents because the motion was filed 11 days

before the close of discovery and the moving party knew months before filing the motion that the

nonmoving party objected to the production of the requested documents).[4]

---

[3] Indeed, the original schedule agreed to by the parties would have had class certification
discovery completed in March, two months before candidates attended the 2007 MAC.

[4] See also In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 331, 341-343 (N.D. Ill. 2005) (denying in
part class action plaintiffs' motions to compel because the motions were untimely filed on the day
discovery closed, and the class could not claim any prejudice where they were on notice that the
corporation objected to the discovery requests, they had the option to file a motion to compel
months before the close of discovery, the materials sought by the class were irrelevant to the
question of the timeliness of the motion to compel, and the class never filed a motion to enforce its
document request); Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. North America, L.L.C.,
2004 U.S. Dist. LEXIS 26861, at *13-20 (N.D. Ill. Dec. 29, 2004) (denying plaintiffs' motion to
compel discovery that was filed four days before the close of discovery because plaintiff knew for
a year that defendant refused to produce the requested production; and plaintiff failed to meet and
confer in good faith under Rule 37(a)(2)(B) of the Federal Rules of Civil Procedure and Local
Rule 37.2); Packman v. Chi. Tribune Co., 267 F.3d 628, 646 (7th Cir. 2001) (affirming the denial
of a motion to compel production because "[i]n light of her lack of diligence in pursuing the
perceived inadequacies in discovery, the district court did not abuse discretion in denying Ms.
Packman's motion to compel after discovery was closed…").

Further, Plaintiffs did not identify 2007 MAC Files as an open discovery issue in their June 21, 2007 brief in support of extending the discovery deadline, despite the Court's directive that the parties include *all* discovery disputes in their submissions. <u>See</u> excerpt from Transcript of Proceedings annexed as Exhibit E at 9:21-11:3. Therefore, Plaintiffs are precluded from seeking this discovery now.

        **E.        <u>Data Provided to SIA and Catalyst</u>**

Plaintiffs allege that Merrill Lynch represented that "it would produce, in data or electronic form if available, the demographic data and information that it provided to either the SIA or Catalyst [sic] as part of the industry reports generated by the SIA and information regarding and attempts by Defendant to garner recognition for its diversity or multicultural business development activities."

Plaintiffs have misrepresented Merrill Lynch's position with respect to these requests. Merrill Lynch informed Plaintiffs that it would produce this data from the custodians at Merrill Lynch who are most likely to possess this information, and Plaintiffs agreed to that scope of production. Merrill Lynch has done exactly that. Indeed, Merrill Lynch produced data provided to all outside organizations, in connection with its efforts to seek recognition for diversity initiatives, as Plaintiffs requested in their Third Set of Requests for Production. Moreover, for the reasons stated above (Section II.A), Merrill Lynch has no obligation to identify this information by Bates Number as Plaintiffs request. Plaintiffs should review the production letters accompanying the multiple productions made by Merrill Lynch to identify this data.

        **F.        <u>Monitoring and Auditing Account Transfer and Distribution Policies</u>**

Plaintiffs served an interrogatory on March 15, 2007 asking Merrill Lynch to "[i]dentify by production number all documents reflecting any attempt by Merrill Lynch to study, review, monitor or audit its account transfer and/or account distribution policies." Plaintiffs' request

essentially requires Merrill Lynch to review millions pages of documents to identify any document that references the study, review, monitoring or auditing of its account distribution policy. Plaintiffs cite no authority for this proposition. As discussed, Merrill Lynch has no obligation to perform such a review. See supra, Section II.A.[5] Plaintiffs also expressly declined to conduct discovery via oral depositions to ascertain this information.

Plaintiffs also should not be heard to complain that they "are not familiar with maintenance of Defendant's files and do not have access to ask its personnel questions about" account distribution audits. See Motion at pp. 8-9. Merrill Lynch offered to provide two 30(b)(6) deponents on the monitoring of the account distribution policy. See, e.g., Exhibit F. Plaintiffs chose not to proceed with those depositions.

### G. Production of Documents Requested During Depositions

Plaintiffs also have set forth a list of documents that were purportedly requested in depositions taken by Plaintiffs. Such requests clearly do not comply with Rule 34 of the Federal Rules of Civil Procedure. On multiple occasions where the issue of documents requested in depositions has been discussed – consistent with the Federal Rules of Civil Procedure – Merrill Lynch asked Plaintiffs to document their requests in writing, including during a meet and confer on May 17, 2007. Plaintiffs failed to set forth these document requests in writing, as required by the Federal Rules of Civil Procedure, until August 23, 2007, two business days before the close of discovery.

In response to Plaintiffs August 23, 2007 letter on this issue, Merrill Lynch requested that Plaintiffs "search the production to make sure these documents were not produced after they had

---

[5] Plaintiffs assert that "Defendant has not produced documents regarding its account distribution audits as they are maintained in the ordinary course of business. Instead, it has largely used an electronic search method that pulls documents out of logical order and without electronic file identifiers." (Mot. at 8). Merrill Lynch is hard-pressed to understand how Plaintiffs can come to this conclusion if they supposedly have been unable to locate such documents.

been requested at the depositions" because "that is where we would start this process and we are confident that you are equally capable of performing electronic searches of the production as we are." See Exhibit G. Rather than accepting this proposition, Plaintiffs opted to file this Motion.

Plaintiffs are not entitled to this discovery, particularly as they failed to request this information in writing until days before the close of discovery. First, there simply is no obligation on an opposing party to review depositions to determine whether documents requested therein have been produced. Document requests must comply with Rule 34 of the Federal Rules of Civil Procedure, and Plaintiffs cite no authority for the proposition that a request for a particular document during a deposition satisfies Rule 34. Moreover, in a case of this size and magnitude, where nearly a dozen attorneys have appeared at the depositions, it is impossible to track discovery requests made at depositions unless those requests are formally recorded in writing. Indeed, the reasonableness of Merrill Lynch's position that demands made in depositions be set forth in a letter is highlighted by the very documents that Plaintiffs now seek in this Motion.

For example, Request No. 1 seeks a letter from Bob Mulholland, and a video and printout of a powerpoint presentation that were discussed during John Hogarty's deposition. See Motion at 9. Both the letter and powerpoint presentation were faxed from Plaintiffs' counsel's office to Plaintiffs' attorneys during the deposition; yet Plaintiffs now request that these documents be identified and/or produced. Those documents, with the fax lines from Stowell & Friedman, are attached hereto as Ex. H. In addition, the video requested by Plaintiffs has also been produced, as Plaintiffs should be well aware, since they purportedly have viewed the video.

Request No. 2 in Plaintiffs' Motion also illustrates Plaintiffs' lack of familiarity with the document production. That request seeks a native form version of an excel spreadsheet that had previously been produced in searchable electronic form, and that was requested during the

10

deposition of John Hogarty. On January 11, 2007, counsel for Merrill Lynch agreed to produce the spreadsheet in native form. See Romanello e-mail Exhibit I. The document was produced on January 17 on a separate compact disk, and the cover letter described the document. See Exhibit J. During a meet and confer held during the week of August 19, 2007 Merrill Lynch informed counsel for Plaintiffs that the document had been produced in mid-January. Plaintiffs nonetheless included this request in their Motion, and thereafter sent a series of emails to Merrill Lynch, stating that the document included in the January 17 production did not appear to be the document discussed at the deposition because the document included no data regarding gender. See Exhibit K. However, Mr. Hogarty never testified that the document contained gender information, and a review of the non-native version of the document that was initially produced also proves that the two documents are one in the same.[6]

In sum, Plaintiffs waited until the 11th hour to document in writing production requests made during depositions of Merrill Lynch employees. As the above examples illustrate, this failure to timely document such requests created unnecessary work for Merrill Lynch. Moreover, it is clear that Plaintiffs have not made a good faith effort to review the document production to determine whether these documents have already been produced. Under these circumstances, Merrill Lynch should not be required to identify or produce the requested documents.

---

[6] To the extent Merrill Lynch produced documents in response to any particular request made at a deposition, Merrill Lynch only did so as a professional courtesy, and reiterated its position to Plaintiffs that a written document request was the appropriate method for requesting documents.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion should be denied in its entirety.

Dated: September 4, 2007

By: <u>s/Lori E. Lightfoot</u>

WEIL, GOTSHAL & MANGES LLP
Jeffrey S. Klein
Nicholas J. Pappas
Salvatore A. Romanello
767 Fifth Avenue
New York, NY 10153
(212) 310-8000 (Phone)
(212) 310-8007 (Facsimile)

MAYER, BROWN, ROWE & MAW LLP
Lori E. Lightfoot
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600 (Phone)
(312) 701-7711 (Facsimile)

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of Merrill Lynch's Memorandum In

Opposition to Plaintiffs' Motion to Compel Production of Documents, Data, and Interrogatory

Responses was served upon counsel for Plaintiffs:

Linda Friedman
Mary Stowell
George Robot
Stowell & Friedman, Ltd.
321 S. Plymouth Court, Suite 1400
Chicago, Illinois 60604

via email and ECF system on September 4, 2007.


By:  s/Lori E. Lightfoot