IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
------------------------------------------------------x
GEORGE MCREYNOLDS, et al.,               :
                                         :
                                         : Case No. 05C6583
                                         : Hon. Robert W. Gettleman
                                         : Magistrate Judge Denlow
              Plaintiffs,                :
                                         :
- against -                              :
                                         :
MERRILL LYNCH, PIERCE, FENNER            :
& SMITH, INCORPORATED,                   :
                                         :
              Defendant.                 :
------------------------------------------------------x
```

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
<u>MOTION TO COMPEL</u>**

Defendant Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch"), submits this Memorandum in Opposition to Plaintiffs' Motion to Compel ("Plaintiffs' Motion") with respect to three categories of discovery: (1) documents and data related to the sex of Merrill Lynch Financial Advisors ("gender information"); (2) personnel and wage information for Investment Service Advisors ("ISAs") who are employed in Merrill Lynch's Financial Advisory Center ("FAC"); and, (3) documents concerning complaints of race discrimination from 1997 to 2000.

**PRELIMINARY STATEMENT**

On the eve of the August 27, 2007 class certification discovery deadline and without any notice to Merrill Lynch, Plaintiffs filed a motion in an attempt to compel the production of three broad categories of documents and data. This discovery would take many months – if not a full year – to produce. After a protracted period of discovery on class certification issues stretching 14 months, in which Merrill Lynch produced an enormous volume of material – 4.6 million pages of documents and 1,054 gigabytes of data – this last-minute request for additional discovery is astonishing, particularly because Merrill Lynch objected months ago to the production of the information that Plaintiffs now seek and Plaintiffs did nothing until literally the closing moment of the discovery period to compel it. Plaintiffs were not entitled to this discovery when they first sought it months ago and clearly are not entitled to "restart" the discovery clock now, when they have waited until the last few days of discovery to act.

First, the discovery that Plaintiffs now seek is prohibited both by the Court's prior rulings, and by applicable law that prohibits a party from waiting until the close of discovery to move to compel discovery. On June 18, 2007, the Court required the parties to identify all open discovery issues in submissions to the Court, in order to have all of the issues presented when considering the appropriate date for the discovery cut-off. Plaintiffs did not identify the gender information or pre-2001 complaints of race discrimination as issues in dispute – even though the record is crystal clear that Merrill Lynch objected to this discovery as far back as June 2006. Further, at a June 25, 2007 discovery conference (the "June 25 Conference"), the Court directed the parties to meet and confer on discovery disputes they had previously identified in their submissions but which the Court had not yet addressed. Plaintiffs

failed to do so with respect to discovery that they sought regarding the FAC and instead waited two months to bring this motion to compel.

Second, none of the requested discovery is remotely relevant to class certification issues in this race discrimination case brought by Merrill Lynch Financial Advisors. Indeed, as a matter of law, gender information has no relevance with respect to claims of race discrimination. Nor can information related to the FAC be at all relevant given that none of the named Plaintiffs ever worked in the FAC, which manages smaller accounts of generally less than $100,000 of assets, and the FAC is not even part of the U.S. Advisory Division of Merrill Lynch where the putative class is employed. Presumably, for that reason, there is *no* allegation in the Second Amended Complaint regarding race discrimination related to employees working in the FAC. Finally, information related to race complaints made prior to 2001 pre-date the class period and are simply not relevant to claims of race discrimination made during the class period.

**ARGUMENT**

I. Plaintiffs Have Waited Too Long To Compel The Discovery They Are Now Seeking

Plaintiffs have moved to compel three categories of documents and data that span more than 20 document requests. Merrill Lynch informed Plaintiffs of its objections to this discovery months ago, but Plaintiffs took no action to compel production. It is too late for them to seek this discovery now.

More than fourteen months ago, Merrill Lynch objected to the production of gender information on relevance grounds. *See* Objections and Responses to Plaintiffs' First Set of Class Requests for Production, annexed as Exhibit A, at General Objection 2.[1] Merrill Lynch

---

[1] Numerous requests for production in just Plaintiff's First Set of Class Requests for Production ("First Requests") appear to fall within this category. *See, e.g.*, Plaintiff's First Requests, annexed as Exhibit B, at Request No. 1 (all data maintained in computer-readable form by

3

elaborated on that general objection in correspondence dated August 25, 2006 – a full year ago – as well as in numerous discussions with Plaintiffs' counsel. *See* August 25, 2006 Letter from Lori Lightfoot to Linda Friedman, annexed as Exhibit C, at 1. Plaintiffs never sought to compel this discovery.

Plaintiffs also seek to compel documents concerning complaints of race discrimination dating back to 1997 against employees who were managers between 2001 and 2006. This request appears to seek all files concerning the investigation of such complaints as well as documents from the personnel files of employees who were the subject of these complaints.[2] *See* Mot. at 3. Merrill Lynch presented its final position on the production of documents that predate 2001 *one year ago* as well, on August 25, 2006. *See* Exhibit C at 2. Merrill Lynch reiterated that position on numerous occasions in writing and during discussions with Plaintiffs' counsel. *See, e.g.,* September 29, 2006 letter from Dray to Bish at 9-10; December 19, 2006 letter from Dray to Friedman at 6; February 8, 2007 letter from Dray to

---

Merrill Lynch regarding at least 20 different categories of information for every person employed Merrill Lynch in GPC); Request No. 2 (for each employee with a production number, data and documents regarding at least 40 separate categories of compensation and compensation-related information); Request No. 6 (for each employee with a production number, all documents related to incentives, signing bonuses or other monies paid upon accepting a position at Merrill Lynch); Request No. 14 (for each employee with a production number, data and documents regarding the distribution of IPOs); Request No. 33 (documents regarding the hiring, compensation, retention, treatment or termination of minority or female employees); Request No. 63 (all documents and data regarding the PDP, POA or similar broker training program, including any analysis of rates of success by gender or race).

[2] Plaintiffs propounded numerous document requests within this category. *See, e.g.*, Exhibit B (Plaintiff's First Requests) at Request No. 20 (documents and data regarding complaints of discrimination, harassment or retaliation); Request No. 34 (documents related to any investigation of complaints of race discrimination); Request No. 49 (documents relating to or reflecting any complaint of race discrimination, harassment or retaliation); Request No. 50 (documents regarding claims of race discrimination, harassment or retaliation including, EEOC files, including EEOC files and investigative files). *See also,* Plaintiff's Second Set of Class Requests for Production ("Second Requests"), annexed as Exhibit D, at Request 7, 8, 10, 17, 18, and 37.

4

Friedman at 3; March 6, 2007 letter from Dray to Friedman at 5-6; April 9, 2007 letter from Dray to Friedman at 2, collectively annexed as Exhibit E. Plaintiffs took no action to pursue this discovery.

Third, Plaintiffs seek "personnel and wage information" concerning employees who work at Merrill Lynch's Financial Advisory Center ("FAC").[3] Merrill Lynch objected to this request in its April 17, 2007 response to Plaintiffs' document requests (*see* Defendant's Objections and Responses to Plaintiffs' Third Set of Class Requests for Production, annexed as Exhibit F) and discussed its objections during a May 17, 2007 meet and confer with Plaintiffs' counsel. Plaintiffs had four months to compel this discovery but failed to take any action. Indeed, in their letter concerning discovery issues after the June 25 Conference, Plaintiffs did not even suggest that they were interested in pursuing FAC information in discovery. *See* July 18, 2007 letter from Bish to Lightfoot, Dray and Romanello annexed as Exhibit H, at 6.

Plaintiffs made a strategic decision to not file a motion to compel production as to each of these three categories. Merrill Lynch relied on Plaintiffs' abandonment of these overbroad and irrelevant requests and forged ahead with the collection, review, and production of millions of pages of documents and data, subject to its objections. Less than one week before the final discovery deadline, Plaintiffs suddenly changed course with this motion to compel. For understandable reasons, this type of conduct is not sanctioned by courts in this Circuit. *See*

---

[3] Plaintiffs propounded six requests that are within this category of information. *See, e.g.*, Plaintiffs' Third Set of Class Requests for Production, annexed as Exhibit G, at Request No. 20 (employment history and all other human resources data previously produced for FAs); Request No. 21 (all compensation plans and other documents sufficient to identify the manner in which ISAs are compensated); Plaintiffs' Request No. 22 (organization charts and documents sufficient to identify the reporting structure, titles and any restructuring of the FAC); Request No. 23 (job descriptions for all titles in FAC); Request No. 24 (all demographic analyses, studies, reports, or other documents regarding the FAC); Request No. 25 (documents regarding discussions or attempts to recruit African-Americans and other "diverse employees" to the FAC).

*Kanye West v. Eric "E-Smoove" Miller*, No. 05-C-4977, 2006 U.S. Dist. LEXIS 56243, at *13-17 (N.D. Ill. Aug. 11, 2006) (denying defendant's motion to compel production of documents because the motion was filed 11 days before the close of discovery and the moving party knew months before filing the motion that the nonmoving party objected to the production of the requested documents).[4] It would be manifestly unfair to reward Plaintiffs' conduct – and permit a *de facto* extension of discovery in the process – by granting their motion when they failed to take action earlier.

II. The Discovery That Plaintiffs Are Seeking Is Precluded By This Court's Rulings

At a hearing on June 18, 2007, this Court directed the parties to submit briefs that identified **all** outstanding discovery issues. *See* Transcript of Proceedings annexed as Exhibit I at 9:21-11:3. The purpose of these submissions was to provide the Court with context for existing discovery disputes and to inform the Court's decision on the length of time to extend class certification discovery. *Id.*

Plaintiffs' June 21, 2007 submission did not identify as a disputed issue Merrill Lynch's longstanding objection to the production of gender information. Nor did Plaintiffs'

---

[4] *See also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 341-343 (N.D. Ill. 2005) (denying in part class action plaintiffs' motions to compel because the motions were untimely filed on the day discovery closed, and the class could not claim any prejudice where they were on notice that the corporation objected to the discovery requests, they had the option to file a motion to compel months before the close of discovery, the materials sought by the class were irrelevant to the question of the timeliness of the motion to compel, and the class never filed a motion to enforce its document request); *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. North America, L.L.C.*, 2004 U.S. Dist. LEXIS 26861, at *13-20 (N.D. Ill. Dec. 29, 2004) (denying plaintiffs' motion to compel discovery that was filed four days before the close of discovery because plaintiff knew for a year that defendant refused to produce the requested production; and plaintiff failed to meet and confer in good faith under Rule 37(a)(2)(B) of the Federal Rules of Civil Procedure and Local Rule 37.2); *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001) (affirming the denial of a motion to compel production because "[i]n light of her lack of diligence in pursuing the perceived inadequacies in discovery, the district court did not abuse discretion in denying Ms. Packman's motion to compel after discovery was closed…").

6

submission take issue with Merrill Lynch's equally long-standing objection to the production of documents predating January 1, 2001. As such, this Court's June 18, 2007 ruling forecloses Plaintiffs from attempting to revive these discovery requests.

Furthermore, at the June 25 Conference, the Court instructed the parties to attempt to resolve discovery issues identified in their written submissions that the Court did not have an opportunity to address. Plaintiffs had identified their request for FAC documents and data in their brief but they did not follow up on this request after the June 25 Conference. In fact, Plaintiffs' letter about discovery issues sent after June 25, 2007 likewise made no mention of these issues. *See* Exhibit H at 6. Merrill Lynch's repeated attempts to meet and confer about any open discovery issues before Plaintiffs filed the Motion were rebuffed. *See* August 1, 2007 3:49 p.m. email from Dray to Bish; August 3, 2007 9:43 a.m. email from Dray to Bish; August 3, 2007 letter from Dray to Bish at 5, collectively annexed as Exhibit J.

III.     Plaintiffs Have Not Established That They Are Entitled To This Discovery

Even if Plaintiffs' Motion were timely and consistent with this Court's prior rulings – neither of which is true – Plaintiffs have failed to establish that they are entitled to this discovery.

First, gender information is irrelevant to this case, which is limited to allegations of race discrimination against African-Americans. Discovery requests regarding a particular protected characteristic must be narrowly tailored and address only the specific form of discrimination being alleged. *See, e.g.*, *Davis v. Precoat Metals*, No. 01 C 5689, 2002 U.S. Dist. LEXIS 13851, at *7 (N.D. Ill. July 26, 2002) (holding that plaintiff's discovery requests were proper because in an action alleging race and national origin discrimination, the requests were narrowly tailored to seek only discovery requests regarding other complaints alleging race and

national origin, and "do not seek information regarding other employees' age or sex discrimination complaints"). Indeed, courts across the country have barred plaintiffs from obtaining discovery as to groups of individuals unrelated to the purported discrimination alleged in the case.[5] By way of example, in an age discrimination case where the plaintiff sought race information based on the same rationale Plaintiffs are asserting here, the court soundly rejected the plaintiff's request. *See Prouty v. National Railroad Passenger Corp.*, 99 F.R.D. 545, 546 (D.D.C. 1983) (holding that plaintiff was not entitled to information regarding the race of

---

[5] *See, e.g., Marshall v. D.C. Water & Sewage Auth.*, 214 F.R.D. 23, 25 (D.D.C. 2003) (sustaining objection to interrogatory requesting the gender and age of defendant's employees in an action alleging race discrimination: "Because plaintiff has made neither a claim of sex discrimination nor age discrimination, the gender and age of the [defendant's] employees are irrelevant to the alleged race discrimination claim."); *Robbins v. Camden City Bd. of Educ.,* 105 F.R.D. 49, 61-62 (D.N.J. 1985) (holding in action alleging discrimination on the basis of race and age that interrogatories must be limited to race and age discrimination, and could not include charges of discrimination based on sex, religion, national origin or any other basis); *Zahorik v. Cornell Univ.,* 98 F.R.D. 27, 31 (N.D.N.Y. 1983) (plaintiffs alleging gender discrimination could not "conduct a general 'fishing expedition' into areas unrelated to their claims such as . . . discrimination claims based on factors other than sex"); *McClain v. Mack Trucks, Inc.,* 85 F.R.D. 53, 63 (E.D. Pa. 1979) (limiting discovery requests in an action alleging race discrimination "to the subject matter of racial discrimination" because whether defendant "discriminates against employees on the basis of religion, creed, gender or national origin is wholly irrelevant to his present claim"); *Smith v. Cmty. Fed. Savings & Loan Assoc.*, 77 F.R.D. 668, 671 (N.D. Miss. 1977) ("Since plaintiff's complaint alleges only racial discrimination any information regarding the sex of employees or applicants is not relevant."). *See also Gen. Ins. Co. of Am. v. EEOC*, 491 F.2d 133, 136 (9th Cir. 1974); *Laurenzano v. Lehigh Valley Hosp., Inc.*, 2001 U.S. Dist. LEXIS 10534, at *6 (E.D. Pa. July 18, 2001); *White v. United States Catholic Conference*, No. 97-1253, 1998 U.S. Dist. LEXIS 11832, at *14-17 (D.D.C. May 22, 1998); *Moss v. Stinnes Corp.,* No. 92 Civ. 3788, 1997 U.S. Dist. LEXIS 13905, at *3 (S.D.N.Y. Sept. 11, 1997); *Nelson v. Telecable of Overland Park, Inc.,* No. 95-2007, 1996 U.S. Dist. LEXIS 2764, at *9-10 (D. Kan. Feb. 29, 1996); *Gheesling v. Chater,* 162 F.R.D. 649, 651 (D. Kan. 1995); *Finch v. Hercules Inc.,* 149 F.R.D. 60, 63 n.3 (D. Del. 1993); *Gleason v. SMH(US), Inc.*, No. 90-8118, 1992 U.S. Dist. LEXIS 1805, at *8 (E.D. Pa. Feb. 11, 1992); *Collins v. J.C. Nichols Co.*, No. 90-0389-CV-W-8, 1991 U.S. Dist. LEXIS 3285, at *4 (W.D. Mo. Mar. 12, 1991); *Welker v. SmithKline Beckman*, No. 89-866, 1989 U.S. Dist. LEXIS 12207, at *7 (E.D. Pa. Oct. 12, 1989); *Shipes v. Trinity Indus.,* 40 Fair Empl. Prac. Cas. 1115, 1118 (E.D. Tex. 1981); *Duncan v. Md.,* 78 F.R.D. 88, 96 (D. Md. 1978); *Johnson v. S. Ry. Co.,* No. C77-175A, 1977 U.S. Dist. LEXIS 12167, at *19-20 (N.D. Ga. Dec. 27, 1977); *Ylla v. Delta Air Lines, Inc.,* No. 76-1503A, 1977 U.S. Dist. LEXIS 13832, at *15 (N.D. Ga. Sept. 23, 1977); *EEOC v. United States Fid. & Guar. Co.,* 420 F. Supp. 244, 247 (D. Md. 1976).

defendant's employees as sought in interrogatories where plaintiff only alleged age discrimination in his complaint; also rejecting plaintiff's argument that the race data was necessary "to present statistical evidence showing a pattern of age reduction in defendant's work force . . . otherwise this lack of information could seriously distort his statistical analysis.") (internal quotation marks omitted).

Moreover, Plaintiffs' argument that they need information concerning gender information to perform more accurate compensation analyses is a red herring. Gender information is not a relevant or valid factor in any compensation analysis because there is no allegation or evidence of gender discrimination during the 2001-2006 class period. Plaintiffs' reference to the *Cremin* class action lawsuit alleging gender discrimination is irrelevant: The class period in the *Cremin* case started in January 1994 and ended in July 1998 – more than two years before the class period commenced in this case.[6] For gender to be a valid factor in a compensation analysis, therefore, the Court either would have to assume gender discrimination or the parties would have to engage in a trial on this issue in the context of this race discrimination case. The first alternative would be prejudicial and the second would waste time and resources of both the parties and the Court on a collateral issue – in effect a trial within a trial.[7]

---

[6] In any event, Plaintiffs' reliance on the *Cremin v. Merrill Lynch* opinion annexed to their Motion is misplaced. In that post-class certification decision, the Court simply held that class members who were adjudicating their individual claims were entitled to argue in those proceedings that "determinations made in a prior hearing should be accorded *res judicata* or collateral estoppel effect." *Cremin v. Merrill Lynch,* 328 F. Supp. 2d 865, 868 (N.D. Ill. 2004).

[7] Moreover, the basic premise of Plaintiffs' argument, which is to compare all African-Americans to white males is invalid and fatally flawed. If the court were to assume gender discrimination, comparing all African-Americans (both men and women) to white males as Plaintiffs propose would disproportionately favor Plaintiffs because of the assumed sex discrimination. Further, comparing African-American females to white males would give rise to a battle of the experts about whether the disparity in compensation between the African-

9

Second, Plaintiffs have not established that they are entitled to documents concerning complaints from 1997 to 2000. Complaints that predate the 2001-2006 class period are not relevant to Merrill Lynch's policies and practices during the class period – what is at issue for class certification. Plaintiffs' argument for this entire production is based on the thin reed that one employee who assessed management candidates at the Management Assessment Center had been the subject of a complaint "in the late 1990s" (perhaps predating even 1997). Plaintiffs cannot possibly justify an entire production on the single example of this one person, particularly when this phase of discovery is limited to class certification issues and is therefore limited to the policies and practices of Merrill Lynch during the class period. Moreover, Merrill Lynch already produced documents from this employee's personnel file because he was the subject of a complaint of race discrimination during the class period and documents about that complaint were in his file. This Court specifically ruled, at the June 25 Conference, that Merrill Lynch is *not* obligated to produce the complete personnel files that Plaintiffs sought, but only those documents in personnel files that concern post-2001 complaints of race discrimination.[8]

---

American females and the white males is due to the alleged race discrimination or the assumed gender discrimination. Thus, the analysis Plaintiffs would make if their request for gender information were granted would be rendered invalid under the Plaintiffs' own argument for that information.

[8] In addition, the burden of producing complaint documents from investigation and personnel files for the 1997-2000 time period would be enormous. For example, Merrill Lynch has four centrally-maintained sources for complaint files. During this period, the files from these sources were not catalogued in electronic form in the same manner and with the same frequency as in recent years. As such, Merrill Lynch would need to devote substantial resources to individually reviewing hundreds of complaint files to identify those that concerned complaints of race discrimination or retaliation against African-Americans and were made against employees in the U.S. Advisory division of the Global Private Client business unit. Moreover, the process for collecting these complaint files is made even more difficult because there may be multiple investigative files concerning a single complaint that reside with multiple custodians. Personnel files for branch office employees, who are almost always the subject of such complaints, are even more challenging to collect. Those files are retained locally in branch offices and storage facilities scattered throughout the United States. The effort to collect personnel files Merrill

Third, Plaintiffs have not established that they are entitled to "personnel and wage information" for FAC employees, known as Investment Service Advisors ("ISAs"). Plaintiffs' argument that ISAs are part of the putative class is no more than a transparent attempt to obtain this discovery: Plaintiffs do not reference ISAs or the FAC in their Second Amended Complaint;[9] none of the named Plaintiffs is or has been employed at the FAC; Plaintiffs did not seek any information about the FAC until their most recent request for production; and, since the beginning of document and data production, these individuals have clearly not been considered putative class members – ISAs are not even part of the U.S. Advisory Division, which is where Financial Advisors who comprise the putative class are employed, and they are supervised by a different management team. *See* Exhibit A at General Objection 3 (objecting to the production of information that does not concern Financial Advisors in the U.S. Advisory Division).

Indeed, Plaintiffs never claimed that ISAs were putative class members when they discussed their requests for FAC information during a meet and confer between the parties on May 17, 2007. At that time, Plaintiffs argued that FAC information was relevant because certain documents produced in discovery reflected the existence of a policy by Merrill Lynch to "steer"

---

Lynch has already agreed to collect, and to review and produce documents from them, has already taken an enormous number of hours. By contrast, there have been few documents to produce from these files. It could take several months to collect and produce what would likely be only a small number of documents from these personnel files.

[9] Plaintiffs' allegations cannot possibly be construed to include ISAs as putative class members, even under the most liberal reading of the Second Amended Complaint. As to Plaintiffs' hiring claim, ISAs are hired through a different process than FAs and there is no mention of that process in the complaint. As to training, ISAs do not go through the same training program as FAs and there is no mention of their training in the complaint. With respect to compensation, ISAs are not compensated the same way as FAs and there no allegations in the complaint concerning the way ISAs are compensated. Among other differences, unlike FAs, they are not divided into quintiles based on their production, they do not build or maintain their own client base (*i.e.,* books of business), they do not receive account distributions, and they are not eligible for promotion through the Management Assessment Center.

11

African-Americans to the FAC. Plaintiffs' counsel agreed to identify these documents from the production, but they never did. Instead, they filed a motion in which this theory is asserted "upon information and belief." This theory is particularly weak because there are only two FAC offices in the entire United States. It is difficult to imagine a nationwide policy or practice of "steering" African-Americans from 48 states to Jacksonville, Florida or Hopewell, New Jersey.[10]

In sum, Merrill Lynch has expended an enormous amount of time and financial resources over the past 14 months producing a virtual mountain of documents and data by the discovery deadline. If the information Plaintiffs now seek were truly relevant to class certification issues – and they have failed to establish that it is – Plaintiffs should have pursued it long ago. It is time for class certification discovery to close once and for all.

---

[10] In addition, it would be unduly burdensome to respond to these requests because they are overly broad. For example, one document request seeks the employment history and all human resources data for ISAs that had been previously produced for Financial Advisors in this case. *See* Exhibit G, at Request No. 20. That is a huge undertaking which would require weeks, if not months, to complete. Plaintiffs are simply not entitled to engage in a burdensome fishing expedition for discovery about the FAC.

## **CONCLUSION**

For the foregoing reasons, Merrill Lynch requests that Plaintiffs' Motion to Compel be denied in its entirety.

Dated: September 4, 2007

> By: s/Lori E. Lightfoot
> MAYER, BROWN, ROWE & MAW LLP
> Lori E. Lightfoot
> 71 S. Wacker Drive
> Chicago, IL 60606
> (312) 782-0600 (Phone)
> (312) 701-7711 (Facsimile)
>
> --and--
>
> WEIL, GOTSHAL & MANGES LLP
> Jeffrey S. Klein
> Nicholas J. Pappas
> Salvatore A. Romanello
> 767 Fifth Avenue
> New York, NY 10153
> (212) 310-8000 (Phone)
> (212) 310-8007 (Facsimile)

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of Merrill Lynch's Memorandum In Opposition to Plaintiffs' Motion to Compel was served upon counsel for Plaintiffs:

> Linda Friedman
> Mary Stowell
> George Robot
> Stowell & Friedman, Ltd.
> 321 S. Plymouth Court, Suite 1400
> Chicago, Illinois 60604

via email and ECF system on September 4, 2007.

By: s/Lori E. Lightfoot