**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEORGE MCREYNOLDS, et al. ) <br> on behalf of themselves and all others ) <br> similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MERRILL LYNCH, PIERCE, FENNER ) <br> & SMITH, INCORPORATED ) <br> ) <br> Defendant. ) | Case No. 05 C 6583 <br><br> Judge Robert W. Gettleman <br><br> Magistrate Judge Morton Denlow |

**PLAINTIFFS' OBJECTIONS TO DEFENDANT'S MOTION
FOR TWO MONTH EXTENSION TO SERVE EXPERT REPORTS**

Plaintiffs, on behalf of themselves and all others similarly situated, submit their objections to Defendant's motion for a two-month extension to serve its expert reports. As explained below, Defendant has not been candid with the Court in seeking this two-month extension. Plaintiffs respectfully submit that a motion that misrepresents the record is not worthy of consideration and should be denied for this reason alone. Alternatively, Defendant's motion for two additional months to serve its expert reports should be denied because there is no justification for a two-month extension and such an extension prejudices Plaintiffs and further delays the case schedule.

**ARGUMENT**

Defendant engages in a three-pronged exaggeration of the record to justify adding two months to the expert discovery schedule. First, Defendant misstates the date that its expert reports are due. Second, Defendant grossly overstates the amount of time provided to Plaintiffs

to prepare their expert reports. Third, Defendant unfairly and erroneously relies on its tired practice of attempting to shift blame to Plaintiffs for its delay.

**A.     Defendant's Expert Reports Were Due on September 18, Plus 3 Days.**

Although Defendant seeks an additional two months from the deadline set by this Court, in its Motion for Extension, Defendant claims that its needs only "a four-week" extension, from October 13, 2008 to November 14, 2008, to prepare its expert reports. (Defendant's Motion at p. 2). Defendant knows that its expert reports were never due on October 13, 2008, and the "four week" extension is a gross manipulation of the facts. This Court ordered Defendant to submit expert reports on September 19, 2008. (Exhibit A, Order dated May 20, 2008). Pursuant to the parties' agreement, Defendant was entitled to an additional three days due to Plaintiffs submitting their expert reports on June 5, 2008, rather than June 2, 2008. Thus, the requested extension is for two months.

As Defense Counsel, represented on July 22, 2008 to the Court:

MS. LIGHTFOOT:

> **Our reports are technically due on September 19th. Although there is a few more days built in because we, as a courtesy, gave the plaintiff a few extra days** as well. Right now, **I think our reports are due on September 24th or 25th. And, we're on track.** We were just in front of Judge Gettleman this morning. He set another status for us for October 7th. We'll be back in front of him, and we're hopeful at that time we'll get a schedule for class cert.
>
> (Ex. B, July 22, 2008 Transcript, at 2-3; *see also* Ex. C, at 8:21 – 9:03 (stating to J. Gettleman that expert reports due September 24 or September 25)).

The Court responded, "It is about time." (Ex. B, at 3.) Thereafter, the Court set a status call for October 7, 2008 to coincide with a status set by Judge Gettleman for the parties to report back after Defendant produced its experts' reports. (Exhibit B, Transcript of Proceedings, July 22,

2

2008 before Magistrate Judge Denlow)(Exhibit C, Transcript of Proceedings, July 22, 2008 before Judge Gettleman).

Notwithstanding its clear representations to the Court on July 22, 2008, Defendant now claims that its reports are really due on October 13, 2008 because on June 25, 2008, Plaintiffs sent a revised report from one of their experts, Dr. Bielby, to correct minor typographical errors. (Defendant's Motion at p. 2). Defendant knew about the June 26, 2008 revised report on July 22, 2008 when it represented to this Court (and to Judge Gettleman) that its own expert reports were due on September 19, 2008, plus 3 days. This "argument" that the real due date is October 13, 2008 manipulates the record in a manner that should not be condoned and is utter nonsense.

As demonstrated above, the correction of typographical errors in Dr. Bielby's report did not extend the due date for Defendant's experts' reports.

**B. Plaintiffs Did Not Have Six Months To Complete Expert Reports**

Defendant next attempts to justify seeking a two-month extension by arguing that Plaintiffs had six months to serve their experts' reports. This is equally absurd. Defendant falsely represents that the Court extended the expert schedule in its December 20, 2007 Order to "account for additional fact discovery that needed to be completed and therefore required an extension of the expert discovery entered on or about August 27, 2007." (Defendant's Motion at footnote 1). Thus, Defendant computes that Plaintiffs had six months—December 20, 2007 to June 5, 2008 to prepare their reports. Defendant's statements that the discovery schedule was lifted to allow for additional fact discovery and that Plaintiffs had six months to prepare their experts reports manipulate the record in a manner that should not be condoned.

3

*The First Expert Schedule*

The first expert schedule was not lifted to allow for additional fact discovery. The first discovery schedule set the due date for Plaintiffs' expert reports as November 5, 2007. (Exhibit D, Order of August 27, 2007). As the Court may recall, the parties appeared before the Court in August 2007 and requested the lengthy schedule to exchange experts' reports. The Court understandably expressed concern about the amount of time to complete expert discovery, but Court entered the schedule largely because it was agreed and the Court deferred to the attorneys.

Defendant falsely claims that the schedule was upset because "additional fact discovery" needed to be completed. In fact, on October 26, 2007, Defendant informed Plaintiffs that Defendant made an error with the data it produced and that Plaintiffs had been studying for over a year and that the data was "incomplete." (Exhibit L, Letter from Suzanne E. Bish to Counsel, dated October 29, 2007). Thus, Plaintiffs spent hundreds of thousands of dollars in expert costs and countless attorney hours analyzing data that was not reliable. Defendant advised Plaintiffs that it would send "new data" soon, making it impossible for Plaintiffs to produce expert reports on November 5, 2007. Thus, the first schedule was blown up not by the need for "additional fact discovery," but by Defendant's failure to compile and produce accurate data in response to Plaintiffs' discovery requests, to the considerable prejudice of Plaintiffs.

*The Second Expert Schedule*

The second expert discovery schedule was as generous as the first. Plaintiffs explained that they had questions about the new replacement data set and would need approximately 120 days from when the data set was complete and answers to questions about the new data set to file expert reports. Thus, the Court set a schedule and required Defendant to respond to Plaintiffs'

4

questions by January 18, 2008. (Exhibit E, Order of December 20, 2007). The Court also barred Defendant from producing additional data without Court approval if Plaintiffs objected. (*Id.*)

*Ongoing Data and other Problems Evidencing a Lack of Professional Courtesy*

As the Court may recall, data issues remained unresolved well after January 18, 2008. On March 24, 2008, notwithstanding the December 20, 2007 Order, Defendant produced additional data. Plaintiffs appeared before the Court after Defendant refused to provide a record layout for certain data or to answer Plaintiffs' questions that arose from the production of new data. (Exhibit F-1, Transcript of Proceedings, April 23, 2008 (9:45 am))(Exhibit F-2, Transcript of Proceedings, April 23, 2008 (10:36 a.m.))(Exhibit H, Transmittal letter for data dated March 24, 2008). After begging for answers to data questions, Plaintiffs were forced to impose on the Court to gain assistance with the data. (Exhibit J, Email from Linda D. Friedman to Jason Bonk, April 21, 2008). Not only has Defendant consistently refused to assist Plaintiff in understanding the data, Defendant often demeaned Plaintiffs' counsel for asking questions when it asked the Court to prohibit Plaintiffs' counsel from "pestering" Defendant with questions about the data.

The Court deemed Plaintiffs' request for information "reasonable" and explained, "I think they should have access to a tech person that can explain you know, talk tech language to them." (Ex. F-2, at 13). The Court also acknowledged that Plaintiffs request for a record layout was reasonable, "I'll give you a record layout if that's one of your questions." (Ex. F-1, at 11). The Court resolved the dispute between the parties by giving Merrill Lynch the option of producing a truncated data set to Plaintiffs or providing a technical person to explain how Plaintiffs' consultants could likewise cut the data given their questions about the record layout and other problems.[1] (Ex. F-2)

---

[1] Evidencing a further lack of professional courtesy (and decency), Defendant's filed a motion to disqualify the law firm of Stowell & Friedman, Ltd. at the same time Plaintiffs' lawyers were trying to

5

Defendant opted to produce a truncated data set. Again, evidencing a lack of professional courtesy, Defendant demanded Stowell & Friedman deliver a check to Merrill Lynch for $7,880.00 in advance of receiving the data even though Stowell & Friedman and Merrill Lynch have been in battle for nearly 15 years, and Merrill Lynch had no reason to believe that Stowell & Friedman would not honor its word and pay for the data. (Exhibit G, Email from Jason Bonk to George Robot 4/25/08). Thus, the final data was cut and sent to Stowell & Friedman on May 1, 2008. Predictably, there were data errors again, and the data had to be re-produced on May 8, 2008 and again on May 23, 2008. (Exhibit J, Email from Elizabeth Beiser to George Robot, May 7, 2008 and Email from Jason Bonk to George Robot, May 6, 2008, Email from George Robot to Jason Bonk, May 22, 2008).

*The Third Expert Schedule*

The Third Expert Schedule provided the Plaintiffs' until June 2, 2008 to file their expert reports. (Ex. A). Despite receiving the final data cut in May, 2008, Plaintiffs produced expert reports on June 5, 2008. Given these circumstances, Plaintiffs surely did not have six months to complete their expert reports.

**C.     The Blame Game is Equally Contrived**

As a last resort, Defendant blames Plaintiffs for Defendant's inability to meet the expert deadline. Again, Defendant told the Court (and Judge Gettleman) that it was "on track" to meet the September deadline when it appeared before the Court on July 22, 2008. Now, Defendant claims that Plaintiffs failed to produce certain data runs to Defendant back in June, so Plaintiffs are somehow responsible for Defendant's delay. When Defendant sought intermediate program files, Plaintiff immediately advised Defendant: 1) of its position that the Stipulation entered into

---

meet the expert deadline. Judge Gettleman denied the motion to disqualify. (Dkt. 206, Order of Judge Gettleman, March 26, 2008).

by the parties expressly prohibited discovery of these files and allowed an expert not to retain the intermediate steps; and 2) that, therefore, the files were not retained.[2] Rather than timely raising this matter with the Court, Defendant created the files from the programming and outputs Plaintiffs produced to Defendant in accordance with the Stipulation. Defendant did not raise this matter with the Court because there were no grounds to accuse Plaintiffs' counsel of wrongdoing. Trying now to blame Plaintiffs for their inability to complete the reports is shameless.

## CONCLUSION

Accordingly, Plaintiffs object to Defendant's request for a two-month extension of time to file expert reports. Because Defendant's motion rests on exaggerations and misstatements, it should be denied. Defendant states that Plaintiffs refused to grant professional courtesy or an extension of time. This representation, too, is inaccurate. Plaintiffs advised Defendant that they would agree to a reasonable extension of time and proposed one to two weeks, an offer Defendant flatly rejected. Plaintiffs now ask that the Court deny Defendant's request for an extension or, at most, grant Defendant an extension to file its expert reports only until October 5, 2008 so that the parties may report to Judge Gettleman on October 7, 2008 and move forward with class certification briefing.

Date: September 3, 2008

                                        Respectfully submitted,

                                        By:

                                            /s/ Linda D. Friedman

---

[2] Indeed, Plaintiffs' counsel explained that due to the sheer size and logistics of the data, its experts did not have the capacity to store this unnecessary, intermediate data.

Mary Stowell – Attorney No. 02750015
Linda D. Friedman – Attorney No. 06190092
Suzanne E. Bish – Attorney No. 06242534
**STOWELL & FRIEDMAN. Ltd.**
321 S. Plymouth Court
Suite 1400
Chicago, Illinois 60604
(312) 431-0888

## **CERTIFICATE OF SERVICE**

      I, Linda D. Friedman, an attorney, hereby certify that on September 3, 2008, I caused a true and correct copy of the foregoing *Objections to Defendant's Request for Two Month Extension of Time* to be served via ECF on the following counsel of record:

| | |
|---|---|
| Jeffrey S. Klein | Lori Lightfoot |
| Nicholas J. Pappas | Mayer Brown Rowe & Maw |
| Salvatore Romanello | 71 S. Wacker Drive |
| Weil, Gotshal & Manges LLP | Chicago, IL 60606 |
| 767 Fifth Avenue | phone: (312) 782-0600 |
| New York, NY 10153 | fax: (312) 701-7711 |
| phone: (212) 310-8000 | llightfoot@mayerbrownrowe.com |
| fax: (212) 310-8007 | |
| jeffrey.klein@weil.com | |

      /s/ Linda D. Friedman

Mary Stowell - Attorney No. 02750015
Linda D. Friedman – Attorney No. 06190092
Suzanne E. Bish – Attorney No. 06242534
**STOWELL & FRIEDMAN. Ltd.**
321 Plymouth Court, Suite 1400
Chicago, IL 60604
(312) 431-0888