IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE MCREYNOLDS et al., Individually on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 05 C 6583 |
| vs. | ) ) | Judge Robert W. Gettleman |
| MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, | ) ) ) ) | Magistrate Judge Denlow |
| Defendant. | ) | |

**STATEMENT OF UNCONTROVERTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (REDACTED)**

Lori E. Lightfoot
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600 (Phone)
(312) 701-7711 (Facsimile)

Jeffrey S. Klein
Nicholas J. Pappas
Salvatore A. Romanello
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000 (Phone)
(212) 310-8007 (Facsimile)

*Attorneys for Defendant*
*Merrill Lynch, Pierce, Fenner*
*& Smith, Incorporated*

Pursuant to Local Rule 56.1(a)(3) of the Local Rules for the United States District Court for the Northern District of Illinois, defendant Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch") submits the following statement of uncontroverted material facts in support of its motion for partial summary judgment holding that Merrill Lynch's incentive compensation program does not violate Title VII or §1981.

**UNCONTROVERTED FACTS**

**I.     The Parties and the Litigation**

1. Merrill Lynch is a securities firm that offers financial and wealth management services, and it is the nation's largest provider of brokerage and brokerage-related services. Def. Answer to Sec. Am. Compl. ¶3; O'Neal Dep. at 145 (Bonk Aff. Ex. A).[1] More than 15,000 financial advisors ("FAs") are employed by Merrill Lynch to assist the firm's clients in identifying and reaching their financial goals through a diverse range of investment strategies and products. Def. Answer to Sec. Am. Compl. ¶3; O'Neal Dep. at 145 (Bonk Aff. Ex. A).

2. The plaintiffs in this litigation—George McReynolds, Maroc Howard, LaRue Gibson, Jennifer Madrid, Frankie Ross, Marva York, Leslie Browne, Henry Wilson, LeRoy Brown, Glenn Capel, Christina Coleman, J. Yves LaBorde, Marshell Miller, Carnell Moore, Mark Johnson, Cathy Bender-Jackson, and Stephen Smartt—are current and former employees of Merrill Lynch. Sec. Am. Compl. at 1, ¶2. They assert claims of racial discrimination under Title VII and §1981, and they seek to represent a class of former and current African American FAs in that regard. *Id.* ¶¶2, 4-7, 44, 48-56.

3. This lawsuit has been pending for nearly three years, *see* Orig. Compl., and extensive discovery has taken place during that time. For example, Merrill Lynch has produced approximately 2.5 terabytes of data, over 6.6 million pages (approximately 2,600 boxes) of documents, and seventeen depositions, including a deposition regarding Merrill Lynch's U.S. Based Financial Advisor Incentive Compensation Program, pursuant to Federal Rule of Civil Procedure 30(b)(6). Def. Resp. in Opp. to Pl. Mot. to Compel Info. Re. Data, at 1; Def. Mem. in Opp. to Pl. Mot. to Compel Resp. Data and Rel. Info. and Relief, at 1-2;[2] Hogarty Dep. at 5-6 (Bonk Aff. Ex. B).

---

[1] The exhibits attached include all documents referenced herein that are not already on file with the Court.
[2] The memorandum notes that 4.5 million pages of documents had been produced by Merrill Lynch as of September 2007, but due to discovery that has taken place since then, the firm's discovery production currently includes over 6.6 million pages of documents.

4. Plaintiffs allege that "[j]urisdiction is based on 28 U.S.C. §§1331 and 1343, and principles of pendant and supplemental jurisdiction." Sec. Am. Compl. ¶1.

5. Plaintiffs' Second Amended Complaint does not allege a statutory basis for venue, but 28 U.S.C. §1391 addresses venue in district courts generally and 42 U.S.C. §2000e-5(f)(3) addresses venue for claims under Title VII.

## II. Merrill Lynch's National Compensation Program for Financial Advisors

6. Between 2001 and 2006, as well as before and after that time, Merrill Lynch has compensated FAs through a combination of salaries and incentive pay. Hogarty Aff. ¶2. Salaries generally cover minimum wage requirements, while incentive pay is determined according to the firm's national U.S. Based Financial Advisor Incentive Compensation Program ("FA Compensation Program"). *Id.* Salaries generally are only a fraction of, and virtually always exceeded significantly by, annual incentive pay and, as a result, any differences in FAs' compensation virtually always result from differences in their incentive pay. *Id.* ¶9.

7. Guides explaining the FA Compensation Program are distributed to FAs each year. *See* Hogarty Dep. at 254 (Bonk Aff. Ex. B).

### A. Application of the Incentive Compensation Grid

8. Under the FA Compensation Program, Merrill Lynch calculates incentive pay based on objective measures of FAs' production levels, *i.e.*, based on the fees or other revenues generated when FAs' clients purchase products or services. Hogarty Aff. ¶2; *see also* Hogarty Dep. at 43-45 (Bonk Aff. Ex. B). Rules governing the calculation of incentive pay are summarized in a compensation grid, which is included in the guides explaining FA compensation. MLE 00012.000142-43 (Bonk Aff. Ex. C); MLE 00040.000831-38; MLE 00040.000654-55; MLE 00113.000078-79; MLE 00040.000588-89; MLE 00040.000554-55 (Bonk Aff. Ex. D).[3]

9. ███████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████

---

[3] The 2002 guide provides an example of the rules governing the FA Compensation Program, and it is attached in its entirety as Exhibit C to the Bonk Affidavit. Also attached are summaries of the compensation grid and other relevant provisions from the guides for 2001 through 2006. *See* Bonk Aff. Ex. D. Of course, upon the Court's request, Merrill Lynch would provide the entire guides for all years 2001 through 2006.

2

██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████

10. Although some payout rates and other rules contained in the compensation grid have changed over time, the grid itself has applied before, during, and after 2001 through 2006. Hogarty Aff. ¶¶7-8.



██████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

███████████████████████████████████████████
██████████████████████████

███████████████████████████

████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████

████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████
██████████████████

**B.     Small Households and the Financial Advisory Center**

15. Small household accounts may be serviced by FAs or transferred to and serviced by the firm's Financial Advisory Center ("FAC")—a central service and call center staffed by investment advisors and associates. Hogarty Dep. at 23-26 (Bonk Aff. Ex. B). (Prior to 2002, this service was called "Investor Advisory Service." *Id.* at 25.) ████████████████
████████████████████████████████████████
███████████████████████. *See, e.g.*, MLE 00012.000148 (Bonk Aff. Ex. C).

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████

4

C.   **Other Rules Governing FA Compensation**

17. Under the FA Compensation Program, other rules apply under particular circumstances. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

18. The FA Compensation Program includes long-term and other types of incentive compensation, such as stock-based compensation or bonuses, although these aspects of the program have varied by plan year. *See, e.g.*, *id.* MLE 00012.000149-52.

19. The FA Compensation Program does not govern the compensation of individuals participating in Merrill Lynch's Paths of Achievement program. Hogarty Aff. ¶10. Under this program, employees with relatively little prior experience in the financial services industry receive a different combination of salary and incentive pay for approximately two years while they participate in training and develop their client base. *Id.*

D.   **Development and Administration of the FA Compensation Program**

20. Compensating FAs based on their production and revenues is the standard practice in the wealth management and financial services industry. *Id.* ¶11; O'Neal Dep. at 53 (Bonk Aff. Ex. A).

21. Merrill Lynch's compensation grid links incentive pay with FAs' productivity and the profitability of their business. Hogarty Aff. ¶¶3-5; Hogarty Dep. at 50-51 (Bonk Aff. Ex. B); O'Neal Dep. at 222, 245 (Bonk Aff. Ex. A). For example, larger transactions or products that generate ongoing revenue streams tend to be more profitable for Merrill Lynch and its shareholders and often result in larger payouts to FAs. Hogarty Aff. ¶4; Hogarty Dep. at 50-51 (Bonk Aff. Ex. B). Likewise, FAs with higher levels of production and revenues annually are compensated at higher rates than FAs with lower production levels. Hogarty Aff. ¶5; Hogarty Dep. at 69-70 (Bonk Aff. Ex. B); O'Neal Dep. at 244-45 (Bonk Aff. Ex. A).

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

5

███████████████████████████████████

██

23. Each year, the FA Compensation Program is reviewed to determine whether it positions Merrill Lynch competitively in the marketplace and properly aligns FAs' interests with the interests of the firm, its shareholders, and its clients. Hogarty Dep. at 19 (Bonk Aff. Ex. B). FAs are among the individuals consulted during this review process. *Id.* at 19-20.

24. Changes are made, for example, to simplify the compensation program or to more closely align FAs' objectives with the firm's, its clients', and its shareholders' interests. *Id.* at 19, 31-32. The 2001 review of the FA Compensation Program, in particular, resulted in several changes that simplified incentive pay and provided opportunities for increasing it, especially with respect to more profitable transactions and accounts. Hogarty Aff. ¶7.

25. But during the relevant period, as well as before, Merrill Lynch has always applied— mechanically, objectively, and without discretion—a compensation grid setting incentive pay based on production and revenues. Hogarty Aff. ¶¶2, 8, 13; *see, e.g.*, MLE 00012.000142-43 (Bonk Aff. Ex. C); MLE 00040.000831-38; MLE 00040.000654-55; MLE 00113.000078-79; MLE 00040.000588-89; MLE 00040.000554-55 (Bonk Aff. Ex. D). Merrill Lynch designed and applies the compensation grid without regard to race. Hogarty Aff. ¶¶12-13; Hogarty Dep. at 40 (Bonk Aff. Ex. B).

26. Because FA production forms the basis of the firm's incentive-compensation program, earnings disparities between FAs virtually always result from differences in their production levels. Hogarty Aff. ¶9.



6

Respectfully submitted,

                s/Lori E. Lightfoot
                Lori E. Lightfoot
                MAYER BROWN LLP
                71 South Wacker Drive
                Chicago, Illinois 60606
                (312) 782-0600 (Phone)
                (312) 701-7711 (Facsimile)

                Jeffrey S. Klein
                Nicholas J. Pappas
                Salvatore A. Romanello
                WEIL, GOTSHAL & MANGES LLP
                767 Fifth Avenue
                New York, New York 10153
                (212) 310-8000 (Phone)
                (212) 310-8007 (Facsimile)

                *Attorneys for Defendant*
                *Merrill Lynch, Pierce, Fenner*
                *& Smith, Incorporated*

September 6, 2008