IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE MCREYNOLDS, et al. on behalf of themselves and all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED<br><br>  Defendant. | Case No. 05 C 6583<br><br>Judge Robert W. Gettleman<br><br>Magistrate Judge Morton Denlow |

## MOTION TO COMPEL

Plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Stowell & Friedman, Ltd., hereby move to compel Defendant Merrill Lynch to produce a data table with the names and addresses of its clients and a workable link to previously produced data. In support thereof, Plaintiffs state as follows:

 1. This action was brought on behalf of a class of African American Financial Advisors at Merrill Lynch.

 2. On November 18, 2008, Plaintiffs filed a Memorandum in Support of Class Certification, a copy of which is attached hereto. (Exhibit 1).

 3. Plaintiffs present the following undisputed compensation disparities in support of class certification:

| Annual Compensation Percentage Differences Between African American & White FAs | | Standard Deviations |
|---|---|---|
| 2001 | African American brokers were paid 33.57% less | 6.57 |
| 2002 | African American brokers were paid 36.53% less | 7.37 |
| 2003 | African American brokers were paid 33.23% less | 6.73 |
| 2004 | African American brokers were paid 37.98% less | 8.03 |
| 2005 | African American brokers were paid 41.81% less | 9.05 |
| 2006 | African American brokers were paid 42.34% less | 9.07 |

1

4. Plaintiffs' argue that these compensation disparities are caused by Merrill Lynch's national policies and uniform practices. Plaintiffs produced two expert reports in support of class certification.

5. On November 18, 2008, Merrill Lynch served Plaintiffs with eight expert reports. The expert reports do not contest the existence of the above compensation disparities. Instead, as Plaintiffs understand, the bulk of the expert testimony presents what Merrill Lynch believes is a class-wide defense to the compensation disparities: whites have more money than African Americans and, therefore, white FAs at Merrill Lynch have better access to wealth from which to generate commissions. This theme was first introduced by Merrill Lynch executives who when asked to explain the reason for entrenched racial disparities at Merrill Lynch, testified that African American FAs are disadvantaged because they must "cross racial boundaries" and lack access to social networks of wealthy individuals. (*See* Ex. 1, Memorandum in Support of Motion for Class Certification at 22.) One executive explained that to be successful, African Americans must "cross into the white community." *Id.* at 22. He explained that an African American FA might prospect a client over the phone with success only to meet for the first time and have the prospective client realize the FA's race; the African American FA would then have "an additional need to cross over and dissipate that" barrier. *Id.* at 22. Merrill Lynch believes that since "the concentration of wealth in most parts of this country is mostly in the hands of whites," African Americans face an additional burden to reach across racial and cultural barriers and reach white wealth. Exhibit 1 at 22.

6. As part of the expert analysis, Merrill Lynch studied its own clients. First, Merrill Lynch internally ran the names and addresses of its clients and provided to one of its experts what it calls the "100 block" address for each client, but without names. For example, a client such as Stowell & Friedman, Ltd., located at 321 South Plymouth Court appears without the firm name and residing at the 300th block of Plymouth Court. Second, it studied the data to determine how asset values correlate to the race of the Financial Advisor responsible for the account and the race of the client. Race of client was speculated based on address.

7. Plaintiffs seek to demonstrate that the study does not meet the standards imposed by Federal Rules of Evidence Rule 702. Testimony by Experts.

2

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

8. Specifically, Plaintiffs seek to demonstrate that the expert testimony is not based upon sufficient data or facts, is not the product of reliable principles and methods and that Merrill Lynch's expert has not applied the principles and methods reliably to the facts of the case. Plaintiffs seek to impeach the study by showing that Merrill Lynch supplied the "100-block" address for its clients but neglected to inform its experts that the addresses included businesses or business addresses for individuals. For example, plaintiffs believe that the actual addresses will demonstrate that Merrill Lynch includes not only individuals but also business addresses such as the Sears Tower or other commercial or rental property. This is relevant because Merrill Lynch's expert relies on the "100-block" address to predict race of clients and wealth of clients through the value of home ownership. For example, Merrill Lynch assigns race based on census connected to address. It also assumes that all persons live at the address and own property at the address. Thus, all employees listed at a business address are presumed to live at the address of employment and own the business address as real estate. Thus, the actual addresses and names of the clients will demonstrate that the study is not scientific and is so seriously flawed that it does not meet admissibility standards. Plaintiffs requested the underlying data, but Merrill Lynch refuses to produce addresses for clients. Because the evidence is relevant, it should be produced.

9. Further, during class discovery of this case, Plaintiffs were aware of the fact that Merrill Lynch might raise as a defense the issue of whether African American Financial Advisors are able to successfully prospect white clients. Plaintiffs knew that Merrill Lynch in the course of its business racially profiled its clients using an outside vendor who was provided the names of clients and the addresses. Plaintiff sought this information from Merrill Lynch, including underlying data it provided to this vendor. (*See* Ex. 2) It also served a subpoena on the third party vendor. (*See* Ex. 3). Merrill

Lynch responded by serving on Plaintiffs a draft Motion to Quash the Subpoena in which it charged that Plaintiffs were engaged in a "fishing expedition" in search of information that was not relevant. (*See* Ex. 4). Merrill Lynch also threatened the third party vendor should it produce the addresses and names to plaintiffs. (*See* Ex. 5). Upon being assured that the addresses and names were not relevant to class certification, Plaintiffs consented to delay until discovery on the merits.

10. In December, this Court entered an order providing that Merrill Lynch could not produce additional data to Plaintiffs for class certification discovery without leave of Court, if Plaintiffs objected. (*See* Ex. 6). The purpose of this Order was to place an end date upon which Merrill Lynch could unilaterally decide to produce data for class certification. The Order was entered after Merrill Lynch unexpectedly produced data to Plaintiffs for the year 2000 after having objected to doing so throughout discovery. Plaintiffs sought to hold Merrill Lynch to its positions on class certification rather than facing further burden, expense and surprise with the continual production of new or revised data. Plaintiffs position was reasonable in light of clear Seventh Circuit case law holding a party cannot take the position in discovery that information is not relevant and then attempt to offer that information into evidence. *McNabola v. Chicago Transit Authority*, 10 F.3d 501 (7th Cir. 1993).

11. Merrill Lynch contends that Plaintiffs cannot discover the underlying data because it is private. It argues that its own experts did not rely on the data or have the data and thus Plaintiffs cannot have it either. However, Merrill Lynch cannot insulate the data from discovery by serving as its own consultant and cutting the data before tendering it to its own experts. The fact that Merrill Lynch, rather than the expert, performed this first task of cutting the data is not relevant. Plaintiffs are entitled to test the reliability of the data including the process used to cut the data. Indeed, Merrill Lynch had a choice to make in this case. It could refuse to produce the data on the grounds of privacy but it then would need to not use the data. What Merrill Lynch should not be allowed to do is demand that the Court protect the data from disclosure to Plaintiffs but allow Merrill Lynch to use the data in any manner it desires.

12. Because the data is directly relevant to the underlying studies, the names of clients and addresses should be produced. Alternatively, Merrill Lynch's expert studies should be struck.

WHEREFORE, Plaintiffs move the Court to Compel Merrill Lynch to produce the pre-cut data used by its experts to prepare the expert reports. The data must include the names and addresses of clients as well as a link to previously produced data.

Date: December 16, 2008

                                         Respectfully submitted,
                                         STOWELL & FRIEDMAN, LTD.

                               By:
                                         /s/ Linda D. Friedman

Mary Stowell - Attorney No. 02750015
Linda D. Friedman – Attorney No. 06190092
**STOWELL & FRIEDMAN, LTD.**
321 S. Plymouth Court
Suite 1400
Chicago, IL 60604
(312) 431-0888

5

## CERTIFICATE OF SERVICE

I, Linda D. Friedman, an attorney, hereby certify that on December 16, 2008, I caused a true and correct copy of the foregoing *Motion to Compel* to be served via ECF on the following counsel of record:

Jeffrey S. Klein
Nicholas J. Pappas
Salvatore Romanello
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
phone: (212) 310-8000
fax: (212) 310-8007
jeffrey.klein@weil.com

Lori Lightfoot
Mayer Brown Rowe & Maw
71 S. Wacker Drive
Chicago, IL 60606
phone: (312) 782-0600
fax: (312) 701-7711
llightfoot@mayerbrown.com

/s/ Linda D. Friedman

Mary Stowell - Attorney No. 02750015
Linda D. Friedman – Attorney No. 06190092
**STOWELL & FRIEDMAN, LTD.**
321 Plymouth Court
Suite 1400
Chicago, IL 60604
(312) 431-0888