IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
------------------------------------------------------------x
MCREYNOLDS, et al, individually on              :
behalf of themselves and all others             :
similarly situated,                             :
                                                :
                Plaintiffs,                     :
                                                :
- against -                                     :   Case No. 05 C 6583
                                                :
MERRILL LYNCH, PIERCE, FENNER                   :   Hon Robert W. Gettleman
& SMITH, INCORPORATED,                          :   Magistrate Judge Denlow
                                                :
                Defendant.                      :
------------------------------------------------------------x
```

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE
DENLOW'S DECEMBER 22, 2008 ORDER**

Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") submits this memorandum of law in opposition to Plaintiffs' Objections To Magistrate Judge Denlow's Order Denying Motion To Compel, And/Or Motion for Protective Order, filed on December 31, 2008 ("Objections").

**PRELIMINARY STATEMENT**

1. Plaintiffs advised this Court at a conference held on September 25, 2008 that they were committed to filing their motion for class certification before the conclusion of class certification discovery, and specifically did not want or need to review or respond to defendant's expert reports before doing so (Sept. 25, 2008 Tr. 4:13-5:7). Plaintiffs received Merrill Lynch's expert reports on November 14, 2008, and even after having reviewed them, they elected not to complete expert discovery before filing their motion for class certification, which they did four days later on November 18, 2008.

2. Now, in a complete about face, four weeks after receiving defendant's expert reports, on December 16, 2008 plaintiffs filed before Magistrate Judge Denlow a motion to compel production of the names and precise addresses of all of Merrill Lynch's

more than 3.2 million customers along with a link of such data to their account numbers and other financial data. Plaintiffs argued that they needed the additional fact discovery to assist them in preparing a rebuttal to one study in one expert's report, and presumably they will seek to use that information in further briefing in support of class certification.

      3. On December 22, 2008, Magistrate Judge Denlow denied plaintiffs' motion to compel the additional discovery (the "Ruling"). He reasoned that because Merrill Lynch had produced to the plaintiffs with its expert report the very same data used by Merrill Lynch's expert witness, Dr. Ali Saad, plaintiffs' belated attempt to obtain additional discovery was unwarranted. Dr. Saad never used or relied upon customer name or precise address data that plaintiffs were seeking. While there are numerous other grounds on which this Court could deny the Objections, Magistrate Judge Denlow's stated rationale suffices for the Court to find that the Ruling is neither "clearly erroneous" nor "contrary to law" pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, which is the standard for reversing the Magistrate's ruling. Fed. R. Civ. P 72(a). The standard is not what the plaintiffs' tell the Court without citation to any authority (Objections ¶ 9) – whether this Court would come to a different result on *de novo* review (See Point I, infra).

      4. As an alternative basis for denying plaintiffs' Objections, the Court also may adopt Magistrate Judge Denlow's observation that plaintiffs could test the 100-block data and Dr. Saad's reliance on that data through their own expert or through cross-examination at Dr. Saad's deposition, and raise any other issues they had directly with Dr. Saad (See Point II, infra).

      5. Though not addressed directly by Magistrate Judge Denlow, the Court also may deny the Objections on the alternative ground that production of the data poses a significant risk to the privacy and security of the financial data of more than 3.2 million customers. This is true because what plaintiffs seek is electronic data that links to actual customer account information which would thus give plaintiffs access to the most sensitive financial data of Merrill Lynch's customers such as how much money they have in Merrill Lynch accounts. Such risks greatly outweigh the speculative use to which plaintiffs seek to make of such data (See Point III, infra).

6. Plaintiffs offer no legal theory whatsoever that would support a contrary result, and they fail to cite even a single legal precedent in support of their Objections. Instead, plaintiffs seek to conflate the Ruling with entirely collateral issues relating to the content of Dr. Saad's expert opinions that plaintiffs' experts improperly failed to consider Financial Advisors' access to networks of wealthy potential investors, and that absent consideration of this crucial variable, their regression analyses are statistically incapable of supporting any inference of discrimination. Dr. Saad and other defense experts stated that, assuming plaintiffs' experts were correct in simply aggregating the production statistics of all Merrill Lynch Financial Advisors, plaintiffs' experts needed to include in their analysis the question of access to networks of wealthy investors.

7. Plaintiffs' motion seeks to blunt the impact of this opinion on this Court's consideration of their class certification motion. (Objections ¶¶ 2-3.) The Court should decline plaintiffs' invitation to engage prematurely in the consideration of the content of the experts' opinions, particularly before it even receives Merrill Lynch's papers in opposition to the class certification motion. It also should not allow plaintiffs at this late date to obtain discovery they never sought in the past, which inevitably would cause even more delay in the "set in stone" schedule for deciding class certification issues which the Court set at the December 4, 2008 conference.

8. Apparently recognizing the baselessness of their Objections, plaintiffs request as an alternative, entry of a protective order declaring that they have not waived their rights to certain discovery relating to Dr. Saad's report during "class merits" discovery. This request too should be rejected because a) Rule 72(a) requires this Court to consider (and deny) the Objections rendering moot plaintiffs' alternative motion, b) the request contravenes the Agreed Order, dated September 4, 2008 (Dkt. No. 227) governing the parties' exchange of expert reports in this case, and c) the request improperly requests an advisory opinion from this Court (See Point IV, infra).

## STATEMENT OF FACTS

9. Merrill Lynch delivered its expert reports to plaintiffs on November 14, 2008 and produced what it believed to be all documents and data relied upon by its

3

experts on November 21, 2008.[1] This production included data Dr. Saad originally requested from Merrill Lynch that would reflect the residential addresses of its customers. Merrill Lynch turned over such data to Dr. Saad as it maintained the data in the ordinary course of business, with the sole exception of the fact that the addresses were de-identified to reflect only the 100-block where the property is located. For instance, 456 Smith Street would appear as 400 Smith Street in the data produced; likewise, 4,566 Smith Street would appear as 4,500 in the produced data. Merrill Lynch undertook this de-identification in order to comply with important legal obligations under the Gramm-Leach-Bliley Act (15 U.S.C. §6801), Securities and Exchange Commission Regulation S-P (17 C.F.R. §248), and other applicable state privacy laws.

    10. The de-identification of customer addresses was a transparent, mechanical process, and not an effort by Merrill Lynch to "insulate the data from discovery by serving as its own consultant" as plaintiffs contend. Plaintiffs offer absolutely no foundation or factual support for their wild speculation that Merrill Lynch "manipulated" the address data. (Objections ¶ 7.) The 100-block addresses were produced with accompanying account numbers, because precise address information rather than the broadened 100-block, would enable linking this address data with other data that contains highly sensitive and detailed personal and account information regarding Merrill Lynch's customers. This private information includes, among other things, account asset value, account liability value, account activity, types of assets held with Merrill Lynch, investment patterns, and Internal Revenue Service tax activity related to each account held at Merrill Lynch. The potential harm resulting from the dissemination of this

---

[1] In Request For Production No. 2 of Plaintiffs' First Request For Production of Expert Documents, plaintiffs requested "[a]ll documents, data, and other things provided to, or received from, any Expert in connection with this litigation that were relied upon by an Expert in his or her report…." Plaintiffs' request for data relied upon by defendant's experts was specifically contemplated in paragraph 4 of the parties' September 11, 2007 Expert Discovery Stipulation and Order (the "September 11, 2007 Order") (Dkt. 175), which states that documents responsive to a parties' request for documents relied upon by the expert in rendering opinions set forth in the expert report "shall be produced no later than (5) days after service of the expert report." The parties likewise stipulated and this court ordered that "material or information . . . .not relied upon by the expert" . . . "shall be excluded from expert discovery." (Id.).

information would be irreparable, both from each individual client's perspective and to Merrill Lynch's business. The issue is not just counsel's agreement to keep the information confidential, but also the security precautions they and their experts take with the data.

11. Having failed to establish a basis for production of the data as part of expert discovery, plaintiffs reach back almost two years into the long history of class certification discovery, duly managed by Magistrate Judge Denlow, to argue that Merrill Lynch should have produced the customer name and address data during the fact discovery phase. This argument too fails because fact discovery on class certification issues ended on August 27, 2007. As Magistrate Judge Denlow stated at a hearing on September 6, 2007 when he denied a previous request by plaintiffs for additional fact discovery, "all good things must come to an end, and you're always going to find a reason why you need more and more and more." (Sept. 6, 2007 Tr. 40:12-13.) Plaintiffs did not file with this Court any objections to Magistrate Judge Denlow's closing of fact discovery.

12. Plaintiffs now argue that they were somehow lulled into not seeking customer name and address data by Merrill Lynch. Specifically, they assert that "[p]laintiffs reasonably concluded that if Defendants accused them of seeking information that was not relevant or likely to lead to relevant information that Defendant would not engage in racial profiling in its expert reports." (Objections ¶ 6.) The actual record demonstrates the opposite. Merrill Lynch did not assert a relevance objection to customer name and address data, because plaintiffs never requested such data. Rather, the data as to whose production Merrill Lynch objected on relevance grounds and referenced in plaintiffs' Objection was an entirely different data set relating to an "ethnicity approximation" of Merrill Lynch's customers.

13. Plaintiffs erroneously seek to manufacture a request for customer name and precise address by referring to Requests for Production Nos. 1 through 6 of Plaintiffs' Second Set of Class Requests for Production ("Requests"). Those Requests, sought underlying data that Merrill Lynch transmitted to and received from InfoUSA, a third party vendor contractually employed by Merrill Lynch to engage in selected

5

analyses used subsequently for strategic marketing practices. Those Requests make no reference to customer name and address, a fact plaintiffs now apparently concede for the first time, albeit in a somewhat misleading manner. (Objections ¶ 6) ("Plaintiffs sought information *similar* to this during discovery . . ."). Rather, the Requests related to the race approximation analysis conducted by InfoUSA ("InfoUSA Data"). (See, e.g., Email from L. Friedman to L. Lightfoot, dated Dec. 16, 2006, attached as Ex. 1 to Defendant's Opposition to Plaintiffs' Motion to Compel, dated Dec. 19, 2008 (Dkt. No. 267) ("Defendant's Opposition").)

14. The customer name and address data that Merrill Lynch transmitted to InfoUSA is an entirely different set of data than what plaintiffs currently are requesting. The customer name and address data transmitted to InfoUSA consisted of customer names and addresses as of a specific timeframe and for the purpose of approximating the ethnicity of clients. Plaintiffs repeatedly sought the resulting "ethnic approximation" data produced by InfoUSA in order to ascertain what this data disclosed as to the presumed race of Merrill Lynch clients for marketing purposes.

15. Shortly after learning of a subpoena improperly served by plaintiffs upon InfoUSA without any notice to Merrill Lynch, Merrill Lynch shared with plaintiffs' counsel a draft motion for protective order. (See Draft Motion for Protective Order, dated Apr. 27, 2007, attached as Ex. 4 to Plaintiffs' Motion to Compel, dated Dec. 16, 2008 (Dkt. No. 265).) After a number of conferences to discuss the issues, Merrill Lynch did not pursue any motion for protective order and instead produced the InfoUSA Data to plaintiffs in a format consistent with the parties' discussions related to what data fields would be included. Specifically, Merrill Lynch produced precisely the data that plaintiffs repeatedly stated they were seeking: The ethnicity approximation resulting from the InfoUSA analysis performed by InfoUSA, along with a unique account identifier, city and state of the account, zip code of the account, and the ethnic approximations. The InfoUSA analysis did not link customer name and address to customer account numbers, asset amounts, or other financial data plaintiffs now seek.

16. Due to the privacy concerns mentioned above and discussed in additional detail below, Merrill Lynch did not include customer names and addresses with the data

6

produced to plaintiffs. Defendant made this required step clear during ongoing communication between the parties and only because plaintiffs agreed to these redactions, did Merrill Lynch produce the InfoUSA data sought by plaintiffs**.**

17. Months following the June 7, 2007 production of the InfoUSA Data, plaintiffs indicated that they intended to file a motion seeking outstanding discovery, including "data [Merrill Lynch] maintains about its clients' racial and ethnic identity, including the data sent to and received from InfoUSA." (See Letter from S. Bish to L. Dray, dated Aug. 23, 2007, attached as Ex. 2 to Defendant's Opposition (Dkt. No. 267).) The following day, defendant's counsel sent a reply letter stating in part:

> [W]e do not recall having agreed to produce 'all data' sent to and received from InfoUSA. As we recall, *we* discussed our objections to this production in May, including that the production of this data would be so large it would dwarf even the voluminous data files we already have produced and **that we cannot turn over the names and addresses of all our clients**. You had agreed to narrow that request, but we do not recall having received any proposal from you. If your recollection is different, please let us know what you were expecting us to produce. We are available to meet and confer about any of these items. (emphasis added)

(See Letter from L. Dray to S. Bish, dated Aug. 24, 2007, attached as Ex. 3 to Defendant's Opposition (Dkt. No. 267).)

18. On August 27, 2007, plaintiffs filed a Motion to Compel Production of Documents, Data, Interrogatory Responses and Identification of Responsive Information (the "August 27, 2007 Discovery Motion"). In the August 27, 2007 Discovery Motion, Plaintiffs made no mention of customer name or address information, and even more generally, no mention of information transmitted to or from InfoUSA. Merrill Lynch understood that plaintiffs had concluded that they had no need for customer name and address data, having accomplished their stated objective of obtaining InfoUSA's ethnic approximation data. Plaintiffs' current claim to have had some kind of "understanding" as to whether Merrill Lynch's experts would conduct any analyses based on the race of its customers (Objections ¶ 6) is totally baseless, inconsistent with discovery proceedings in this case, and unsupported by any of the myriad communications between the parties during discovery.

7

**ARGUMENT**

I.  **Magistrate Judge Denlow's Conclusion That Plaintiffs Were Entitled Only to Such Documents and Data Actually Used or Relied Upon by Dr. Saad, Was Neither Clearly Erroneous Nor Contrary to Law**

19. In denying plaintiffs' motion to compel production of customer name and precise address data, Magistrate Judge Denlow articulated the standard applicable to production of documents by testifying experts under Rule 26(a)(2)(B)(ii). Rule 26(a)(2)(B)(ii) provides that the expert shall produce "the data or other information considered by the witness in forming [all opinions the witness will express]." Cf. Boyd v. Tornier, Inc., 2008 WL 2691727 (S.D. Ill. June 30, 2008). Consistent with this rationale, Magistrate Judge Denlow had previously ordered in the September 11, 2007 Order that expert discovery would be limited to documents and information actually used or relied upon by the parties' testifying experts, subject only to several additional limitations further narrowing discovery.

20. Stipulations by parties regarding expert disclosures are enforceable in this district, even if they narrow expert disclosures to a scope that is less than would otherwise have applied under the federal rules. See Lawrence Jaffe Pension Plan v. Household Int'l, Inc., 2008 WL 687220, at *2-4 (N.D. Ill. Mar. 10, 2008). Having failed to object to the September 11, 2007 Order, plaintiffs have waived their right to challenge it at this time. Muro v. Target Corp, 250 F.R.D. 350, 362 (N.D. Ill. 2007).

21. Plaintiffs argue in their Objections that "the standard is not what Defendant unilaterally chose to give its expert but what is relevant or likely to lead to relevant information and that includes the starting point which was the first cut of the data by Merrill Lynch." (Objections ¶ 7.) This argument contradicts Rule 26(a)(2)(B)(ii) and directly contravenes the September 11, 2007 Order and should be rejected.

22. Plaintiffs now reluctantly concede (Objections ¶ 6), that they never requested during fact discovery customer address data de-identified at the 100-block level. There is no basis for re-opening fact discovery now to accommodate plaintiffs' belated request. Pursuant to the September 11, 2007 Order concerning expert discovery, Merrill Lynch has produced to plaintiffs what its expert relied upon. What plaintiffs want

is more than what they are entitled to given the close of fact discovery 16 months ago and the scope of the Stipulation and Order concerning expert discovery.

23. It is well-established that information not requested by an adversary during fact discovery may subsequently be relied upon by a party's expert witness, so long as those new materials are produced subsequent to service of the expert report and so long as the adversary is not prejudiced. Orgler Homes, Inc. v. Chicago Reg'l Council of Carpenters, 2008 U.S. Dist. LEXIS 42878, at *11 (N.D. Ill. May 30, 2008); see also Armstrong v. Amstead Indus., Inc., 2004 U.S. Dist. LEXIS 12427, *rev'd on other grounds* (N.D. Ill. July 1, 2004).

24. Plaintiffs blatantly misstate the operative legal principles when they contend that this Court may reverse the Ruling if it "might have ruled differently" had it considered their motion in the first instance rather than Magistrate Judge Denlow. (Objections ¶ 9.) To the contrary, Rule 72(a) of the Federal Rules of Civil Procedure states that this Court may overturn a Magistrate Judge's ruling on non-dispositive matters only if the ruling was "clearly erroneous" or "contrary to law." It is well settled that this Court "should not overturn the [Magistrate Judge's] decision solely because it would have chosen the other view." American Motors Corp. v. Great Am. Surplus Lines Ins. Co., 1988 WL 2788, at *1 (N.D. Ill. Jan. 8, 1988). See also SmithKline Beecham Corp. v. Apotex Corp., 2000 WL 1310669, at *5 (N.D. Ill. Sept. 13, 2000). Rather, the Court should overturn only if it "is left with the definite and firm conviction that a mistake has been made." Weeks v. Samsung Heavy Indus. Co., 126 F.3d 926, 943 (7th Cir. 1997).

25. In ruling on discovery matters Magistrate Judge Denlow is operating in a zone of very broad discretion. See Weeks, 126 F.3d at 943 ("District courts enjoy extremely broad discretion in controlling discovery."); Indianapolis Colts v. Mayor & City Council of Baltimore, 775 F.2d 177, 183 (7th Cir. 1985) (quoting United Presbyterian Church in the U.S.A. v. Reagan, 738 F.2d 1375, 1382 (D.C. Cir. 1984)) (noting that trial judges have "wide discretion with respect to discovery matters;" moreover, "a trial court's 'discovery rulings are reversed only on a clear showing of abuse, and ... it is unusual to find abuse of discretion in these matters.' "). Magistrate

9

Judge Denlow's ruling was well reasoned and fully within the zone of his discretionary authority to decide discovery matters.

26. As plaintiffs concede, Magistrate Judge Denlow has conscientiously managed discovery of this complex case. (Objections ¶¶ 1, 9.) As noted above, in denying the instant motion to compel, Magistrate Judge Denlow ruled consistent with the parties' agreements concerning expert discovery, applicable law with respect to expert discovery as well as his own previous rulings over a period of almost three years in which he managed both fact and expert discovery in this case. Plaintiffs have failed to cite to any legal authority whatsoever, much less to show that Magistrate Judge Denlow's ruling on the instant motion was "clearly erroneous" or "contrary to law."

## II. In the Alternative, Magistrate Judge Denlow's Conclusion That Plaintiffs Were Not Prejudiced In Their Ability to Respond To Dr. Saad's Studies Was Neither Clearly Erroneous Nor Contrary to Law

27. Plaintiffs' failure even to recognize much less meet the basic legal standards set forth in Point I above suffices for this Court to deny plaintiffs' Objections. However, Magistrate Judge Denlow's Ruling provided an alternative rationale that would justify denying plaintiffs' Objections. Specifically, Magistrate Judge Denlow stated that plaintiffs could respond to Dr. Saad's conclusions based on Merrill Lynch's production of the de-identified, 100-block customer address data and could challenge Saad's findings in his deposition and subsequent pleadings. (Dec. 22, 2008 Tr. 22:6-8.) Accordingly, the Court may in the alternative find the Ruling was neither clearly erroneous nor contrary to law based on this alternative rationale.

28. Plaintiffs argue that they seek customer name and precise address information in order to "show that businesses were included in the study [performed by Dr. Saad] and that the actual addresses matter, particularly in cities as densely populated as Chicago and New York." (Objections ¶ 5.) However, plaintiffs have not established that they need the address data for their response to Dr. Saad's expert report. Plaintiffs need nothing more than the same materials and programming used by Dr. Saad in order to seek to impeach his assertions based on the de-identified customer address. Plaintiffs provide no rational explanation why customer name, data never used or relied upon by Dr. Saad, is necessary for them to respond to his analysis. In all events, plaintiffs have

10

not demonstrated that such data is essential for them to establish that the addresses listed for particular accounts are business addresses rather than residential addresses. For example, it is likely that such information could be discerned from either the 100-block address, or from tax identification information that already has been provided, and plaintiffs have not demonstrated otherwise.

29. Irrespective of their lack of need for precise address information, plaintiffs have asserted no grounds upon which one could conclude that the inclusion of business addresses in defendant's analysis would in any way undermine the conclusions reached by Merrill Lynch's experts. Hypothetically assuming that some business addresses may have been included in the analysis, these addresses would have been included for both White and African American clients, and for accounts held by both White and African American FAs. If plaintiffs purport to show that any potential inclusion of business addresses in the data distorts the conclusions reached by Merrill Lynch's experts unfavorably toward African American FAs, plaintiffs would have to show that: a) Whites tend more often than African Americans to list their business addresses for account statement mailing purposes; and that b) Whites tend more often than African Americans to have business addresses located in more affluent 100-blocks than their residential addresses. If plaintiffs intend to make such arguments, there is no reason that they cannot do so with the data already provided to them.

30. If plaintiffs seek to undermine the reliability of the 100-block data for the purposes to which Dr. Saad used that data because of the process employed by Merrill Lynch in de-identifying precise customer addresses, they will have more than sufficient opportunity to do so through the deposition of Dr. Saad, the expert who made use of the 100-block data.

**III.     The Risk of Harm That Could Result From the Production of this Highly Sensitive and Confidential Data Outweighs Plaintiffs' Interests In Obtaining The Data**

31. Magistrate Judge Denlow found it unnecessary to address the serious confidentiality and security issues surrounding the names and precise addresses of all of Merrill Lynch's customers, and the link to their account and financial information. However, this Court may deny the Objections on this additional ground.

11

32. Merrill Lynch has demonstrated that the potential harm that could result from the inadvertent release of non-public Merrill Lynch client information strongly outweighs plaintiffs' interest in obtaining the data (See Affidavit of Jack McNamara ¶¶ 4-6 ("McNamara Aff."), attached as Ex. 4 to Merrill Lynch's Opposition (Dkt. No. 267).) Disclosure of the data to unauthorized third parties could lead to identification theft or other harm to clients whose information was so exposed and could cause Merrill Lynch material reputation and financial loss. (See id.)

33. As previously noted in this jurisdiction, "[i]f it is established that confidential information is being sought, the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause." Shields Enters., Inc. v. First Chicago Corp., 1988 U.S. Dist. LEXIS 14950, at *10, (N.D. Ill. Dec. 28, 1988). As demonstrated above, plaintiffs have failed to establish that the customer name or precise address information is sufficiently relevant to outweigh the harm disclosure would cause.

34. Plaintiffs argue that the protective order entered in this case provides sufficient protection to the confidentiality and security of Merrill Lynch's customer name, address and account data. (Objections ¶ 9.) They claim that "Defendant sent the same information to a Third Party Vendor without anything more than a contractual promise of confidentiality" (Id.) Plaintiffs' arguments are flatly contradicted by the affidavit of Jack McNamara who describes in detail the extensive security protocols that Merrill Lynch imposes on its vendors to protect the data. (See McNamara Aff. ¶¶ 4-6.) The protective order in this case does not supply such security or confidentiality. Indeed, plaintiffs have strenuously resisted even reasonable limitations that would protect confidentiality of Merrill Lynch data, and there has never been any commitment on plaintiffs' part to subject themselves to the stringent monitoring and security protocols Merrill Lynch customarily imposes on its data vendors.

**IV.    Plaintiffs' Request For a Protective Order Is Moot, Contravenes Magistrate Judge Denlow's Scheduling Order Governing Exchange of Expert Reports and, in any Event Asks This Court for an Advisory Opinion Never Previously Raised with Merrill Lynch or Magistrate Judge Denlow**

35. This Court should reject on several grounds plaintiffs' alternative request for a Protective Order declaring that they have not waived their rights to certain discovery during "class merits" discovery.

36. Plaintiffs predicate their alternative request for relief on the counterfactual possibility that the Court has not actually considered its Objections. However, the plain words of Rule 72 require this Court to address plaintiffs' Objections and there is no basis for assuming that the Court would do otherwise. See Fed. R. Civ. P. 72(a) ("The district judge in the case *must* consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.") (emphasis added). Accordingly, plaintiffs' alternative request is moot, and should be denied.

37. Even if the Court were to entertain plaintiffs' alternative request for relief, the request should be denied pursuant to the Agreed Order, dated September 4, 2008 (Dkt. No. 227), which provides for the schedule governing the parties' exchange of expert reports in this case. That Order provides that "[p]laintiffs' rebuttal report(s), if any, shall be served on or before February 16, 2009." (Agreed Order ¶ 3 (Dkt. No. 227).) Thus, if plaintiffs intend to interpose any rebuttal to defendants' expert reports, such rebuttals are due on February 16, 2009, and not following some period of further discovery plaintiffs are now appear to request.

38. In all events, plaintiffs' request that this Court rule on their entitlement to discovery is entirely hypothetical, and effectively asks this Court to render an advisory opinion. At this time, there is no live issue between the parties, because plaintiffs have not even served a valid discovery request regarding production of customer name and address data, allowed Merrill Lynch to respond to the discovery request or given Magistrate Judge Denlow an opportunity to address any issues that might arise with respect to the hypothetical discovery request. There is no reason for this Court to speculate about hypothetical discovery that may or may not ever come to pass.

### V. The Court Should Reject Plaintiffs' Request to Defer Until The Merits Phase of this Case its Consideration of the Issue of Causation

39. Though not directly set forth in their Objections, plaintiffs' actual objective in filing these Objections appears to be an effort to preclude this Court's consideration of Merrill Lynch's expert reports in connection with their class certification motion. Plaintiffs state that "[t]hey believe that the issue of causation is one best left for the merits and that discovery on these expert reports should be deferred pending the outcome of the motion for class certification." (Objections ¶ 2.)

40. Contrary to plaintiffs' suggestion, the issue of causation *must* be addressed by the Court in connection with its consideration of the Rule 23 factors. At the class certification stage, a court must "inquire how the case will be tried," including by "identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class.'" Hamilton v. O'Connor Chevrolet, Inc., 2006 U.S. Dist. LEXIS 44149, at *18-19 (N.D. Ill. June 12, 2006); accord Hyderi v. Washington Mut. Bank, FA, 235 F.R.D. 390, 398 (N.D. Ill. 2006); see also Radmanovich v. Combined Ins. Co., 216 F.R.D. 424, 435 (N.D. Ill. 2003) ("In reviewing whether a plaintiff has satisfied the Rule 23(b)(3) requirements, the court must consider: (1) the substantive elements of plaintiff's cause of action; (2) the proof necessary for those elements; and (3) the manageability of a trial on those issues."); Fed. R. Civ. P. 23, 2003 Advisory Comm. Notes (it is "critical" that district courts "determine how the case will be tried" and "tes[t]" whether "the issues likely to be presented at trial … are susceptible to class-wide proof"). To establish liability in this case, "each individual plaintiff" must establish that Merrill Lynch "caused [plaintiff's] personal injury." Lemon v. Int'l Union of Operating Eng'rs, 216 F.3d 577, 581 (7th Cir. 2000); see also Allison v. Citgo Petroleum Corp., 151 F.3d 402, 424 (5th Cir. 1998) ("an essential factual element of both [disparate impact and pattern or practice] claims is a finding that the challenged employment practice caused each individual class member to suffer an adverse employment action").

41. To sustain their burden at the class certification stage, plaintiffs must show that they can establish at trial, through common proof, that the challenged employment

14

practices are "causally related" to the purported racial disparities. Adams v. R.R. Donnelley & Sons, 2001 U.S. Dist. LEXIS 4247, at *42 (N.D. Ill. Apr. 6, 2001). Unless they can show that causation can be established with common proof, class certification must be denied. See e.g., Cooper v. Southern Co., 390 F.3d 695, 716-19 (11th Cir. 2004) (rejecting certification of class of African-American employees alleging race discrimination because Dr. Janice Madden (also plaintiffs' statistician here) failed to incorporate in her statistical analysis variables necessary to determine whether racial disparities were "attributable to factors other than race"); Gutierrez v. Johnson & Johnson, 467 F. Supp. 2d 403, 411 (D.N.J. 2006) (denying class certification because Madden failed to "demonstrate[] the required nexus between [her] statistical analyses and a policy or practice"); Radmanovich, 216 F.R.D. at 436-37 (denying class certification because "each individual class member would need to establish how [the alleged] discrimination impacted her"). See also West v. Prudential Sec., Inc., 282 F.3d 935, 939-40 (7th Cir. 2002) (reversing class certification because plaintiff's expert failed to show causation could be established on a class-wide basis).

## CONCLUSION

42. Merrill Lynch respectfully request that the Court deny plaintiffs' Objections.

Dated: January 6, 2009

By: s/Nicholas J. Pappas
WEIL, GOTSHAL & MANGES LLP
Jeffrey S. Klein
Nicholas J. Pappas
Salvatore A. Romanello
767 Fifth Avenue
New York, NY 10153
(212) 310-8000 (Phone)
(212) 310-8007 (Facsimile)
-and-

MAYER, BROWN, LLP
Lori E. Lightfoot
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600 (Phone)
(312) 701-7711 (Facsimile)

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of Defendant's Memorandum Of Law In Opposition To Plaintiffs' Objections To Magistrate Judge Denlow's December 22, 2008 Order Denying Plaintiffs' Motion To Compel dated January 6, 2009 was served upon counsel for Plaintiff addressed as follows:

Linda Friedman
Mary Stowell
George Robot
Stowell & Friedman, Ltd.
321 S. Plymouth Court, Suite 1400
Chicago, Illinois 60604

via the Court's ECF system and email on January 6, 2009.

By: s/Nicholas J. Pappas