**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEORGE McREYNOLDS, MAROC HOWARD, LARUE GIBSON, JENNIFER MADRID, FRANKIE ROSS, MARVA YORK LESLIE BROWNE, HENRY WILSON, LEROY BROWN, GLENN CAPEL, CHRISTINA COLEMAN, J. YVES LABORDE, MARSHELL MILLER, CARNELL MOORE, MARK JOHNSON, CATHY BENDER-JACKSON, and STEPHEN SMARTT, Individually on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED,<br><br>Defendant. | Case No. 05-C-6583<br><br>Judge Robert W. Gettleman<br>Magistrate Judge Denlow<br><br>Jury Trial Demanded |

**MOTION TO STRIKE SUPPLEMENTAL DECLARATION AND STUDIES OF
MERRILL LYNCH'S EXPERT, DR. SAAD, WHICH FORM THE BASIS OF
DEFENDANT'S DAUBERT MOTION REGARDING VARIOUS
OPINIONS OF JANICE MADDEN, Ph. D. AND ALEX VEKKER, Ph. D.**

Plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, Stowell & Friedman, Ltd. hereby move the Court to strike Merrill Lynch, Pierce, Fenner & Smith Inc.'s ("Merrill Lynch" or "Defendant") *Daubert* Motion regarding Plaintiffs' experts', Janice Madden and Alex Vekker ("The Madden/Vekker Report") and also to strike the Supplemental Expert Declaration of Dr. Saad attached to the *Daubert* Motion. In support thereof, Plaintiffs state as follows:

1. In November 2005, Plaintiffs filed this lawsuit. The parties have worked diligently since that time to prepare and present the case for the Court's consideration of Plaintiffs' request for class certification. As the Court acknowledged, on December 4, 2008, "[f]or years now, literally, we've been talking about getting discovery done." Exhibit A.

2. Magistrate Judge Denlow closely supervised discovery in this case and entered at least two Orders pertinent to this motion. First, Magistrate Judge Denlow set a schedule for expert

discovery. Exhibit B. Second, Magistrate Judge Denlow entered a Stipulation reached by the parties regarding production of materials under Rule 26. That Stipulation required parties to produce data output from expert reports with the production of the expert reports. Exhibit C.

   3. Plaintiffs produced their two expert reports (Madden/Vekker report and Bielby report) on June 5, 2008. Over Plaintiffs' objection, the Court granted Defendant an extension allowing a period of five months for Defendant to respond to these two reports. On November 14, 2008, Defendant served Plaintiffs with eight expert reports, conceding that the effort cost Defendant in excess of $12,000,000.00. One report from an expert, Dr. Ali Saad, is at issue in this motion and cost Merrill Lynch in excess of $10,000,000.00. Plaintiffs filed two rebuttal reports on February 23, 2009.

   4. On December 4, 2008, the parties appeared before the Court on Plaintiffs' Motion for Class Certification which Plaintiffs previously filed the same day they received Merrill Lynch's eight expert reports, November 14, 2008. Defendant sought 45 days from the completion of expert depositions to respond to the class petition and explained to the Court:

> MR. KLEIN: The Schedule for expert reports that the parties agreed upon mutually, and, in fact, the context of expert discovery was agreed upon by Judge Denlow with the parties mutually back in September I believe it was of 2007, we're close to the end of that. The parties collectively decided that what made sense was expert reports and then expert discovery. Counsel for the plaintiffs had asked in the schedule for a three-month window after service of our expert reports to respond. And that parties have worked well together to accommodate each other's requests.
>
> We're then going to take expert depositions, all of them in a period the parties agreed was 29 days. So by March, we're through with all of this. **And consistent with the Court's rulings in Sabo and Best in the Seventh Circuit for the Court to have to resolve difference and disputes, the parties believed that having experts reports swapped with each other and then taking depositions sharpens the issues so that the papers we then submit Your Honor will focus on all that's come forward.**

Exhibit A.

360886-1

5. The Court set a schedule requiring Defendant to file its Memorandum in Opposition to Plaintiffs' Motion for Class Certification after the close of expert depositions.

6. On May 15, 2009, Defendant filed its response to Plaintiffs' Petition for Class Certification.[1] Consistent with the scorched earth litigation tactics, Defendant moved: 1) to strike the declaration of *every* current and former employee submitted by Plaintiffs; 2) to strike certain opinions in the Madden/Vekker report; 3) to strike the report of Plaintiffs' other expert, William Bielby, Ph. D.; 4) to file a Memorandum in Opposition to the Motion for Class Certification which is 66 pages long and attaches lengthy summary charts not otherwise counted in the page limitation. E.g. an 18 page list of "100 cases" in which class certification was denied, 37 single-spaced pages of summary of Merrill Lynch manager declarations, 68 pages of single-spaced summary of Plaintiffs' deposition testimony ("Defendant's Appendix II, Tab A and Tab B), and even a declaration that is 77 pages and 196 paragraphs. ("Declaration of Phil Sieg") . Copies of the Court's Pacer filings capture the breadth of Defendant's Filing. Exhibit D. Plaintiffs' response is due on June 12, 2009, although it is doubtful that Plaintiffs' counsel will finish reading let alone fact checking Defendant's submissions before that date.

7. The parties completed expert depositions as follows:

| **Expert Deponent Name** | **Date of Deposition** |
|---|---|
| William Bielby, Ph. D. | March 30, 2009 |
| Christopher Winship, Ph. D. | April 7, 2009 |
| Janice Madden, Ph. D. | April 24, 2009 |
| James Outtz, Ph. D. | April 30, 2009 |
| Jerome Williams, Ph. D. | May 5, 2009 |
| Olivet Jones | May 8, 2009 |

8. Thus, there was a break between February 21, 2009, when Plaintiffs served their rebuttal expert reports and March 30, 2009, when depositions began. During this time period, Defendant neither sought leave nor mentioned any desire to respond to the Madden/Vekker rebuttal report served on February 21, 2009.

---

[1] The schedule was adjusted slightly due to trial schedules of counsel and the critical illness of a family member of Ms. Friedman.

360886-1

9. As the Court may recall, Dr. Saad issued a 76-page report supplemented by 67 exhibits. Dr. Saad sought to explain the undisputed statistically significant wage disparities between African American Financial Advisors and Caucasian Financial Advisors. According to Dr. Saad, Merrill Lynch's Caucasian Financial Advisors earn more money because Caucasian Financial Advisors associate with more whites than African American Financial Advisors and whites have more money than African Americans. In order to reach these conclusions, Dr. Saad geo-coded Merrill Lynch's clients by speculating on race using a 100 block address provided by Merrill Lynch.

10. Not shy about hiding their disdain for this unusual race-laced defense, Plaintiffs' Counsel, immediately sought to refute the geo-coding done by Dr. Saad. As the Court may recall, in performing his studies and speculating as to the race of Merrill Lynch clients, Dr. Saad relied on 100 block addresses rather than actual addresses because Merrill Lynch refused to provide Dr. Saad with the actual addresses, citing privacy interests of its clients. Plaintiffs' counsel immediately noticed that Dr. Saad's approximation of African American households seemed erroneous on its face and overestimated the number of African American households not only for African American Financial Advisors but also for white Financial Advisors.[2] Plaintiffs assumed that the geo-coding error was at least in part due to Dr. Saad's inability to distinguish businesses from residences in large cities with only the 100 block address and also his inclusion of businesses and individual with business addresses listed for mailing of brokerage statements. Thus, Plaintiffs' counsel appeared first before Magistrate Judge Denlow and next before this Court to obtain real addresses or a sample of real addresses to respond to Dr. Saad's study.

11. As stated above, Plaintiffs' rebuttal reports were due on February 23, 2009. Plaintiff appeared before the Court in December and January. The Court denied Plaintiffs request for accurate information beyond the 100 block but noted:

> THE COURT: ...if the defendants, if Merrill Lynch, gave their experts insufficient information to reach the opinions that they had, I mean, that's something your experts are probably going to conclude, at which point

---

[2] For example, as explained in Plaintiffs' Memorandum in Support of Class Certification, Merrill Lynch hired a company to conduct an analysis of its clients in 2005. The actual addresses and names of clients were provided to an outside vendor who conducted an "ethnic append" by speculating as to race, religion, etc. by name and address. Dr. Saad concludes that 6.4% of the clients of Caucasian Financial Advisors are African and the percentage of African American clients of African American Financial Advisors is higher. Dr. Saad's results more than triple the percentage of African American clients.

360886-1

> you will have what seems to me at least a colorable, if not a pretty strong Daubert motion.
>
> You, meaning the defendants here, make your own bed in a sense. And, if all you gave them were addresses, and they drew some conclusions based on the demographics of those addresses, it's not going to take very much persuasion, it would seem to me to throw any conclusions reached from that type of information into serious doubt.

Exhibit E.

12. The Court also noted that district courts deal with sensitive information all the time and that confidential information could have been protected. Exhibit E.

13. Finally, the Court explained that the concern over the data should be included in the Plaintiffs' expert reports and "not just your own intuition as a lawyer." Likewise, Magistrate Judge Denlow told Plaintiffs, "[i]f that data can be attacked, you know, though your expert, you attack it…." Exhibit E.

14. Thus, since at least December 2008, Defendant understood that Plaintiffs would criticize Dr. Saad's reliance on the 100 block data rather than correct addresses.

15. On February 21, 2009, Merrill Lynch received Dr. Madden's report, criticizing Dr. Saad's use of the 100 block data and also noted other defects in his report. Dr. Madden criticized Dr. Saad's report because the geo-coding included businesses, individuals with business addresses and was based on 100 block rather than actual addresses.

16. Defendant remained silent on these issues for over two months. Defendant deposed Dr. Madden on April 24, 2009. During that deposition Defendant asked Dr. Madden, who among her other qualifications, has been a chair and professor of real estate at the Wharton School of the University of Pennsylvania, if the geo-coding defects and errors of using the "100 block" approach could not simply be remedied by a subjective visual check against Google.com's aerial maps and street views. Dr. Madden testified:

> "As an urban economist, I found that shocking. It sounds like you've never lived in a city. If you look at res -- you look at buildings around here, you can't tell from the Google aerial photos whether they're residences or office buildings. Some of them, in fact, are former office buildings that are now residences. I mean, that's just impossible."

360886-1

Exhibit F.

17. On April 27, 2009, Defendant sent an email to Plaintiffs' counsel:

Linda,

Further to our discussion below, I have the following to report:

1. We do not intend to take Dr. Vekker's deposition at this time in connection with class certification discovery.

2. In light of your cancellation of Ali Saad's deposition, we would like plaintiffs' consent for Merrill Lynch to submit a supplemental expert report from Dr. Saad which will be approximately 10 pages in length. This report will respond to the criticisms by Professor Madden in her rebuttal report with respect to Dr. Saad's geocoding and instrumental variable studies, and which Dr. Saad would have disclosed in connection with his deposition had it taken place as we had previously contemplated. Inasmuch as we intend to make reference to these analyses in Merrill Lynch's opposition to plaintiffs' motion for class certification, in fairness we wanted plaintiffs to have this information on as close to the same schedule as they would have had it had they taken Dr. Saad's deposition as previously scheduled. Because it will take Dr. Saad a few days to put this report together, after returning home to California, we propose delivering this to you no later than Monday May 4, 2009, and possibly as early as Friday May 1, 2009. If plaintiffs do not consent to this, we will file a motion seeking leave of Court to serve this supplemental report.

Nick

18. Plaintiffs' counsel immediately responded:

Nick, thanks for confirming that you will not be taking Dr. Vekker's deposition.

We do object to a supplemental Saad report. If Merrill Lynch desired to prepare a supplemental report, leave should have been sought shortly after Dr. Madden tendered her report in February. It seems that you made a strategic decision to withhold the new Saad report in order to bar Dr.

360886-1

>Madden from seeing it before her deposition and/or to sandbag me with it at Dr. Saad's deposition. I believe that Rule 26 requires that you serve a report. We served Dr. Madden's report in February. You did not seek leave to file a report or notify us that a report would be forthcoming, knowing that we had a tight schedule. Clearly, we made the decision not to take Dr. Saad's deposition based on the report that was presented to us and not based on one we have not seen. If it is appropriate to respond to reports only at depositions and not through Rule 26, Dr. Madden could have responded to this report at her deposition. Now that her deposition is complete and she has not seen the report, it is unfair to serve it on us as she will have no opportunity to respond to it and expert deposition testimony will be over. We cannot consent to this. Linda.

19. Despite threatening to file a motion seeking leave to serve the new Dr. Saad report if Plaintiffs' did not consent, Merrill Lynch neither sought leave to file a supplemental Dr. Saad report nor served a supplemental Dr. Saad report on Plaintiff.

20. Instead, on May 15, 2009, Merrill Lynch filed its Memorandum in Opposition to Plaintiff's Motion for Class Certification. Merrill Lynch simply snuck a new Dr. Saad declaration in a *Daubert* motion regarding Dr. Madden. The new Dr. Saad "declaration" included new studies, charts and conclusions. Exhibit G. The declaration not only violates the scheduling orders set by the Court and the Stipulation reached by the parties, it also flouts Rule 26[3] which in the absence of a scheduling order which we did have would have set a limitation

---

[3] Rule 26 provides in pertinent part:

>(B)…The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions;
>
>(C) These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to

360886-1

period of 30 days from February 23, 2009 for filing a response to a rebuttal report--well before Dr. Madden's deposition. Trying to sneak the declaration into the class certification process was also disrespectful to the Court and the Plaintiffs' counsel and experts. As Defendant acknowledged in the April 27, 2009 email, leave of Court was necessary to serve another Dr. Saad report. Further, Dr. Madden should have had the report before her deposition. Finally, Plaintiffs counsel should not be expected to respond to this new report during the same brief period they are expected to respond to Defendant's massive filing in opposition to the class certification. To be sure, Defendant deliberately chose to keep the report a secret so that it could be used to cross Dr. Madden with surprise and/or somehow delivered during the testimony of Dr. Saad. Neither the Court, Stowell & Friedman, Ltd., the Plaintiffs or their experts deserve this treatment. Plaintiffs are worthy of the Court's protection and no declaration should be allowed at this time.

21. Even if the Court considers the substance of the declaration, it should be struck. In his new declaration, Dr. Saad who charged in excess of $10,000,000 for his first expert report incredulously argues that Dr. Madden should have relied on the internet, Google Maps, to guess at whether the 100 block residences in Dr. Saad's study were residential or commercial rather than simply citing the flaws. Dr. Saad contends that when he performs this task on a "sample" that he is able to confirm that the error of including businesses and individuals with business addresses did not impact his ultimate conclusions.

22. The irony of Dr. Saad asserting in a *Daubert* (designed to weed out "junk science") motion of all places, that Google maps is an appropriate tool to use to conduct a statistical analysis of Chicago neighborhoods should not be lost on the Court. One example will suffice to demonstrate that Google Maps is useful as a navigator to help people find their way to their friends' homes but not as a statistical program for geo-coding. Stowell & Friedman, Ltd. is

---

contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), **within 30 days after the disclosure made by the other party**. The parties shall supplement these disclosures when required under subdivision (e)(1).

\* \* \*

360886-1

located at 321 S. Plymouth Court or the 300 block of Plymouth Court. Google maps "street view" for the 300 block of Plymouth Court brings up the following picture:



Now, any good Chicagoan would know that the above picture is not Plymouth Court but is Dearborn as confirmed by a view to the North.



Clearly Google Maps only approximate location. Nonetheless, like Plymouth Court, Dearborn houses in the 300 block historical landmark buildings, the Monadnock building completed in

360886-1

1893 and the Fisher building (shown in the picture) completed in 1896. While the Monadnock houses small businesses, the Fisher houses apartments on floors 3-20 and commercial stores on the first two floors. [4] Merrill Lynch does not explain how Dr. Saad, a Labor Economist from Beverly Hills, California, has expertise to guess at Chicago's use of its historical landmark buildings or how any person with only the 300 block of Plymouth as an address could figure out residential or commercial and race of the addressee. Clearly, the notion of using Google maps to fix the errors that Merrill Lynch chose to inject in its expert's work when it refused to produce reliable accurate data is plain silly.[5]

23. Thus, Dr. Saad's new declaration should be struck for two reasons: 1) it is too late in the day for Dr. Saad to submit a new declaration and new studies; and 2) the declaration is junk.

## CONCLUSION

As this Court advised Merrill Lynch, "the defendants here, make your own bed in a sense." Merrill Lynch chose not to provide its experts with accurate data. Merrill Lynch knew since December that Plaintiffs' experts would criticize the value of Dr. Saad's work among other reasons because he lacked reliable data. Merrill Lynch refused to produce the data to Dr. Madden in order that she could study accurate data. It was fair game for Dr. Madden to criticize Dr. Saad's use of the 100 block address. That criticism stands and the Court must decide whether any conclusions should be drawn from Dr. Saad's work. However, allowing Dr. Saad to file a new report under the guise of a *Daubert* motion should not be condoned. Merrill Lynch did not comply with Rule 26 or the Court's prior orders. Further, the notion that any expert should attempt to guess at the race of Merrill Lynch clients by using a Google Maps aerial view of 100 block street addresses is preposterous and has no value in this lawsuit.

---

[4] Dr. Saad would fare not better in the 400 block of Dearborn where he would have to guess at residential or commercial and race for those in the Old Colony (1894) and Manhattan (1891) buildings.

[5] In fact, Dr. Saad concedes that 12.6% of his sample addresses lacked aerial or street view photo information and he relied on educated guesses to designate those as either "likely residential" or "likely non-residential". Dr. Saad designated 7.8% of his sample group as "Unknown" (could not be perceived as either residential or non-residential). However, he was only able to designate 4% of all records as "Confirmed Non-Residential." Another 3.8% were designated as "Likely Non-Residential."

360886-1

**WHEREFORE**, the Saad declaration and studies are not timely and should be struck. Thus, the *Daubert* motion regarding the Madden/Vekker report and any references to the Madden/Vekker *Daubert* motion or the Saad declaration in Merrill Lynch's Memorandum in Opposition to Class Certification should be struck.

Respectfully submitted,

STOWELL & FRIEDMAN, LTD.

By:

/s/ Linda D. Friedman

Electronically filed on May 21, 2009

Mary Stowell – Attorney No. 02750015
Linda D. Friedman – Attorney No. 06190092
George Robot – Attorney No. 06237979
**Stowell & Friedman, Ltd.**
321 Plymouth Court, Suite 1400
Chicago, IL 60604
(312) 431-0888

360886-1