# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| **GEORGE McREYNOLDS**, et al.,<br>Individually and as Class Representatives,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>**MERRILL LYNCH, PIERCE, FENNER<br>& SMITH, INCORPORATED**,<br><br>　　　　　Defendant. | **Case No.:  05-C-6583**<br><br>**Judge Robert W. Gettleman**<br>**Magistrate Judge Denlow** |

## MERRILL LYNCH'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SUPPLEMENTAL DECLARATION AND STUDIES OF MERRILL LYNCH'S EXPERT, DR. SAAD

　　　　　　　　　　　　　　　　　　　　**WEIL, GOTSHAL & MANGES LLP**
　　　　　　　　　　　　　　　　　　　　Jeffrey S. Klein
　　　　　　　　　　　　　　　　　　　　Nicholas J. Pappas
　　　　　　　　　　　　　　　　　　　　Salvatore A. Romanello
　　　　　　　　　　　　　　　　　　　　Allan Dinkoff
　　　　　　　　　　　　　　　　　　　　767 Fifth Avenue
　　　　　　　　　　　　　　　　　　　　New York, NY 10153
　　　　　　　　　　　　　　　　　　　　(212) 310-8000 (Phone)
　　　　　　　　　　　　　　　　　　　　(212) 310-8007 (Facsimile)

　　　　　　　　　　　　　　　　　　　　**MAYER, BROWN LLP**
　　　　　　　　　　　　　　　　　　　　Stephen M. Shapiro
　　　　　　　　　　　　　　　　　　　　Lori E. Lightfoot
　　　　　　　　　　　　　　　　　　　　71 S. Wacker Drive
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60606
　　　　　　　　　　　　　　　　　　　　(312) 782-0600 (Phone)
　　　　　　　　　　　　　　　　　　　　(312) 701-7711 (Facsimile)

　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant Merrill Lynch, Pierce,
　　　　　　　　　　　　　　　　　　　　Fenner & Smith, Incorporated*

Dated:  June 26, 2009

Defendant Merrill Lynch Pierce Fenner & Smith ("Defendant" or "Merrill Lynch"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Opposition To Plaintiffs' Motion to Strike Supplemental Declaration and Studies of Merrill Lynch's Expert, Dr. Saad, Which Form the Basis of Defendant's Daubert Motion Regarding Various Opinions of Janice Madden, Ph.D. and Alex Vekker, Ph.D. ("Motion to Strike").

## PRELIMINARY STATEMENT

Defendant's Daubert Motion is directed at two discrete portions of the lengthy rebuttal report submitted by Plaintiffs' statisticians, Drs. Madden and Vekker ("Dr. Madden"). Specifically, Merrill Lynch moved to strike: (1) Dr. Madden's ordinary least square regression ("OLS regression") that purported to measure African American and Caucasian FAs' access to wealth because Dr. Madden's use of an improper variable renders the analysis unscientific and misleading, and (2) Dr. Madden's criticisms of Dr. Ali Saad's "GeoCoding" study because Dr. Madden criticizes Dr. Saad for not performing certain coding corrections that he did, in fact, perform and because Dr. Madden failed to test the impact of the "errors" she identified, which, when tested, prove to have no meaningful impact on Dr. Saad's study.

Both issues are important. Defendant posits that one reason why African Americans do not do as well as Caucasians in the FA job is because African Americans and Caucasians have different access to wealth in our society, and the FA job requires that one have access to wealth to be successful. Dr. Madden used the OLS regression in an effort to prove that any such differential access had only a minimal impact, but the "measure" of access that she used was demonstrably such a poor measure that her analysis is unscientific and misleading. Equally important, this error infects the entirety of Dr. Madden's OLS regressions, not just the limited differential access point. Dr. Saad's GeoCoding analysis used hundred-block address data of Merrill Lynch customers to determine that, as compared to Caucasian FAs, African American FAs draw their clients from areas that have a higher percentage of African American residents and lower average property values. This is one piece of evidence demonstrating that in fact African American and Caucasian FAs do differ in their access to wealth.

In support of its Daubert Motion, Merrill Lynch relied on, *inter alia*, a three-page affidavit by Dr. Saad and a two-page affidavit by Dr. Christopher Winship. Dr. Saad's affidavit addressed the two aspects of Dr. Madden's report that Defendant sought to strike through its

1

Daubert motion, while Dr. Winship's affidavit focused solely on the potential for misleading conclusions due to "measurement error" in Dr. Madden's OLS regression, and the resulting bias that likely exists in Dr. Madden's conclusions regarding access to wealth and the impact of race on compensation at Merrill Lynch.

Plaintiffs' notice of motion and the conclusion of their brief state that they seek to strike the entirety of Defendant's Daubert motion and the affidavit of Dr. Ali Saad that Defendant submitted in support of that motion, but the substantive text of their motion and brief is far more limited and is directed to only one aspect of Dr. Saad's affidavit and only one aspect of Defendant's motion: the criticism offered by Dr. Madden of Dr. Saad's GeoCoding analysis. Plaintiffs do not address the other aspect of Defendant's Daubert motion, namely its argument to strike Dr. Madden's OLS regression, nor have they sought to strike the affidavit of Dr. Christopher Winship, which was also submitted by Merrill Lynch in support of its Daubert motion and addressed Dr. Madden's OLS regression.

Plaintiffs' principal attack on Dr. Saad's affidavit is to argue that the one portion of his three-page affidavit related to his GeoCoding analysis is a supplemental rebuttal report in disguise. However, Merrill Lynch disagrees with the entirety of Dr. Madden's rebuttal report and would have much to say about the numerous analyses propounded by Dr. Madden if offered the opportunity to submit its own rebuttal report. Merrill Lynch was not afforded that opportunity, nor has it moved to strike the entirety of Dr. Madden's rebuttal. Instead, Defendant has sought to exclude under Daubert only two portions of that report, and has offered these two short affidavits as evidentiary support for that motion.

Plaintiffs incorrectly argue without citation to any authority or support in the record that Defendant's Daubert motion somehow violated Rule 26 and Magistrate Judge Denlow's Order scheduling the exchange of expert reports dated September 4, 2008 ("the Expert Scheduling Order", Dkt. 227). Neither Rule 26 nor the Expert Scheduling Order were directed at Daubert motions, and Defendant's motion is entirely consistent with the class certification briefing schedule established by the Court (See *infra* Point I.B.).

Plaintiffs' substantive argument appears to be directed not to any legal deficiency with filing the Daubert motion, but rather at the substance of Dr. Saad's affidavit and whether information about the race of Merrill Lynch customers may be inferred from Merrill Lynch's account data and Census data. (See *infra* Point III). As such, these arguments do not support Plaintiffs' efforts to strike Defendant's Daubert Motion.

2

Underlying Plaintiffs' motion to strike is the premise that Daubert motions are not appropriate at the class certification stage. However, failing to undertake a Daubert analysis at this stage of the proceedings is clear error in this Circuit, and judges in this District regularly decide Daubert motions before considering the merits of class certification, including Judge Schenkier and Judge Kocoras within the last year on motions for class certification brought by Stowell & Friedman. (See *infra* Point IV).

## ARGUMENT

I. **Plaintiffs Have Offered No Legal Basis for Striking Dr. Saad's Affidavit**

   A. Plaintiffs Erroneously Characterize Dr. Saad's Affidavit in Support of Daubert as a Supplemental Expert Report

In seeking to strike Dr. Saad's affidavit, Plaintiffs inappropriately characterize it as a supplemental expert report. But Dr. Saad's three-page affidavit clearly states that it is offered in support of Defendant's argument that parts of the analyses contained in the Madden/Vekker Rebuttal Report are so unscientific and unreliable as to be inadmissible under Daubert. See Affidavit of Ali I. Saad, Ph.D, attached hereto as Exhibit A, at ¶ 1. And in any event, Dr. Saad's affidavit also does not need to be admissible to be considered on Defendant's Daubert motion. The affidavit is properly before the Court under Federal Rules of Evidence 104(a) and 702.[1] Under Rule 104(a), whether evidence submitted in support of Daubert Motion is ultimately admissible is not relevant to the Court's consideration of that evidence. See Celebrity Cruises, Inc. v. Essef Corp., 434 F. Supp. 2d 169, 190 (S.D.N.Y. 2006) (stating that "'in determining whether to admit scientific testimony the court may consider materials not admissible in evidence'" and that the court "need only consider whether [the material] is sufficiently reliable to be persuasive in [the court's] evaluation of the expert reports that it criticizes") (citing Ruffin v. Shaw Indus., Inc., 149 F.3d 294, 297 (4th Cir. 1998); Fed. R. Evid. 104(a)); see also City of Owensboro v. Ky. Utils. Co., 2008 WL 4542706, *1 (W.D. Ky. Oct. 8, 2008) (denying defendant's motion to strike an affidavit challenging the methodology of

---

[1] See Fed. R. Evid. 702 advisory committee's note ("In deciding whether the opinion evidence is reasonably reliable and will substantially assist the trier of fact, as well as in deciding whether the proposed witness has sufficient expertise to express such opinions, the court, as under present Rule 702, is governed by Rule 104(a)" and "[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a).").

3

plaintiff's expert submitted in support of plaintiff's Daubert motion, and specifically noting that "it will be helpful to the Court in determining whether [plaintiff's expert's methodology] is reliable and admissible pursuant to Fed. R. Evid. 702 and Daubert . . . Expert testimony that does not comply with Rule 26 is therefore only excluded at trial and may be properly considered on a Daubert determination."); Gilbane Building Co. v. Downers Grove Community High School District No. 99, No. 02 C 2260, 2005 WL 838679 (N.D. Ill. Apr. 5, 2005) (granting motion to strike expert report that did not comply with Rule 26 only to the extent that the defendants ask the court to bar the plaintiff from using the opinions set forth in the report at trial).

Plaintiffs argument in ¶ 17 that Merrill Lynch's request for consent to file a supplemental report converts Dr. Saad's affidavit into a supplemental report is misplaced. After Plaintiffs refused to give consent for a supplemental report, Merrill Lynch determined that no such report was necessary and elected not to offer Dr. Saad's criticisms in furtherance of its Opposition to Plaintiffs Petition for Class Certification, but rather to offer a very limited 3-page affidavit from Dr. Saad solely as evidence in support of Merrill Lynch's Daubert Motion. Had Dr. Saad submitted a supplemental report, it would have addressed more broadly the validity of a number of Dr. Madden's conclusions, as opposed to being limited to the analyses and criticisms he considered to be unscientific and unreliable. Indeed, as noted in the email cited by Plaintiffs, Dr. Saad's supplemental report would have been 10 pages long, whereas his affidavit was only 3 pages. See email from Nicholas Pappas, dated Apr. 27, 2009, attached hereto as Exhibit B.

Because Dr. Saad's affidavit is not a supplemental expert report and because it is otherwise helpful to this Court's determination as to whether certain analyses and criticisms in Dr. Madden's rebuttal report are so unreliable such that those portions should be ruled inadmissible, the Court should deny Plaintiffs' Motion to Strike.

B. Neither Rule 26 Nor the Court's Orders Limit the Support Merrill Lynch May Rely Upon in Its Daubert Motion

Plaintiffs assert that Merrill Lynch violated both Rule 26 and the Expert Scheduling Order when it filed its Daubert motion, which included Dr. Saad's declaration. Pl. Br. ¶ 20. Contrary to Plaintiffs' assertions, neither Rule 26 nor the Expert Scheduling Order apply any limits to Merrill Lynch's ability to file a Daubert Motion, or the material that Merrill Lynch may rely upon in support of such a motion.

Plaintiffs quote from Rule 26 to support the notion that materials submitted in support of a Daubert motion must be submitted "within 30 days after the disclosure made by the

4

other party." (Pl. Br. ¶ 20, n.3). However, they cite no case law in support of this idiosyncratic interpretation, and not surprisingly their interpretation of Rule 26 is inconsistent with both the reported cases and the plain language of Rule 26.[2] See, e.g., City of Owensboro v. Ky. Utils. Co., 2008 WL 4542706, *1 (W.D. Ky. Oct. 8, 2008) (denying motion to strike the affidavit of an expert submitted in support of a Daubert motion on the basis that it violated Rule 26, and considering such affidavit in assessing a Daubert motion, because Rule 26 is a trial oriented rule and did not apply to declarations submitted in connection with Daubert motion) (citing Florists' Mutual Insurance Co. v. Lewis Taylor Farms, Inc., 2008 WL 875493, *17 n. 12 (M.D. Ga. March 27, 2008) (Rule 26 "only addresses requirements for expert testimony for use *at trial*. Expert testimony that does not comply with this rule is therefore only excluded at trial and may be properly considered in a Daubert determination.")); see also, Allgood v. General Motors Corp., 2009 WL 2669337 at *5 (S.D. Ind. Sept. 18, 2006) (denying motion to strike declarations submitted in response to a Daubert motion because the submissions did not amount to a "prohibited ambush by an expert") (citing Salgado v. General Motors Corp., 150 F.3d 735, 741-42 & n. 6 (7th Cir. 1998)); UAW v. General Motors Corp., 235 F.R.D. 383, 388 (E.D. Mich. 2006) ("Rule 26 is a trial-oriented discovery rule."). Therefore, this Court's consideration of Dr. Saad's affidavit in support of Merrill Lynch's Daubert motion is entirely consistent with Rule 26.

Plaintiffs' assertion that Merrill Lynch somehow violated the Expert Scheduling Order (Pl. Br. ¶ 20) when it filed its Daubert motion also is wrong. Magistrate Judge Denlow's order setting a schedule for expert discovery has no applicability to Daubert motions in this case. The order clearly provides the dates by which both parties had to serve their expert reports in support of class certification as well as the dates during which the parties had to conduct and conclude depositions of expert witnesses. See Ex. B to Plaintiffs' Motion to Strike. Nowhere does the Order address Daubert motions or the type of support that Merrill Lynch may use in filing a Daubert motion. Likewise, the Stipulation reached by the parties – which governed

---

[2] Dr. Saad's three-page affidavit is in no way analogous to the submissions addressed in Lava Trading, Inc. v. Hartford Fire Ins. Co., 2005 WL 4684238 (S.D.N.Y. Apr. 11, 2005). The Lava Trading Court excluded expert affidavits submitted in response to a defendant's Daubert motion where the affidavits were the first detailed reports plaintiff had provided. Because the previous reports were inadequate, including at least one that "did not disclose any of the essential details needed to understand and assess" the expert's conclusions, the court excluded the affidavits under Rule 37, deeming them to be "new expert submissions" submitted too late under Rule 26. Id. at *7-9.

5

expert discovery procedures – also has no bearing on <u>Daubert</u> motions. <u>See</u> Ex. C to Plaintiff's Motion to Strike.

## II. Plaintiffs Have Attacked Only One Part of Defendants' Motion

Even if the Court accepts Plaintiffs' arguments, it should strike only part of Dr. Saad's affidavit and part of Defendant's <u>Daubert</u> motion; specifically, the part addressing Dr. Madden's attack on Dr. Saad's GeoCoding analysis, and leave undisturbed the part of Defendant's <u>Daubert</u> motion addressing Dr. Madden's unscientific OLS regression analysis, including Dr. Winship's affidavit and the remaining portion of Dr. Saad's affidavit. There is not one word in Plaintiffs' motion to strike dealing with either Dr. Winship's affidavit directed at how error in one part of Dr. Madden's OLS regression contaminates the entirety of her OLS regression, not just one part as she claims, nor is there one word in Plaintiffs' motion to strike about those portions of Dr. Saad's affidavit directed at the amount of error in one of the variables that Dr. Madden added to her OLS regression in her rebuttal report, nor is there one word in Plaintiffs' motion to strike about the portions of Defendant's brief directed at this OLS regression. Indeed, even without reference to Dr. Saad's affidavit, these sources demonstrate that the several opinions offered in Dr. Madden's rebuttal report based on her OLS regression are completely unscientific and of no probative value.

## III. Plaintiffs' Arguments Directed at the Content of Dr. Saad's Affidavit Go to the Weight of Dr. Saad's Analysis, and Do Not State Any Valid Disagreement That Would Render the Affidavit Unpersuasive or Inadmissible

Plaintiffs argue that Dr. Saad's affidavit should be stricken because of his use of Google Maps (www.maps.google.com) to determine whether the 100 block residences were residential or commercial is unreliable. (Pl. Br. ¶¶ 21 and 22). Plaintiffs' arguments go to the weight of Dr. Saad's affidavit, not its admissibility. First, Plaintiffs mischaracterize Dr. Saad's GeoCoding analysis in arguing that Merrill Lynch should have provided actual address data rather than hundred-block data. Second, Plaintiffs criticism of Dr. Saad's use of Google Maps is both inaccurate and unscientific. Third, the Seventh Circuit has approved of and advocated for the use of Google Maps where appropriate in a litigation. Putting aside the impropriety of considering arguments going to the substance of Dr. Saad's affidavit in a motion to strike, Plaintiffs do not state any valid disagreement with Dr. Saad, and certainly not one that would make Dr. Saad's affidavit inadmissible.

6

A. <u>Plaintiffs Mischaracterize Dr. Saad's Analysis</u>

Plaintiffs criticize Merrill Lynch and Dr. Saad for the use of hundred block data, rather than actual addresses. (Pl. Br. ¶¶ 10-14.) Plaintiffs claim that the use of this data produced inaccurate results that were inconsistent with those produced by an "outside vendor" who was given actual addresses. Plaintiffs mischaracterize Dr. Saad's analyses to misleadingly insinuate that actual addresses would have changed Dr. Saad's results and that Dr. Saad's results are wrong because they are inconsistent with an *entirely different* analysis conducted by an outside vendor. As noted by Plaintiffs, the outside vendor retained by Merrill Lynch conducted an analysis of Merrill Lynch's actual clients to determine their race. (Pl. Br. ¶ 10 n.2.) Plaintiffs fail to acknowledge, however, that the study population Dr. Saad used differed significantly than that used by the outside vendor. Dr. Saad studied only self-generated accounts acquired in the first year of the Paths of Achievement training program limited to offices that had at least one African American FA. The outside vendor did not use any such limitations so it is logical that the percentage of African American clients would be lower spread across the entire country in contrast to an analysis that focuses on areas where there are a higher percentage of African American FAs.

Additionally, unlike the outside vendor, Dr. Saad did not and never claimed to have studied the race of Merrill Lynch clients, but rather, asserted that African American and white FAs derive their clients from places with different percentages of African American residents and household values. As such, Dr. Saad had no need for actual addresses because he was only looking at narrowly defined neighborhoods. Dr. Saad's analysis would not have changed at all even if he had the exact addresses of Merrill Lynch's clients, and therefore, Dr. Saad's study cannot be deemed insufficient because he did not have access to this data.

In sum, given the difference in study populations, one would expect to see a higher percentage of African Americans in Dr. Saad's measure of neighborhoods than one would see in the outside vendors predictions of the race of Merrill Lynch's clients. Therefore, there is no inconsistency between Dr. Saad's conclusions and those derived by Merrill Lynch's outside vendor.

B. <u>Plaintiffs' Criticisms of Dr. Saad's Use of Google Maps Are Unfounded and Inaccurate</u>

Plaintiffs assert that "one example will suffice to demonstrate that google maps is useful … but not as a statistical program for geo-coding." (Pl. Br.. ¶ 22.) Plaintiffs claim that

7

Google Maps is an inappropriate tool because one would be unable to tell from the images generated whether Stowell & Friedman's location is a business or a residence, and the street view of the building has an image of the incorrect street. (Pl. Br.. ¶ 22.) However, contrary to Plaintiffs' assertion, it is the use of one example that is both unscientific and misleading. Dr. Saad randomly sampled 500 households in his GeoCoding analysis, and using Google Maps, determined whether the address was a business, residence or unknown. Surely Plaintiffs cannot suggest that all aerial photographs reflected in Google Maps would not allow determination of the residential or commercial nature of the 100-block addresses Dr. Saad sampled. Even worse, Plaintiffs' statements regarding its one example are misleading and inaccurate. While Plaintiffs state that the street view brought up by Google Maps is "clearly Dearborn" and not Plymouth Court (Pl. Br. ¶ 22), the street view brought up by Google Maps is actually the same building, simply viewed from the Dearborn side, which is actually the front door of the building. In contrast to Plaintiffs' assertion that Google Maps is not sufficiently accurate for use in litigation, the Seventh Circuit criticized parties for not providing a satellite photo from Google Maps that would have been helpful to the Court, and in fact, the Seventh Circuit searched for the photo themselves and admitted it pursuant to judicial notice. See U.S. v. Boyd, 475 F.3d 875, 878 (7th Cir. 2007).

Plaintiffs' "one example" also is perfectly consistent with Dr. Saad's analysis, because Dr. Saad categorized approximately 10% of the addresses as "unknown" and Plaintiffs' "one example" would logically be included in that category. When Dr. Saad removed these data points and business addresses from his sample, his overall results were unaffected. Also, while Plaintiffs assert that this is not an appropriate tool for analyzing "Chicago neighborhoods" (Pl. Br. ¶ 21), they are alleging a nationwide class action and the vast majority of the addresses in the GeoCoding analysis are not located in Chicago, nor in another urban area.[3] Contrary to Plaintiffs' assertions, it is Dr. Saad who utilized a scientific random sample, whereas Plaintiffs use only one example, a wholly unscientific methodology that should plainly be rejected.

The majority of the clients in Dr. Saad's random sample do not live in large cities. In fact, only 16% of the sample households were located in one of the 25 largest cities in the

---

[3] Even in Chicago, relatively few people live downtown, but instead the majority live in the suburbs or clearly residential portions of the city. Chicago tends to zone commercial areas in residential neighborhoods to single streets, which produces obvious strips of commercial buildings surrounded by residences that are visible from Google Maps.

8

United States,[4] and in many of these cities, such as Detroit, Houston, and Seattle, classifications are not difficult. As some sample screen shots demonstrate, Plaintiffs' one example simply does not suffice to contradict the voluminous contrary evidence. These screen shots demonstrate that it is clearly possible for aerial photographs to demonstrate conclusively whether a particular 100-block is in an area that is exclusively residential, commercial or unknown:



---

[4] This statistic is not surprising given that approximately only 10% of the population of the United States lives in one of these 25 cities.

9



10

Dr. Saad's use of a tool that is publicly available and comprehensible to any lay person does not mean that he performed an unscientific study, and Plaintiffs have not introduced any evidence to the contrary. Scientists regularly use a variety of means to enable their analyses, and no one tool should be rejected out-of-hand simply because most people have access to it. Plaintiffs offer nothing more than one example and Dr. Madden's say-so that Google Maps is not a sufficient tool to accomplish the task for which it is was used by Dr. Saad.

In sum Plaintiffs' arguments going to the weight of Dr. Saad's affidavit do not provide any basis to strike the affidavit, nor do they render Dr. Saad's affidavit unpersuasive.

## IV. A Daubert Motion Is the Correct Procedural Vehicle to Address Merrill Lynch's Evidentiary Objections To Certain Expert Opinions Plaintiffs Have Offered In Support of their Motion For Class Certification

Implicit in Plaintiffs' motion is the notion that Daubert is inappropriate at this stage of the proceedings. Such a view utterly disregards black letter law under Rule 702 of the Federal Rule of Evidence ("Rule 702") and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) ("Daubert"). Both Rule 702 and Daubert plainly allow Merrill Lynch to challenge the admissibility of several opinions contained in Dr. Madden's Rebuttal Report on the grounds that these opinions are unscientific and unreliable. Plaintiffs cite to Dr. Madden's Report 33 time in their class certification brief, and likely will rely on Dr. Madden's Rebuttal Report extensively in their reply memorandum. Therefore, a Daubert analysis is particularly important at this juncture.

The Court has an obligation to conduct a "rigorous analysis" in making a class certification determination. Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982); Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 676 (7th Cir. 2001). This "rigorous analysis" requires the Court to resolve conflicts between experts. West v. Prudential Secs., Inc., 282 F.3d 935 (7th Cir. 2002). As such, courts in this Circuit and elsewhere have recognized that the Court must resolve issues raised under Daubert at the class certification stage to satisfy this directive and to ensure that a class certification decision is made on the basis of a reliable, admissible expert opinion.[5]

---

[5] District courts in other circuits which have declined to conduct full Daubert analyses in connection with class certification motions have been criticized by their own courts of appeal, and certainly cannot override clear Seventh Circuit authority cited above. Courts that have asserted this proposition have frequently relied upon In re Visa Check/MasterMoney Antitrust Litigation, 280 F.3d 124, 132, n. 4 (2d Cir. 2001), which the Second Circuit has explicitly overruled in In re IPO Sec. Litig., 471 F.3d 24 (2d Cir. 2006). The other case following this minority rule is Dukes v. Wal-Mart Stores, Inc., 474 F.3d 1214, 1227 (9th Cir. 2007), which is inconsistent with the majority of Circuits, and itself relied on In re Visa/Check. See In re Live Concert Antitrust Litig., 247 F.R.D. 98, 115 (C.D. Cal. 2007) (applying

11

See, e.g., Remien v. EMC Corp., 2008 U.S. Dist. LEXIS 74174 (N.D. Ill. Mar. 3, 2008) (granting Daubert motion with respect to one expert proffered by Stowell & Friedman and denying plaintiffs' motion for class certification); Srail v. Village of Lisle, 249 F.R.D. 544, 557, 562 (N.D. Ill. 2008) (rejecting plaintiffs' argument that the court did not need to perform a Daubert analysis at the class certification stage). See also Rhodes, 2008 WL 2400944 (stating that the Court must conduct a Daubert inquiry because the failure to do so prior to certification would result in the court's failure to conduct the "rigorous analysis" required by the Supreme Court.). Cf. Puffer v. Allstate Ins. Co., 255 F.R.D. 450 (N.D. Ill. 2009), *pet. for leave to appeal denied*, No. 09-8005 (7th Cir. Mar. 25, 2009) (denying Daubert motion but also denying motion for class certification based on weakness of plaintiffs' expert reports).

As such the Court has a duty to evaluate on the merits Merrill Lynch's Daubert Motion to exclude portions of Dr. Madden's rebuttal report, rather than considering Plaintiffs' "backdoor" opposition to the motion cast in the form of a motion to strike.

## CONCLUSION

For the foregoing reasons, Merrill Lynch respectfully requests that the Court deny Plaintiffs' Motion To Strike Supplemental Declaration and Studies of Merrill Lynch's Expert, Dr. Saad, dated May 13, 2009.

Dated: June 26, 2009

By:     s/ Nicholas J. Pappas
WEIL, GOTSHAL & MANGES LLP
Jeffrey S. Klein
Nicholas J. Pappas
Salvatore A. Romanello
Allan Dinkoff
767 Fifth Avenue
New York, NY 10153
(212) 310-8000 (Phone)
(212) 310-8007 (Facsimile)

--and--

MAYER, BROWN LLP

---

standard enunciated in Dukes, but stating "If this Court were free to craft its own standard, it would follow the standard established by In re IPO Sec. Litig. The Court finds the reasoning of IPO persuasive and consistent with the views of nearly every other Circuit."). The Dukes panel's decision is currently under en banc review. Dukes v. Wal-Mart Stores, Inc., 556 F.3d 919 (9th Cir. 2009).

                Stephen M. Shapiro
Lori E. Lightfoot
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600 (Phone)
(312) 701-7711 (Facsimile)

## CERTIFICATE OF SERVICE

  The undersigned, an attorney, hereby certifies that on June 26, 2009 she caused copies of Defendant Merrill Lynch's (1) Memorandum in Opposition to Plaintiffs' Motion To Strike Supplemental Declaration and Studies of Merrill Lynch's Expert, Dr. Saad to be served by ECF to each attorney having an email address on file with the Court and by UPS delivery to:

      Linda Friedman
      Stowell & Friedman
      321 S. Plymouth Court, 14th Floor
      Chicago, IL 60604

June 26, 2009           /s/ Lori E. Lightfoot

              Lori E. Lightfoot