**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEORGE MCREYNOLDS, et al., | |
| Plaintiffs, | |
| v. | Case No. 05 C 6583 |
| MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., | Hon. Robert W. Gettleman Magistrate Jeffrey T. Gilbert |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO RECONSIDER AND/OR NARROW THE CLASS DEFINITION**

Opinions are not "first drafts, subject to revision and reconsideration at a litigant's pleasure." *On Command Video Corp.* v. *Roti*, 2010 WL 2740309, at *1 (N.D. Ill. July 12, 2010). To warrant the "exceptional remedy" of reconsideration,[1] plaintiffs must demonstrate "extraordinary circumstances"[2] and "must clearly establish either a manifest error of law or fact or must present newly discovered evidence."[3] Problems requiring reconsideration thus "rarely arise," and "motions to reconsider should be equally rare." *Bank of Waunakee* v. *Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). This is not one of those "rare" and "exceptional" occasions in which reconsideration is warranted.

---

[1] *United States* v. *$314,900*, 2006 WL 794733, at *1 n.1 (N.D. Ill. Mar. 21, 2006).

[2] *Easypower Corp.* v. *Alden Corp.*, 522 F. Supp. 2d 1060, 1063 (N.D. Ill. 2007).

[3] *LB Credit Corp.* v. *Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995); *see also Oto* v. *Metro Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("manifest error" is "the 'wholesale disregard, misapplication, or failure to recognize controlling precedent'"); *Duffin* v. *Exelon Corp.*, 2007 WL 1385369, at *2 (N.D. Il. May 4, 2007) (applying same standard to reconsideration of denial of class certification).

Plaintiffs offer two principal bases for reconsideration. First, plaintiffs criticize the Court for characterizing their claim as really one for intentional discrimination rather than disparate impact. That criticism is unjustified. Plaintiffs mentioned disparate impact only once in their reply brief in support of class certification (in a footnote) and a mere handful of times in their opening brief. Now, having lost their class certification motion, plaintiffs cannot simply "reframe" their theory on a motion for reconsideration. *Vasarhelyi* v. *Vasarhelyi*, 2010 WL 1474652, at *1 (N.D. Ill. Apr. 7, 2010). In any event, for reasons described in Part I below, the Court correctly held that plaintiffs' disparate impact claim rests on highly individualized acts of alleged discrimination that are inappropriate for disparate impact analysis. Moreover, as we explain in Part II, any disparate impact claim cannot be certified because plaintiffs failed to demonstrate that they could establish on a class-wide basis that any Merrill Lynch policy caused a disparate impact. A trial on plaintiffs' disparate impact claim would thus "'give rise to hundreds or thousands of individual proceedings.'" Op. 16.[4]

Second, plaintiffs criticize the Court for failing to hold a *Daubert* hearing to resolve disputes between the experts. However, plaintiffs expressly told this Court in their reply brief that the Court did not need to resolve any disputes between the experts as a predicate to ruling on their class certification motion.[5] Now they do an abrupt about face because they do not like the result—but plaintiffs "cannot now seek reconsideration . . . on a ground that [they] expressly disclaimed before the Court ruled." *Hickory Farms, Inc.* v. *Snackmasters, Inc.*, 500 F. Supp. 2d

---

[4] Citations to "Op." refer to this Court's decision denying class certification, dated Aug. 9, 2010.

[5] Pls. Reply Br. in Support of Class Certification at 30 ("'battle[s] of the experts'" . . . nee[d] not be resolved in conjunction with the motion for class certification"); *see also id*. at 11 n.22.

789, 798 (N.D. Ill. 2007).[6] This Court made clear that plaintiffs fail to satisfy Rule 23 "even with their experts' reports and testimony," so any "battle of the experts" is irrelevant to the outcome and cannot be a basis for reconsideration. Op. 11 n.3.

*American Honda Motor Co. v. Allen*, 600 F.3d 813 (7th Cir. 2010), changed nothing in this regard, contrary to plaintiffs' suggestion that it represents some sea change in the law. In holding that a *Daubert* hearing is required if a party has sought a *Daubert* hearing and the expert's report "is critical to class certification" (*id.* at 815-16), the Seventh Circuit reiterated standard practice in the district courts and, as plaintiffs now admit, its own holding in *West* v. *Prudential Sec., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002).[7] Here, plaintiffs elected not to file a *Daubert* motion, and the Court found it unnecessary to rule on defendant's *Daubert* motions because plaintiffs' expert reports and testimony failed to supply any basis for class certification. The Court cited *American Honda* in its decision (Op. 11 n.3), and quite correctly applied this precedent to plaintiffs' motion.

In short, plaintiffs provide no reason for this Court to revisit its carefully considered ruling that plaintiffs' claims do not satisfy Rule 23's standards for class certification.

I.   **The Court Correctly Held That Plaintiffs' Disparate Impact Claims Rest On Highly Individualized Acts Of Alleged Discrimination.**

The Court did not misapprehend the law. It fully recognized that "[u]nder a disparate impact theory, plaintiff need not prove intentional discrimination, only that defendants' facially

---

[6] *Accord Caisse Nationale* v. *CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate forum for . . .arguing matters that could have been heard during the pendency of the previous motion"); *Green* v. *Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.4 (7th Cir. 1994) ("raising [an] argument for the first time in the motion for reconsideration is not adequate to preserve the issue for appeal and definitively waives it").

[7] In their reply brief on class certification, plaintiffs ignored *West*, and cited instead a 2001 Southern District of Illinois case that pre-dated *West* and a 1995 Southern District of New York case that pre-dated the Second Circuit's decision in *In re IPO Securities Litigation*, 471 F.3d 24 (2d Cir. 2006), which adopted the Seventh Circuit's reasoning in *West*.

3

neutral actions adversely affected a protected group." Op. 6 (citing *Teamsters* v. *United States*, 431 U.S. 324, 355 n.15 (1977)). It also understood that "commonality" is "more easily satisfied in a disparate impact case where all of the proposed class members have been impacted by a facially neutral policy." Op. 8. But the Court found that despite plaintiffs' "conclusory" allegation of "disparate impact," "the gravamen of their complaint, as well as the evidence presented," concern not Merrill Lynch's "neutral policies" but a host of allegedly discriminatory acts. Op. 8 n.2.

The Court's determination that this is not "a true disparate impact case" (Op. 9), but must be analyzed under Rule 23 as a case concerning individualized claims of discrimination by hundreds of different managers and thousands of different FAs, is unassailable. The Seventh Circuit in *Griffin* v. *Board of Regents*, 795 F.2d 1281, 1288 (7th Cir. 1986), a Title VII gender discrimination class action, similarly looked beyond the "disparate impact" label used by plaintiffs to the "disparate treatment" substance of their claims. It held that "plaintiffs ha[d] not adequately articulated a disparate impact theory" because the "facially neutral employment practice" at issue "itself ha[d] no impact" by gender. *Id.* at 1287-88. Instead, plaintiffs were "really arguing" that the practice enabled discriminatory decisions to be made by the employer— a "disparate treatment" claim. *Id.* at 1289; *accord Beard* v. *Whitley Cty.*, 840 F.2d 405, 407 n.1 (7th Cir. 1988) ("disparate impact theories generally are inappropriate when employment decisions involve numerous subjective factors").

Similarly, in *De La Fuente* v. *Chicago Tribune Co.*, 1985 WL 2103, at *4 (N.D. Ill. July 24, 1985), Judge Grady denied certification of a proposed Title VII class because a policy of subjective decision making had "much more resemblance to disparate treatment claims than to disparate impact claims." That plaintiff framed his "claim in 'policy' language" could not

4

obscure what was really at issue: "individualized claim[s] of discrimination" against managers "able to insert discriminatory bias" into the policy by their employment decisions. *Id* at *4-*6.[8]

Contrary to plaintiffs' assertion, the 1991 Amendments to Title VII did not change this analysis. Courts since 1991 continue to deny class certification of disparate impact claims where the "policy" at issue is discriminatory—if at all—only because of inputs that are alleged to be discriminatory acts. *See*, *e.g.*, *Lott* v. *Westinghouse Savannah River Co.*, 200 F.R.D. 539, 552-53 (D.S.C. 2000) (no commonality or typicality because plaintiffs' "disparate impact case attacking general employment policies that adversely affect African Americans" was in its "true nature" "99 separate accounts of individualized disparate treatment" resulting from the "decisions of a multitude of diverse managers and supervisors"); *Brooks* v. *Circuit City Stores*, 1996 WL 406684, at *4 (D. Md. June 17, 1996) (denying class certification when, despite "allegation of disparate impact, the gravamen of the complaint is one of disparate treatment" with its "focus" on "individual employment decisions"), *rev'd in part on other grounds*, 148 F.3d 373 (4th Cir. 1998); *Medlock* v. *Rumsfeld*, 336 F. Supp. 2d 452, 471 (D. Md. 2002) (where "gravamen of the claim remains individual employment decisions," analysis "is appropriate under a disparate treatment theory only, not disparate impact"); *Morgan* v. *UPS*, 380 F.3d 459, 465 n.2 (8th Cir. 2004); *Wright* v. *Circuit City Stores*, 201 F.R.D. 526, 539-541 (N.D. Ala. 2001). It is true that disparate treatment and disparate impact claims may arise from the same facts in an appropriate case; but these decisions demonstrate that plaintiffs may not evade Rule 23's requirements by dressing up highly individualized claims in "neutral policy" clothing. *See EEOC* v. *Joe's Stone Crab*, 220 F.3d 1263, 1278 (11th Cir. 2000) (requiring plaintiff to show

---

[8] *Accord Khan v. Grotnes Metalforming Sy., Inc.*, 679 F. Supp. 751, 761 (N.D. Ill. 1988) (dismissing disparate impact claim based on application of subjective termination criteria where "[p]laintiffs' assertion that defendants' subjectivity disproportionately impacted older employees implie[d] that in making their termination decisions defendants acted with an element of discriminatory intent.").

5

that a "facially-neutral employment practice . . . proximately caused the disparity . . . is essential to avoid the potential conflation of disparate treatment and disparate impact claims").

The Court properly found that a host of individualized questions lie behind plaintiffs' disparate impact claims, which are incapable of class resolution. Contrary to plaintiffs' suggestion, the Court did not announce some new legal standard that disparate impact claims lie only where neutral policies are neutrally applied; instead, it found quite correctly that plaintiffs' real complaint is with individual, highly particularized employment decisions that vary enormously from FA to FA. This Court correctly looked behind plaintiffs' allegations "to identify the nature of the issues that actually will be presented at trial" to determine that Rule 23 is not satisfied here. Rule 23, Adv. Committee Notes to 2003 Amendment. *See In re Hyrdrogen Peroxide Antitrust Lit.*, 552 F.3d 305, 311-12 (3d Cir. 2008).

**II. Plaintiffs' Disparate Impact Theories Cannot Obscure The Highly Individualized Employment Decisions That Make Class Adjudication Unmanageable.**

Contrary to plaintiffs' assertion (at 6), Merrill Lynch *does* dispute that "its national policies disproportionately exclude and harm African Americans." It went to considerable lengths to demonstrate that no challenged policy has a disparate impact. But more important here, plaintiffs' disparate impact theories hide a multitude of individualized issues that cannot be resolved class wide.

Plaintiffs have three theories: (1) subjective decision making has a disparate impact on African Americans and this is sufficient to justify certification of their disparate impact claim; (2) specific Merrill Lynch policies have a disparate impact; and (3) Merrill Lynch's system perpetuates customer "bias," which is both illegal and sufficient to establish a disparate impact claim. Looking behind these abstract assertions to the record before the Court, it is clear that none of these theories can be adjudicated on a class-wide basis.

6

### A. The Type Of Subjective Decision Making Plaintiffs Challenge Is Incompatible With Class Adjudication Of Disparate Impact Claims.

Plaintiffs are wrong on the facts, and they are wrong on the law that subjective decision making of the kind at issue here can support a class-wide disparate impact claim. To begin with, plaintiffs have *zero* support in the record for the proposition that subjective decision making by Merrill Lynch managers has a disparate impact on African Americans. Plaintiffs assert that proposition, and their experts speculated about it, but plaintiffs' experts never studied whether it was in fact true of Merrill Lynch managers and African American FAs. Defendant's expert Ali Saad did study whether subjective decision making has a disparate impact. He found, *without challenge or contradiction by either of plaintiffs' experts*, that the aggregate outcome in every area in which managerial discretion can be measured from the data was either race neutral or favored African Americans. *See* Def.'s Opp. 18-20, 22, 27, 29. Plaintiffs' sociologist, Dr. Bielby, conceded that this was inconsistent with his theory that subjective decision making by Merrill Lynch managers disadvantaged African Americans. *See* Def.'s Opp. 38.

For class certification purposes, however, the critical point is that plaintiffs challenge decision making by thousands of managers and FAs. As outlined in Point I above, courts have appropriately construed such allegations as disparate treatment, not disparate impact claims. This principle is particularly important where there are a large number of independent decision makers in different offices and states. Op. at 9; *see also Betts v. Sundstrand Corp.*, 1999 WL 436579, *7 (N.D. Ill. June 21, 1999) ("the sheer number of managers who hire applicants, and the wide range of jobs included in the prospective class, indicate a lack of common nucleus of operative fact between class members").[9] Aggregate statistics simply cannot establish commonality in multi-decision maker suits. *Cooper v. S. Co.*, 390 F.3d 695, 717 (11th Cir.

---

[9] *See also Wright*, 201 F.R.D. at 541; *Lott*, 200 F.R.D. at 553-54.

7

2004), *overruled on other grounds, Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006); *Stastny v. S. Bell*, 628 F.2d 267, 278-79 (4th Cir. 1980); *Abram v. UPS*, 200 F.R.D. 424, 431 (E.D. Wis. 2001); *see also* Saad Rep. 5 n.7.

It also is well established that a claim of disparate impact based on subjective decision making cannot be certified for class adjudication where that decision making is constrained by objective criteria. *Bettts* at *6.[10] Here, as pointed out at length in defendant's brief in opposition to class certification, subjective decision making by Merrill Lynch managers is constrained by objective, racially neutral, non-discriminatory guidelines. *See* Def.'s Opp. 12, 18-19, 25, 27, 37-38 & 38 n.24. This distinguishes *Mozee v. American Commercial Marine Service Co.*, 940 F.2d 1036 (7th Cir. 1991), upon which plaintiffs rely. There, a disparate impact class was certified where defendant "allow[ed] its foremen complete discretion" in making promotion decisions: they "received no formal guidance on qualifications they should require in deciding who to promote to leadman position. The defendant did not instruct its foremen with respect to traits, objectively determined, to be considered prerequisite to leadman promotions." *Id*. at 1044, 1049. Here, by contrast, plaintiffs' claims rest on multiple layers of decision making that is subjective only within constraints established by Merrill Lynch in numerous policies and guidelines, creating additional complexity in the analysis of each employment decision. *See* Def.'s Opp. 12, 18-19, 25, 27, 37-38 & 38 n.24.

---

[10] *Accord Bacon v. Honda of Am. Mfg.*, 370 F.3d 565, 571 (6th Cir. 2004) (no commonality where defendant employed objective criteria "such as time in service, attendance records, and test scores," in combination with subjective criteria); *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 426 (N.D. Ill. 2003) (no commonality where "decentralized" decision makers considered "both objective and subjective factors"); *Allen v. CTA*, 2000 U.S. Dist. LEXIS 11043, at *28-*29 (N.D. Ill. July 28, 2000) (no commonality where local decision makers did not have "unfettered discretion"); *Wright*, 201 F.R.D. at 540 n.22 (as to any disparate impact theory, where "there are objective factors, even a generally subjective process will not satisfy the typicality and commonality requirements.")

8

### B. Plaintiffs Have Not Established Any Class-Wide Causal Link Between Any Merrill Lynch Policy and African American Poor Performance.

Plaintiffs focus on three Merrill Lynch policies—teaming, account distributions, and giving higher compensation to FAs with higher production. Plaintiffs' abstract assertions about the discriminatory effects of these policies cannot obscure the fact that their claims rest on complaints about individualized treatment that could not be tried on a class-wide basis.

*Teaming.* Plaintiffs have never identified a Merrill Lynch teaming *policy* that has a disparate impact on African Americans. Instead, they point to the fact that African Americans and Caucasians team at different rates. Plaintiffs are required to identify what policy they believe leads to a disparate impact, which they have failed to do. *See Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005) ("plaintiff must first isolate and identify the specific employment practices that are allegedly responsible for any observed statistical disparities, and second demonstrate causation by offering statistical evidence of a kind and degree sufficient to show that the practice in question has caused" the disparate result).

Absent such a policy, as this Court correctly determined, plaintiffs' complaint is over the individual decisions of thousands of FAs in deciding whether to team, and with whom, for how long, and for what share of their book, and of hundreds of managers in deciding whether to encourage, discourage, approve, or disapprove a team. This is demonstrated quite starkly by the deposition testimony of the named plaintiffs, each of whom had experiences that are unique and very different from one another. For example, as pointed out in greater detail in defendant's brief in opposition to the class certification motion, named plaintiff Jennifer Madrid had a very positive teaming experience with a successful Caucasian FA, whereas plaintiff LaRue Gibson claims to have had a very negative teaming experience with a successful Caucasian FA, and plaintiff Mark Johnson testified that he did not want to team with anyone. Def.'s Opp. 13 & 34.

9

Plaintiffs renew their assertion that race is the barrier to African Americans being on teams. That assertion is irrelevant to this Court's Rule 23 analysis, because whatever the effects of teaming, they flow from countless highly individualized local decisions. But it also is utterly baseless. Defendant's expert, Dr. Saad, found *without any contradiction from plaintiffs' experts* that the controlling factor in team formation is not race but the average size of the accounts in an FA's book: FAs with similar sized accounts team together without regard to race. *See* Def.'s Opp. 15-16. Plaintiffs' expert Dr. Bielby testified in his deposition that he could not say that race was the impediment to teaming rather than success. *See* Def.'s Opp. 39; Bielby Dep. 135. Dr. Madden's efforts to establish a link between teaming and success establishes only a relationship, not causation. She never controls for the "chicken and egg" problem of whether successful FAs team or teaming causes otherwise unsuccessful FAs to become successful. Dr. Saad studied causation directly, and *again without contradiction*, found that teaming is a product of success, not the cause. *See* Def.'s Opp. 15-16. This makes sense in entrepreneurial jobs like the FA position. Indeed, named plaintiff George McReynolds testified that when seeking a team mate he would look for someone who was "knocking the ball out of the park," and named plaintiff LaRue Gibson testified that he wanted to retain control over who teamed with him. Def.'s Opp. 14-16; *see also Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 315 (7th Cir. 1986) ("Proof that the disputed employment practice was the cause of the allegedly unlawful condition is a requirement of liability under a disparate impact theory").

*Account distributions.* Plaintiffs' labor economists, Drs. Madden and Vekker, in fact never studied the actual operation of Merrill Lynch's complex account distribution policy,

10

including the many criteria that are taken into account under the policy,[11] and so plaintiffs lack even the baseline proof that it has a discriminatory impact. *See Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1988) ("failure to control for differences in rank" rendered statistician's study of pay discrimination "worthless"). Plaintiffs' sociologist, Dr. Bielby, testified that many of the criteria used to rank FAs under the policy are not discriminatory at all. Bielby Dep. 87-93.

In contrast to plaintiffs' labor economists, Dr. Saad did study the policy, and found *without contradiction from plaintiffs* that African Americans fared better under the policy than they would have done under a different policy that distributed accounts strictly based on prior production. *See* Def.'s Opp. 20; Saad Rep. 38-40. In any event, whether an African American FA benefitted or was harmed by a particular application of the policy, whether a manager exercised discretion to override the ranking criteria in a particular instance, whether the FA was discriminated against in the application of any factor that went into the policy, and why any particular class member received particular distributions are all issues that would require individualized inquiry into each of tens of thousands of account distributions. To give just one example from the named plaintiffs' depositions, FAs will do better on the account distribution ranking list if they obtain industry certifications that Merrill Lynch pays for. Plaintiffs' sociologist, Dr. Bielby, testified in his deposition that this was a non-discriminatory criterion. Bielby Dep. 90 & 93. Named plaintiff Jennifer Madrid testified that she was ranked higher than other FAs in her office because she obtained one of these industry certifications, whereas named plaintiff Mark Johnson testified that his manager recommended that he obtain an industry

---

[11] Madden & Vekker Rep. 24-37 & Tables 7-8 (studying transfers without controlling for the account distribution policy or any individual criteria in that policy); *see also* Def.'s Opp. 44 & Saad Rep. at 36 (explaining that Drs. Madden and Vekker failed to control for rank under account distribution policy).

certification to improve his ranking, but he had not done so, and named plaintiff Cathy Bender-Jackson testified that nothing prevented her from taking certification courses to improve her rankings. Def.'s Opp. 19 n.15 & 20-21.

**Compensation.** Finally, plaintiffs complain that Merrill Lynch's system of rewarding successful producers perpetuates customer bias. That argument, even if true, does nothing to satisfy Rule 23. As discussed in Part I, this Court properly determined that plaintiffs do not complain about the neutral compensation policy itself, but rather the allegedly discriminatory nature of countless individual decisions by managers and FAs that determine how an FA performs under the compensation policy. Op 10.

In any event, plaintiffs' argument is incorrect. As explained in defendant's brief in opposition to class certification, Merrill Lynch's compensation system is clearly protected by Section 703(h) of Title VII, 42 U.S.C. § 2000e-2(h). *See Goodman v. Merrill Lynch & Co.* 2010 WL 1404155, at *5 (S.D.N.Y. Apr. 6, 2010) (Section 703(h) protects Merrill Lynch formula awarding retention bonuses based on production). Merrill Lynch also has no legal obligation to redress society's ills. *See People Who Care v. Rockford Bd. of Educ.*, 246 F.3d 1073, 1076 (7th Cir. 2001) (defendant "has no legal duty to remove those vestiges of societal discrimination for which it is not responsible").

The cases cited by plaintiffs are completely inapposite, as all involve an employer honoring a customer's request to work with someone of a particular race or gender or not hiring people because they believe that their customers would not want to work with a woman or a person of color. But that is not alleged here. Merrill Lynch hired African Americans in line with

their availability in the labor pool,[12] and customer bias (if that is what occurred)[13] takes place away from Merrill Lynch in the separate individual interactions between FAs and potential clients in the community, where FAs tap into their personal networks to solicit potential clients. Def.'s Opp. 7-9. Outcomes are highly dependent on individual circumstances, involving multiple personal interactions by a variety of people, none of which lend themselves to class-wide analysis.

### C. A Disparate Impact Class Action Would Not be Manageable Due To the Individualized Nature of the Claims

As demonstrated above, plaintiffs' belated switch in focus to disparate impact terminology does nothing to solve the commonality, typicality, predominance, and manageability concerns the Court identified in its decision. Invoking "disparate impact" does not change the basic nature of the determinations that would have to be made at trial, which relate to individual decisions by thousands of managers and FAs in hundreds of different offices all around the country.

That plaintiffs seek back pay and front pay only emphasizes the individualized nature of the inquiries that would be necessary at trial. Those remedies require putative class members to establish that a policy having a disparate impact on African Americans in fact injured each of them individually. The Seventh Circuit in *Farrell* made it clear that this is an essential element of any disparate impact claim. 421 F.3d at 616-17. As we explained in our opposition to class certification (at 52), claims for backpay and front pay are also wholly incompatible with class

---

[12] Def.'s Opp. 45-46.

[13] As explained in Merrill Lynch's prior filings, the issue is not customer bias but the difficulty of crossing cultural boundaries in a world where wealth is almost exclusively in the hands of Caucasians and people form relationships of trust almost exclusively with people of their own race. *See* Def.'s Opp. 41-42.

certification under Rule 23(b)(2). *See also Bishop* v. *Gainer*, 272 F.3d 1009, 1018-19 (7th Cir. 2001).

Judge Schenkier got it right when he denied Stowell & Friedman's motion for class certification in *Puffer*: "To prove that an individual plaintiff suffered gender discrimination under *disparate impact* or disparate treatment theories of Title VII or the Equal Pay Act, an individualized inquiry into each putative plaintiff's circumstances would be necessary to determine whether employment actions taken toward a particular employee were based on gender or instead on legitimate, nondiscriminatory reasons." *Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 471 (N.D. Ill. 2009) (emphasis added) (citing *Warren v. Solo Cup Co.,* 516 F.3d 627, 629-30 (7th Cir. 2008)), *pet. for leave to appeal denied*, No. 09-8005 (7th Cir. Mar. 25, 2009).

Plaintiffs ask the Court to sweep these obstacles aside, but the Supreme Court held in *Amchem Products v. Windsor*, 521 U.S. 591, 613 (1997), that the Rules Enabling Act and Due Process Clause prohibit class certification that would "sacrifice[e] procedural fairness" or "abridge" the "substantive rights" of defendants to present individualized defenses. *Accord In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1020 (7th Cir. 2002) ("Tempting as it is to alter doctrine in order to facilitate class treatment, judges must resist so that all parties' legal rights may be respected.").

This Court's finding that resolving plaintiffs' claims will require the resolution of "several separate layers of individual issues" is as apposite to the disparate impact claim as to the disparate treatment claim. *See Andrews v. Chevy Chase Bank*, 545 F.3d 570, 576-77 (7th Cir. 2008) (refusing to certify a 23(b)(2) class because the equitable remedy of rescission would require too many individualized inquiries despite the strong common issue of whether uniform loan disclosure forms complied with the law: class certification should be denied if it "only

serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies"); *Rhodes v. Cracker Barrel Old Country Store, Inc.*, 213 F.R.D. 619, 678 (N.D. Ga. 2003) (refusing to certify disparate impact claims because employer's defenses required individualized determinations precluding finding commonality); *Rodriguez v. Ford Motor Credit Co.*, 2002 WL 655679, *5 (N.D. Ill. April 19, 2002) (refusing to certify disparate impact claim where factors relevant to defense would require inquiry into the reasons for thousands of decisions).

### III. Because This Court Took Plaintiffs' Expert Evidence Into Account, Plaintiffs' Arguments About That Evidence Are Irrelevant.

The Court's approach to plaintiffs' statistical evidence and its rejection of plaintiffs' statistical explanations are perfectly consistent with the results in *Puffer* and *Remien v. EMC Corp.*, 2008 U.S. Dist. LEXIS 74174 (N.D. Ill. Mar. 3, 2008). In those cases Judge Schenkier and Judge Kocoras both examined Stowell & Friedman's expert evidence, which was very similar to the expert evidence offered here, and found that this evidence did not satisfy the requirements of Rule 23 without excluding it on *Daubert* grounds. No *Daubert* hearing is required to reach this result.

Plaintiffs' three page attack on one small part of Dr. Saad's analysis regarding access to wealth is completely off point. Merrill Lynch did not rely on this one small portion of his analysis in its opposition to class certification, and the Court did not rely upon it in its decision. As pointed out above, the critical parts of Dr. Saad's report are completely unchallenged by plaintiffs' experts. They have absolutely nothing to say about these key findings, so there is no conflict for the Court to resolve. Because plaintiffs cannot satisfy Rule 23 "even with all their experts' reports and testimony" (Op. 11 n.3), supposed disputes among the experts are irrelevant to disposition of plaintiffs' motion. For all of these reasons, plaintiffs' motion should be denied.

15

Dated: August 31, 2010       By:  /s/ Lori E. Lightfoot

                MAYER BROWN LLP
                Stephen M. Shapiro
                Timothy S. Bishop
                Lori E. Lightfoot
                71 S. Wacker Drive
                Chicago, IL 60606
                (312) 782-0600 (Phone)
                (312) 701-7711 (Facsimile)

                --and--

                WEIL, GOTSHAL & MANGES LLP
                Jeffrey S. Klein
                Allan Dinkoff
                Nicholas J. Pappas
                767 Fifth Avenue
                New York, NY 10153
                (212) 310-8000 (Phone)
                (212) 310-8007 (Facsimile)

                Counsel for the Defendant

## CERTIFICATE OF SERVICE

        The undersigned, an attorney, hereby certifies that on August 31, 2010, she caused copies of DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER AND/OR NARROW THE CLASS DEFINITION to be served on all registered counsel via the Northern District of Illinois Electronic Filing System

                                                                By: /s/ Lori E. Lightfoot
                                                                  Lori E. Lightfoot