IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE MCREYNOLDS, MAROC HOWARD, )
LARUE GIBSON, JENNIFER MADRID, )
FRANKIE ROSS, MARVA YORK, LESLIE )
BROWNE, HENRY WILSON, LEROY BROWN, )
GLENN CAPEL, CHRISTINA COLEMAN, )
J. YVES LABORDE, MARSHELL MILLER, )
CARNELL MOORE, MARK JOHNSON, )
CATHY BENDER-JACKSON, and STEPHEN )
SMARTT, individually on behalf of themselves )
and all others similarly situated, )
 )
        Plaintiffs, ) No. 05 C 6583
  v. )
 ) Judge Robert W. Gettleman
MERRILL LYNCH, PIERCE, FENNER & )
SMITH INCORPORATED, )
 )
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs George McReynolds, Maroc Howard, Larue Gibson, Jennifer Madrid, Frankie Ross, Marva York, Leslie Browne, Henry Wilson, Leroy Brown, Glenn Capel, Christina Coleman, J. Yves Laborde, Marshell Miller, Carnell Moore, Mark Johnson, Cathy Bender-Jackson, and Stephen Smartt, individually and on behalf of all others similarly situated, have brought a two count second amended putative class action complaint on behalf of themselves and all others similarly situated against defendant Merrill Lynch, Pierce, Fenner & Smith, Inc., alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq. (Count I), and 42 U.S.C. § 1981 (Count II). The parties engaged in lengthy and often contentious discovery, after which plaintiffs moved to certify a class defined as:

African-American financial advisors ("FAs") and FA Trainees ("Trainees") who are or were employed in the retail brokerage unit, referred to as Global Private Client ("GPC") of defendant Merrill Lynch, Pierce, Fenner & Smith, Inc., from January 2001 to the present.

In a comprehensive opinion issued on August 9, 2010, the court denied plaintiffs' motion for class certification, concluding that plaintiffs had failed to established the requirements of Fed. R. Civ. P. 23(a)(2), (3) and Fed. R. Civ. P. 23(b). McReynolds v. Merrill Lynch, 2010 WL 3184179 (N.D. Ill. 2010). Plaintiffs seek reconsideration of that decision, and also seek to clarify and/or narrow their class definition. After another round of briefing the court heard oral argument, after which the parties submitted yet another round of briefing outlining a "trial plan" should the court agree with plaintiffs and certify a class. After reviewing everything the parties have submitted the court remains convinced that this case is not appropriate for class treatment and denies plaintiffs' motion to reconsider.

Plaintiffs' motion seeks reconsideration on two primary issues. First, plaintiffs argue that the court misunderstood aspects of their disparate impact claim and improperly held that to state a claim for disparate impact plaintiffs must establish a facially neutral policy that was also neutrally applied. Next, plaintiffs argue that the court rejected their expert evidence without ruling on defendant's motion under Daubert v. Merrell Dow Pharm, Inc., 509 U.S. 579 (1993).

With respect to the first issue, plaintiffs have misread the court's opinion. In that opinion the court recognized that Count I, which simply realleges the previous 47 paragraphs detailing numerous acts of intentional discrimination, was potentially broad enough to encompass both a pattern or practice discriminatory treatment claim and a discriminatory impact claim. The court then discussed the differences between the two types of claims, particularly with respect to the issue of commonality under Fed. R. Civ. P. 23(a)(2). When determining whether plaintiffs could

establish commonality, the court first looked to the allegations of the complaint. The operative paragraphs of Count I allege that defendant engaged in "racially biased decision-making and treatment" and that defendant "is strictly responsible for the acts and conduct of its managers and knew [or] should have known of a culture created by its managers and employees that discriminated against and was hostile to African-Americans." Indeed, the complaint revolves around allegations of intentional discrimination:

- Approximately 75% of African-American trainee brokers were forced to leave Merrill Lynch as a result of discriminatory treatment prior to completing the training program. (¶ 11).

- Merrill Lynch intentionally perpetuates its own discrimination and any bias that may exist in society. (¶ 15).

- African-Americans are also treated with disrespect and experience a hostile work environment in Merrill Lynch's branch offices despite proclamations in the firm's internal materials and advertisements that it is built on the principal of "Respect for the Individual." (¶ 18).

- McReynolds and the other named plaintiffs have performed their jobs in an impressive manner but were subjected to and harmed by Merrill Lynch's ongoing, nationwide pattern or practice of systemic and pervasive racial discrimination. (¶ 23).

- The Nashville Complex recruits almost exclusively at predominately white colleges and universities. Well-qualified African-American graduates are not welcome at Merrill Lynch. (¶ 26).

- Plaintiffs, like other African-Americans at Merrill Lynch, also have been subjected to a hostile work environment where African-Americans are treated as inferior and are subjected to abusive and harassing treatment, comments and behavior. (¶ 39).

It was against this background that the court indicated that plaintiffs' statistics would be more compelling if plaintiffs were attacking the neutral application of a neutral policy. The court did not hold that a plaintiff cannot bring a disparate impact claim unless a neutral policy is neutrally applied. Obviously, <u>Watson v. Forth Worth Bank and Trust</u>, 487 U.S. 977 (1988),

3

holds that in an appropriate case a disparate impact claim can be based on subjective or discretionary employment practices. But the mere fact that a plaintiff can state a disparate impact claim based on subjective employment practices does not mean that class treatment is always appropriate, particularly when those subjective decisions are made by hundreds of different individuals under different circumstances across the country.

Thus, contrary to plaintiffs' assertion, the court did not hold that plaintiffs cannot state a disparate impact claim. Instead, the court indicated that plaintiffs' statistical evidence would make a more compelling case for commonality and class certification if they were arguing that a neutral policy neutrally applied resulted in an adverse impact. That would indicate that the African-American FAs across the country all suffered from that same application or that the alleged policy manifested itself in the same general fashion as to all putative class members. See Puffer v. Allstate Insurance Co., 255 F.R.D. 450, 460-61 (N.D. Ill. 2009).

Accordingly, for the reasons indicated above and those discussed in the court's original opinion, the court remains convinced that plaintiffs' have failed to establish commonality.

In addition, the court remains convinced that plaintiffs are unable to satisfy Fed. R. Civ. P. 23(b). Certification under Rule 23(b)(2) is inappropriate because the individual putative class members' financial interests are too high to be considered incidental to any requested equitable relief. Consequently, the members must be extended opt-out rights, leaving Rule 23(b)(2) certification inappropriate. See Jefferson v. Ingersoll International Inc., 195 F.3d 894 (7th Cir. 1999).

Nor is certification under Rule 23(b)(3) appropriate. Plaintiffs cannot establish that questions of law or fact common to class members predominate over any questions affecting

4

only individual members, and that a class action is superior to other available methods for thoroughly and efficiently adjudicating the controversy. Even under plaintiffs' proposed trial plan, the court would conduct an initial trial to resolve one issue – whether defendant's employment policies and practices are discriminatory. If they are, according to plaintiff's own trial plan the court would then have to conduct close to 1000 follow-on jury trials to determine whether each individual class member suffered discrimination as a result of those policies and, if so, the amount of damages. This prospect would be entirely inefficient. See Puffer, 255 F.R.D. at 472. Because each of the proposed plaintiffs worked in separate branch offices spread out across the country, each trial would involve different witnesses, leaving it impossible even to combine the cases in to smaller groups. Consequently, litigation of the follow-on trials would be unmanageable.

Next, plaintiffs complain that the court implicitly rejected their expert evidence without ruling on defendant's motions under Daubert. Once again plaintiffs misread the court's opinion. In fact, the court accepted all of plaintiff's statistical evidence but concluded that it was insufficient to support class certification for the reasons stated above.

Plaintiffs provided expert statistical opinions from Dr. Janice Madden and Dr. William Bielby. Contrary to plaintiff's assertion in their brief in support of their motion to reconsider (p. 8), this court did not hold that:

> Defendant's expert performed a study of published available census data and concluded that access to networks or potential clients with substantial wealth varies by race among defendant's FAs. As a result, customers independently generated by African-American FAs' participation in the training program early in their careers come from neighborhoods with significantly higher African-American populations and significantly lower average wealth.

5

Actually, the opinion first described plaintiffs' statistical evidence (2010 WL 3184179 @ *5-6), and then noted that defendant "of course, has supplied its own statistical expert who, not surprisingly, attacked plaintiffs' evidence." In the paragraph quoted above the court simply described generally defendant's statistical evidence and the conclusion that defendant's experts drew from the data. The court then noted that the contrasting statistical evidence and expert testimony demonstrated the dangers of relying too heavily on statistics supported by raw data.

The opinion also noted that the Seventh Circuit had recently cautioned that district courts must perform a full <u>Daubert</u> analysis before certifying a class if the situation warranted. <u>Id</u>. at *6, n. 3 (<u>citing</u> <u>American Honda Motor Co. Inc. v. Allen</u>, 600 F.l3d 813, 816 (7th Cir. 2010)). Only defendant had brought motions to bar under <u>Daubert</u>; plaintiffs did not challenge defendant's experts' qualifications or submissions. Had the court relied on plaintiffs' statistical evidence to certify a class, under <u>American Honda</u> it would have had to perform a full <u>Daubert</u> hearing on defendant's motions. Instead, the court accepted plaintiffs' statistics and denied certification for failure to establish the requirements of Rule 23(a) and (b). Only defendant could complain about the court's decision not to rule on its motion, and defendant is not complaining.

Plaintiffs are also incorrect that the court relied on defendant's expert Dr. Saad's criticism of plaintiffs' expert Madden. Again, the court's opinion simply described Dr. Saad's criticism of plaintiffs' expert and then noted the danger in relying solely on statistics.[1] The court did not endorse Dr. Saad's nor any other expert's opinion, and has not held that racial differences in access to wealth caused disparate outcomes. The court simply concluded that plaintiffs'

---

[1]Plaintiffs did not move to bar Dr. Saad's testimony (but did move to strike his affidavit) and expressly told the court that the "debate between Saad and Madden is a battle of the experts that needs not be resolved in conjunction with the motion for class certification."

statistics in conjunction with their anecdotal evidence were insufficient to support class certification.

Accordingly, for the reasons described above, plaintiffs' motion for reconsideration is denied.


**ENTER:** February 14, 2011

                                            **Robert W. Gettleman**
                                            **United States District Judge**