**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEORGE MCREYNOLDS, et al., | |
| Plaintiffs, | |
| v. | Case No. 05 C 6583 |
| MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., | Hon. Robert W. Gettleman<br>Magistrate Jeffrey T. Gilbert |
| Defendant. | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS
CERTIFICATION**

MAYER BROWN LLP
Stephen M. Shapiro
Timothy S. Bishop
Lori E. Lightfoot
71 S. Wacker Drive
Chicago, IL 60606

--and--

WEIL, GOTSHAL & MANGES LLP
Jeffrey S. Klein
Nicholas J. Pappas
Allan Dinkoff
767 Fifth Avenue
New York, NY 10153

# TABLE OF CONTENTS

**Page**

I.     THE COURT HAS ALREADY REJECTED PLAINTIFFS' ARGUMENTS ................. 1

II.    WAL-MART CONFIRMS THIS COURT'S ANALYSIS ............................................. 5

III.   PLAINTIFFS CANNOT SATISFY RULE 23(B) .......................................................... 12

IV.   PLAINTIFFS' PROPOSAL TO HAVE SPECIAL MASTERS CONDUCT NON-JURY TRIALS IS NOT TENABLE .................................................................... 15

CONCLUSION ......................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. R.R. Donnelley & Sons*,
2001 WL 336830 (N.D. Ill. 2001) ..........................................................................13

*Albemarle Paper Co. v. Moody*,
422 U.S. 405 (1975)..............................................................................................16

*Allen v. Int'l Truck & Engine Corp.*,
358 F.3d 469 (7th Cir. 2004) ................................................................................14

*Allison v. Citgo Petrol. Corp.*,
151 F.3d 402 (5th Cir. 1998) ................................................................................13

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)..............................................................................................12

*Andrews v. Chevy Chase Bank*,
545 F.3d 570 (7th Cir. 2008) ........................................................................4, 5, 14

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*,
906 F.2d 1185 (7th Cir. 1990) ................................................................................1

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959)..............................................................................................17

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
494 U.S. 558 (1990)..............................................................................................16

*Curtis v. Loether*,
415 U.S. 189 (1974)..............................................................................................16

*Dairy Queen v. Wood*,
369 U.S. 469 (1962)........................................................................................16, 17

*Erica P. John Fund Inc. v. Halliburton Co.*,
131 S. Ct. 2179 (2011)..........................................................................................13

*Farrell v. Butler Univ.*,
421 F.3d 609 (7th Cir. 2005) ........................................................................5, 6, 13

*Gen. Tel. Co. of Southwest v. Falcon*,
457 U.S. 682 (1982)..............................................................................................11

# TABLE OF AUTHORITIES

## (continued)

Page(s)

*Grayson v. Wickes Corp.*,
607 F.2d 1194 (7th Cir. 1979) ...................................................................16

*Great-West Life & Annuity Insurance Co. v. Knudson*,
534 U.S. 204 (2002)...........................................................................15, 16

*Griffin* v. *Board of Regents*,
795 F.2d 1281 (7th Cir. 1986) .....................................................................3

*Griggs v. Dukes Power Co.*,
401 U.S. 424, 432 (1971)..............................................................................2

*Hohider v. United Parcel Service, Inc.*,
574 F.3d 169 (3d Cir. 2009)..........................................................................4

*In re Allstate Ins. Co.*,
400 F.3d 505 (7th Cir. 2005) ......................................................................12

*In re Hydrogen Peroxide Antitrust Litigation*,
552 F.3d 305 (3d Cir. 2008).................................................................5, 13

*Jefferson v. Ingersoll Int'l Inc.*,
195 F.3d 894 (7th Cir. 1999) ......................................................................12

*Kartman v. State Farm Mutual Auto Ins. Co.*,
634 F.3d 639 (7th Cir. 2011) ......................................................................14

*Puffer v. Allstate Insurance Co.*,
255 F.R.D. 450 (N.D. Ill. 2009)...........................................................3, 4,11, 13

*Randall v. Rolls-Royce Corp.*,
637 F.3d 818 (7th Cir. 2011) ..............................................................5, 12, 14

*Rhodes v. Cracker Barrel Old Country Store, Inc.*,
213 F.R.D. 619 (N.D. Ga. 2003)..................................................................13

*Rodriquez v. Ford Motor Credit Co.*,
2002 WL 655679 (N.D. Ill. April 19, 2002).................................................13

*Ross v. Bernhard*,
396 U.S. 531 (1970)......................................................................................16

*Scott v. Neely*,
140 U.S. 106 (1891).............................................................................16, 17

## TABLE OF AUTHORITIES

### (continued)

**Page(s)**

*Setser v. Novack Inv. Co.*,
    638 F.2d 1137 (8th Cir.) ........................................................................................16

*Tagatz v. Marquette Univ.*,
    861 F.2d 1040 (7th Cir. 1988) ................................................................................8

*United States v. City of New York*,
    2011 WL 268074 (E.D.N.Y. July 8, 2011) ............................................................10

*U.S. v. Funds in the Amount of Three Hundred Fourteen Thousand Nine Hundred
    Dollars ($314,900.00)*,
    2011 WL 268074 (E.D.N.Y. July 8, 2011) ..............................................................1

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................... *passim*

*Warren v. Solo Cup Co.*,
    516 F.3d 627 (7th Cir. 2008) ................................................................................13

*Watson v. Fort Worth Bank & Trust*,
    487 U.S. 977 (1988) ............................................................................................3, 5

### OTHER AUTHORITIES

Comments to 2003 Amendments to Rule 23(c)(1) ..........................................................4

*Seventh Amendment Right to Jury Trial: A Study in the Irrationality of Rational Decision
    Making*, Martin H. Redish
    70 Nw. U. L. Rev. 486 (1976) ..............................................................................17

*"You Just Can't Get There From Here": A Primer on Wal-Mart v. Dukes*,
    80 U.S. Law Week 93 (July 19, 2011) ....................................................................5

Every argument advanced in plaintiffs' "amended motion" for class certification was advanced in plaintiffs' prior motion for reconsideration, except their baseless argument that *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), requires certification of the very kind of nationwide discrimination class action rejected by the Supreme Court. Plaintiffs misread *Wal-Mart*, and they merely repackage arguments previously rejected by this Court. At bottom, plaintiffs' "amended motion" is nothing but another motion for reconsideration. As was the case the first time around, this is not one of those "rare"[1] and "exceptional"[2] circumstances where reconsideration is warranted.

We begin by reviewing plaintiffs' prior motion for reconsideration filed in August 2010 and this Court's denial of that motion. We then turn to the Supreme Court's *Wal-Mart* decision, the nature of plaintiffs' claims, the absence of the requisite proof necessary to certify a class, plaintiffs' inability to satisfy Rule 23(b) and the impossibility of holding backpay trials before special masters.

## I.     THE COURT HAS ALREADY REJECTED PLAINTIFFS' ARGUMENTS

Plaintiffs' motion for reconsideration was directed at their disparate impact claims, and sought the same bench trial for injunctive relief that they advocate again here based on the same arguments.[3] In support of their motion for reconsideration, plaintiffs argued that disparate impact "'is established' if an employer 'uses' an 'employment practice' that causes a 'disparate

---

[1] *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

[2] *U.S. v. Funds in the Amount of Three Hundred Fourteen Thousand Nine Hundred Dollars ($314,900.00)*, 2006 WL 794733, at *1 n.1 (N.D. Ill. Mar. 21, 2006).

[3] Pl. Reconsid. Br. at 1-2 (asking the court to consider two issues – disparate impact and *Daubert*), 15 ("Wherefore, Plaintiffs ask the Court to grant their motion for reconsideration, certify a disparate impact class, and schedule a *Daubert* hearing"); Pl. Trial Plan at 1-2 (Court should hold disparate impact bench trial to award injunctive relief and appoint special masters to resolve issues of backpay for each class member).

impact.'" Pl. Reconsid. Br. at 2; Amended Motion at 2 (both quoting *Lewis v. City of Chicago*, 130 S. Ct. 2191, 2198 (2010)). As they do here, plaintiffs contended on reconsideration that they have "identified specific employment policies or practices and their disparate impact, *i.e.*, the national account distribution policy and national team policy." Pl. Reconsid. Br. at 3; *see also* Pl. Reconsid. Reply Br. at 8-13; *see* Amended Motion at 4. Plaintiffs next itemized on reconsideration, as they do here, what they view as statistical evidence demonstrating that Merrill Lynch's teaming and account distribution policies have a disparate impact on African Americans. Pl. Reconsid. Br. at 4-5; Amended Motion at 6-7. On both reconsideration and on this motion, plaintiffs argue that statistical disparities between African Americans and Caucasians in account distributions and in team participation are sufficient to certify a disparate impact class. Reconsid. Br. at 3-4 (citing *Griggs v. Dukes Power Co.*, 401 U.S. 424, 432 (1971)); Amended Motion at 6-7. According to plaintiffs, these statistical disparities create a segregated workforce and perpetuate customer bias, both of which plaintiffs view as common questions that can be resolved at a class trial. Pl. Reconsid. Br. at 6-7, 9-10; Amended Motion at 4, 6-7.

Just as they do now, plaintiffs argued on reconsideration that it is the policies that matter, not what happened to each class member, because their focus is on the national policies, not individual claims, and efficiency demands that these issues be tried on a class basis. *Compare* Pl. Reconsid. Br. at 7-8 *and* Pl. Reconsid. Reply Br. at 8-9 *with* Amended Motion at 2-3. And plaintiffs advanced on reconsideration the same trial plan they advocate again here, based on many of the very same arguments. *Compare* Pl. Reconsid. Br. at 7-8 *and* Pl. Reconsid. Reply Br. at 8-9; Pl. Trial Plan Br. at 11-12 *with* Amended Motion at 2-3.

This Court properly rejected these arguments and this trial plan when it denied plaintiffs' motion for reconsideration. It first found, consistent with Seventh Circuit precedent, that despite

2

the disparate impact label, "the complaint revolves around allegations of intentional discrimination."[4] Reconsid. Opinion at 3. The Court properly found that plaintiffs were not alleging that "a neutral policy neutrally applied resulted in an adverse impact," because not all "African American FAs across the country suffered from that same application" nor did "the alleged policy manifest[] itself in the same general fashion as to all putative class members." *Id.* at 4 (citing *Puffer v. Allstate Insurance Co.*, 255 F.R.D. 450, 460-61 (N.D. Ill. 2009)). Instead, each class member's experience is unique, the "result of countless decisions made by themselves, other FAs in their branch office, their branch managers and so on." Class Cert. Opinion at 9. The Seventh Circuit (Judges Posner, Wood and Hamilton) denied plaintiffs' petition under Rule 23(f) seeking to reverse this determination. And the Court's holding presciently foreshadowed the Supreme Court's decision in *Wal-Mart* on this very point.

This Court also foreshadowed the Supreme Court's decision in *Wal-Mart* when it held that plaintiffs' disparate impact claims could not be certified under Rule 23(b)(2), but must instead proceed under Rule 23(b)(3). Reconsid. Opinion at 4. *Accord Wal-Mart*, 131 S. Ct. at 2557. The Court held that certification under (b)(3) was improper because:

> [e]ven under plaintiffs' proposed trial plan, the court would conduct an initial trial to resolve one issue – whether defendant's employment policies and practices are discriminatory. If they are, according to plaintiff's own trial plan the court would then

---

[4] *See Griffin* v. *Board of Regents*, 795 F.2d 1281, 1287-89 (7th Cir. 1986) (court must look beyond plaintiffs' disparate impact label to the substance of their claims; holding that "plaintiffs ha[d] not adequately articulated a disparate impact theory" because the "facially neutral employment practice" at issue "itself ha[d] no impact" by gender. Instead, plaintiffs were "really arguing" that the practice enabled discriminatory decisions to be made by the employer—a "disparate treatment" claim.); s*ee also* Def. Opp. to Reconsid. at 4-6. Contrary to what plaintiffs argued in reply on reconsideration, *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988), did not overrule *Griffin*. *Watson* addressed only the question expressly left open by *Griffin* as to whether subjective decision making can support a disparate impact claim. *Griffin* was not decided on that ground, 795 F.2d at 1288 n.14, and that question is not at issue here. In any event, the Supreme Court held in *Wal-Mart* that subjective decision making in this context does *not* support certification of a nationwide class action. 131 S. Ct. at 2552, 2554.

3

> have to conduct close to 1000 follow-on jury trials to determine whether each individual class member suffered discrimination as a result of those policies and, if so, the amount of damages. This prospect would be entirely inefficient. Because each of the proposed plaintiffs worked in separate offices spread out across the country, each trial would involve different witnesses, leaving it impossible even to combine the cases in to smaller groups. Consequently, litigation on the follow-on trials would be unmanageable.

Reconsid. Opinion at 5 (citing *Puffer*, 255 F.R.D. at 472). And, under *Wal-Mart*, it is dispositive that there are not even common questions sufficient to satisfy 23(a)(2). *Wal-Mart*, 131 S. Ct. at 2557, 2661.

At the hearing on July 19, 2011, the Court asked whether it might defer the issue of how to resolve the individual claims of the 1,000 putative class members until after it holds a classwide disparate impact trial. The law is clear that deferring resolution of how individual backpay claims of 1,000 absent putative class members will be handled is not an option. The Seventh Circuit has made it clear that the manner in which class members' claims will be resolved is a critical inquiry at the class certification stage and cannot be deferred. *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008). *Accord* Comments to 2003 Amendments to Rule 23(c)(1) ("A critical need is to determine how the case will be tried."); *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 202 (3d Cir. 2009) (unanimous panel, Justice Sandra Day O'Connor sitting by designation) (citing Comments to 2003 Amendments to Rule 23 and holding that the district "court's deferral of [an analysis of how the trial plan would deal with monetary relief] post class certification was an abuse of discretion"). As this Court previously held, and *Wal-Mart* confirms, there are no common issues with common answers within the meaning of 23(a)(2) to be resolved at any such trial. And if even if there were, if class certification "only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies," as is certainly the case here, then class certification should be denied.

*Andrews*, 545 F.3d at 577.  *Accord Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 826 (7th Cir. 2011); *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 311 (3d Cir. 2008).

## II.     *WAL-MART* **CONFIRMS THIS COURT'S ANALYSIS**

Plaintiffs make the astonishing claim that *Wal-Mart* – which a leading commentator has described as the death knell of employment discrimination class actions – changes the law on which this Court relied to deny class certification such that class certification is now required. *See* John C. Coffee, Jr., *"You Just Can't Get There From Here": A Primer on Wal-Mart v. Dukes,* 80 U.S. Law Week 93 (July 19, 2011).  It would be remarkable if this Court read *Wal-Mart* as authorizing precisely the types of nationwide, multiple decision-maker discrimination class actions that were not being certified outside the Second and Ninth Circuits prior to *Wal-Mart*, when the theories used by courts in the Second and Ninth Circuits to certify such class actions were comprehensively rejected by the Supreme Court.

*Wal-Mart* establishes beyond any doubt that this Court had it exactly right the first two times it considered and rejected plaintiffs' efforts to certify this class.  In *Wal-Mart*, the Court reiterated that plaintiffs seeking class certification are required to "prove that there are *in fact* … common questions" with common answers. 131 S. Ct. at 2551 (emphasis in original). Significantly, evidence of disparate outcomes is not sufficient to meet plaintiffs' burden of proof. *Id*. at 2555-56.  Instead, "'plaintiff must begin by identifying the specific employment practice that is challenged.'  That is all the more necessary when a class of plaintiffs is sought to be certified."  *Id*. at 2555 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 997, 994 (1988)) (citation omitted).  Indeed, even before *Wal-Mart*, the Seventh Circuit held in *Farrell v. Butler Univ.*, 421 F.3d 609 (7th Cir. 2005), that on a disparate impact claim "plaintiff must first 'isolate and identify the specific employment practices that are allegedly responsible for any observed statistical disparities,' **and second demonstrate causation by offering 'statistical evidence of a**

**kind and degree sufficient to show that the practice in question has caused'" the disparate results.** *Id.* at 616 (emphasis added) (citations omitted).

Here, all plaintiffs have is disparate outcomes, and they continue to argue that this is sufficient despite the dictates of *Wal-Mart* and *Farrell* to the contrary, just as they did on reconsideration. Amended Motion at 7; Pl Reconsid. Br. at 5. They have not identified the policy that produces those outcomes beyond subjective decision making by hundreds of managers and thousands of FAs in over a hundred offices around the country. Plaintiffs *say* they have identified two policies (teaming and account distributions), but they have *not established* that anything about those policies causes the disparate outcomes. That means no class can be certified. *Wal-Mart*, 131 S. Ct. at 2555-56.

With respect to teaming, plaintiffs continue to rely on evidence that African Americans team at a lower rate than Caucasians, and they argue that this impacts success, just as they did on their class certification motion and in their motion for reconsideration. But they still have not identified any Merrill Lynch policy that causes this disparity other than allowing FAs to decide whether to team at all and if so, with whom. Nor have they demonstrated that teaming leads to success.[5] As this Court found in its original decision denying class certification, any disparities in teaming, to the extent they exist, are the result not of any Merrill Lynch policy but instead "the individual allegedly discriminatory decisions along the way, such as a white FA's decision not to

---

[5] Thousands of FAs have decided not to participate in pools and teams, including many high producers. *E.g.*, Dkt No. 313-47, Root Aff. ¶¶16-19 (providing examples of FAs, including high producing African American, who are not on teams because they are cautious about working with another FA who might be less motivated for success); Dkt No. 336-4, Nevins Aff. ¶12 (identifying high producing FA who has never joined a team because he prefers to work alone); Dkt No. 313-32, King Aff. ¶14 (identifying three high producing FAs who prefer to remain solo practitioners to have more control over their own client relationships); *see also* Dkt No. 313-2, App. II, Tab A pt. 4.

team with an African American FA. . . ."[6]  Class Cert Opinion at 11.  This is merely a variation of the subjective decision making theory rejected by the Supreme Court in *Wal-Mart*.

Plaintiffs' only evidence that Merrill Lynch causes the alleged disparity in teaming was the report of Dr. William Bielby, who provided an analysis of "factors contributing to African Americans' consistent low participation on teams,"[7] and who is the same expert rejected by the Supreme Court in *Wal-Mart*.  Plaintiffs' other experts, Drs. Madden and Vekker, reported only the existence of the disparities; Drs. Madden and Vekker had nothing to say about what caused those disparities.  Bielby is conspicuously absent from plaintiffs' current motion, but he is plaintiffs' only possible evidence of causation.

Bielby testified during his deposition in this case that he could not opine on whether a team of Caucasian FAs would resist having a successful African American FA join the team because of his or her race.  Dkt No. 309-5, Bielby Dep. at 135:12-23.  Bielby also testified that "regardless of color, less successful FAs are … much less likely to be on teams,"[8] and that there are "a lot of factors" other than race that influence whether someone gets on a team.[9]  Bielby then fell back to manager discretion, which he claimed managers exercise "in a way that disadvantages African Americans."  *Id*. at 101:2-15.  However, he was unable to identify a single incident of racial bias or stereotyping at Merrill Lynch:  "I have not made any effort to ascertain what factors are in play in any given decision regarding the assignment of an account or allocation of a resource [such as teaming] and so on."  *Id*. at 128:1-4; *see also id*. at 135:24-

---

[6] A full description of the Merrill Lynch teaming process can be found at pages 12-15 of Defendants' Opposition to Plaintiffs' Motion for Class Certification.

[7] *See* Dkt No. 312-5, Bielby Rep. at 24.

[8] Dkt No. 309-5, Bielby Dep. at 85:9-15.

[9] Dkt No. 309-5, Bielby Dep. at 82:20.

136:9.  Thus, Bielby simply confirmed that any class trial would still necessitate individualized inquiries into subjective decisions by thousands of decision makers around the country.  **Bielby offered the same kind of "evidence" in support of plaintiffs' motion for class certification in *Wal-Mart*, and the Supreme Court dismissed it as "worlds away from the 'significant proof'" required to sustain class certification.**  131 S. Ct. at 2554.  This Court already has found Bielby's testimony insufficient to support class certification, and *Wal-Mart* has now confirmed that this Court's analysis was absolutely correct.

The same is true with respect to account distributions.[10]  Plaintiffs' labor economists, Drs. Madden and Vekker, never studied the actual operation of Merrill Lynch's complex account distribution policy ("ADP"), including the many criteria that are taken into account under the policy,[11] and so plaintiffs lack even the baseline proof that it has a discriminatory impact.[12]  *See Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1988) ("failure to control for differences in rank" rendered statistician's study of pay discrimination "worthless").  Thus, while plaintiffs argue at page 5 of their Amended Motion that the ADP criteria create the disparate impact, they have zero proof that this is the case.  It is too glib to say, as they did in their brief in

---

[10] A full description of the Merrill Lynch account distribution process can be found at pages 16-21 of Defendants' Opposition to Plaintiffs' Motion for Class Certification.

[11]  Madden & Vekker Rep. 24-37 & Tables 7-8 (studying transfers without controlling for the account distribution policy or any individual criteria in that policy); *see also* Def.'s Opp. 44 & Saad Rep. at 36 (explaining that Drs. Madden and Vekker failed to control for rank under account distribution policy).

[12] Plaintiffs' argument on reconsideration that the ADP ranking system creates a common issue because FAs compete with each other on a national basis for accounts has no basis in the record. FAs compete only with other FAs in their own office for account distributions, not with FAs in other offices, even within the same city, because accounts are distributed under the ADP only within individual offices.  Dkt No. 313-51, Sieg Aff. ¶¶ 104, 106; Dkt No. 313-20, Flippin Aff. ¶ 4; Dkt No. 313-41, Packard Aff. ¶ 6; Dkt No. 313-11, Blanche ¶ 3; Dkt No. 313-24, Gaynor Aff. ¶ 3; Dkt No. 314-2, Bender Jackson Dep. at 241.

support of the first reconsideration motion (at 3-4), that there was no need to study the criteria because they are tainted. They need to prove the criteria are tainted, not just say it, particularly when one of their experts, Dr. Bielby, testified that a number of the criteria are *not* discriminatory.[13] Dkt No. 309-5, Bielby Dep. 87-93.

Dr. Bielby's report in this case did not analyze the criteria in the account distribution policy, but focused instead on manager discretion to deviate from the ranking criteria and FA-to-FA transfers outside the account distribution policy. Bielby Rep. at 26-34. In other words, the issue is thousands of FAs and managers making discretionary decisions at the local level in offices around the country, which this Court already found precludes class certification. Reconsid. Opinion at 4 ("the African American FAs across the country [did not] all suffer[] from the same application" of a neutral policy nor did "the alleged policy manifest[] itself in the same general fashion as to all putative class members" (citing *Puffer*)). The Supreme Court confirmed that the Court's decision on reconsideration was correct: Rule 23(a)(2) requires that each class member's claims "depend upon a common contention . . . capable of classwide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke*." 131 S. Ct. at 2551 (emphasis added).

Plaintiffs attempt to turn this quote from *Wal-Mart* on its head, arguing that the kinds of common questions they postulate here are the kinds of questions *Wal-Mart* said would satisfy the

---

[13] On the first motion for reconsideration, plaintiffs mischaracterized the ADP as being based on production quintiles, which they argue are inherently discriminatory because African American FAs are clustered in the bottom quintiles. However, as a reading of the ADP criteria makes clear, some of the criteria, such as certifications and client retention, do not reference quintiles at all, and virtually none of the quintiles referenced in the numerous ADP policies over the last 10 years are production quintiles. Instead, they are quintiles based on the non-discriminatory criteria in the ADP, such as percentage growth in affluent households or annuitized assets. *See* Dkt. Nos. 353-15 to 353-19. In any event, plaintiffs have no evidence that production is discriminatory and lack any proof that account distributions contribute in any meaningful way to earnings disparities.

commonality requirements of Rule 23(a)(2).  Amended Motion at 2 (quoting *Wal-Mart*, 131 S. Ct. at 2551)).  Nothing could be further from the truth.  The Supreme Court made it clear that common issues that satisfy Rule 23(a)(2) must have common answers that establish liability for each class member to the defendant, which the questions proposed by plaintiffs here will not do. Immediately before the portion of the opinion quoted by plaintiffs, the Court said that the language of 23(a)(2) "is easy to misread, since '[a]ny competently crafted class complaint literally raises common 'questions.'  For example: … Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?"  *Id.* (citation omitted).  These are exactly the kinds of abstract questions plaintiffs pose in their amended motion.  Amended Motion at 8-9.

The Supreme Court added this:  "Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, *or even a disparate-impact Title VII injury*, gives no cause to believe that all their claims can productively be litigated at once.  Their claims must depend upon a common question – *for example, the assertion of discriminatory bias on the part of the same supervisor.*"  *Wal-Mart*, 131 S. Ct. at 2551 (emphasis added).  It is in this context that the Court said what plaintiffs quote – "That common contention, moreover, must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  And put in this context, it is clear that a disparate impact trial here would do no such thing, because there are no policies that impact all class members in the same way, as this Court found when it denied class certification and when it denied plaintiffs' first motion for reconsideration.

Plaintiffs' failure to establish that any policy impacted all class members in the same fashion so as to establish liability in a single stroke distinguishes this nationwide discrimination

class action from *United States v. City of New York*, 2011 WL 268074 (E.D.N.Y. July 8, 2011), which involved hiring tests given to applicants for a position as a New York City firefighter. The same tests were administered to every applicant and those tests were found to be discriminatory. Here, there is no test, and plaintiffs' effort to shoehorn teaming and account distributions into a test paradigm fails because plaintiffs have no evidence that any teaming or account distribution policy impacts the putative class because of their race and because many class members benefited from teams and account distributions. *See* Def. Br. in Op to Class Cert at 15-16 (teaming), 19-21 (account distributions). *Accord* Class Cert. Opinion at 8 ("[a]fter identifying … so-called common issues, however, plaintiffs offer little to establish the 'significant proof' required by *Falcon*, to establish that the asserted discriminatory culture manifested itself in the 'same general fashion' as to all putative class members." (citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 682, 159 n.15 (1982)).

Plaintiffs' aggregated statistics do not create those common issues. *Wal-Mart*, which was a disparate impact, as well as a disparate treatment case, holds quite clearly that "[e]ven if [plaintiffs' statistical evidence] established (as it does not) a pay or promotion pattern that differs from the nationwide figures or the regional figures in *all* of Wal-Mart's 3,400 stores, that would still not demonstrate that commonality of issue exists." 131 S. Ct. at 2555 (emphasis in original). Each manager will have a different reason for his or her decision and "almost all of them will claim to have been applying some sex-neutral, performance-based criteria -- whose nature and effects will differ from store to store." *Id*. Which is exactly what this Court said when it denied plaintiffs' prior two motions for class certification: Not all "African American FAs across the country all suffered from [the] same application" of defendant's policy nor did "the alleged policy manifest[] itself in the same general fashion as to all putative class members." Reconsid. Opinion at 4 (citing *Puffer*, 255 F.R.D. at 460-61). Instead, each class member's experience is

unique, the "result of countless decisions made by themselves, other FAs in their branch offices, their branch managers and so on." Class Cert. Opinion at 9.

## III.   PLAINTIFFS CANNOT SATISFY RULE 23(b)

Even if plaintiffs could satisfy Rule 23(a)(2), this case does not satisfy Rule 23(b).  As this Court already held, and as the Supreme Court confirmed, the case cannot proceed under 23(b)(2) because plaintiffs seek backpay, which are not incidental damages that can be awarded under Rule 23(b)(2).   Class Cert. Opinion at 17; *Wal-Mart,* 131 S. Ct. at 2557-61.   Plaintiffs continue to cite *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 896 (7th Cir. 1999), for the proposition that disparate impact claims are properly certified under (b)(2) "because they challenge firm-wide policies rather than individual acts of discrimination and seek injunctive and equitable relief rather than compensatory or punitive damages."  Amended Motion at 9. *See* Pl. Reply Br. in Support of Class Certification at 32.  But the Seventh Circuit explicitly rejected that approach six years later in *In re Allstate Ins. Co.*, 400 F.3d 505, 508 (7th Cir. 2005), and the Supreme Court did the same thing in *Wal-Mart*, which plaintiffs fail to acknowledge was both a disparate impact as well as a disparate treatment case, just like the case at bar. *Accord Randall*, 637 F.3d at 826.

Therefore, plaintiffs must proceed under Rule 23(b)(3), which requires plaintiffs to establish that common issues predominate, that the case is manageable and that class litigation is a superior form of adjudication.   Rule 23(b)(3)'s predominance standard is "far more demanding" than the (a)(2) commonality requirement.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 624 (1997).  And this Court already found that the complexity of resolving the individual claims of each class member precluded certification under (b)(3). Class Cert. Opinion at 16-17.

Plaintiffs offer no reason in their latest motion to disturb the Court's ruling that the standards of Rule 23(b)(3) have not been satisfied, particularly in light of *Wal-Mart*.  Instead,

they seek to avoid the issue by arguing yet again for "hybrid" certification, using the same arguments that they used on their motion for class certification and reconsideration.[14] This is as unpersuasive today as it was a year ago. Like their prior briefs, plaintiffs' current motion continues to ignore the fact that it is not only the amount of damages that is at stake in the trials of each individual class member, but causation as well. Even in a disparate impact case, each putative class member must establish that the policy at issue had a disparate impact on him or her. *Farrell*, 421 F.3d at 617; *Allison v. Citgo Petrol. Corp.*, 151 F.3d 402, 424 (5th Cir. 1998). This Court has already found that causation for each individual class member is at the core of this case: "As in *Adams* [*v. R.R. Donnelley & Sons*, 2001 WL 336830 at \*16 (N.D. Ill. 2001)], there are several separate layers of individual issues, including the variation in personnel practices among the various branch offices, and how various office managers and complex mangers handle individualized personnel decisions." Class Cert. Opinion at 18. *Accord Puffer*, 255 F.R.D. at 471 (citing *Warren v. Solo Cup Co.,* 516 F.3d 627, 629-30 (7th Cir. 2008)).[15]

The need to establish at the class trial that the wrong in question injured each class member is one of the core teachings of *Wal-Mart*, as well as the other class action case decided last term, *Erica P. John Fund Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011) (common questions predominate under 23(b)(3) only if the class trial establishes the essential elements of the claim for each class member, including that each class member was injured). *Accord In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008) (refusing to certify antitrust

---

[14] Pl. Class Cert Br. at 50; Pl. Br. on Reconsid. at 7-8, 15.

[15] *See also Rhodes v. Cracker Barrel Old Country Store, Inc.*, 213 F.R.D. 619, 678 (N.D. Ga. 2003) (refusing to certify disparate impact claims because employer's defenses required individualized determinations, precluding a finding of commonality); *Rodriquez v. Ford Motor Credit Co.*, 2002 WL 655679, at \*5 (N.D. Ill. April 19, 2002) (refusing to certify disparate impact claims where factors relevant to defenses of each class member would require inquiry into the reasons for thousands of decisions).

class action even though the question whether defendants engaged in a price fixing conspiracy was a common issue essential to the resolution of each putative class member's claim because the class trial would not establish that each putative class member had suffered antitrust injury).

In an effort to avoid this clear case law, plaintiffs argue yet again that the injunction and declaratory judgment questions should just be tried in a bifurcated trial without regard to individual class member claims. In support of this proposition, plaintiffs continue to rely on *Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469 (7th Cir. 2004), just as they did on their initial motion for class certification and their motion for reconsideration. But that single-plant, 350 class member case is both a far cry from the facts of this case, and it is inconsistent with *Wal-Mart*. *Allen* is premised on trying injunctive relief under Rule 23(b)(2) even when the class seeks non-incidental monetary damages. The Supreme Court was *unanimous* in holding that improper. *Wal-Mart*, 131 S. Ct. at 2557-61. Plaintiffs' suggestion that Rule 23(c)(4) somehow authorizes such bifurcated proceedings would make a mockery of the Supreme Court's decision in *Wal-Mart*, and it clashes directly with the Seventh Circuit's decisions in *Randall*.

In *Randall*, the Seventh Circuit rejected plaintiffs' effort to certify an injunction class under 23(b)(2), leaving backpay damages for later proceedings. The Seventh Circuit focused on the language of 23(b)(2), which requires that the court must be able to award "*final* injunctive relief or corresponding declaratory relief … respecting the class as a whole." *Randall*, 631 F.3d at 820 (emphasis added). The Seventh Circuit held that "[a]n injunction is not a final remedy if it would merely lay an evidentiary foundation for subsequent determinations of liability." *Id.* at 826. (quoting *Kartman v. State Farm Mutual Auto Ins. Co.*, 634 F.3d 639, 893 (7th Cir. 2011)). *See also Andrews*, 545 F.3d at 577 (if class certification "only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies" then class certification should be denied).

14

The Court was therefore correct when it rejected this proposal the first two times plaintiffs made it, and the Court should do the same the third time around.

## IV. PLAINTIFFS' PROPOSAL TO HAVE SPECIAL MASTERS CONDUCT NON-JURY TRIALS IS NOT TENABLE

Plaintiffs argue here, as they did on reconsideration,[16] that class treatment of their disparate impact claims does not suffer from the same problems as their disparate treatment claims because there are no jury trials. This is both irrelevant and wrong. It is irrelevant because even in the absence of a jury trial right, any class trial will still spawn a thousand follow-on individual trials that cannot be heard by a special master, and it is wrong because backpay claims require a jury trial.

As explained in Defendant's Response to Plaintiffs' Jury Trial Plan (at 13-14), neither the Constitution nor Rule 53 permit special masters to conduct trials on whether any policy with a disparate impact in fact affected a particular putative class member. And as plaintiffs now seem to recognize, under *Wal-Mart* individual liability trials are required for every absent class member. 131 S. Ct. at 2560-62. *See* Amended Motion at 12. At oral argument, plaintiffs' counsel made the incredible statement that Title VII "specifically provided" for the appointment of "a special master to conduct the damage trials" if the Court finds disparate impact and orders injunctive relief. 7/19/11 Trans. at 6. Title VII does not contain any such statutory provision, and as this Court has already found, the proposed follow-on trials involve the critical issue of causation, not just damages. Class Cert. Opinion at 17-18; Reconsid. Opinion at 5.

Plaintiffs premise much of their Rule 23(b)(3) argument on the proposition that backpay claims do not require a jury trial. However, the Supreme Court in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), directly addressed the legal nature of backpay

---

[16] Reconsid. Br. at 8.

under Title VII in two important respects. First, the Court made clear that its prior decisions have not held that backpay is an equitable remedy.[17] 534 U.S. at 218 n.4. Second, the Court parsed the language of Title VII and, contrary to what many courts have found,[18] concluded that the language of Title VII did not support the notion that backpay was an equitable remedy under the statute. Instead, the most that can be gleaned from the statutory language, according to the Supreme Court, is that backpay is "an integral part of an equitable remedy" of reinstatement or hiring. *Id.* (quoting *Curtis v. Loether*, 415 U.S. 189, 197 (1974)).

The Supreme Court has held that a legal remedy does not lose its legal character because it is an integral part of an equitable remedy. *Ross v. Bernhard*, 396 U.S. 531 (1970). Nor does a legal remedy become an equitable one because it may be "incident" to an equitable remedy. *Dairy Queen v. Wood*, 369 U.S. 469, 470 (1962).

The notion that backpay is a legal remedy is hardly novel. Then-Justice Rehnquist wrote a concurring opinion in *Albemarle Paper Co. v. Moody* in which he explained that under the Court's decision in *Albemarle* backpay "becomes virtually indistinguishable from an award for damages," raising "critical" jury trial issues. 422 U.S. 405, 442 (1975) (Rehnquist, J., concurring).[19] And backpay is undeniably a legal remedy. The well-settled distinction between legal and equitable remedies is that "[a]ll actions which seek … damages for injury to person or property, are legal actions, and can be brought in the federal courts only on their law side." *Scott*

---

[17] These decisions include *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975) (assuming without deciding that backpay was an equitable remedy), and *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 572 (1990)(dicta).

[18] *See, e.g., Grayson v. Wickes Corp.*, 607 F.2d 1194, 1196 (7th Cir. 1979).

[19] *See Setser v. Novack Inv. Co.*, 638 F.2d 1137, 1141 n.6 (8th Cir.) ("as Justice Rehnquist noted, the Supreme Court's cutback in [*Albemarle*] on the discretion the district judges have to award backpay in Title VII actions renders such awards more in the nature of legal damages."), *partially vacated on other grounds*, 657 F.3d 962 (8th Cir. 1981) (en banc).

*v. Neely*, 140 U.S. 106, 110 (1891). From the earliest days of English law, suits may be brought in equity only where the remedy at law is inadequate. *Id. Accord Dairy Queen*, 369 U.S. at 478 (equitable remedies hinge on "the absence of an adequate remedy at law"); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959) (same). Backpay damages are not available only where legal remedies are inadequate. There simply is no principled basis on which to conclude that backpay is anything other than a legal remedy.[20]

Under the Seventh Amendment, the Court cannot hold an initial bench trial to resolve disparate impact issues for injunctive and declaratory purposes prior to the jury trials on plaintiffs' backpay claims without doing violence to class members' and Merrill Lynch's jury trial right. *Dairy Queen*; *Beacon Theatres*.

## CONCLUSION

The only thing new since the Court denied plaintiffs' motion for class certification and then again denied their motion for reconsideration is that the Supreme Court decided *Wal-Mart*. That decision overwhelmingly supports this Court's prior rulings. Plaintiffs Amended Motion should be denied.


Dated: August 16, 2011                    Respectfully submitted,

                                          By:        /s/ Lori E. Lightfoot

                                          MAYER BROWN LLP
                                          Stephen M. Shapiro
                                          Timothy S. Bishop
                                          Lori E. Lightfoot
                                          71 S. Wacker Drive
                                          Chicago, IL 60606
                                          (312) 782-0600 (Phone)

---

[20] See generally Martin H. Redish, *Seventh Amendment Right to Jury Trial: A Study in the Irrationality of Rational Decision Making*, 70 Nw. U. L. Rev. 486, 526-30 (1976).

(312) 701-7711 (Facsimile)

--and--

WEIL, GOTSHAL & MANGES LLP
Jeffrey S. Klein
Nicholas J. Pappas
Allan Dinkoff
767 Fifth Avenue
New York, NY 10153
(212) 310-8000 (Phone)
(212) 310-8007 (Facsimile)


Counsel for the Defendant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 16, 2011, she caused a copy of the foregoing Defendant's Memorandum in Opposition to Plaintiffs' Amended Motion for Class Certification to be delivered via the Northern District of Illinois Electronic Filing System and e-mail to:

> Linda Friedman
> Mary Stowell
> Stowell & Friedman, Ltd.
> 321 S. Plymouth Ct., Suite 1400
> Chicago, IL 60604

By:    /s/ Lori E. Lightfoot

Lori E. Lightfoot

19