# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

```
--------------------------------------------------------x
GEORGE MCREYNOLDS, MAROC              :
HOWARD, LARUE GIBSON, JENNIFER        :
MADRID, FRANKIE ROSS, MARVA YORK,     :
LESLIE BROWNE, HENRY WILSON,          :
LEROY BROWN, GLENN CAPEL,             :
CHRISTINA COLEMAN, J. YVES LABORDE,   :
MARSHELL MILLER, CARNELL MOORE,       :
MARK JOHNSON, CATHY BENDER-           :  Case No. 05-C-6583
JACKSON, and STEPHEN SMARTT,          :
Individually on behalf of themselves  :
and all others similarly situated,    :  Hon. Robert W. Gettleman
                                      :  Magistrate Judge Gilbert
                  Plaintiffs,         :
                                      :
- against -                           :
                                      :
MERRILL LYNCH, PIERCE, FENNER         :
& SMITH, INCORPORATED,                :
                                      :
                  Defendant.          :
--------------------------------------------------------x
```

## SETTLEMENT AGREEMENT AND RELEASE

# TABLE OF CONTENTS

Page

I.       INTRODUCTION ...................................................................................... 1

II.      GENERAL TERMS OF SETTLEMENT AGREEMENT ................................... 1

    A.   Definitions ..................................................................................... 1

    B.   Jurisdiction and Duration of Settlement ........................................ 7

    C.   Persons Covered by This Settlement Agreement ............................ 7

        1.    Definition of Settlement Class ........................................... 7

        2.    Certification ...................................................................... 7

III.     NATURE AND RESOLUTION OF THE CASE ................................................ 8

IV.     COURT APPROVAL ................................................................................. 15

    A.   Preliminary Approval ................................................................... 15

    B.   Preliminary Notice, Objections and Opt Outs ............................. 17

    C.   Fairness Hearing and Final Notice ............................................... 20

    D.   Effect of Denial of Motion for Preliminary Approval or Non-Occurrence of the Effective Date ...................................................................... 21

V.      MUTUAL FULL COOPERATION .............................................................. 22

VI.    RELEASES ............................................................................................. 23

    A.   Settlement Class Member Release ................................................ 23

    B.   Named Plaintiff Release and Steering Committee Member Release ................ 25

    C.   Res Judicata and Collateral Estoppel ........................................... 26

    D.   Materiality of the Releases .......................................................... 26

VII.    NO ADMISSION AND NO DETERMINATION ............................................. 26

VIII.   MONETARY RELIEF ............................................................................. 27

    A.   Settlement Fund ........................................................................... 27

    B.   Administration by Trustee ........................................................... 29

    C.   Claims Filing Procedures for Settlement of Claims of Named Plaintiffs and Settlement Class Members .................................................... 29

        1.    Claims Filing Procedures for Obtaining Monetary Relief ................ 29

        2.    Claim Form and Monetary Award Options ...................... 30

        3.    Simple Claim Form and Expedited Monetary Awards ............. 30

        4.    Detailed Claim Form Options for Settlement Class Members ................ 31

        5.    Individualized Claims Resolution Process for Settlement Class Members who Submit a Detailed Claim Form and Reject Expedited Monetary Award Offers ................................ 32

        6.    Neutral Evaluation of Claims ........................................... 34

US_ACTIVE:\44320530\1\63080.0164

## TABLE OF CONTENTS (Continued)

Page

7. Extraordinary Claims .................................................................36

8. Special Master ...........................................................................38

9. Neutral Administrator ................................................................39

10. Confidentiality of Claims Process and Settlement Administration ..........39

D. Attorneys' Fees and Expenses, Administrative Expenses and Service Award Payments .................................................................................39

1. Attorneys' Fees and Expenses ...................................................39

2. Administrative Expenses ...........................................................41

3. Service Award Payments ...........................................................41

E. Non-Admissibility of Fact of Award (or Non-Award) ...........................41

F. Tax Treatment ......................................................................................42

1. Qualified Tax Status and Tax Responsibilities...........................42

2. Payment of Federal State and Local Taxes.................................42

G. Merrill Lynch Has No Further Obligation, Liability or Responsibility.................45

IX. PROGRAMMATIC RELIEF ..............................................................................45

A. Duration of the Settlement ....................................................................45

B. Account Distribution ............................................................................45

1. Distributions to Financial Advisor Trainees in the Practice Management Development Program .............................................46

2. Householding Review ...............................................................46

C. Teaming and Pooling ............................................................................47

D. PMD Rankings......................................................................................47

E. Attrition Study ......................................................................................48

F. Annual Reports to Class Counsel ..........................................................49

G. Appointments........................................................................................49

1. Teaming Study..........................................................................49

2. Monitor/Coach for African American Financial Advisors and African American Financial Advisor Trainees.............................52

3. Dedicated/Specialized PMD Coaches .......................................55

4. Leadership Council ...................................................................56

H. Mediation in Teaming Dissolution Agreements .....................................57

I. Diversity Fund ......................................................................................57

J. Voluntary Exit Interviews......................................................................58

US_ACTIVE:\44320530\1\63080.0164

## TABLE OF CONTENTS (Continued)

Page

K.   Informational Discussions with Settlement Class Members and Class Counsel ...................................................................................59

L.   Manager Evaluations ................................................................59

M.   New Manager Selection............................................................59

N.   No Arbitration for Employment Discrimination ....................60

X.   MERRILL LYNCH'S RIGHT TO WITHDRAW OR MODIFY THE AGREEMENT.....................................................................60

XI.   DUTIES OF THE PARTIES FOLLOWING FINAL COURT APPROVAL ...............................................................................60

XII.   PARTIES' AUTHORITY .............................................................62

XIII.   NOTICES .....................................................................................62

XIV.   CONFIDENTIALITY ..................................................................63

XV.   MODIFICATION .........................................................................64

XVI.   EXHIBITS ...................................................................................64

XVII.   ENTIRE AGREEMENT AND INTEGRATION.........................64

XVIII.   FAILURE TO INSIST ON STRICT COMPLIANCE .................65

XIX.   INTERPRETATION .....................................................................65

XX.   NO DRAFTING PRESUMPTION................................................65

XXI.   ENFORCEMENT .........................................................................65

XXII.   CHOICE OF LAW AND JURISDICTION ..................................66

XXIII.   PARAGRAPH AND SECTION HEADINGS ...............................66

XXIV.   COUNTERPARTS .......................................................................67

XXV.   SETTLEMENT AGREEMENT IS FINAL AND BINDING ...............67

XXVI.   COMPUTATION OF TIME ........................................................67

XXVII.   VOIDING THE AGREEMENT....................................................68

US_ACTIVE:\44320530\1\63080.0164

I.      **INTRODUCTION**

Subject to approval by the United States District Court for the Northern District of Illinois, this Settlement Agreement sets forth the full and final terms by which the Class Representatives, on behalf of a Settlement Class of themselves and current and former African American Financial Advisors and Financial Advisor Trainees assigned a production number for the period May 6, 2001 through the date of Preliminary Approval in the domestic U.S. retail brokerage unit within the "Global Private Client" division of Merrill Lynch represented by their attorneys, Stowell & Friedman, Ltd., and Defendant Merrill Lynch, represented by its attorneys, Weil, Gotshal & Manges LLP and Mayer Brown LLP, have settled and resolved all claims that have been raised or could have been raised in the Civil Action captioned <u>McReynolds, et al. v. Merrill Lynch, Pierce, Fenner & Smith, Incorporated</u>, Case No. 05 C 6583, pending before District Judge Robert W. Gettleman in the United States District Court for the Northern District of Illinois.

II.     **GENERAL TERMS OF SETTLEMENT AGREEMENT**

A.      <u>**Definitions**</u>

The terms described below shall have the meanings defined in this Section wherever used in this Settlement Agreement, and for purposes of this Settlement Agreement only, including in all of its Exhibits and Notice of Class Action Settlement.

1.      "Action" or "Civil Action" means the litigation captioned <u>McReynolds, et. al. v. Merrill Lynch, Pierce, Fenner & Smith, Incorporated</u>, Case No. 05 C 6583, pending before Judge Robert W. Gettleman in the United States District Court for the Northern District of Illinois.

2.      "Bank of America" means Bank of America Corporation.

1

3.     "CAFA Notice" means the notice to be sent by the Claims Administrator to the appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C.§ 1715(b).

4.     "Claimant" means a Settlement Class Member who has submitted a timely Claim Form for review by the Claims Administrator.

5.     "Claims Administrator" means KCC Class Action Services, LLC ("KCC"), which has been jointly designated by counsel for the Parties to administer the Settlement Fund pursuant to Section IV.B below and orders of the Court.

6.     "Claim Form" means the Simple Claim Form or Detailed Claim Form, one of which must be submitted by Settlement Class Members to KCC as part of the claims process.

7.     "Class Certification Order" means the order signed by the Court on July 13, 2012 certifying, pursuant to the Federal Rules of Civil Procedure ("Federal Rules") 23(b)(2) and 23(c)(4), the disparate impact class of all African Americans employed by Merrill Lynch at any time since July 10, 2004 as Financial Advisors or Financial Advisor Trainees assigned a production number in the domestic U.S. retail brokerage unit within the "Global Private Client" division of Merrill Lynch.

8.     "Class Counsel" means the law firm of Stowell & Friedman, Ltd.

9.     "Class Representatives" or "Named Plaintiffs" means George McReynolds, Maroc Howard, LaRue Gibson, Jennifer Madrid, Frankie Ross, Marva York, Leslie Browne, Henry Wilson, Leroy Brown, Glenn Capel, Christina Coleman, J. Yves Laborde, Marshell Miller, Carnell Moore, Mark Johnson, Cathy Bender-Jackson, and Stephen Smartt.

10. "Complaint" means the Complaint filed in this Action in November 2005.

11. "Court" means the United States District Court for the Northern District of Illinois.

12. "Defendant" or "Merrill Lynch" or "Firm" or "Company" means Merrill Lynch, Pierce, Fenner & Smith Incorporated and its predecessors or successors in interest.

13. "Defendant's Counsel" or "Counsel for Merrill Lynch" or "Counsel for Defendant" means the law firms of Weil, Gotshal & Manges LLP and Mayer Brown LLP.

14. "Depository Bank" means Bank of America.

15. "Effective Date" means the date on which all of the following have occurred: (1) the Court has granted final approval of this Settlement Agreement and has signed and entered an order so indicating, (2) the Court has entered an Order and Judgment dismissing the Civil Action with prejudice, with continuing jurisdiction limited to enforcing this Settlement Agreement, and (3) the time for appeal has either run without an appeal being filed or any appeal (including any requests for rehearing, *en banc* review, petitions for certiorari or other appellate review) has been finally resolved.

16. "Final Approval Date" means the date on which the Court grants final approval of the Settlement Agreement.

17. "Financial Advisor" means a person employed in the domestic U.S. retail brokerage unit within the GPC division of Merrill Lynch as a financial advisor.

18.     "Financial Advisor Trainee" means a person employed in the domestic U.S. retail brokerage unit within the GPC division as a registered financial advisor trainee who has not yet become a Financial Advisor.

19.     "First Amended Complaint" means the amended complaint filed in this Action in July 2006.

20.     "GPC" means the Global Private Client division of Merrill Lynch.

21.     "Lead Class Counsel" means Linda D. Friedman of Stowell & Friedman, Ltd.

22.     "Named Plaintiff Release" means the Named Plaintiff General Release Agreement in the form, attached hereto as Exhibit B, to be executed by the Class Representatives.

23.     "Notice" or "Preliminary Notice" means the Notice of Class Action, Settlement Agreement, and Settlement Fairness Hearing that is to be mailed directly to Class Members, as approved by the Court, substantially in the form attached hereto as Exhibit A.

24.     "Notice of Award" means the letter sent to each Claimant specifying the amount of that Claimant's award.

25.     "Parties" means the Class Representatives and Defendant.

26.     "Preliminary Approval Date" means the date the Court enters the Preliminary Approval Order.

27.     "Preliminary Approval Order" means the Order of the Court preliminarily certifying the Settlement Class solely for the purpose of settlement and

preliminarily approving this Settlement Agreement and all Exhibits attached hereto, including the form of Notice to be sent to Class Members.

28.     "Programmatic Relief" means the policy reforms and other commitments intended to improve the opportunities available to African American Financial Advisors and Financial Advisor Trainees agreed to by the Parties and set forth in Section IX of this Agreement.

29.     "Released Claims" or "Releases" mean the claims released in Section VI.A of this Agreement for the Settlement Class Members; and for Named Plaintiffs and Steering Committee Members who executed such releases, the claims released in the Named Plaintiff and Steering Committee Member Releases, respectively.

30.     "Release Date" means the Preliminary Approval Date.

31.     "Released Parties" mean Merrill Lynch and Bank of America, including their past, present, future parent corporations, divisions, officers, directors, subsidiaries, affiliates, predecessors, fiduciaries, insurers, employees, agents, employee benefit and pension plans or funds, including qualified and non-qualified plans, funds, and successors and assigns of the foregoing persons and entities.

32.     "Second Amended Complaint" means the amended complaint filed in this Civil Action in November 2006.

33.     "Settlement," "Agreement," and "Settlement Agreement" each mean the settlement as reflected in this Settlement Agreement and all Exhibits attached hereto.

34.     "Settlement Class" or "Class" means a class certified by the Court solely for the purpose of settlement consisting of all African American Financial

Advisors and Financial Advisor Trainees who have been assigned a production number in the domestic U.S. retail brokerage unit within the GPC division of Merrill Lynch at any time from May 6, 2001 through the Preliminary Approval Date (the "Settlement Class Members"). In the event that a Settlement Class Member dies or has died prior to completion of the monetary claims resolution process established by this Settlement, the estate and/or executor of the Settlement Class Member's estate may be entitled to seek monetary relief and participate in the claims resolution process in accordance with the terms of the Settlement and after presenting to the Claims Administrator documentation sufficient to establish appropriate legal rights and status, subject to review and approval by the Special Master.

35. "Settlement Class Member Release" means the release described in Section VI.A below.

36. "Settlement Class Period" shall be defined as May 6, 2001 through the Preliminary Approval Date.

37. "Settlement Fairness Hearing" means the hearing at which the Court will consider Final Approval of this Settlement Agreement and related matters.

38. "Settlement Fund" or "Fund" means the settlement monies transferred by Merrill Lynch to the Depository Bank, pursuant to this Settlement Agreement, including all interest earned thereon, to be held, invested, administered, and disbursed pursuant to this Settlement Agreement.

39. "Special Master" means Lynn Cohn, the person recommended by Plaintiffs and appointed by the Court to oversee the Settlement as provided in Section VIII.C.8 herein.

40. "Steering Committee Member" means the current and former Merrill Lynch Financial Advisors who served on a Steering Committee up to the date of the Class Certification Order and invested considerable time and effort assisting Class Counsel in seeking to achieve the goals of this Action.

41. "Steering Committee Member Release" means the Steering Committee Member General Release Agreement in the form, attached hereto as Exhibit C, to be executed by the Steering Committee Members.

**B.** **Jurisdiction and Duration of Settlement**

The Parties agree that this Court has jurisdiction, and that venue is proper in this Court, for purposes of enforcing this Settlement Agreement. The Programmatic Relief embodied in this Settlement Agreement and the agreements incorporated in it shall remain binding on the Parties and their agents and successors for a three-year period following the Effective Date.

**C.** **Persons Covered by This Settlement Agreement**

1. Definition of Settlement Class

The parties stipulate to the certification of the following Settlement Class solely for the purpose of settlement:

> all African American Merrill Lynch Financial Advisors and Financial Advisor Trainees who have been assigned a production number in the domestic U.S. retail brokerage unit within the GPC division of Merrill Lynch at any time from May 6, 2001 through the Preliminary Approval Date.

2. Certification

The Settlement Class will be certified pursuant to Federal Rules 23(b)(2) and 23(b)(3). The certification of the Settlement Class is solely for the purpose of settlement. If the Settlement Agreement is terminated or the Effective Date does not occur, this

Settlement Class certification will be null and void and of no further force and effect, and the Parties shall proceed as though the Settlement Class had never been certified.

If the Settlement Agreement terminates pursuant to its terms or does not become final for any reason, the previously entered Class Certification Order certifying a disparate impact class shall remain in effect; provided, however, that the foregoing does not limit Merrill Lynch's right to raise objections to the disparate impact class certified in the Class Certification Order, including, but not limited to, filing a motion for decertification, nor limit Plaintiffs' right to seek certification of a disparate treatment and/or monetary relief class.

III. **NATURE AND RESOLUTION OF THE CASE**

In early 2005, pursuant to Merrill Lynch's Employment Dispute Resolution process, George McReynolds ("McReynolds"), a Merrill Lynch Financial Advisor, raised an internal complaint alleging individual and systemic race discrimination. In November 2005, McReynolds filed a Complaint on behalf of himself and all others similarly situated alleging that Merrill Lynch discriminated against them on the basis of race. McReynolds twice amended the Complaint – the First Amended Complaint was filed in July 2006 and the Second Amended Complaint was filed in November 2006. Class Representatives Maroc Howard, Henry Wilson, and Marva York filed representative charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging systemic race discrimination and retaliation against Merrill Lynch, and exhausted the administrative filing requirements of Title VII of the Civil Rights Act by receiving a notice of right to sue from the EEOC. Taken together, the Complaint, First Amended Complaint, and Second Amended Complaint allege that Merrill Lynch implemented and

utilized policies that had an unlawful disparate impact against African American Financial Advisors and Financial Advisor Trainees, and that Merrill Lynch engaged in a pattern or practice of racial discrimination against African American Financial Advisors and Financial Advisor Trainees with respect to, among other things, Merrill Lynch's hiring, training, compensation, promotion, teaming, and account distributions policies and practices in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981.

Merrill Lynch filed answers and affirmative defenses to the Complaint, First Amended Complaint, and Second Amended Complaint in March 2006, August 2006, and December 2006, respectively, denying the material allegations of the complaints. Merrill Lynch denies any liability under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, or any other federal, state or local laws, and specifically denies that Merrill Lynch unlawfully discriminated against the Named Plaintiffs or Settlement Class Members on the basis of race, that its policies have a disparate impact on African Americans, or that the Named Plaintiffs or Settlement Class Members are otherwise entitled to the relief requested.

After McReynolds informed Merrill Lynch of his claims of individual and systemic race discrimination, Merrill Lynch entered into confidential settlement discussions with a committee of McReynolds and other African American Merrill Lynch Financial Advisors represented by Class Counsel (the "Steering Committee") who wished to reform the Firm's policies and practices and allow African Americans to recover purported losses suffered as a result of these policies and practices. The Steering Committee and Class Counsel met several times with Merrill Lynch executives and its

counsel during a six-month period. Merrill Lynch voluntarily provided substantial information regarding its policies and data regarding its workforce to facilitate these discussions, which occurred in New York and in San Francisco. The parties also engaged the services of two mediators. Formal litigation continued after the parties' efforts to resolve the litigation failed.

The Parties engaged in class certification fact and expert discovery from approximately July 2006 through April 2009. During this time, Merrill Lynch produced millions of pages of documents and over two terabytes of data. In addition, Class Counsel took fifteen fact depositions of Merrill Lynch executives and corporate representatives, Counsel for Merrill Lynch conducted sixteen depositions of the Named Plaintiffs, and six experts were deposed following the exchange of expert reports.

Following extensive fact and expert discovery, the Class Representatives filed their motion for class certification in November 2008. Merrill Lynch filed its opposition to class certification in May 2009. The Class Representatives filed their reply to Merrill Lynch's opposition in July 2009. In August 2010, this Court denied class certification. The Class Representatives filed a timely motion for reconsideration, which was denied in February 2011 following extensive oral argument. The Class Representatives subsequently filed an appeal pursuant to Federal Rules 23(f), which was denied by the Seventh Circuit, and thereafter a petition with the U.S. Supreme Court for a writ of certiorari, which also was denied. Merrill Lynch moved to sever and transfer the Named Plaintiffs' Claims on April 29, 2011, and the motion was fully briefed in June 2011.

The Class Representatives filed an amended motion for class certification in July 2011, arguing that class certification was warranted under the U.S. Supreme Court's

decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). This Court denied the Class Representatives' post-*Wal-Mart* motion for class certification in September 2011. The Class Representatives sought review of the Court's denial of class certification to the Seventh Circuit, which accepted the appeal pursuant to Federal Rules 23(f). Following additional briefing and oral argument, in February 2012, the Seventh Circuit remanded, authorizing the district court to certify the Class Representatives' disparate impact claims regarding Merrill Lynch's teaming and account distribution policies for injunctive and declaratory relief pursuant Federal Rules 23(b)(2) and 23(c)(4). Merrill Lynch's motion for rehearing *en banc* was denied by the Seventh Circuit on March 27, 2012. Merrill Lynch filed a petition for a writ of certiorari to the Supreme Court on July 25, 2012, to which Plaintiffs responded on August 24, 2012, Merrill Lynch replied on September 5, 2012, and Plaintiffs submitted a Supplemental Brief on September 21, 2012. The Supreme Court denied Merrill Lynch's petition for a writ of certiorari on October 1, 2012.

In July 2012, this Court issued the Class Certification Order, certifying a class of all African Americans employed by Merrill Lynch at any time since July 10, 2004 as Financial Advisors or Financial Advisor Trainees assigned a production number in the domestic U.S. retail brokerage unit within the GPC division of Merrill Lynch to determine the issues of: (i) whether Merrill Lynch's teaming and/or account distribution policies have or had an unlawful disparate impact on the certified class; and (ii) if so, the appropriateness of any class-wide final injunctive and corresponding declaratory relief. The Class Certification Order appointed Linda D. Friedman (lead trial attorney), Suzanne E. Bish, George S. Robot, Jennifer Gilbert and Mary Stowell, of Stowell & Friedman,

Ltd. as counsel for the class and the Class Representatives as representatives of the class certified by the district court. Pursuant to the Class Certification Order, the Parties sent notice to all members of the certified class and to all former putative class members of the disparate treatment class that was not certified. The Court ordered the class-wide disparate impact liability trial to begin on January 2014. The Court had not resolved Merrill Lynch's Motion to Sever or resolved how or when the individual intentional discrimination claims of the Class Representatives would be tried.

Pursuant to orders of the Court, the statute of limitations for all Settlement Class Members' claims has continued to be tolled after the denial of class certification.

In preparation for the trial, the Parties have engaged in extensive discovery following the Seventh Circuit's February 2012 decision, principally Merrill Lynch's production of documents and updated data and expert analysis. Merrill Lynch produced voluminous documents, data, and electronically stored information ("ESI") regarding its compensation, teaming, account distribution, and other policies and practices from 2007 through 2013.

The Parties initiated settlement discussions in November 2012, and engaged the services of Linda Singer, Esq., a professional mediator with nationwide and significant experience in the mediation and resolution of complex class actions, including employment discrimination class action lawsuits.

As a result of the seven and one-half years the Parties have spent litigating the plaintiffs' claims, counsel for the Parties are familiar with the strengths and weaknesses of their respective positions, and have had a full opportunity to assess the litigation risks presented in this case. All Parties and their counsel recognize that, in the absence of an

12

approved settlement, they would face a lengthy litigation, including motions for decertification, additional document discovery (including extensive ESI), depositions, motions for summary judgment, and trial and appellate proceedings that would consume extensive time and resources and present Defendant and each Settlement Class Member with ongoing litigation risks and uncertainties. If plaintiffs were to prevail at trial on the claims certified, the process for resolving each Settlement Class Member's claim for individual damages would then be separately determined. Each Settlement Class Member might have been required to prove his or her right to recovery on an individual basis. Moreover, absent a global settlement at this juncture, the Parties would also have to litigate hundreds of separate individual trials regarding the intentional discrimination claims, which were not certified for class treatment. The Parties wish to avoid these risks and uncertainties, as well as the enormous consumption of time and resources, and wish to bring the litigation to a final and global conclusion on the terms set forth in this Settlement Agreement. Merrill Lynch, Defendant's Counsel, Class Counsel and the Class Representatives represent that this Settlement Agreement is the product of vigorous, lengthy, and arm's length negotiations and that the terms of the Settlement Agreement are fair, reasonable and adequate, and in the best interests of the Settlement Class based on all of the facts and circumstances.

Without any admission or concession by Merrill Lynch of any liability or wrongdoing with respect to the allegations in any administrative charge or in the Complaint, the First Amended Complaint and the Second Amended Complaint, all Released Claims shall be finally and fully compromised, settled, and released subject to the terms and conditions of this Settlement Agreement, which were the subject of

extensive, arm's length negotiation between, and agreement by, the Parties. To the extent this Agreement is deemed void or the Effective Date does not occur, Defendant does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted by the Class Representatives in the Civil Action upon all procedural and substantive grounds and to assert any and all potential defenses or privileges, including, but not limited to, challenges relating to class certification. The Class Representatives and Class Counsel agree that Defendant retains and reserves these rights, and they agree not to take a position to the contrary. Specifically, the Class Representatives and Class Counsel agree that, if the Civil Action were to proceed, they will not present any argument based on this Settlement or Settlement Agreement, or any exhibit, attachment, act performed, communication exchanged, or document executed pursuant to this Settlement Agreement. Additionally, neither the Settlement Agreement nor any act performed, communication exchanged, or document executed pursuant to, or in furtherance of, the Settlement Agreement: (a) is or may be deemed to be used as an admission or evidence of the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties; (b) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (c) is or may be deemed to be or may be used as an admission or evidence that class certification is appropriate for any purpose other than this Settlement.

Neither this Agreement nor anything in it, nor any part of the confidential negotiations that occurred in connection with the creation of this Settlement Agreement, shall be evidence with respect to any issue or dispute in any lawsuit, legal proceeding or

14

administrative proceeding, except that this Agreement may be used in any legal proceedings concerning the enforcement or interpretation of this Agreement.

IV.     **COURT APPROVAL**

A.     **Preliminary Approval**

1.     Within 5 days after the execution of this Settlement Agreement, the Parties shall jointly file this Settlement Agreement with the Court, and Class Counsel shall petition the Court for the entry of the Preliminary Approval Order:

a.     Preliminarily certifying the Settlement Class solely for the purpose of settlement;

b.     Preliminarily approving the Settlement Agreement;

c.     Approving the Notice to be sent to Settlement Class Members describing the terms of the Settlement and informing them of their rights to submit objections and to opt out of the monetary relief portion of the Settlement Agreement;

d.     Pending Final Approval, preliminarily enjoining each Settlement Class Member, including any members who made an irrevocable election to opt-out of the monetary relief provisions of the Settlement, from commencing, prosecuting or maintaining in any court or forum other than this Court any claim, action or other proceeding that challenges or seeks review of or relief from any order, judgment, act, decision or ruling of the Court in connection

15

with this Settlement Agreement or otherwise in connection with this Action;

e. Effective as of the date specified for Settlement Class Members to opt-out of the Settlement, enjoining Settlement Class Members who have not opted-out of the monetary relief provision of the Settlement from commencing, prosecuting or maintaining either directly, representatively or in any other capacity any Released Claim against any of the Released Parties; and

f. Scheduling a Settlement Fairness Hearing as soon as practicable on the question of whether the Settlement Agreement should be finally approved as fair, reasonable and adequate as to the Settlement Class Members; provided, however, that the Settlement Hearing occurs at least ninety (90) days after the CAFA Notice is served on the appropriate federal and state officials.

2. In applying for the entry of the Preliminary Approval Order, Class Counsel will submit to the Court for its approval this Settlement Agreement, Exhibits, and supporting papers, which shall describe the terms of this settlement and will include proposed forms of all notices and other documents as attached hereto necessary to implement the Settlement Agreement.

3. The Court shall conduct a hearing on September 3, 2013 or some time thereafter to be set by the Court to hear evidence and argument regarding whether

the Court should approve the Settlement Agreement and relief sought therein ("Preliminary Approval Hearing").

    4. At the Preliminary Approval Hearing, the Parties will establish for the Court that the Settlement Agreement is fair, reasonable, and adequate to the Class as a whole, within the meaning of that phrase as contemplated by Rule 23(e) of the Federal Rules of Civil Procedure. Class Counsel and Counsel for Merrill Lynch shall request prompt judicial approval of this Settlement Agreement as written. The Parties agree further to use their best efforts on a joint basis to obtain prompt entry of the Preliminary Approval Order. The Parties, through their respective counsel, also agree to recommend to the Court on a joint basis that, in their respective professional opinions, the Settlement Agreement is reasonable and appropriate, in the best interests of justice, that the Parties have bargained for the terms in the Settlement Agreement, and that no section or subsection of this Settlement Agreement should be modified or stricken.

   B. **Preliminary Notice, Objections and Opt Outs**

    1. KCC will be appointed by the Court to serve as the independent Claims Administrator to perform the following tasks, among others:

      a. Distribute the Preliminary Notice to Settlement Class Members attached as Exhibit A;

      b. Receive and forward to the Court, Class Counsel, and Counsel for Merrill Lynch any request for opt-out statements;

      c. Maintain a website on which the Class Notice, Claim Forms, Court Orders and other documents are available to

Class Members, and through which Class Members,

following Final Approval of the Settlement can

electronically submit Claim Forms and other documents;

d.    Distribute Notice of Final Approval of Settlement

Agreement and distribute and receive all Claim Forms and

other documents regarding the Settlement and the claims

resolution process for monetary relief; and

e.    Properly process monetary awards, including for tax

purposes as directed in Section VIII.F below.

2.    The Claims Administrator, KCC, is experienced and qualified in the administration of class action monetary settlement distribution and/or claims proceedings.

3.    No later than 15 days after the Preliminary Approval Date, Merrill Lynch shall provide the Claims Administrator the names, relevant personnel information, and last known addresses of Settlement Class Members in electronic format for the entire Settlement Class Period.  No later than 25 days after the Preliminary Approval Date, Class Counsel, through the Claims Administrator, shall issue Preliminary Notice to the last known address of each Settlement Class Member by first-class mail postage prepaid.

4.    Any Settlement Class Member may request to be excluded from the monetary relief provisions of the Settlement, described in Section VIII.  Any Settlement Class Member who wishes to opt out of the monetary relief provisions of the Settlement must submit a written, SIGNED opt-out statement  that includes the following language:

I hereby opt out of the class action settlement in the lawsuit *McReynolds v Merrill Lynch,* Case No. 05-C-6583 (N.D. Ill.). I understand that, by requesting to be excluded from the monetary settlement in this case, I will receive no money from the Settlement Fund created under the Settlement Agreement. I understand that I may bring a separate legal action seeking damages, but I might receive nothing or less than what I would have received if I had filed a claim under the class monetary settlement procedure in this case. I also understand that I may not seek exclusion from the class with respect to injunctive relief and that I am bound by the injunctive provisions of the Settlement Agreement.

Opt-out statements must be received by the Claims Administrator no later than 45 days after Preliminary Notice is mailed. Any risk of non-receipt by 45 days after Preliminary Notice is mailed is on the Settlement Class Member. The Claims Administrator shall provide to all counsel all opt-out statements that are received.

5.     No Settlement Class Member may opt out of the Programmatic Relief provisions in Section IX of this Settlement Agreement.

6.     Settlement Class Members who have not opted out and wish to object to this Settlement Agreement or any part of the Settlement Agreement must file with this Court and serve on Class Counsel and Counsel for Merrill Lynch a written statement of their objections. Such statement must be received by the Court and Class Counsel no later than 45 days after the Preliminary Notice is mailed; and indicate whether the Settlement Class Members intends to appear at the Settlement Fairness Hearing.

7.     The Claims Administrator will maintain a log of its activities, including the dates of mailing of Class Notice and mailing and receipt of Claim Forms, returned mail and other communications and attempted communications with members of the Settlement Class; confirm in writing to Class Counsel and Counsel for Merrill Lynch the substance of its activities and completion of the administration of settlement;

timely respond to communications from the Parties or their respective counsel; and perform such other tasks as the Parties mutually agree. The Claims Administrator shall not make any disbursements from the Settlement Fund to Class Representatives and Steering Committee Members until after the Claims Administrator receives a signed Named Plaintiff Release or Steering Committee Member Release, as appropriate, and until after the seven-day revocation period discussed in those releases has expired.

        8.      No later than ten (10) days following Class Counsel's filing of the proposed Settlement Agreement with the Court, the Claims Administrator shall cause the CAFA Notice, along with the accompanying materials, to be served upon the appropriate state and federal officials, as required by 28 U.S.C. § 1715. For purposes of compliance with CAFA, the Claims Administrator shall be permitted to compile all of the relevant documents into a single compact disc for delivery to federal or state officials. Plaintiffs, Merrill Lynch, and the Claims Administrator shall have no duty to supplement the CAFA Notice. The Claims Administrator shall confirm in writing and provide to Merrill Lynch and Class Counsel proof of service of the CAFA Notice to the appropriate federal and state officials. The Claims Administrator shall indemnify and hold harmless Merrill Lynch and Class Counsel from any liabilities, penalties, costs or losses arising out of an incorrect or untimely served CAFA Notice, except to the extent the Claims Administrator has relied on information provided by Merrill Lynch.

       C.      **Settlement Fairness Hearing and Final Notice**

        1.      Class Counsel shall file with the Court no later than 14 days before the date of the Fairness Hearing (i) the date-stamped originals for any opt-out statement

and (ii) a declaration by the Claims Administrator of due diligence and proof of mailing with regard to the mailing of the Notice.

2.    Settlement Class Members who have timely and properly requested exclusion from the Class may not participate in the Fairness Hearing.

3.    Settlement Class Members who (i) timely filed and served on Class Counsel and Counsel for Merrill Lynch written objections no later than 45 days after the Preliminary Notice is mailed; and (ii) stated their intent to appear at the Fairness Hearing, may appear at the Fairness Hearing either in person or by counsel. Failure to perform any of these requirements in Section IV.B shall be deemed a waiver of any objections. The Parties may, but need not, respond in writing to objections by filing a response with the Court.

4.    If the Court approves the Settlement Agreement at the Fairness Hearing, the Claims Administrator shall mail the Notice of Final Approval of Settlement Agreement within ten (10) business days of the conclusion of the Fairness Hearing to each Settlement Class Member who did not opt out of the class.

D.    **Effect of Denial of Motion for Preliminary Approval or Non-Occurrence of the Effective Date**

Other than to effectuate this Settlement Agreement, Merrill Lynch does not agree to the conditional certification of the Settlement Class, the provisional designation of the law firm of Stowell & Friedman, Ltd. as Class Counsel for the Settlement Class, or the provisional designation of the Named Plaintiffs as representatives of the Settlement Class for any purpose. If this Settlement Agreement is terminated pursuant to its terms (including if Merrill Lynch exercises its option to withdraw from the Settlement pursuant to Section X of this Agreement), or if the Effective Date does not occur for any reason,

21

then (i) the conditional certification of the Settlement Class and the provisional designation of Class Representatives and Class Counsel shall be automatically vacated, (ii) the Action shall proceed as though the Settlement Class had never been conditionally certified and as though the provisional designations of Named Plaintiffs and Class Counsel had not been made, (iii) the Parties shall be released from their obligations under this Settlement Agreement, and (iv) the previously entered Class Certification Order certifying a disparate impact class, appointing Stowell & Friedman, Ltd. as Class Counsel, and appointing Named Plaintiffs as Class Representatives shall remain in effect. Provided, however, that no party shall be deemed to have waived any claims, objections, rights or defenses, or legal arguments or positions, including, but not limited to, claims or objections to class certification, including filing a motion for additional certifications or for decertification, or claims or defenses on the merits. Each Party reserves the right to prosecute or defend this Action if this Settlement Agreement is terminated pursuant to its terms (including if Merrill Lynch exercises its option to withdraw from the Settlement pursuant to Section [X] of this Agreement), or if the Effective Date does not occur for any reason. This provision survives the termination of this Settlement Agreement.

V.     **MUTUAL FULL COOPERATION**

The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Settlement Agreement, and exercise good faith efforts to accomplish the terms and conditions of this Settlement Agreement.

The Parties further agree to accept non-material and procedural changes to this Settlement Agreement if so required by the Court in connection with Final Approval of the Settlement but are not obligated to accept any changes in the amount of the

Settlement Fund, the scope of the Released Claims, or the substantive Programmatic Relief provided herein, or any other substantive change.

The Parties also recognize that from time to time unforeseen events may cause delays in the accomplishment of objectives, no matter how well-intentioned and diligent the Parties may be. Accordingly, with regard to the provisions of this Settlement Agreement that require the Parties to take certain actions within specified time periods (other than deadlines set forth in the Preliminary Approval Order and the deadline for filing claims), the Parties agree that Court approval will not be required for reasonable extensions of deadlines. In the event that any party determines in good faith that an action required by this Settlement Agreement cannot be taken within the specified time period, counsel for that party shall promptly notify counsel for the other party that it anticipates a delay, the reasons for the delay, and a proposed alternative deadline.

VI. **RELEASES**

A. **Settlement Class Member Release**

With the exception of Named Plaintiffs and Steering Committee Members, all Settlement Class Members who do not properly and timely opt out of this Settlement (including their heirs, administrators, representatives, executors, successors, and assigns) waive, release, and discharge the Released Parties, from any and all actions, causes of action, suits, demands, liabilities, and claims (upon any legal or equitable theory, whether contractual, common-law, statutory, federal, state, local, or otherwise) of any nature whatsoever, whether known or unknown, arising at any time up to and including the Preliminary Approval Date, for race and color employment discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 1981

23

("Section 1981"), and any other parallel or similar federal, state or local law, and any claims for attorneys' fees and costs with respect to these Released Claims.

Settlement Class Members who fail to timely opt out (including their heirs, administrators, representatives, executors, successors, and assigns) expressly waive any and all provisions, rights and benefits conferred under or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to, Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

By way of example only, and without any intent to limit the scope of the release, the Settlement Class Member Release will bar claims for race discrimination, harassment, and retaliation relating to compensation, training, deferred compensation, long-term contingent awards, retention bonus payments, production credits, account distributions, team or pool formation and dissolution, promotions, the Paths of Achievement Program/Practice Management Development Program, and allocation of support or business opportunities.

Following its determination as to the monetary award, if any, that should be paid to each Claimant from the Settlement Fund, the Claims Administrator shall send a check to each such eligible Claimant along with a statement on the check itself expressly stating that, by cashing the check, the Claimant has waived the Released Claims. All Claimants' endorsement of any check from the Settlement Fund shall reconfirm that the Claimant has voluntarily waived and discharged the Released Claims in exchange for receiving monetary relief from the Settlement Fund.

B.       **Named Plaintiff Release and Steering Committee Member Release**

In consideration of the monetary payments that Named Plaintiffs and Steering Committee Members will receive, including any Service Award Payment that the Court, at its discretion, may approve, Named Plaintiffs and Steering Committee Members will execute and deliver to the Claims Administrator the Named Plaintiff Release or the Steering Committee Member Release, as appropriate, in the form attached hereto as Exhibits B and C, respectively.  The Named Plaintiff Release and the Steering Committee Member Release are not limited to a release of claims of race discrimination, harassment, and retaliation but instead release all claims, known or unknown, of any nature against the Released Parties under federal, state and local laws for any period up through the date the Named Plaintiff Release or Steering Committee Member Release is signed, to the full extent permitted by law and any claims for attorneys' fees and costs with respect to the aforementioned claims.  Notwithstanding this provision, Named Plaintiffs and Steering Committee Members may participate in and receive monetary relief for class or collective claims resolved by a common fund settlement for which they are eligible.  If any Named Plaintiff or Steering Committee Member does not execute and timely deliver a Named Plaintiff Release or Steering Committee Member Release, as appropriate, he or she shall be ineligible for, and forever barred from receiving, any Service Award under this Settlement Agreement, but will remain eligible for a monetary award from the Settlement Fund subject to the Settlement Class Member Release.

The terms of the Named Plaintiff Release and the Steering Committee Member Release, which are more specifically described in Exhibits B and C, respectively, are incorporated as if fully set forth in the Settlement Agreement.

C. ___Res Judicata___ **and Collateral Estoppel**

The doctrines of *res judicata* and collateral estoppel will apply to the Named Plaintiffs, Steering Committee Members, and Settlement Class Members who do not timely opt out, as provided by this Agreement, with respect to all Released Claims, which are known or unknown, actual or potential.

D. **Materiality of the Releases**

The terms of the Releases are a material part of this Settlement Agreement. If these Releases or the Settlement Agreement cannot become effective for any reason and the Settlement set forth in this Settlement Agreement shall terminate as provided in Section X of this Settlement Agreement, then the Releases shall terminate *nunc pro tunc* and be of no force and effect.

VII. **NO ADMISSION AND NO DETERMINATION**

This Settlement Agreement does not, and is not intended to constitute, nor shall it be deemed to constitute, an admission by any party as to the merits, validity, or accuracy of any of the allegations, claims, or defenses of any party in this case. The Settlement Class Members continue to assert the merits and validity of their claims under Title VII, 42 U.S.C. § 1981, and any parallel federal, state and local laws prohibiting race discrimination. By entering into this Agreement, Merrill Lynch does not admit or concede, expressly or impliedly, but denies that it has in any way violated Title VII, 42 U.S.C. § 1981, or any parallel federal, state and local laws prohibiting race discrimination, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any other obligation or duty at law or in equity. Neither the Court nor any other court has made any findings or

expressed any opinion concerning the merits, validity, or accuracy of any of the allegations, claims, or defenses in this Civil Action.

Nothing in this Settlement Agreement, or any action taken in implementation thereof, or any statements, discussions or communications, or any materials prepared, exchanged, issued or used during the course of the mediation or negotiations leading to this Settlement Agreement is intended by the Parties to, nor shall any of the foregoing constitute, be introduced, be used or be admissible in any way in this case or any other judicial, arbitral, administrative, investigative or other proceeding, of whatsoever kind or nature (including, without limitation, the results of the claims process established under this Settlement Agreement) as evidence of discrimination, retaliation or harassment or as evidence of any violation of Title VII, 42 U.S.C. § 1981, parallel federal, state and local laws prohibiting race discrimination, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any other obligation or duty at law or in equity. Notwithstanding the foregoing, this Settlement Agreement may be used in any proceeding in the Court or in mediation or arbitration only to enforce or implement any provision of this Settlement Agreement or to implement any orders or judgments of the Court entered in connection herewith.

VIII. **MONETARY RELIEF**

A. **Settlement Fund**

No later than ten (10) days after the Effective Date, Merrill Lynch and/or its parent company Bank of America shall pay by wire transfer to the Depository Bank the sum of One Hundred and Sixty Million Dollars ($160,000,000.00). The $160 million will be placed in an interest bearing account titled in the name of Merrill Lynch Financial Advisor Race Discrimination Settlement Fund intended by the Parties to be a "Qualified

Settlement Fund" as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*, and formed in a manner designed to assure that it will so qualify. The monies so transferred, together with interest subsequently earned thereon, shall constitute the Settlement Fund. Merrill Lynch's payment of the Settlement Fund shall constitute the full, complete, and total settlement cash outlay by Merrill Lynch under the Settlement Agreement, and shall constitute a full and complete satisfaction of the claims of all Named Plaintiffs and Settlement Class Members, including, but not limited to, for all of the following purposes: (1) the resolution of this Civil Action; (2) this Settlement Agreement (and attachments); (3) the dismissal of this Action; (4) all amounts paid to Settlement Class Members, including Named Plaintiffs and Steering Committee Members, which are to be distributed pursuant to Section VIII.C below; (5) all attorneys' fees and costs, including those in connection with securing court approval of the Settlement, and with monitoring compliance with the terms of the Settlement Agreement, including, but not limited to, compliance with the Programmatic Relief provisions herein; (6) all costs and expenses in connection with the Settlement Fund, including, but not limited to, those related to notice, claims processing and resolution, the costs of administering the Settlement, legal and other advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below); and (7) all applicable federal, state and local income taxes, and all federal and state unemployment taxes required to be withheld and/or paid by Merrill Lynch. Without limiting the generality of the foregoing, the Settlement Fund includes, and shall represent complete satisfaction of, Merrill Lynch's share of all required taxes or

contributions, including FICA, FUTA, SUTA and Medicare. Notwithstanding the foregoing, any costs associated with the Programmatic Relief described in Section IX will be incurred by Merrill Lynch, not paid for using the Settlement Fund.

**B.** **Administration by Trustee**

The Claims Administrator shall serve as Trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement Fund. For purposes of Section 468B of the Internal Revenue Code of 1986, and Treas. Reg. Section 1.468B-1, *et seq.*, the 'administrator' shall be the Claims Administrator. The Claims Administrator shall act in a manner necessary to qualify the Settlement Fund, from the earliest permitted date, as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*, and to maintain that qualification.

**C.** **Claims Filing Procedures for Settlement of Claims of Named Plaintiffs and Settlement Class Members**

      1.    Claims Filing Procedures for Obtaining Monetary Relief

All Settlement Class Members may be eligible to receive a monetary award from the Settlement Fund ("Monetary Award"). All Settlement Class Members, including the Named Plaintiffs and Steering Committee Members, who seek to claim a Monetary Award from the Settlement Fund must do so in writing or via secure electronic submission by signing or electronically affirming, under penalty of perjury, and submitting to the Claims Administrator either a Simple Claim Form or a Detailed Claim Form, as described more fully below, which must be electronically submitted or received by the Claims Administrator by the date set by the Court ("Claims Submission Date"). Settlement Class Members shall complete either the Simple Claim Form or the Detailed

Claim Form in its entirety to the extent applicable and in accordance with the procedures and requirements set forth on the Simple Claim Form or Detailed Claim Form.

The Simple Claim Form and Detailed Claim Form shall be mailed to Settlement Class Members and available electronically on a website maintained by the Claims Administrator, www.merrillracesettlement.com, and on the case website maintained by Class Counsel at www.merrillclassaction.com, following Final Approval of the Settlement. Settlement Class Members will be able to view, access, and submit Simple Claim Forms and Detailed Claim Forms electronically on the website maintained by the Claims Administrator.

2.     <u>Claim Form and Monetary Award Options</u>

Settlement Class Members, including Named Plaintiffs and Steering Committee Members, who seek to claim a Monetary Award must elect to submit either a (1) Simple Claim Form if they desire an expedited financial payment without an individual assessment of their claims and alleged losses, or (2) a Detailed Claim Form if they desire, or want to preserve the option to pursue, an individual assessment of their claims and alleged losses by qualified, independent Neutrals (the "Neutrals") as part of the Individual Claims Resolution Program ("ICRP").

Any Settlement Class Member who fails to timely file either a Simple Claim Form or a Detailed Claim Form shall not receive a Monetary Award, unless otherwise determined by the Special Master.

3.     <u>Simple Claim Form and Expedited Monetary Awards</u>

Settlement Class Members who elect to submit the Simple Claim Form will be issued a Monetary Award check within 30 days of the Claims Submission Date ("Expedited Monetary Award"). Settlement Class Members who submit the Simple

Claim Form, however, will not have their claims or alleged losses individually assessed as part of the ICRP, nor will their claims be eligible for consideration as Extraordinary Claims, as defined below.

Expedited Monetary Awards will be determined and awarded based on objective factors that include: Merrill Lynch Length of Service ("LOS"), period of employment as a Settlement Class Member within the Class Period, "lateral" status, and average aggregate compensation and attrition disparities among Settlement Class Members based on statistical analysis of Merrill Lynch's workforce data over the class period.

Expedited Monetary Awards are not based on an individualized assessment of any Settlement Class Member's claims. Expedited Monetary Awards will be determined after all Claim Forms are submitted, and will be reviewed and approved by the Special Master appointed by the Court.

4.     <u>Detailed Claim Form Options for Settlement Class Members</u>

Settlement Class Members who wish to have the option of rejecting an Expedited Monetary Award in favor of an individual assessment of their claims and alleged losses and/or wish to be eligible for Extraordinary Claims consideration must submit a Detailed Claim Form to the Claims Administrator by the Claims Submission Date.

The Detailed Claim Form shall be completed in its entirety, including responses to questions seeking specific evidence of alleged race discrimination, financial losses and any alleged emotional distress suffered. In order to seek financial recovery for any period after Merrill Lynch employment, the Settlement Class Member must submit qualified evidence of post-Merrill Lynch income and work history.

No later than 30 days after the Claims Submission Date, all Settlement Class Members who submit a Detailed Claim Form will receive an Expedited Monetary Award

along with an election form (the "Election Form") setting forth two options from which the Settlement Class Member must elect: (1) accepting the Expedited Monetary Award; or (2) participating in the ICRP.

The Election Form must be signed and identify whether or not the Settlement Class Member is accepting the Expedited Monetary Award or electing to participate in the ICRP, and must be post-marked, or submitted electronically, within 14 days of the date on the Election Form. The Election Form may also be completed on-line and signed electronically. The electronic submission is complete only when the Settlement Class Member receives an online confirmation number.

If the Settlement Class Member elects to accept the Expedited Monetary Award, a check in the amount of the Expedited Monetary Award will be sent to the Settlement Class Member within twenty-one (21) days after the Election Form is received by the Claims Administrator and the Settlement Class Member has completed all required income tax documents.

If the Settlement Class Member rejects the Expedited Monetary Award, he or she will participate in the ICRP and have his or her claims individually assessed by the Neutrals. The amount awarded by the Neutrals to ICRP participants may be more or less than the Expedited Monetary Award.

5.     <u>Individualized Claims Resolution Process for Settlement Class Members who Submit a Detailed Claim Form and Reject Expedited Monetary Awards</u>

All Settlement Class Members who timely submit completed Detailed Claim Forms and reject Expedited Monetary Awards will have their claims reviewed and valued by Neutrals in the ICRP, as described more fully below. The claims of Settlement Class Members who participate in the ICRP will be evaluated by one or more Neutrals from a

panel of qualified Neutrals, selected by Class Counsel in consultation with the Neutral Administrator and Special Master.

The Neutrals selected will have substantial training and experience with employment discrimination claims. The Neutrals and Special Master will receive training from Class Counsel regarding Merrill Lynch's policies and practices and the publicly-filed evidentiary record and legal theories supporting the Class Claims. The Neutrals and Special Master will also be briefed regarding the analyses performed and conclusions reached by the experts retained by Class Counsel: labor economists University of Pennsylvania Professor Janice F. Madden and Dr. Alex Vekker, PhD, and sociologist and Professor William Bielby.

Drs. Madden and Vekker will also prepare a statistical analysis of each branch office in which a Settlement Class Member worked who is participating in the ICRP (the "Office Statistical Report"). The Office Statistical Report will include: (1) the racial composition of the office in terms of FA Trainees and FAs; (2) the extent of teaming and pooling and the racial composition of teams and pools in the office; (3) account transfers and distributions in the office; (4) other racial disparities in the office, including compensation and attrition. These statistical reports by office will be provided to the Neutrals to assist in their consideration of claims. The Office Statistical Reports and any other documents created in connection with the claims process will be inadmissible in this Civil Action or any other subsequent proceeding for any purpose. Any additional data provided by Merrill Lynch for the purposes of the ICRP shall be used solely in connection with that process, and shall not be admissible in this Civil Action, or any

other subsequent litigation proceeding against Merrill Lynch or the Released Parties for any purpose.

Each Settlement Class Member who participates in the ICRP will also have an opportunity to meet with a Neutral or Neutrals for up to a 90 minute session in order to present aspects of his or her claims and answer questions from the Neutral(s) (the "Interview"). The Interview can take place via an Internet video-conference or in person. Settlement Class Members who wish to attend the Interview in person but cannot afford to travel to the Interview can submit a request for a travel advance against any Monetary Award. Class Counsel shall ensure that an attorney is present at the Interview to assist Settlement Class Members, and Class Counsel shall present the Office Statistical Report to the Neutral(s). The Office Statistical Report shall remain in the sole custody, possession and control of Class Counsel subject to the Protective Order, dated June 27, 2006, and entered in the Civil Action. Nothing in this Settlement prohibits any Settlement Class Member from retaining his or her own attorney, at their own expense, provided that the Neturals may consider any attorneys' fees incurred. Any attorney appearing at the Interview must sign the Protective Order, dated June 27, 2006.

6.    Neutral Evaluation of Claims

In evaluating individual claims, in addition to Class Counsel's presentation to the Neutrals regarding class wide data and expert reports, the Neutrals shall consider information in the Detailed Claim Form and any supporting documents, the Interview, and the Office Statistical Report. Factors and evidence the Neutrals are expected to weigh include but are not limited to the following:

- Length of service at Merrill Lynch;

- Number of years in the Class Period;

- Whether the Settlement Class Member was a lateral or recruit from another company or received "up-front money" via a promissory note or otherwise;

- Whether the Class Member received a payment under the Firm's Advisor Transition Program and the amount of the payment;

- Client account distributions available in Settlement Class Member's office;

- Teaming rates and opportunities available in the Settlement Class Member's office;

- Alleged racial disparities in office composition, compensation, teaming, account transfers, attrition, and other factors;

- The Settlement Class Member's own experiences with regard to account transfers and distributions; teaming and pooling; business opportunities; managerial support, office environment and other treatment;

- Any alleged racial harassment;

- Relative strength of the Settlement Class Member's racial discrimination liability claim;

- Whether the Settlement Class Member made a formal or informal complaint of race discrimination and, if so whether the Settlement Class Member allegedly experienced retaliation;

- Whether the Settlement Class Member released some but not all of his or her claims and, if so, the date of any such release of claims;

- Any alleged emotional distress, and whether any treatment was sought or received for such distress;

- Any alleged career or reputational harm;

- Any alleged lost opportunities and financial losses;

- Any alleged lost future earnings;

- Expenses, including attorneys' fees incurred by Settlement Class Members in prosecuting Released Claims; and

- Mitigation and post-Merrill Lynch earnings.

Any determination made by the Neutral or panel of Neutrals, whether the fact or amount of a Monetary Award, will be inadmissible in this Civil Action or any other subsequent proceeding for any purpose other than to enforce a Named Plaintiff Release, Steering Committee Member Release or Settlement Class Member Release, nor shall it be deemed to be a finding as to the merits of any claim. The Monetary Award is final, binding and non-appealable.

7.  Extraordinary Claims

A portion of the Settlement Fund, twenty-five million dollars ($25,000,000.00), will be set aside and distributed by the Neutrals as part of certain Settlement Class Members' Monetary Awards for Extraordinary Claims (the "Extraordinary Claim Fund"). This Extraordinary Claim Fund is designed to make funds available for Settlement Class Members the Neutrals deem deserving of such additional Monetary Awards ("Extraordinary Claims").

Only the claims of Settlement Class Members who submit Detailed Claim Forms are eligible to have their claims be considered Extraordinary Claims. The Claim of any Settlement Class Member who filed a claim of race discrimination in federal or state court, or before an arbitral body, and who submitted a Detailed Claim Form, will be deemed an Extraordinary Claim.

The Neutrals will select other claims as Extraordinary Claims and determine the additional Monetary Award appropriate, if any, from the Extraordinary Claim Fund, based on the information set forth in the Detailed Claim Form and Office Statistical Report and during the Interview.

The Neutrals may select Extraordinary Claims from the Detailed Claim Forms in the following circumstances, and using other criteria they deem appropriate after consideration of all of the Detailed Claim Forms and Interviews:

- Settlement Class Member submitted an internal complaint of race discrimination, or retaliation related to race discrimination;

- Settlement Class Member filed a charge of discrimination with the Equal Employment Opportunity Commission or an equivalent state or local body charged with administering anti-discrimination laws.

- Allegations of severe racial harassment;

- Allegations of severe emotional distress;

- Allegations of extraordinary financial hardship, such as bankruptcy, loss of home or inability to find employment for a sustained period of time after terminating from Merrill Lynch.

The Special Master will monitor the selection of and awards for Extraordinary Claims in order to ensure fairness and consistency. The decision of the Special Master is final, binding and non-appealable.

Any Settlement Class Member whose claim is deemed an Extraordinary Claim will receive a payment that is no less than the average pre-determined ICRP contribution rate of non-Extraordinary Claims in the Settlement Class Member's length of service

band. Class Counsel shall present to the Court *in camera* the pre-determined contribution rates by length of service band. The pre-determined contribution rates are based on anticipated turnout. Should actual turnout exceed the anticipated turnout, the Special Master shall work with Class Counsel to determine final ICRP contribution rates, a copy of which shall be presented to the Court in camera. Should the actual turnout rate not exceed the anticipated rate, the excess funds may revert to the Extraordinary Claims Fund for distribution by the Neutrals and Special Master.

8. <u>Special Master</u>

The Court shall appoint a Special Master to monitor and assist with the Settlement. The Special Master shall participate in some of the Interviews and assessment of claims in the ICRP; make reports to Class Counsel and the Court as necessary; review and approve any contracts, the bills of the Neutrals, the bills of experts performing services in the settlement process; and perform other similar duties requested by Class Counsel or the Court.

The Special Master shall also review and approve all of the Expedited Monetary Awards and proposed Monetary Awards determined by the Neutrals in the ICRP, including for those deemed Extraordinary Claims, for consistency and fairness. The Special Master shall render a final determination as to the Monetary Award, if any, which should be paid to each participant in the Individualized Claims Resolution Process. There shall be no appeal from the final Monetary Awards approved by the Special Master, which shall be final and binding.

The Special Master will also establish, for tax purposes, the allocation of Monetary Awards to wages, interest, compensatory damages or other tax character as are appropriate based on the principles set forth in the IRS Regulations.

After determining the proposed allocation, the Special Master shall prepare a master Report of all Expedited Monetary Awards and all Monetary Awards from the ICRP and provide it to Class Counsel and the Claims Administrator for payment. The Special Master shall also have the discretion to determine whether to allow late claims of Settlement Class Members for good cause shown.

9. <u>Neutral Administrator</u>

Class Counsel shall ask the Court to appoint a Neutral Administrator to work with the Neutrals, the Claims Administrator, the Special Master and Class Counsel to administer the Individualized Claims Resolution Process. The Neutral Administrator shall handle scheduling and logistical issues and be available to answer questions from the Neutrals, assist with training, and otherwise act as a liaison with Class Counsel and the Special Master and Claims Administrator. The Neutral Administrator may also serve as a Neutral in the ICRP.

10. <u>Confidentiality of Claims Process and Settlement Administration</u>

Before receiving any Confidential or Confidential-Attorneys Eyes Only Information, the Claims Administrator, Special Master, Neutral Administrator, each Neutral, and any other third-party involved in the claims process or the administration of this Settlement Agreement must sign a confidentiality agreement consistent with the Protective Order, dated June 27, 2006, and entered in the Civil Action.

D. **Attorneys' Fees and Expenses, Administrative Expenses and Service Award Payments**

1. <u>Attorneys' Fees and Expenses</u>

Pursuant to Federal Rules 23(h), Class Counsel, in connection with seeking Court approval of the Settlement, shall apply for reasonable attorneys' fees and expenses

incurred by Class Counsel, including the fees and expenses in connection with overseeing and assisting Settlement Class Members with the claims process and with monitoring the Settlement Agreement. All such fees and expenses shall be borne out of the Settlement Fund. Merrill Lynch will not object to a motion for attorneys' fees by Class Counsel of up to twenty-five percent (25%) of the Settlement Fund. Merrill Lynch will not object to a motion for expenses by Class Counsel of up to $5,000,000, for costs incurred by Class Counsel up to the date of Final Approval. Class Counsel shall be entitled to seek reimbursement from the Settlement Fund for costs incurred after Final Approval in administering and monitoring the Settlement, including the costs of preparing the Office Statistical Reports, to be reviewed and approved by the Special Master. The amounts set forth herein will constitute full and complete consideration for all work performed and expenses incurred to date by Class Counsel, and for all work to be performed and expenses to be incurred through the resolution of the Civil Action and in connection with this Agreement by Class Counsel.

The application for attorneys' fees, costs and expenses, as set forth herein, is a matter separate and apart from the Settlement among the Parties, and no decision by the Court concerning the granting, in whole or in part, of such attorneys' fees, costs or expenses as set forth herein shall affect the validity of this Agreement or finality of the Settlement in any manner.

Merrill Lynch and/or Bank of America's funding of the Settlement Fund shall relieve Merrill Lynch, Bank of America, and the Released Parties from any other claims or liability to any other attorney or law firm or person for any attorneys' fees, costs and expenses to which any of them may claim to be entitled on behalf of any Settlement Class

Member who does not opt out of the Class that are in any way related to, but not limited to, the Released Claims, this Settlement Agreement, or the settlement claims or objections process.

    2.  <u>Administrative Expenses</u>

    The expenses of administering the Settlement shall be paid out of the Settlement Fund and shall include but not be limited to the cost of Notice to the Class; administering the Settlement Fund and all claims; costs of the ICRP including payments to the Neutrals and experts; and all payments to the Claims Administrator and Special Master. KCC and the Neutral Administrator shall prepare and submit to the Special Master and Class Counsel a summary and reconciliation of all administrative expenses.

    3.  <u>Service Award Payments</u>

    The Class Representatives have invested substantial time and effort assisting and monitoring this Action. As is standard in class action litigation, Class Counsel intends to petition the Court for Service Awards to Class Representatives for their efforts and service to the Class. Defendant shall not object to Plaintiffs' motion for Service Award Payments to Class Representatives up to an amount of $250,000 per Class Representative. Prior to and during portions of this litigation, a Steering Committee of putative class members invested considerable time and effort seeking to achieve the goals of this Action. Defendant shall not object to Plaintiffs moving the Court for Service Award Payments to former Steering Committee Members of up to $75,000 per Steering Committee Member.

    E.  **<u>Non-Admissibility of Fact of Award (or Non-Award)</u>**

    Except to the extent that it would constitute a set-off in an action for damages claimed for any period covered by this Settlement, neither the fact nor amount of an

award, nor the fact of any non-award, shall be admissible in any other proceeding for any purpose other than to enforce the Releases executed in accordance with this claims process, nor shall it be deemed to be a finding as to the merits of any claim.

F.      **Tax Treatment**

      1.      Qualified Tax Status and Tax Responsibilities

The Settlement Fund shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*, and shall be administered by the Claims Administrator under the Court's supervision. Merrill Lynch and/or Bank of America shall timely furnish a statement to the Trustee that complies with Treasury Regulation § 1.468B-3(e) and shall attach a copy of the statement to its federal income tax return that is filed for the taxable year in which Merrill Lynch and/or Bank of America makes the required payment(s) to the Settlement Fund. In addition, at the request of Merrill Lynch, the Claims Administrator shall make the "relation-back election" (as defined in Treas. Reg. 2.468B-1) back to the earlier permitted date. The Parties shall cooperate to ensure such treatment and shall not take a position inconsistent with such treatment in any filing or before any tax authority.

      2.      Payment of Federal State and Local Taxes

The Parties recognize that the Monetary Awards to Settlement Class Members will be subject to applicable tax withholding and reporting, which will be handled as follows: The Claims Administrator shall serve as the Trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement Fund, including the handling of tax-related issues and payments. Specifically, the Claims Administrator shall be responsible for the withholding, remitting and

reporting of Merrill Lynch's and each Claimant's share of the payroll taxes from the Settlement Fund.

The Special Master will establish and provide to the Claims Administrator for tax purposes the allocation of the payments made to Claimants to wages, interest, compensatory damages, or such other tax character of such payout as the Special Master may determine, based on the principles set forth in Treas. Reg. § 1.468B-4 by reference to the claims pursuant to which distributions are made and as if Merrill Lynch made such payments directly to Claimants.

The Claims Administrator shall be responsible to pay from the Settlement Fund the employer's share of any and all federal, state and local employment and withholding taxes, including, without limitation, federal and state income tax withholding, FICA, FUTA, SUTA, Medicare, and any state employment taxes. The Claims Administrator shall (i) inform Merrill Lynch in writing of the employer's share of any such taxes and contributions; and (ii) provide proof of payment of the employer's share of taxes and contributions paid on Merrill Lynch's behalf from the Settlement Fund. The Claims Administrator shall indemnify Merrill Lynch for any penalty arising out of an incorrect calculation and/or interest with respect to late deposit of any taxes or contributions addressed herein. Subject to the Claims Administrator's obligation to comply with applicable laws, the Parties anticipate that any amounts designated as interest shall not be subject to withholding and shall be reported, if required, to the IRS and to the Claimants on Form 1099-INT. Although Merrill Lynch shall have access to individual allocation amounts for tax and reporting purposes, Merrill Lynch shall not have access to Settlement Class Member Claim Forms.

43

The Claims Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting), and any and all taxes, penalties and other obligations with respect to the payments or distributions from the Settlement Fund not otherwise addressed herein. Provided, however, that Claimants are fully responsible for the payment of any and all federal, state or local taxes resulting from or attributable to distributions that they receive from the Settlement Fund, excluding the employer share of employment taxes and unemployment taxes and excluding amounts properly withheld from the distributions.

The Claims Administrator shall be responsible for procuring Form W-4 and Form W-9, and any other required tax forms, from the Named Plaintiffs, Steering Committee Members, and Settlement Class Members prior to making any monetary allocations to such Named Plaintiff, Steering Committee Member or Settlement Class Member.

All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed on Merrill Lynch with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses related to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses"), shall be paid out of the

Settlement Fund for the benefit of Merrill Lynch. Furthermore, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Settlement Fund. The Parties agree to cooperate with the Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this paragraph.

G.    **Merrill Lynch Has No Further Obligation, Liability or Responsibility**

Merrill Lynch shall have no withholding, reporting, or any other tax reporting or payment responsibilities with regard to the Settlement Fund or its distribution to Settlement Class Members. Moreover, the Settlement Fund shall constitute full and complete satisfaction of Merrill Lynch's monetary obligation to the Settlement Class Members in connection with this Settlement Agreement, and Merrill Lynch shall have no liability, obligation, or responsibility for the administration of the Settlement Fund, the determination of any formulas for disbursement, any claims processing or claims resolution, or the disbursement of any monies from the Settlement Fund except for: (1) its obligation to pay the settlement amount of $160 million no later than ten (10) days following the Effective Date; (2) its agreement to cooperate in providing information that is necessary for the Settlement administration set forth herein; and (3) its obligation to comply with and fund the Programmatic Relief set forth in Section IX herein.

IX.    **PROGRAMMATIC RELIEF**

A.    **Duration of the Settlement**

The Programmatic Relief embodied in this Settlement Agreement and the agreements incorporated in it shall remain binding on the Parties and their agents and successors for three (3) years following the Effective Date.

B.    **Account Distribution**

1.    Distributions to Financial Advisor Trainees in the Practice Management Development Program

Merrill Lynch will eliminate the distribution or receipt of accounts pursuant to the U.S. Wealth Management and Private Banking and Investment Group Account Distribution Policy and Process (the "ADP") to any Financial Advisor Trainee in the Practice Management Development ("PMD") program who has not satisfied the MLOS (monthly length of service) 12 performance hurdles as set by Merrill Lynch as part of the PMD program. A Financial Advisor Trainee who has met his or her MLOS 12 performance hurdles before the twelfth month of the PMD program is, however, eligible to select or receive accounts pursuant to the ADP prior to the twelfth month of the PMD program. This provision will not prohibit any Financial Advisor on a team from receiving account distributions pursuant to the ADP and its Team Distribution Guidelines and team vesting requirements. PMDs who are members of a team with a Financial Advisor who is eligible to receive account distributions under the ADP, but who themselves have not yet met their MLOS 12 performance hurdles, may only share in those distributions up to the same percentage as the PMD's team "split," or percentage of team assets and production, as set forth in the team agreement.

2.    Householding Review

Merrill Lynch will require Merrill Lynch managers to review and ensure that accounts subject to distribution through the ADP are properly householded pursuant to applicable policy prior to the distribution of any of the accounts to Financial Advisors or Financial Advisor Trainees through the ADP. Management shall maintain documentation sufficient to confirm and audit that the householding review has been performed.

### C.    **Teaming and Pooling**

Merrill Lynch will maintain a policy that "Teams may not be formed solely for the purpose of selecting a successor in anticipation of an FA's retirement or departure." Likewise, pools may not be used to evade the ADP's prohibition against Financial Advisor to Financial Advisor transfers ("FA to FA transfers"). Any pools formed within 60 days of the departure or retirement of an FA will also be strictly scrutinized by management. Additionally, Merrill Lynch will permit accounts below $250,000 belonging to Financial Advisors to be pooled with a Financial Advisor Trainee in the PMD program only if the split on the account at issue is meaningful to both the Financial Advisor Trainee in the PMD program and the Financial Advisor, as determined by the supervising manager under the particular circumstances. Merrill Lynch shall provide guidelines to help managers determine whether a split is meaningful to both the Financial Advisor Trainee in the PMD program and the Financial Advisor. Merrill Lynch will audit compliance with this provision of the Settlement Agreement.

Merrill Lynch will maintain a policy that before approving a team, management will instruct Financial Advisors and Financial Advisor Trainees to consider a variety of potential teammates, offer suggestions at an early point in the formation process, and instruct Financial Advisors and Financial Advisor Trainees that the decision to team or not to team with particular Financial Advisors or Financial Advisor Trainees may not be made on the basis of the individual's gender, race, national origin, religion, age, sexual orientation or gender identity, disability, marital status, veteran status or any other legally protected characteristic.

### D.    **PMD Rankings**

47

In addition to the current rankings of all PMDs that are based on production credits (regardless of source), Merrill Lynch will also separately rank PMDs who are not on teams by net new households ("New PMD Rankings"). Nothing herein, however, shall be construed as changing any of the actual performance hurdles that all PMDs must meet or their compensation guidelines. Whether a PMD is considered to be on a team for purposes of the New PMD Rankings will be based on Merrill Lynch's definition of teams at the time of ranking.

PMDs in the "first quintile" under the New PMD Rankings will be eligible to participate in the same recognition training programs offered to first quintile PMDs under the standard production measures in the PMD program guide, except that the training for these PMDs shall also include programs that emphasize the Optimal Practice Model and the potential benefits of teaming.

E.   **Attrition Study**

Merrill Lynch will conduct an internal study of the impact of pooling and teaming and receipt of accounts through the ADP on PMD performance and attrition rates. This study will be confidential and shared only with Merrill Lynch executives, including those involved in and responsible for PMD and Teaming and Pooling Policies, and the Monitor/Coach, as defined in Section IX.G.2., unless Merrill Lynch deems, in its discretion, that it would be necessary or helpful to share with a wider audience. This study shall be a "look-back" review for a period of no less than 36 months, and Merrill Lynch shall endeavor to complete the study within 12 months of the Effective Date of the Settlement. This Attrition Study will be considered attorney-work product, such that it

will be undiscoverable and inadmissible in this Civil Action for any purpose, or in any other litigation or proceeding against Merrill Lynch or the Released Parties.

    F.    **Annual Reports to Class Counsel**

Following the Effective Date of this Settlement, Merrill Lynch will provide to Class Counsel an annual report (the "Annual Report") summarizing Merrill Lynch's compliance with the programmatic relief provisions set forth in this Settlement Agreement. The Annual Report shall also set forth any new programs and policies designed by Merrill Lynch to increase the representation and success of African Americans. Merrill Lynch will meet with Class Counsel on an annual basis to respond to any questions regarding the Annual Report.

    G.    **Appointments**

        1.    Teaming Study

Merrill Lynch will engage and commission two experts (the "Experts"), at Merrill Lynch's cost, to review and evaluate Merrill Lynch's teaming and pooling policies and practices (the "Teaming Study"). Merrill Lynch will select one expert, and Class Counsel and the Named Plaintiffs will select the other expert, to conduct the Teaming Study. The Experts will both sign confidentiality agreements with Merrill Lynch, providing, among other things, that: (i) the Teaming Study will be kept confidential and shared only with Merrill Lynch executives; (ii) except as set forth in this Settlement Agreement, all of the Experts' communications in connection with the Teaming Study will be exclusively with Merrill Lynch or its agents; and (iii) any documents, data, access to individuals, or other information received by the Experts will be kept confidential among the Experts, and used exclusively to conduct the Teaming Study pursuant to this Settlement.

Before beginning their review and evaluation of the teaming and pooling policies and practices, the Experts will meet once with Class Counsel, and then once with Counsel for Merrill Lynch to discuss the Parties' respective perspectives in connection with the Teaming Study. The Experts will thereafter meet with each other in order to coordinate and design a plan to conduct the Teaming Study (the "Teaming Study Plan"), and jointly identify any documents, data, access to individuals, or other information they intend to request from Merrill Lynch in connection with conducting the Teaming Study. The Experts will then submit their requests for documents, data, access to individuals, or other information to Merrill Lynch in accordance with the procedure set forth below. Following Merrill Lynch's response to the Experts' requests, and before the Experts commence the Teaming Study, Merrill Lynch and Class Counsel will both have an opportunity to review and discuss the Experts' Teaming Study Plan, and be informed of the extent to which the Experts' requests for documents, data, access to individuals, or other information was approved.

All requests by the Experts for documents, access to individuals, or other information from or with Merrill Lynch will be jointly made by the Experts to Kevin Walsh of Merrill Lynch, such that both Experts will be aware of any request, and will receive the same documents, data, and access to individuals, or other information from Merrill Lynch. Through arrangements to be made through Mr. Walsh, the Experts will be permitted to interview Financial Advisors and Financial Advisor Trainees in up to six (6) Merrill Lynch offices regarding pooling and teaming. The offices will be chosen by the Experts. The Experts may also request to interview representatives of management within Global Wealth Management regarding pooling and teaming. All requests for

documents, data, access to individuals, or other information shall be subject to Mr. Walsh's reasonable discretion; the Experts' requests for information will not be unreasonably denied.

After completing their review of Merrill Lynch's pooling and teaming policies and practices, the Experts shall present their preliminary, non-binding recommendations to Merrill Lynch executives and the Monitor/Coach (as defined in Section IX.G.2.) concerning potential improvements to Merrill Lynch's pooling and teaming policies and practices, and will engage in a dialogue regarding the feasibility and appropriateness of the preliminary recommendations. Following this dialogue, the Experts shall issue, either jointly or separately, their final, written, non-binding recommendations (the "Recommendations") to Merrill Lynch executives only (including senior executives from the business and with responsibility for the Firm's teaming practices and diversity and inclusion function). The Monitor/Coach will also review a copy of the Experts' Recommendations, but the written report containing the Experts' Recommendations must remain in the custody of Merrill Lynch executives at all times. Merrill Lynch, thereafter, in its sole discretion, shall determine in good faith and after careful consideration whether and how to implement the Recommendations, or any portion thereof. The Recommendations will be made solely for the purposes of this Settlement, and will not be admissible for any other purpose in this Civil Action or any other litigation against Merrill Lynch or the Released Parties.

If it becomes necessary to replace one or both of the Experts, Merrill Lynch will select the replacement for the expert chosen by Merrill Lynch, and Class Counsel and the

Named Plaintiffs will select the replacement for the expert chosen by them. The Experts shall endeavor to complete the Teaming Study within 18 months of the Effective Date.

2.   Monitor/Coach for African American Financial Advisors and African American Financial Advisor Trainees

Merrill Lynch shall appoint, at its expense, an individual (the "Monitor/Coach") to: (a) monitor the performance of African American Financial Advisor Trainees and African American Financial Advisors compared to non-African American Financial Advisor Trainees and non-African American Financial Advisors, including but not limited to comparative rates of attrition and overall success; (b) monitor the quantity and quality of training and support that African American Financial Advisor Trainees and African American Financial Advisors receive at Merrill Lynch as compared to non-African American Financial Advisor Trainees and non-African American Financial Advisors, including but not limited to participation in mentoring and training programs; (c) monitor the receipt of account transfers and participation in pools/teams by African American Financial Advisor Trainees and African American Financial Advisors as compared to non-African American Financial Advisor Trainees and non-African American Financial Advisors; and (d) provide coaching assistance to African American Financial Advisor Trainees and African American Financial Advisors regarding business development. The Monitor/Coach shall also work with Merrill Lynch management in the branch offices and home office to improve their abilities to support African American Financial Advisor Trainees and African American Financial Advisors. The Monitor/Coach will be appointed and begin his or her work as set forth herein, within 30 days of Final Approval. For the avoidance of doubt, Plaintiffs' Counsel is not permitted

to communicate with the Monitor/Coach without the express, written consent of Merrill Lynch.

If the Monitor/Coach believes that an African American Financial Advisor Trainee, through no fault of his or her own, is not succeeding in the PMD program, the Monitor/Coach can recommend to management that (a) the African American Financial Advisor Trainee be given additional time to achieve the PMD performance hurdles, and/or (b) that management take steps to provide additional support and resources to the African American Financial Advisor Trainee, if the Monitor/Coach believes such steps are warranted under the individual circumstances.

Merrill Lynch will provide the Monitor/Coach with information on a monthly basis concerning the performance of African American Financial Advisor Trainees in the PMD program (or any successor program), including but not limited to: (a) the progress of the African American Financial Advisor Trainees against the performance hurdles established for continued participation in and graduation from the PMD program, (b) relative attrition rates for African American Financial Advisor Trainees and non-African American Financial Advisor Trainees, (c) PMD Financial Advisor Trainees' participation in pools/teams (both African American PMD Financial Advisor Trainees and non-African American PMD Financial Advisor Trainees), (d) the receipt of account transfers by all Financial Advisor Trainees (both African American PMD Financial Advisor Trainees and non-African American PMD Financial Advisor Trainees), and (e) the participation of all PMD Financial Advisor Trainees in training and mentoring programs (both African American PMD Financial Advisor Trainees and non-African American

PMD Financial Advisor Trainees). The Monitor/Coach will also receive similar information for Financial Advisors outside of the PMD program.

The Monitor/Coach will leverage the existing resources available to Financial Advisor Trainees and Financial Advisors, including the PMD Coaches, the Dedicated PMD Coaches, as discussed below, and the Practice Management Consultants in the home office and in each market by training the PMD Coaches, the Dedicated PMD Coaches, and the Practice Management Consultants, and by providing guidance to them in their work with African American Financial Advisor Trainees and African American Financial Advisors.

For the duration of the Settlement, the Monitor/Coach will also, on an ongoing basis, review Merrill Lynch's current programs, policies and initiatives, and periodically report the results of his or her review to Merrill Lynch. The Monitor/Coach will work with Merrill Lynch to formulate, revise and implement meaningful and state of the art policies, programs and initiatives, and to make non-binding recommendations concerning:

        a.      Policies and programs to recruit, retain and promote African American Financial Advisors and African American Financial Advisor Trainees;

        b.      Policies and programs to improve the ranking of African American Financial Advisors and African American Financial Advisor Trainees used to determine receipt of accounts through the ADP;

c.     Policies and programs to increase the participation of African American Financial Advisors and African American Financial Advisor Trainees in pooling and teaming relationships;

d.     Policies and practices with respect to training and mentoring African American Financial Advisors and African American Financial Advisor Trainees to enhance business opportunities for African American Financial Advisors and African American Financial Advisor Trainees.

3.     <u>Dedicated/Specialized PMD Coaches</u>

Merrill Lynch will assign a dedicated PMD Coach to the East Coast offices, and a dedicated PMD Coach to the West Coast offices (the "Dedicated PMD Coaches") to work exclusively with African American PMDs. The Dedicated PMD Coaches will be appointed and begin the work set forth herein within 30 days of the Final Approval Date.

The Dedicated PMD Coaches will report directly to the head of the PMD Program, and will periodically provide reports and input to the Leadership Council, which is to be established pursuant to this Settlement Agreement, as set forth below. The Dedicated PMD Coaches will also coordinate their coaching efforts directly with the Monitor/Coach. For the avoidance of doubt, Plaintiffs' Counsel is not permitted to communicate with the Dedicated PMD Coaches without the express, written consent of Merrill Lynch.

The Monitor/Coach and the Dedicated PMDs Coaches are resources provided under this Settlement Agreement to supplement, not supplant, existing resources currently available to all PMDs or FAs regardless of race.

4.    Leadership Council

Within 30 days of the Final Approval Date, Merrill Lynch will create and maintain a Leadership Council consisting of the Monitor/Coach, current African American Complex Directors, and a select number of Settlement Class Members, which shall at all times include at least two of the Class Representatives who are currently employed at Merrill Lynch, provided that at least two Class Representatives wish to participate in the Leadership Council.  Over the course of the three year settlement period, all of the currently employed Class Representatives shall be invited to participate on the Leadership Council on a rotating basis.  The Leadership Council will: (i) work with Complex Directors to share best practices in hiring and coaching; (ii) organize a formal, national peer-to-peer mentor program in which successful Financial Advisors will serve as mentors to African American PMDs and African American Financial Advisors; (iii) meet on a quarterly basis to review the progress of the programs identified in the Programmatic Relief section of this Settlement Agreement; (iv) receive periodic progress reports and input from the Dedicated PMD Coaches; (v) review and provide input regarding policies concerning ADP, teaming and pooling; (vi) meet with and report on a quarterly basis to a Merrill Lynch Leadership Council Executive Board, which shall be composed of Merrill Lynch executives selected by Merrill Lynch (including senior executives from the Company and with responsibility for the Company's teaming practices, ADP, and diversity inclusion function); and (vii) through the Merrill Lynch Leadership Council Executive Board, the Leadership Council may request access to

certain information that is necessary to perform their function and provide input to management, such requests to be granted at the discretion of the Merrill Lynch Leadership Council Executive Board but not to be unreasonably denied.

H. **Mediation in Teaming Dissolution Agreements**

Merrill Lynch will make available to all Financial Advisors and Financial Advisor Trainees the option of adding a non-binding mediation process with a third-party neutral to their teaming agreements. This non-binding mediation process would serve as a dispute resolution mechanism following the efforts of the Merrill Lynch Complex Director and Merrill Lynch Executive to resolve any disputes concerning the division of team assets in connection with team dissolutions. Such a provision shall be added to team agreements only with every team member's consent. The mediation provision in the team agreements will provide that Merrill Lynch will pay fifty per cent (50%) of the mediator's fees, while the team will pay fifty per cent (50%) of the mediator's fees, to be divided among each team member in proportion to the percentage of production credits that each team member is designated to receive under the team agreement. The mediator will be selected by the team members from the roster of Financial Industry Regulatory Authority mediators.

I. **Diversity Fund**

Merrill Lynch will maintain a Diversity Fund that will be available nationwide to any Financial Advisor of color or female Financial Advisor (an "Eligible Financial Advisor") to fund a business development event. For any event funded by this Diversity Fund, the Eligible Financial Advisor must have a speaking opportunity. The event funding will be capped for each participating Financial Advisor at reasonable amounts to be determined by Merrill Lynch. An Eligible Financial Advisor may only request

funding for one event per year unless there is a shortage of applicants or excess funding available. Managers must approve the Eligible Financial Advisor's request for funding, and all the Eligible Financial Advisors must provide post-event attendee lists from which Merrill Lynch may measure the effectiveness of the event. The Diversity Fund will be funded at a minimum of $1,000,000 per year for the duration of the Settlement Agreement and will be distributed on a first come, first serve basis. Each year, at least $250,000 of the Diversity Fund shall be available to be distributed to African American Financial Advisors who apply for these funds. This amount is intended as a floor but not a ceiling on grants to African American Financial Advisors. Merrill Lynch may establish appropriate rules concerning the Diversity Fund.

The Monitor/Coach will be responsible for advising African American Financial Advisors regarding their funding requests and proposals, with a particular focus on advising African American Financial Advisors who are LOS 10+.

J.        **Voluntary Exit Interviews**

Merrill Lynch will conduct voluntary exit interviews with any departing Financial Advisors and Financial Advisor Trainees, if such an exit interview is requested by a Financial Advisor or Financial Advisor Trainee after being offered the opportunity for such an exit interview. Merrill Lynch may designate the individual members of the Human Resources Department to conduct such interviews. In addition, the Monitor/Coach shall be permitted to participate in the Exit Interviews of any departing African American Financial Advisors or Financial Advisor Trainees. Reports based on the information shared during such Exit Interviews will be made exclusively to Merrill Lynch management (and for African American Financial Advisors or Financial Advisor Trainees, to the Monitor/Coach).

K. **Informational Discussions with Settlement Class Members and Class Counsel**

At a mutually convenient time, willing Settlement Class Members, along with Class Counsel, will meet with Merrill Lynch regarding their employment experiences as Financial Advisors or Financial Advisor Trainees. A report based on the information shared during this meeting will be made exclusively to Merrill Lynch management. Merrill Lynch, thereafter, in its discretion, shall determine in good faith and after careful consideration, whether and how any appropriate corrective measures may be implemented in light of the information and what disciplinary action will be taken against anyone who engaged in inappropriate behavior.

L. **Manager Evaluations**

Merrill Lynch will conduct performance assessments of Merrill Lynch Complex Directors and Resident Directors that include a distinct diversity and inclusion category designed to evaluate whether the manager was a leader in promoting diversity and inclusion (people, ideas, solutions), including African American Financial Advisors' inclusion in the allocation of business opportunities and teams, and whether the manager fostered open communications with Financial Advisors, including African American Financial Advisors.

M. **New Manager Selection**

Merrill Lynch is committed to actively promoting a diverse and inclusive environment where all employees have the opportunity to achieve management success and contribute to the growth of Merrill Lynch's business. As a standard practice, Merrill Lynch strives to ensure that slates of management candidates include diverse candidates for all posted roles and will continue to do so. Accordingly, for the duration of the

Settlement, Merrill Lynch will interview at least one diverse candidate, where available, for any posted Executive or Director position opening in the U.S. Wealth Management business. The Monitor/Coach shall be available to assist African American management candidates by providing advice on management and placement opportunities.

N. **No Arbitration for Employment Discrimination**

Merrill Lynch will not require arbitration of any employment discrimination claims, except as individually negotiated.

X. **MERRILL LYNCH'S RIGHT TO WITHDRAW OR MODIFY THE AGREEMENT**

Merrill Lynch shall have the right, in its sole discretion and notwithstanding any other provisions in this Settlement Agreement, to withdraw in writing from this Settlement Agreement or to modify this Settlement Agreement through further negotiations with Class Counsel subject to the provisions of Exhibit D, annexed to this Settlement Agreement, and filed under seal.

XI. **DUTIES OF THE PARTIES FOLLOWING FINAL COURT APPROVAL**

In connection with the Final Approval by the Court of the Agreement, Class Counsel and Counsel for Defendant will submit a proposed final order and judgment:

A. Granting final approval to the Agreement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

B. Certifying the Settlement Class solely for the purpose of settlement;

C. Dismissing the Civil Action with prejudice and permanently barring all members of the Settlement Class who have not timely opted out, including the Class Representatives, from commencing, maintaining, prosecuting,

participating in any action, suit or proceeding (judicial, administrative, arbitral or other) against any Released Parties any of the Released Claims;

D. Providing that the promises, agreement, obligations, undertakings, representations, certifications, and warranties set out herein shall survive the closing of this Settlement Agreement, the releases and bar order contained herein, and the judgment of dismissal to be entered in the Action, and that the Court shall have continuing jurisdiction to enforce the Settlement Agreement; and

E. Ordering that all materials, unless otherwise publicly available, designated as Confidential or Confidential-Attorneys Eyes Only Information pursuant to the Parties' so-ordered Protective Order, dated June 27, 2006, and entered in the Civil Action (i) may be used solely in connection with the ICRP set forth in Section VIII.C herein and (ii) shall be returned to the producing party or destroyed by the party to whom those materials were produced at the conclusion of such Claims Process or one year following the Final Approval Date, whichever comes later; provided, however, that the Parties may retain copies of their work product; copies of all filed documents (whether or not filed under seal or submitted to the court without being officially filed); information necessary to be maintained by counsel under the rules of professional responsibility; and materials necessary to oversee compliance with this Agreement.

XII.   **PARTIES' AUTHORITY**

The signatories represent that they are fully authorized to enter into this Settlement Agreement and to bind the Parties and the Settlement Class Members to the terms and conditions hereof.

The Parties acknowledge that through this Settlement Agreement, its Exhibits and its attachments, they and the Settlement Class Members are being advised that they may consult an attorney regarding their participation in this Agreement, and the Parties acknowledge that they in fact have been represented by competent, experienced Counsel throughout all negotiations that preceded the execution of this Agreement, and that this Agreement has been made with the consent and advice of Counsel who have jointly prepared this Agreement.

All of the Parties and Settlement Class Members acknowledge that they are participating voluntarily and knowingly in exchange for the consideration described herein.  The Parties and Settlement Class Members further acknowledge that they were provided with a reasonable period of time within which to consider this Settlement Agreement.

XIII.  **NOTICES**

Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, or via electronic mail, and shall be addressed as follows:

To the Class Representatives or to any Settlement Class Member:

> **STOWELL & FRIEDMAN, LTD.**
> Linda D. Friedman
> Suzanne E. Bish
> George S. Robot
> Jennifer Gilbert
> 303 W. Madison, 26th floor
> Chicago, Illinois 60606
> (312) 431-0888 (tel)
> (312) 431-0228 (fax)
> Lfriedman@sfltd.com
> Sbish@sfltd.com
> Grobot@sfltd.com
> Jgilbert@sfltd.com

To the Defendant:

> **WEIL, GOTSHAL & MANGES LLP**
> Jeffrey S. Klein
> Nicholas J. Pappas
> 767 Fifth Avenue
> New York, NY 10153
> (212) 310-8000 (tel)
> (212) 310-8007 (fax)
> jeffrey.klein@weil.com
> nicholas.pappas@weil.com
>
> **MAYER BROWN LLP**
> Stephen M. Shapiro
> Timothy S. Bishop
> Lori E. Lightfoot
> 71 S. Wacker Drive
> Chicago, IL 60606
> (312) 782-0600 (tel)
> (312) 701-7711 (fax)
> sshapiro@mayerbrown.com
> tbishop@mayerbrown.com
> llightfoot@mayerbrown.com

## XIV.  CONFIDENTIALITY

Nothing in this Agreement shall be construed to permit anyone (including Class Counsel) to make public Merrill Lynch's confidential personnel information.  Nor will any provision require Merrill Lynch to make public such information.

Other than necessary disclosures to be made to the Court, the content of the Parties' confidential settlement negotiations shall be kept confidential by Counsel for Merrill Lynch, Merrill Lynch, Class Counsel and the Class Representatives.

## XV. MODIFICATION

This Agreement and its exhibits may not be terminated or substantively changed, altered or modified, without written agreement of all Parties and prior Court approval.

The Parties shall have the right to seek modification of the Agreement by the Court to ensure that its purposes are fully effectuated. The Parties may jointly agree to modify the Agreement with the approval of the Court. Upon application for modification of the Agreement, the movant shall bear the burden of proving by a preponderance of the evidence that circumstances make such modification necessary.

## XVI. EXHIBITS

The exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

## XVII. ENTIRE AGREEMENT AND INTEGRATION

This Agreement and its exhibits and attachments constitute the entire agreement between the Parties and Settlement Class Members concerning the subject matter hereof. All prior or contemporaneous agreements, understandings, representations and statements, whether oral or written and whether by a party or such party's legal counsel, with respect to matters relating to or addressed in this Settlement Agreement are extinguished.

No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Agreement. In the event of any conflict between this

Settlement Agreement and any other Settlement-related document, the Parties and Settlement Class Members intend that this Agreement shall be controlling.

## XVIII. FAILURE TO INSIST ON STRICT COMPLIANCE

The failure of any party to insist in any one or more instances on strict compliance with the terms and conditions hereof shall not be construed to be a waiver of remedies available with respect to any prior or subsequent breach.

## XIX. INTERPRETATION

This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof. The Parties shall meet and confer concerning any disputes regarding the interpretation of the Settlement Agreement before seeking resolution from the Court.

## XX. NO DRAFTING PRESUMPTION

All Parties hereto have participated, through respective counsel, in the drafting of this Settlement Agreement and, therefore, this Settlement Agreement shall not be construed more strictly against one party than another.

## XXI. ENFORCEMENT AND JURISDICTION

The Court, and any appellate court from which appeals of the Court's decisions may properly be brought, shall retain exclusive jurisdiction relating to any claims arising out of or relating to this Settlement Agreement, including, but not limited to the implementation and enforcement of the terms of this Agreement. Settlement Class Members will have no individual right to enforce the terms of the Settlement Agreement. Rather, only Defendant and Class Representatives, through Class Counsel, may seek to

enforce the terms of the Settlement Agreement. Class Counsel and counsel for Merrill Lynch shall meet and confer before the commencement of any enforcement proceedings.

Notwithstanding the foregoing, nothing in this paragraph shall bar Settlement Class Members from bringing to the attention of the Special Master any allegation that the claims process procedures described in Section VIII.C have not been implemented pursuant to the Settlement Agreement's express terms, provided that Settlement Class Members shall bring no such claims against Merrill Lynch, and Settlement Class Members shall have no claims against Merrill Lynch regarding claims process procedures described in Section VIII.C. The Special Master shall confer with Class Counsel and provide a response to the Settlement Class Member. The Special Master shall also provide a report to the Court regarding the resolution of any such allegations. The Court shall have final, binding and non-appealable jurisdiction to resolve allegations brought by Settlement Class Members under this paragraph.

## XXII. **CHOICE OF LAW**

This Agreement and the exhibits thereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Illinois, and the rights and obligations of the Parties to this Settlement Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Illinois, without giving effect to that State's or any other state's choice-of-law principles.

## XXIII. **PARAGRAPH AND SECTION HEADINGS**

Paragraph and section headings are for convenience of reference only and are not intended to create substantive rights and obligations.

XXIV. **COUNTERPARTS**

This Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement.

XXV. **SETTLEMENT AGREEMENT IS FINAL AND BINDING**

This Settlement Agreement shall inure to the benefit of and be final and binding upon Named Plaintiffs and all other Settlement Class Members who do not opt out pursuant to Section IV.B above, as well as upon their successors, executors, administrators, assigns and heirs, and on Defendant and its successors and assigns. Additionally, only Defendant, Class Counsel and Named Plaintiffs may challenge or seek to enforce the terms of the Settlement Agreement, except that pursuant to Section XXI above, Settlement Class Members can bring to the attention of the Special Master any allegation that the claims process procedures described in Section VIII.C have not been implemented pursuant to the Settlement Agreement's express terms, provided that Settlement Class Members shall bring no such claims against Merrill Lynch, and Settlement Class Members shall have no claims against Merrill Lynch regarding claims process procedures described in Section VIII.C.

XXVI. **COMPUTATION OF TIME**

In computing any period of time prescribed or allowed by this Settlement, unless otherwise stated, such computation or calculation shall be made consistent with Fed. R. Civ. P. 6(a).

### XXVII.   VOIDING THE AGREEMENT

In the event this Agreement, or any amended version agreed upon by the Parties, does not obtain judicial approval for any reason, this Agreement shall be null and void in its entirety, is without precedential value, and is inadmissible in any court or proceeding, unless expressly agreed in writing by all Parties.

Dated:  August 28, 2013

**STOWELL & FRIEDMAN, LTD.**

By: *Linda D Friedman*
    Linda D. Friedman

**STOWELL & FRIEDMAN, LTD.**
Linda D. Friedman
Suzanne E. Bish
George S. Robot
303 W. Madison, 26th floor
Chicago, Illinois 60606
(312) 431-0888 (tel)
(312) 431-0228 (fax)

*Counsel for Named Plaintiffs and the Settlement Class*

Dated:  August 28, 2013

**WEIL, GOTSHAL & MANGES LLP**

By: *Jeffrey Klein*
    Jeffrey S. Klein

**WEIL, GOTSHAL & MANGES LLP**
Jeffrey S. Klein
Nicholas J. Pappas
Jared R. Friedmann
767 Fifth Avenue
New York, NY 10153
(212) 310-8000 (tel)
(212) 310-8007 (fax)

**MAYER BROWN LLP**
Stephen M. Shapiro
Timothy S. Bishop
Lori E. Lightfoot
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600 (tel)
(312) 701-7711 (fax)
sshapiro@mayerbrown.com
tbishop@mayerbrown.com
llightfoot@mayerbrown.com

*Counsel for Defendant Merrill Lynch,*
*Pierce, Fenner & Smith, Incorporated*