# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
---------------------------------------------------------x
GEORGE MCREYNOLDS, MAROC          :
HOWARD, LARUE GIBSON, JENNIFER    :
MADRID, FRANKIE ROSS, MARVA YORK, :
LESLIE BROWNE, HENRY WILSON,      :
LEROY BROWN, GLENN CAPEL,         :
CHRISTINA COLEMAN, J. YVES LABORDE, :
MARSHELL MILLER, CARNELL MOORE,   :
MARK JOHNSON, CATHY BENDER-       :  Case No. 05-C-6583
JACKSON, and STEPHEN SMARTT,      :
Individually on behalf of themselves  :
and all others similarly situated,    :  Hon. Robert W. Gettleman
                                   :  Magistrate Judge Gilbert
            Plaintiffs,            :
                                   :
- against -                        :
                                   :
MERRILL LYNCH, PIERCE, FENNER      :
& SMITH, INCORPORATED,             :
                                   :
            Defendant.             :
---------------------------------------------------------x
```

## NOTICE OF CLASS ACTION, PROPOSED SETTLEMENT AGREEMENT, AND SETTLEMENT FAIRNESS HEARING

**IF YOU ARE AFRICAN AMERICAN AND WORKED AS A MERRILL LYNCH FINANCIAL ADVISOR OR FINANCIAL ADVISOR TRAINEE AT ANY TIME AFTER MAY 6, 2001, A PROPOSED CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS.**

*A federal court has authorized this Notice. This is not a solicitation from a lawyer.*

Please read this Notice carefully and fully. This notice describes a proposed settlement of a race discrimination class action lawsuit and related matters, including the procedures for seeking monies from a Settlement Fund.

### General Overview of the Settlement

In November 2005, George McReynolds, an African American Financial Advisor, sued Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") on behalf of himself and all others similarly situated alleging that Merrill Lynch discriminated against them on the basis of race.

Merrill Lynch denies that it has done anything wrong. The Parties litigated this race discrimination case against Merrill Lynch for nearly eight years until the Parties agreed to the terms of a settlement in July 2013. The Court has not made any determination on the merits of the issues raised in this litigation. Merrill Lynch, however, has agreed to be bound by the terms of this proposed settlement (the "Settlement").

The Settlement consists of monetary relief of $160 million ($160,000,000.00) and injunctive relief designed to increase opportunities for African American Financial Advisors and Trainees. The monetary relief is consists of a Settlement Fund that will be funded by Merrill Lynch and from which cash payments will be made to Settlement Class Members, including the Named Plaintiffs, and for attorneys' fees, expenses and costs to administer the claims resolution process. The injunctive relief, also called programmatic relief, consists of certain changes to Merrill Lynch's policies and procedures that will remain binding on the Parties for a period of three (3) years. These changes include, among other things, (i) permitting Merrill Lynch employees to sue in court for employment discrimination, (ii) appointing Class Representatives to a Leadership Council that will monitor the Settlement's programmatic relief, and work to improve policies and opportunities for African Americans at Merrill Lynch, (iii) appointing a Monitor/Coach to work with African American Financial Advisors and Financial Advisor Trainees to ensure that they receive fair resources, support and opportunities and to assist their business efforts, to monitor the Settlement's programmatic relief and work with management on policy issues; (iv) engaging experts to study Merrill Lynch's teaming and pooling policies and practices and make non-binding recommendations to Merrill Lynch; and (v) eliminating account distributions to Financial Advisor Trainees who have not yet satisfied the month 12 length of service hurdles set by Merrill Lynch as part of their training program.

The Court has reviewed the Settlement and has given it preliminary approval. Before deciding whether to grant final approval to the Settlement, the Court wishes to inform you of the general terms of the Settlement, what actions you need to take to participate in the monetary provisions of the Settlement, and of your rights to opt out of, or exclude yourself from, the monetary relief portion of the Settlement, or to object to the Settlement, if you would like to do so.

The Court has certified the following class, solely for purposes of this Settlement, to assert claims for monetary and injunctive relief:

> **All African American Financial Advisors or Financial Advisor Trainees who have been assigned a production number in the domestic U.S. retail brokerage unit within the Global Private Client division of Merrill Lynch at any time from May 6, 2001 through [insert Preliminary Approval Date].**

**If you fit within the definition above, then you are a Settlement Class Member. For purposes of this Settlement only, regardless of any previous class notice that you may have received regarding this Action, the settlement class period runs from May 6, 2001 through [insert Preliminary Approval Date]. This Notice will explain the terms of the Settlement that will be presented to the Court for final approval.**

1

If, after reviewing the terms of the Settlement, you would like to participate in the Settlement by making a claim for monetary relief, then you must fill out and submit either a Simple Claim Form or Detailed Claim Form by a deadline to be set by the Court.

This Notice will also describe the procedures to take if you want to opt out of the Settlement and not receive any monetary relief through the Settlement, or if you want to object to the Settlement before the Court.

If the Court grants final approval to the Settlement, the injunctive relief will apply throughout the United States to all branches of Merrill Lynch's Global Private Client division, including to Settlement Class Members who opt out of the Settlement. It is not possible to opt out of the programmatic relief portion of the Settlement.

The Court will hold a Settlement Fairness Hearing to consider whether the Settlement is fair, reasonable, and adequate, and to decide whether to give final approval to the Settlement. The hearing will be held at [--] a.m./p.m. on [--], in the courtroom of the Honorable Robert W. Gettleman at the United States District Court for the Northern District of Illinois, Courtroom 1703, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604. If the Court grants final approval of the Settlement after the Settlement Fairness Hearing, the Court's judgment will be final and binding on all Settlement Class Members.

You are not required to appear at the Settlement Fairness Hearing. If you are a Settlement Class Member, you will be represented by attorneys for the Class at no cost to you.

If you wish to remain a Settlement Class Member and to have an opportunity to receive a share of the monetary relief, you must submit either a Simple Claim Form or Detailed Claim Form by the deadline set by the Court after final approval of the settlement. If you wish to opt out of the monetary relief provisions of the settlement, you must submit a request to opt out in writing that must be received by the Claims Administrator no later than 45 days after the notice is mailed. If you wish to object to the Settlement, you must submit a written objection that must be received by the Court, Class Counsel and Counsel for Merrill Lynch no later than 45 days after the notice is mailed. Those who wish to object to the Settlement must present their objection in writing and may, in addition to a written objection, appear and be heard by the Court, either personally or through an attorney of your choice, at your own expense.

For additional information, you may visit the website maintained by Class Counsel at http://www.merrillclassaction.com, or the website maintained by the Claims Administrator at http://www.merrillracesettlement.com, where you can also view and submit Claim Forms to participate in the monetary relief afforded by the Settlement Fund.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **Submit a Simple Claim Form or Detailed Clam Form by the deadline to be set by the Court.** | **The only way to be eligible to receive money from the Settlement.** |

| | **\*You will be able to submit the Claim Form electronically or by mail and will receive further information, including the Claim Form, at a later date.** |
|---|---|
| **Do Nothing.** | **Stay in this lawsuit. Receive no money from the Settlement. Give up certain rights.**<br><br>By doing nothing, you will not receive any money from the Settlement Fund, and you give up any right to pursue claims separately against Merrill Lynch concerning the employment race discrimination and retaliation claims covered by the Settlement. |
| **Exclude Yourself in writing by DATE.** | **Exclude yourself from the monetary provisions of this lawsuit (opt out). Receive no money from the Settlement Fund. Keep any rights you might have to pursue monetary claims against Merrill Lynch separately.**<br><br>If you ask to be excluded, you will not be eligible to receive any money from the Settlement Fund, but you keep any rights you might have to pursue claims separately against Merrill Lynch concerning the legal claims covered by this Settlement. If you opt out, you will not be able to raise any comments or objections to the Settlement. |
| **Comment or Object by DATE.** | **Write to the Court about your view on the Settlement, or why you don't think the Settlement is fair to the class.**<br><br>Unless you opt out, you may comment on or object to the Settlement whether or not you submit a Claim Form. If you opt-out, you may not object. |

## TABLE OF CONTENTS

Page

1.   Purpose of this Notice ...............................................................................5

2.   Background: About the Lawsuit ................................................................5

3.   Settlement Class Definition – You are Part of the Settlement Class ..................6

4.   Summary of Settlement Terms ..................................................................6

    A.   Account Distribution..........................................................................7

        1.   Distributions to Financial Advisor Trainees in the Practice Management Development Program ...................................................7

        2.   Householding Review.................................................................7

    B.   Teaming and Pooling ..........................................................................7

    C.   PMD Rankings ..................................................................................8

    D.   Attrition Study ..................................................................................8

    E.   Annual Reports to Class Counsel .........................................................8

    F.   Appointments ...................................................................................8

        1.   Teaming Study .........................................................................8

        2.   Monitor/Coach for African American Financial Advisors and African American Financial Advisor Trainees .......................................9

        3.   Dedicated/Specialized PMD Coaches...........................................10

        4.   Leadership Council ....................................................................10

    G.   Mediation in Teaming Dissolution Agreements .......................................10

    H.   Diversity Fund ..................................................................................11

    I.   Manager Evaluations .........................................................................11

    J.   New Manager Selection......................................................................11

    K.   Voluntary Exit Interviews...................................................................11

    L.   Informational Discussions with Settlement Class Members and Class Counsel...12

    M.   No Arbitration for Employment Discrimination Claims .........................12

5.   How Will My Settlement Award be Calculated? ............................................12

6.   Are There Tax Consequences For Any Money I Might Get?...............................13

7.   How to Proceed:  Your Options................................................................13

8.   Release ................................................................................................17

9.   The Lawyers Representing You and the Settlement Class ................................18

10.   The Settlement Fairness Hearing .............................................................19

11.   Getting More Information.......................................................................20

1.      **Purpose of this Notice**

The purpose of this Notice is to inform you about this litigation, the certification of a class (the "Settlement Class"), the terms of the Settlement, and your rights in connection with a hearing to be held before the Court on [--] to consider the fairness, reasonableness, and adequacy of the Settlement and related matters. This Notice also describes the steps to be taken by those who wish to be excluded from the Settlement Class and, for those who remain Settlement Class Members, the steps necessary to seek a share in the distribution of the Settlement Fund if the Settlement is approved by the Court.

2.      **Background: About the Lawsuit**

In November 2005, George McReynolds filed a lawsuit against Merrill Lynch in federal court in Chicago. Additional Plaintiffs were added to the lawsuit in 2006. Plaintiffs allege that Merrill Lynch implemented and utilized policies that had an unlawful disparate impact against African American Financial Advisors and Financial Advisor Trainees, and that Merrill Lynch engaged in a pattern or practice of racial discrimination against African American Financial Advisors and Financial Advisor Trainees with respect to, among other things, Merrill Lynch's hiring, training, compensation, promotion, teaming, and account distributions policies and practices.

Because these Plaintiffs brought this action on behalf of a group, or "class" of African American Financial Advisors and Financial Advisor Trainees who have similar claims, they filed the case as a "class action," and are therefore referred to as "Named Plaintiffs" or "Class Representatives."

You can read all of the Plaintiffs' claims in the Plaintiffs' Second Amended Complaint, which can be found at the Claims Administrator's website at http://www.merrillracesettlement.com, or the case website maintained by Class Counsel at http://www.merrillclassaction.com.

Merrill Lynch denies that it discriminated against African American Financial Advisors and Financial Advisor Trainees, that its policies had a discriminatory effect on African American Financial Advisors and Financial Advisor Trainees, or that it otherwise did anything wrong. Merrill Lynch submits that it acted appropriately and lawfully at all relevant times and that each and every one of the Plaintiffs' claims is without merit. By entering into the proposed Settlement, Merrill Lynch does not admit any wrongdoing.

The Settlement resolves all claims of race employment discrimination and retaliation, including those brought under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981. The Settlement also resolves any and all individual, non-class claims the Named Plaintiffs made or could have made in the Second Amended Complaint or in their EEOC charges.

The Court has not made and will not make any determination regarding whether or not Merrill Lynch discriminated against African American Financial Advisors and Financial Advisor Trainees. This Notice should not be regarded as an expression of any opinion by the Court on the merits of any of the Parties' claims or defenses. No trial has occurred. There has been no finding or determination by the Court that Merrill Lynch has violated any law or obligation, or that, if the Settlement does not become effective, a recovery could or could not be made by the Named Plaintiffs or other Settlement Class Members. Because both the Named Plaintiffs and

5

Merrill Lynch ask the Court to approve a Settlement that the two sides agreed to, the Court will simply examine the Settlement Agreement to determine whether or not it is fair, adequate and reasonable.

The Court has reviewed the Settlement and has preliminarily approved it as being fair, adequate and reasonable. Before deciding whether to give the Settlement final approval, the Court wishes to inform you of the general terms of the Settlement and of your right to comment on the Settlement, if you so desire, as well as your right to opt out, or be excluded, from participating in the monetary portion of the Settlement.

**3.      Settlement Class Definition – You are Part of the Settlement Class**

You are a member of the Settlement Class affected by the Settlement if you fit within this definition:

> **All African American Financial Advisors or Financial Advisor Trainees who have been assigned a production number in the domestic U.S. retail brokerage unit within the Global Private Client division of Merrill Lynch at any time from May 6, 2001 through [insert Preliminary Approval Date]**.

If you received this Notice in a mailing addressed to you, then Merrill Lynch's records show that you fit within the definition above and are therefore a Settlement Class Member.

You have legal rights and options that you may exercise before the Court finally approves the Settlement.

**4.      Summary of Settlement Terms**

**What are the Terms of the Settlement?**

The Settlement requires Merrill Lynch to establish a Settlement Fund of $160 million and to implement changes to its policies and practices, which are called programmatic relief.

**The Settlement Fund**

No later than ten (10) days after the Effective Date of this Settlement, Merrill Lynch and/or its parent company Bank of America shall pay by wire transfer to the Depository Bank the sum of One Hundred Sixty Million Dollars ($160,000,000.00) (the "Settlement Fund").

The Settlement Fund constitutes the total cash outlay by Merrill Lynch in connection with the Settlement. A portion of the Settlement Fund will be distributed to eligible Named Plaintiffs and Settlement Class Members who submit a Claim Form to compensate them for the claims asserted in this lawsuit. The remainder of the Settlement Fund will be used to reimburse costs and expenses of the litigation, pay Class Counsel's attorneys' fees and expenses as awarded by the Court, and pay for the administration of the settlement process.

**What Does Merrill Lynch Have to Do Under the Settlement?**

Merrill Lynch has agreed to implement various revisions to its policies and practices. These revisions are intended to enhance business opportunities and resources for African American Financial Advisors and Financial Advisor Trainees, and to maintain a workplace that promotes fairness for all employees. It is expected that the programmatic relief will benefit African American Financial Advisors and Financial Advisor Trainees and increase their production potential. These benefits are in addition to the Settlement Fund amount.

Under the Settlement, Merrill Lynch will make the following revisions to its policies and practices, or perform the following tasks, for a three (3) year period following the Effective Date:

A.     <u>Account Distribution</u>

1.     <u>Distributions to Financial Advisor Trainees in the Practice Management Development Program</u>

Merrill Lynch will eliminate the distribution or receipt of accounts pursuant to the U.S. Wealth Management and Private Banking and Investment Group Account Distribution Policy and Process (the "ADP") to any Financial Advisor Trainee in the Practice Management Development ("PMD") program who has not satisfied the 12 month length of service ("MLOS 12")performance hurdles as set by Merrill Lynch as part of the PMD program. A Financial Advisor Trainee who has met his or her MLOS 12 performance hurdles before the twelfth month of the PMD program is, however, eligible to select or receive accounts pursuant to the ADP prior to the twelfth month of the PMD program.

This will not prohibit any Financial Advisor on a team from receiving account distributions pursuant to the ADP and its Team Distribution Guidelines and team vesting requirements. PMDs who are members of a team with a Financial Advisor who is eligible to receive account distributions under the ADP, but who themselves have not yet met their MLOS 12 performance hurdles, may share in those distributions only up to the same percentage as the PMD's team "split," or percentage of team assets and production, as set forth in the team agreement.

2.     <u>Householding Review</u>

Merrill Lynch managers will review and ensure that accounts subject to distribution through the ADP are properly householded pursuant to applicable policy prior to the distribution of any accounts to Financial Advisors or Financial Advisor Trainees through the ADP.

B.     <u>Teaming and Pooling</u>

Merrill Lynch will maintain a policy that "Teams may not be formed solely for the purpose of selecting a successor in anticipation of an FA's retirement or departure." Likewise, pools may not be used to evade the ADP's prohibition against Financial Advisor to Financial Advisor transfers ("FA to FA transfers"). Any pools formed within 60 days of the departure or retirement of an FA will also be strictly scrutinized by management. Additionally, Merrill Lynch will permit accounts below $250,000 belonging to Financial Advisors to be pooled with a Financial Advisor Trainee in the PMD program only if the split on the account at issue is meaningful to

7

both the Financial Advisor Trainee in the PMD program and the Financial Advisor, as determined by the supervising manager under the particular circumstances. Merrill Lynch shall provide guidelines to help managers determine whether a split is meaningful.

Merrill Lynch will maintain a policy that, before approving a team, management will instruct Financial Advisors and Financial Advisor Trainees to consider a variety of potential teammates, offer suggestions at an early point in the formation process, and instruct Financial Advisors and Financial Advisor Trainees that the decision to team or not to team with particular Financial Advisors or Financial Advisor Trainees may not be made on the basis of the individual's gender, race, national origin, religion, age, sexual orientation or gender identity, disability, marital status, veteran status or any other legally protected characteristic.

      C.      **PMD Rankings**

In addition to the current rankings of all PMDs based on production credits (regardless of source), Merrill Lynch will also separately rank PMDs who are not on teams by net new households ("New PMD Rankings"). Whether a PMD is considered to be on a team for purposes of the New PMD Rankings will be based on Merrill Lynch's definition of teams at the time of ranking. PMDs in the "first quintile" under the New PMD Rankings will be eligible to participate in the same recognition training programs offered to first quintile PMDs under the standard production measures in the PMD program guide, except that the training for the these PMDs shall also include programs that emphasize the Optimal Practice Model and the potential benefits of teaming.

      D.      **Attrition Study**

Merrill Lynch will conduct an internal study of the impact of pooling and teaming and receipt of accounts through the ADP on PMD performance and attrition rates. This study shall be a "look-back" review for a period of no less than 36 months.

      E.      **Annual Reports to Class Counsel**

Merrill Lynch will provide to Class Counsel an annual report (the "Annual Report") summarizing Merrill Lynch's compliance with its programmatic relief obligations under the Settlement Agreement. The Annual Report shall also set forth any new programs and policies designed by Merrill Lynch to increase the representation and success of African Americans. Merrill Lynch will meet with Class Counsel on an annual basis to respond to any questions regarding the Annual Report.

      F.      **Appointments**

      1.      **Teaming Study**

Merrill Lynch will engage two experts (the "Experts"), at Merrill Lynch's cost, to review and evaluate Merrill Lynch's teaming and pooling policies and practices (the "Teaming Study"). Merrill Lynch will select one expert, and Class Counsel and the Named Plaintiffs will select the other expert. After completing their review of Merrill Lynch's pooling and teaming policies and practices, the Experts will present their written, non-binding recommendations (the

"Recommendations") to Merrill Lynch executives only. The Monitor/Coach (described below) will also review a copy of the Experts' Recommendations, but the written report containing the Experts' Recommendations will remain in the custody of Merrill Lynch executives at all times. Merrill Lynch, thereafter, in its sole discretion, shall determine in good faith and after careful consideration whether and how to implement the Recommendations, or any portion thereof.

2. **Monitor/Coach for African American Financial Advisors and African American Financial Advisor Trainees**

Merrill Lynch will appoint, at its expense, an individual (the "Monitor/Coach") to: (a) monitor the performance of African American Financial Advisor Trainees and African American Financial Advisors compared to non-African American Financial Advisor Trainees and non-African American Financial Advisors; (b) monitor the quantity and quality of training and support that African American Financial Advisor Trainees and African American Financial Advisors receive at Merrill Lynch as compared to non-African American Financial Advisor Trainees and non-African American Financial Advisors; (c) monitor the receipt of account transfers and participation in pools/teams by African American Financial Advisor Trainees and African American Financial Advisors as compared to non-African American Financial Advisor Trainees and non-African American Financial Advisors; and (d) provide coaching assistance to African American Financial Advisor Trainees and African American Financial Advisors regarding business development.

If the Monitor/Coach believes that an African American Financial Advisor Trainee, through no fault of his or her own, is not succeeding in the PMD program, the Monitor/Coach can recommend to management that (a) the African American Financial Advisor Trainee be given additional time to achieve the PMD performance hurdles, and/or (b) management take steps to provide additional support and resources to the African American Financial Advisor Trainee, if the Monitor/Coach believes such steps are warranted under the individual circumstances.

Merrill Lynch will provide the Monitor/Coach with information on a monthly basis concerning the performance of African American Financial Advisor Trainees in the PMD program (or any successor program), including but not limited to: (a) the progress of the African American Financial Advisor Trainees against the PMD program performance hurdles, (b) relative attrition rates for African American Financial Advisor Trainees and non-African American Financial Advisor Trainees, (c) PMD Financial Advisor Trainees' participation in pools/teams (both African American and non-African American PMD Financial Advisor Trainees), (d) the receipt of account transfers by all Financial Advisor Trainees, and (e) the participation of all PMD Financial Advisor Trainees in training and mentoring programs.

The Monitor/Coach will also work with Merrill Lynch to formulate, revise and implement meaningful and state of the art policies, programs and initiatives, and to make non-binding recommendations concerning (a) policies and programs to recruit, retain and promote African American Financial Advisors and Financial Advisor Trainees; (b) policies and programs to improve the ranking of African American Financial Advisors and Financial Advisor Trainees used to determine receipt of accounts through the ADP; (c) policies and programs to increase the participation of African American Financial Advisors and Financial Advisor Trainees in pooling and teaming relationships; and (d) policies and practices with respect to training and mentoring

African American Financial Advisors and Financial Advisor Trainees to enhance business opportunities for African American Financial Advisors and Financial Advisor Trainees.

### 3. Dedicated/Specialized PMD Coaches.

Merrill Lynch will assign a dedicated PMD Coach to the East Coast offices, and a dedicated PMD Coach to the West Coast offices (the "Dedicated PMD Coaches") to work exclusively with African American PMDs. The Dedicated PMD Coaches will report directly to the head of the PMD Program and will periodically provide reports and input to the Leadership Council, described below. The Dedicated PMD Coaches will also coordinate their coaching efforts directly with the Monitor/Coach.

### 4. Leadership Council.

Merrill Lynch will create and maintain a Leadership Council consisting of the Monitor/Coach, current African American Complex Directors, and a select number of Settlement Class Members, which shall at all times include at least two of the Class Representatives who are currently employed at Merrill Lynch and willing to participate in the Leadership Council. The Leadership Council will: (i) work with peer Complex Directors to share best practices in hiring and coaching; (ii) organize a formal, national peer-to-peer mentor program in which successful Financial Advisors will serve as mentors to African American PMDs and African American Financial Advisors; (iii) meet on a quarterly basis to review the progress of the programmatic relief provisions of the Settlement; (iv) receive periodic progress reports and input from the Dedicated PMD Coaches; (v) review and provide input regarding policies concerning ADP, teaming and pooling; (vi) meet with and report on a quarterly basis to a Merrill Lynch Leadership Council Executive Board, which shall be composed of Merrill Lynch executives selected by Merrill Lynch; and (vii) through the Merrill Lynch Leadership Council Executive Board, the Leadership Council may request access to certain information that is necessary to perform their function and provide input to management.

### G. Mediation in Teaming Dissolution Agreements

Merrill Lynch will make available to all Financial Advisors and Financial Advisor Trainees the option of adding a non-binding mediation process with a third-party neutral to their teaming agreements. This non-binding mediation process would serve as a dispute resolution mechanism following the efforts of the Merrill Lynch Complex Director and Merrill Lynch Executive to resolve any disputes concerning the division of team assets in connection with team dissolutions. Such a provision will be added to team agreements only with every team member's consent. The mediation provision in the team agreements will provide that Merrill Lynch will pay fifty per cent (50%) of the mediator's fees, while the team will pay fifty per cent (50%) of the mediator's fees, to be divided among team members in proportion to the percentage of production credits that each team member is designated to receive under the team agreement. The mediator will be selected by the team members from the roster of Financial Industry Regulatory Authority mediators.

### H.    <u>Diversity Fund</u>

Merrill Lynch will maintain a Diversity Fund that will be available nationwide to any Financial Advisor of color or female Financial Advisor (an "Eligible Financial Advisor") to fund a business development event. The event funding will be capped for each participating Financial Advisor at reasonable amounts to be determined by Merrill Lynch. An Eligible Financial Advisor may request funding for only one event per year unless there is a shortage of applicants or excess funding available. Managers must approve the Eligible Financial Advisor's request for funding, and all the Eligible Financial Advisors must provide post-event attendee lists from which Merrill Lynch may measure the effectiveness of the event. The Diversity Fund will be funded at a minimum of $1,000,000 per year for three years and will be distributed on a first come, first served basis. Merrill Lynch may establish appropriate rules concerning the Diversity Fund. The Monitor/Coach will be responsible for advising African American Financial Advisors regarding their funding requests and proposals, with a particular focus on advising African American Financial Advisors who are length of service of ten or more years ("LOS 10+").

### I.    <u>Manager Evaluations</u>

Merrill Lynch will conduct performance assessments of Merrill Lynch Complex Directors and Resident Directors that include a distinct diversity and inclusion category designed to evaluate whether the manager was a leader in promoting diversity and inclusion (people, ideas, solutions), including African American Financial Advisors' inclusion in the allocation of business opportunities and teams, and whether the manager fostered open communications with Financial Advisors, including African American Financial Advisors.

### J.    <u>New Manager Selection</u>

As a standard practice, Merrill Lynch strives to ensure that slates of management candidates include diverse candidates for all posted roles and will continue to do so. Merrill Lynch will interview at least one diverse candidate, where available, for any posted Executive or Director position opening in the U.S. Wealth Management business. The Monitor/Coach shall be available to assist African American management candidates by providing advice on management and placement opportunities.

### K.    <u>Voluntary Exit Interviews</u>

Merrill Lynch will conduct voluntary exit interviews with any departing Financial Advisors and Financial Advisor Trainees, if such an exit interview is requested. Merrill Lynch may designate the individual members of the Human Resources Department to conduct such interviews. In addition, the Monitor/Coach shall be permitted to participate in the Exit Interviews of any departing African American Financial Advisors or Financial Advisor Trainees. Reports based on the information shared during such Exit Interviews will be made exclusively to Merrill Lynch management (and for African American Financial Advisors or Financial Advisor Trainees, to the Monitor/Coach).

11

**L.    Informational Discussions with Settlement Class Members and Class Counsel**

At a mutually convenient time, willing Settlement Class Members, along with Class Counsel, will meet with Merrill Lynch regarding their employment experiences as Financial Advisors or Financial Advisor Trainees.  A report based on the information shared during this meeting will be made exclusively to Merrill Lynch management.  Merrill Lynch in its discretion, will determine in good faith and after careful consideration, whether and how any appropriate corrective measures may be implemented in light of the information and what disciplinary action will be taken against anyone who engaged in inappropriate behavior.

**M.    No Arbitration for Employment Discrimination Claims**

Merrill Lynch will not require arbitration of any employment discrimination claims, except as individually negotiated.

**5.    How Will My Settlement Award be Calculated?**

Each Settlement Class Member may be eligible for a monetary award from the Settlement Fund.

Class Members can choose to file either a (1) Simple Claim Form, in order to get an expedited monetary award, or (2) Detailed Claim Form, if they want to seek an individualized assessment of their race discrimination claims.

The Simple Claim Form is short and requires limited information.  If you submit the Simple Claim Form by the Claims Submission Deadline that will be set by the Court, you will receive an Expedited Monetary Award check within 30 days after the Claims Submission Deadline.  If you submit the Simple Claim Form, your award will be based on objective factors that include: Merrill Lynch Length of Service ("LOS"), period of employment as a Settlement Class Member within the Class Period, "lateral" status, and average aggregate compensation and attrition disparities among Settlement Class Members based on Class Counsel's statistical analysis of Merrill Lynch's workforce data over the class period.  You will not receive an individualized assessment of your claim.

The Detailed Claim Form is longer and requires more information about your claims and employment at Merrill Lynch.  If you submit a Detailed Claim Form, you will receive an Election Form along with an Expedited Monetary Award.  You can then elect whether to accept the Expedited Monetary Award or proceed to an individualized assessment of your legal claims by one or more qualified Neutrals.  If you return the Election Form and elect to accept the Expedited Monetary Award, you will receive a check within fourteen (14) days of return of the Election Form.  If you reject the Expedited Monetary Award and elect an individual assessment, the Neutrals will be provided with statistical information about the Financial Advisor, teams, and account transfers in your branch office, and you will have an opportunity to meet with the Neutral(s).  The Neutral(s) will then assess your claim and recommend a monetary award based on all available information available and the individual facts and circumstances of your claim.  If you qualify, you may also be eligible for additional funds from an Extraordinary Claim Fund of $25,000,000.00.  Claims will qualify as extraordinary if a Class Member filed a race

discrimination or retaliation lawsuit or arbitration, and the Neutrals will also select other claims they deem extraordinary.

Class Counsel will be available to assist Settlement Class Members in the claims resolution process and will ensure an attorney is present at all Interviews. You may also retain your own attorney to assist you in this process, at your own expense. If you file the Detailed Claim Form, and elect to participate in the ICRP, the Neutrals may consider any attorneys' fees incurred in deciding what Monetary Award, if any, is appropriate.

All monetary awards will be reviewed and approved by a Special Master appointed by the Court to make sure that they are fair and consistent.

You will not have a right to challenge the allocation and distribution determined by the claims resolution process and approved by the Special Master.

All Monetary Awards are final, binding and non-appealable.

Settlement Class Members will, however, have the ability to raise any concerns regarding the implementation of the claims process procedures to the Special Master. The Special Master will confer with Class Counsel regarding any such concerns, and provide a response to the Settlement Class Member and a report to the Court regarding the resolution of any such concerns. The Court will have final, binding and non-appealable jurisdiction to resolve the concerns brought by Settlement Class Members regarding the implementation of the claims resolution process. Merrill Lynch will have no involvement in the implementation of the claims process procedures and as a result will have no responsibility or liability arising out of the implementation of the claims process procedures.

Accordingly, no claims may be brought against Merrill Lynch relating to, or in connection with, any aspect of the claims resolution process, including any determination by the Neutrals or the Special Master.

### 6. Are There Tax Consequences For Any Money I Might Get?

Any award you receive from the Settlement Fund will have tax consequences for you. The Special Master will be responsible for deciding upon appropriate allocation between different types of income (e.g., wages, interest, emotional distress) of any monetary payments. The Claims Administrator will be responsible for withholding, remitting and reporting each Claimant's share of payroll taxes from the Settlement Fund, and for paying Merrill Lynch's share of taxes and costs, including FICA, FUTA, SUTA and Medicare from the Settlement Fund. Class Counsel are not tax advisors and cannot give you advice on any tax matters. Class Counsel urge you to consult your tax advisor for answers to any questions you may have about the tax implications of any potential award.

### 7. How to Proceed: Your Options

After reviewing the terms of the Settlement set forth in this Notice, you have three options. You must decide at this stage whether you want to (A) remain a Settlement Class Member and potentially seek a monetary award from the Settlement Fund; (B) opt out and exclude yourself

from monetary relief from the Settlement; or (C) object to the Settlement, but you may only do so if you remain a Settlement Class Member. If you opt out of the Settlement, you may not object to the Settlement.

**Option A: Remain a Settlement Class Member**

If you do not request to be excluded, you will remain a part of the Settlement Class. The Court will hold the Settlement Fairness Hearing and you, as a Settlement Class Member, will be represented by Class Counsel at no cost to you.

In order to be eligible to receive a share of the Settlement Fund, you must fill out and submit either the Simple Claim Form or the Detailed Claim Form (the Claim Forms), and a Form W-4 or Form W-9, by the deadline to be set by the Court after final approval of the Settlement. You may submit your completed Claim Form by mail or electronically on the website http://www.merrillracesettlement.com. All Claim Forms and other documents will be available and may be submitted electronically at http://www.merrillracesettlement.com.

**All Claim Forms must be filled out, signed and received by the Claims Administrator or filed electronically by the Claims Submission Deadline to be set by the Court after final approval of the Settlement.**

If you are a Settlement Class Member and you submit a timely Simple Claim Form or Detailed Claim Form, you are eligible to obtain money from this Settlement, unless you previously settled or fully litigated all of your class claims.

If you file a Simple Claim Form by the Claims Submission Deadline set by the Court, you will receive an expedited monetary award by check within 30 days of that deadline. The amount of the check will be based on objective factors, and not an individual assessment of your legal claims or losses.

If you submit a Detailed Claim Form by the Claims Submission Deadline, you can choose an expedited Monetary Award or participation in an individualized assessment of your claims and losses by one or more independent, trained "Neutrals." If you submit a Detailed Claim Form, you will receive an Election Form along with an Expedited Monetary Award. You can then elect whether to accept the Expedited Monetary Award or proceed to an individualized assessment of your legal claims by one or more qualified Neutrals. If you return the Election Form and elect to accept the Expedited Monetary Award, you will receive a check with 14 days of return of the Election Form. The Neutral(s) will determine the amount of your monetary award, if any, based on the information in your Detailed Claim Form, an expert statistical report about your branch office, class-wide evidence, and, if you wish, an interview with you. If you submit a timely Detailed Claim Form and meet certain criteria, you may also be eligible for additional compensation from an Extraordinary Claims Fund. The individualized claims resolution process will take longer to complete than the expedited monetary award process, and there is no guaranteed date by which you will receive your monetary award check from the individualized claims resolution process. There is also no guarantee as to the amount of a monetary award; you may receive more or less than the expedited monetary award, or you may receive no award, depending on your claim and losses.

14

Each Settlement Class Member will release his or her race and color employment discrimination claims under federal, state and local laws, arising up to and including [insert Preliminary Approval Date] as set forth below and in the Settlement. Named Plaintiffs and Steering Committee Members who receive a Service Award Payment for assisting the class will also have to execute and deliver to the Claims Administrator a broader Named Plaintiff Release or Steering Committee Member Release, as appropriate.

Whether or not you submit a Simple or Detailed Claim Form, unless you opt out, all Released Claims (defined below in section 7) that you may have will be barred by this Settlement.

Unless you opt out, you remain eligible to object to the Settlement pursuant to Option C, below, whether or not you submit a Simple or Detailed Claim Form.

**Option B: Opt-Out: How Do I Exclude Myself from the Settlement?**

You may request to opt out of, or be excluded from, the monetary relief provisions of this Settlement and can pursue claims against Merrill Lynch. If you opt out, you will not be eligible for any monetary award as part of this Settlement. Any Settlement Class Member who wishes to opt out must mail a written, signed statement to the Claims Administrator indicating that he or she is opting out of the monetary portion of the Settlement.

You may not opt out of the programmatic relief provisions of this Settlement.

To be effective, this opt out statement must be received by the Claims Administrator no later than 45 days after this Notice is mailed, and must contain each of the following:

   (a) your name, current address, and telephone number;

   (b) the name and number of this case (*McReynolds, et al., v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Case No. 05-C-6583);

   (c) a statement that you wish to be excluded from the Settlement, including the following language, which must be included in your request:

   I hereby opt out of the class action settlement in the lawsuit *McReynolds, et al. v. Merrill Lynch*, Case No. 05-C-6583 (N.D. Ill.). I understand that by requesting to be excluded from the monetary settlement in this case, I will receive no money from the Settlement Fund created under the Settlement Agreement. I understand that I may bring a separate legal action seeking damages, but I might receive nothing or less than what I would have received if I had filed a claim under the class monetary settlement procedure in this case. I also understand that I may not seek exclusion from the class with respect to injunctive relief and that I am bound by the injunctive provisions of the Settlement Agreement.

The address of the Claims Administrator is:

[TBD]

Please note that Settlement Class Members who submit timely and valid requests for exclusion will have no right to object to the Settlement in court and will no longer be represented by Class Counsel.

**Option C:  Comment on or Object to the Settlement**

The Court must assess the overall fairness and reasonableness of the Settlement to the Settlement Class.  Settlement Class Members who have not opted out of the monetary relief portion of the Settlement may comment on or object to the Settlement.  If you opt out of the Settlement, you may not comment on or object to the Settlement.

In order to speak at the Settlement Fairness Hearing, or to have your comment or objection to the Settlement considered by the Court, you must submit a written comment or objection to the Settlement prior to the Settlement Hearing that includes a detailed description of the basis of the comment or objection.  You do not need to be represented by counsel to comment on or object to the Settlement.

Comments or objections must be filed with the Court, with copies served on the Court, Class Counsel and Counsel for Merrill Lynch, no later than 45 days after this Notice is mailed.

The address of Class Counsel is:

Linda D. Friedman
Suzanne E. Bish
George S. Robot
**STOWELL & FRIEDMAN, LTD.**
303 W. Madison, 26th floor
Chicago, Illinois 60606
(312) 431-0888 (tel)
lfriedman@sfltd.com
sbish@sfltd.com
grobot@sfltd.com

The address of counsel for Merrill Lynch is:

Jeffrey S. Klein
Nicholas J. Pappas
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
(212) 310-8000 (tel)
(212) 310-8007 (fax)
jeffrey.klein@weil.com
nicholas.pappas@weil.com

16

Stephen M. Shapiro
Timothy S. Bishop
Lori E. Lightfoot

**MAYER BROWN LLP**
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600 (tel)
(312) 701-7711 (fax)
sshapiro@mayerbrown.com
tbishop@mayerbrown.com
llightfoot@mayerbrown.com

You do not have to appear at the Settlement Hearing for your written comments or objections to be considered by the Court, but you may appear if you so desire.

**8.      Release**

If the Court grants final approval of the Settlement, then all Settlement Class Members who do not opt out will, as described more specifically below, release all race and color employment discrimination, harassment and race-related retaliation claims against Merrill Lynch up to and including [insert Preliminary Approval Date].  When claims are "released," a person covered by the release cannot sue Merrill Lynch and the other Released Parties, as defined below, for any of the claims that are covered by the release.  Unless you opt out of the Settlement, you will be covered by the release, even if you do not submit a Claim Form for money damages.

Settlement Class Members, excluding those who timely opt out, will:

> [W]aive, release, and discharge Merrill Lynch and Bank of America, N.A. (the "Bank"), including their past, present, or future parent corporations, divisions, officers, directors, subsidiaries, affiliates, predecessors, fiduciaries, insurers, employees, agents, employee benefit and pension plans and funds, including qualified and non-qualified plans and funds, and successors and assigns of the foregoing persons and entities (collectively, the "Released Parties"), from any and all actions, causes of action, suits, demands, liabilities, claims, and demands (upon any legal or equitable theory, whether contractual, common-law, statutory, federal, state, local, or otherwise) of any nature whatsoever, whether known or unknown, arising at any time up to and including [insert Preliminary Approval Date], for race and color employment discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and any other parallel or similar federal, state or local law.

Named Plaintiffs and Steering Committee Members who receive a Service Award Payment for assisting the Class will release all claims of any nature under federal, state or local laws, to the extent permitted by law, against the Released Parties, for any period through the [insert Preliminary Approval Date].

17

9.      **The Lawyers Representing You and the Settlement Class**

As a Class Member, you are represented in this litigation by Class Counsel:

Linda D. Friedman
Suzanne E. Bish
George S. Robot
Jennifer S. Gilbert
Mary Stowell

**STOWELL & FRIEDMAN, LTD.**
303 W. Madison, 26th floor
Chicago, Illinois 60606
(312) 431-0888 (tel)
Lfriedman@sfltd.com
Sbish@sfltd.com
Grobot@sfltd.com
Jgilbert@sfltd.com

Settlement Class Members will continue to be represented by Class Counsel in connection with the implementation and monitoring of the monetary and injunctive relief provisions of the Settlement at no cost to members of the Settlement Class. If you opt out of the monetary provisions of the Settlement, Class Counsel will not represent you as to the monetary relief provisions of the Settlement, but will continue to represent you as to the injunctive relief provisions of the Settlement. Although it is not necessary, you may, if you wish to do so, retain your own attorney at your own expense.

**How Will the Lawyers Be Paid?**

Class Counsel have pursued these claims for over seven years on behalf of Plaintiffs and the Settlement Class without receiving any compensation for their services or reimbursement of their incurred litigation expenses. Class Counsel have undertaken substantial risks in pursuing this matter. They have done so with the understanding that, if they obtained a recovery for the class, their expenses would be reimbursed and they would receive fees from the fund recovered.

In connection with the Settlement, the Court will award Class Counsel reasonable attorneys' fees and expenses out of the Settlement Fund. If you are a Settlement Class Member and receive an award from the Settlement Fund, you will not owe any fees or expenses to Class Counsel who represented you as part of the Settlement Class. If, however, you hire your own attorney(s), you will have to pay for your attorney(s) at your own expense, provided that if you choose to participate in the ICRP, the Neturals may consider any attorneys' fees incurred. The attorneys' fees and expenses of Class Counsel, as awarded by the Court, will be paid out of the Settlement Fund and only if and after the Settlement has been approved by the Court.

As is common in class action cases, Class Counsel will file with the Court a motion for an award of attorneys' fees and litigation expenses already incurred as well as the fees and expenses that Class Counsel anticipates will be incurred during the three (3) year term of the Settlement. In its

18

motion, Class Counsel will request that the Court award them their reasonable attorneys' fees in the amount of not more than 25% of the Settlement Fund, and reasonable litigation costs not to exceed $5,000,000.00.

Class Counsel will set forth their requested fees and costs and detail the work they have done for the Class in a motion for attorneys' fees and Service Award Payments that they will file on [--], and which will be publicly available after that time at [--].

**Terms and Payments Specific to Named Plaintiffs and Steering Committee Members**

The Named Plaintiffs and Steering Committee Members may participate in the class monetary award by filing a Claim Form like any other Settlement Class Member.

In addition, Class Counsel will ask the Court to grant Service Award Payments to the seventeen (17) Named Plaintiffs in the amount of $250,000 per Named Plaintiff, and to up to six (6) Steering Committee Members in the amount of $75,000 per Steering Committee Member. The proposed awards would recognize the extraordinary service that the Named Plaintiffs and Steering Committee Members provided here, including for their participation in the litigation and settlement of this case. Named Plaintiffs invested hundreds of hours assisting and monitoring Class Counsel in litigating this lawsuit, traveled to attend court hearings and case proceedings, prepared and sat for a deposition, and participated in settlement negotiations and mediations; and Steering Committee Members invested substantial time to assist Class Counsel in investigating this case, and assisted in reform and negotiating efforts, including by traveling to San Francisco, New York, = Chicago, and Washington, D.C., to participate in settlement negotiations and mediation sessions with Class Counsel and Merrill Lynch. A complete description of the services the Named Plaintiffs and Steering Committee Members provided will be described in the motion for attorneys' fees and Service Awards Payments that will be filed with the Court.

**10.    The Settlement Fairness Hearing**

The Settlement Fairness Hearing on the Settlement will be held at _____ a.m./p.m. on [--], in the courtroom of the Honorable Robert W. Gettleman at the United States District Court for the Northern District of Illinois, Courtroom 1703, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604. At this hearing, the Court will determine whether the proposed Settlement is fair, reasonable, and adequate and whether it should be approved. The Court will also consider whether the motion of Class Counsel for an award of attorneys' fees and expenses should be approved, and whether, in accordance with the Settlement, an order and judgment should be entered bringing the litigation to a conclusion.

**Do I Have to Come to the Settlement Fairness Hearing?**

No. You are not required to appear at the hearing. Attorneys representing the Settlement Class will appear at the hearing on behalf of all Settlement Class Members at no cost to you. However, if you would like to comment on or object to the Settlement, you may appear and be heard at the Settlement Hearing, either by yourself or, at your own expense, with an attorney of your choice. Information about how to comment on or object to the Settlement is included above. If the Court gives final approval to this Settlement, the Court's judgment will be final and binding on all Settlement Class Members who have not opted out.

11.    <u>**Getting More Information**</u>

If you have further questions or are still not sure whether you are included, you can get free help at http://www.merrillracesettlement.com,  by calling the Claims Administrator at ____, or by calling or writing to Class Counsel in this case at the contact numbers/address listed in section 8 and the website www.stowellfriedman.com.  Class Counsel also maintains a website with case information at www.merrillclassaction.com

This Notice contains only a summary of the terms of the Settlement, the provisions of the releases and related matters.  For further information, the Settlement Agreement (which includes the complete terms of the Settlement), and numerous other documents connected with the Settlement are available for review and/or downloading on the web at: http://www.merrillracesettlement.com and www.merrillclassaction.com.

Again, the important deadlines are:

**Last Day To "Opt Out" Of The Settlement Class: _____, 201[--]**

**Last Day To Object To The Settlement: _____, 201[--]**

**Settlement Fairness Hearing:  _____, 201[--]**

**PLEASE DO NOT CALL OR CONTACT THE COURT, THE OFFICE OF THE CLERK OF COURT, OR DEFENDANTS WITH QUESTIONS REGARDING THIS NOTICE.**

Dated: _____, 2013        _____

                                            The Honorable Robert W. Gettleman
                                            United States District Judge