# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GEORGE MCREYNOLDS, et al., | |
| Plaintiffs, | |
| v. | Case No. 05 C 6583 |
| MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, | Hon. Robert W. Gettleman<br>Magistrate Jeffrey T. Gilbert |
| Defendant. | |

### DEFENDANT MERRILL LYNCH'S RESPONSE TO OBJECTION OF LA MAR GUNN TO THE PRELIMINARILY APPROVED SETTLEMENT AGREEMENT

Defendant Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch") hereby responds to La Mar Gunn's ("Mr. Gunn") October 22, 2013 objection ("Mr. Gunn's Objection") to the Settlement Agreement,[1] for which this Court granted preliminary approval on September 4, 2013. Merrill Lynch submits this response to Mr. Gunn's Objection to address: (i) Mr. Gunn's prior individual race discrimination and retaliation claims against Merrill Lynch, which were resolved through a settlement agreement, including, *inter alia*, a complete release of all his claims against Merrill Lynch; and (ii) those aspects of Mr. Gunn's Objection that relate specifically to Merrill Lynch's policies and practices. For the reasons set forth below and the additional reasons set forth in Class Counsel's response, Mr. Gunn's Objection is entirely meritless and provides no basis whatsoever for rejecting the Settlement Agreement.

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Parties' Settlement Agreement and Release, dated August 28, 2013. (ECF No. 585-1).

**Background**

1. On June 5, 2000, Merrill Lynch hired Mr. Gunn to work at 1201 Market Street in Wilmington, Delaware as a non-licensed trainee. (*See* Declaration of Joseph Bush in Support of Defendant's Response to Objection of La Mar Gunn to the Preliminarily Approved Settlement Agreement, dated November 19, 2013, ¶ 4). Mr. Gunn's first licensed position during the Settlement Class Period was as a registered POA Financial Advisor, which he served as from February 1, 2001 through January 5, 2003. (*Id.*, ¶ 5.) On January 6, 2003, Mr. Gunn became a Financial Advisor. Mr. Gunn served as a Financial Advisor until his termination on April 29, 2004. (*Id.*, ¶ 6.) Mr. Gunn has not worked at Merrill Lynch for more than 9 years. (*Id.*, ¶ 7.)

2. On June 9, 2004, following termination of Mr. Gunn's employment with Merrill Lynch, Mr. Gunn filed a charge of discrimination against Merrill Lynch with the Delaware Department of Labor ("DDOL"), and simultaneously with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination and retaliation ("Gunn Charge"). (*See* Declaration of Jared R. Friedmann in Support of Defendant's Response to Objection of La Mar Gunn to the Preliminarily Approved Settlement Agreement, dated November 21, 2013 ("Friedmann Decl."), Exhibit 1, filed under seal.) On September 30, 2004, Mr. Gunn and Merrill Lynch voluntarily chose to mediate Mr. Gunn's Charge and entered a Mediation and Confidentiality Agreement ("Gunn Mediation Agreement") (*See* Friedmann Decl., Exhibit 2.)

3. On September 30, 2004, following mediation between Mr. Gunn and Merrill Lynch regarding claims in the Gunn Charge, Mr. Gunn signed a confidential Settlement Agreement with Merrill Lynch and the DDOL ("Gunn Settlement Agreement") (*see* Friedmann Decl., Exhibit 3, filed under seal), which, *inter alia*, released all of Mr. Gunn's claims against

Merrill Lynch, including claims for race and color employment discrimination under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981. (*Id.*, at pp. 3-4.) Mr. Gunn also agreed as part of the Gunn Settlement Agreement that: "Should any person or entity file or cause to be filed any civil action . . . seeking equitable or monetary relief in connection with any aspect of [Mr. Gunn's] employment relationship with Merrill Lynch or any other matters relating to claims release by [Mr. Gunn's settlement agreement, Mr. Gunn] will not seek or accept any personal relief from or as the result of such civil action . . . ." (*Id.* at pp. 5-6.)

4. Accordingly, Mr. Gunn previously released all his claims against Merrill Lynch, and per the express waiver in section 3(e) of the Gunn Settlement Agreement, he is now precluded from seeking any personal relief from or as a result of this case. *Id.*

5. In November 2005, George McReynolds filed a Complaint on behalf of himself and all others similarly situated alleging that Merrill Lynch discriminated against them on the basis of race. McReynolds twice amended the Complaint; the First Amended Complaint was filed in July 2006 and the Second Amended Complaint was filed in November 2006.

6. After approximately eight (8) years of litigation, extensive motion practice, discovery, and numerous mediation sessions, Merrill Lynch, Defendant's Counsel, Class Counsel and the Class Representatives reached a fair, reasonable and adequate Settlement Agreement that was the product of vigorous, lengthy, and arm's length negotiations. (ECF No. 585-1, pp. 12-13.) The Settlement Agreement was preliminarily approved on September 4, 2013 (ECF No. 589), and Notice was sent to the Settlement Class Members on September 27, 2013.

7. Mr. Gunn filed the instant objection to the Settlement Agreement on October 22, 2013, objecting to both the monetary and programmatic relief, as well as the fact that Merrill Lynch did not admit any wrongdoing as part of the Settlement Agreement.

3

### Mr. Gunn's Objections are Meritless

8. Mr. Gunn's objections to the Settlement Agreement are meritless and provide no basis for rejecting the Settlement Agreement. Mr. Gunn's Objection is largely premised on the erroneous assertion of some "uncontroverted fact" that Merrill Lynch managers were motivated by racial animus and executives allowed discrimination to persist. (Gunn Objection, ¶¶ 2, 6.) But this Court has never made any findings of any wrongdoing, discrimination-related or otherwise, on the part of Merrill Lynch, or any of its managers or executives.

9. Furthermore, Mr. Gunn's complaint that Merrill Lynch was "permitted to avoid admitting any wrong doing" is completely misplaced. Indeed, "[t]he essence of settlement is that no liability findings are made and no trial is necessary." *U.S. of Am. v. City of Belleville*, 1995 WL 1943014, *6 (S.D. Ill. Aug. 8, 1995); *see also Alliance to End Repression v. City of Chicago*, 561 F. Supp. 537, 554 (N.D. Ill. 1982) (explaining, in response to certain objections that the defendant admitted no wrongdoing in a settlement, "the essential purpose of a settlement is to avoid adjudication of lawfulness or propriety of conduct which is the subject of the complaint"). In fact, to require this Court to make a finding of liability as to Merrill Lynch would defeat the purpose of settlement. *See City of Chicago*, 561 F. Supp. at 554.

10. Likewise, and contrary to Mr. Gunn's contention, the suggestion that a defendant that has vigorously denied plaintiffs' allegations throughout the litigation, now be required to admit wrongdoing in order to make the settlement "fair," is antithetical to the entire purpose of the settlement process. (Gunn Objection, ¶ 2.) "Denial of liability when negotiating a settlement agreement is the norm." *See Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 733 (7th Cir. 2010); *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 230 (S.D. Ill. 2001) (finding, with respect to class members' objections, "[n]or does the absence of an admission of liability make

the settlement unfair"). Indeed, Mr. Gunn's own settlement with Merrill Lynch does not contain any admission of wrongdoing, but instead states that "[t]his Agreement and Release does not constitute an admission by either party. . . ." (Friedmann Decl., Exhibit 3, at p. 9.)

11. Mr. Gunn's assertion that the Settlement Agreement "does very little to prevent future hostile work environments" is also incorrect and plainly belied by specific Programmatic Relief provisions in the Settlement Agreement. (Gunn Objection, ¶ 3.)

12. The Settlement Agreement contains the following provisions, among others, aimed at enhancing opportunities for African Americans and providing multiple avenues to address any instances of alleged discrimination:

    a. Merrill Lynch agreed to permit any Settlement Class Member to meet with Merrill Lynch to discuss their employment experiences, so that Merrill Lynch can determine whether and how any corrective measures may be appropriate in light of the information shared, and whether any disciplinary action should be taken against any individual(s) who engaged in improper behavior. (ECF No. 585-1, p. 59.)

    b. Merrill Lynch agreed to appoint a Monitor/Coach for African American Financial Advisors and Financial Advisor Trainees to monitor their opportunities and resources, to coach them regarding business development, and to recommend any policy changes to Merrill Lynch. (*Id.* at pp. 52-55.)

    c. Merrill Lynch agreed to conduct voluntary exit interviews with any departing Financial Advisor or Financial Advisor Trainee, which will include the Monitor/Coach for any interviews of departing African American Financial Advisors or Financial Advisor Trainees. (*Id.* at p. 58.)

    d. Merrill Lynch agreed to create a Leadership Council, including the Class Representatives, that would serve to recommend policy changes and diversity initiatives to Merrill Lynch, and to enhance opportunities for African American Financial Advisor and Financial Advisor Trainees. (*Id.* at pp. 56-57.)

    e. Merrill Lynch agreed to assign Dedicated PMD Coaches to work exclusively with African American PMDs to enhance their opportunities. (*Id.* at pp. 55-56.)

    f. Merrill Lynch agreed to conduct and prepare various studies and reports with respect to the representation and success of African-American Financial Advisors and Financial Advisor Trainees. (*Id.* at pp. 48-52.)

    g. Merrill Lynch agreed to evaluate all Merrill Lynch Complex Directors and Resident Directors under a distinct diversity and inclusion category designed to assess each manager's efforts in promoting diversity and inclusion. (*Id.* at p. 59.)

    h. Merrill Lynch agreed to strive to ensure that slates of management candidates include diverse candidates for all posted roles, where available. (*Id.*)

    i. Merrill Lynch agreed to not require that Financial Advisors and Financial Advisor Trainees arbitrate any employment discrimination claims. (*Id.* at p. 60.)

13. These Settlement Agreement provisions, among others, demonstrate that Merrill Lynch is and will continue to be committed to promoting a diverse and inclusive work environment. Thus, any assertions to the contrary in Mr. Gunn's Objection are unfounded.

## Conclusion

14. For the foregoing reasons, and for those reasons stated in Class Counsel's response to Mr. Gunn's Objection, Merrill Lynch respectfully requests that this Court reject Mr. Gunn's Objection, and issue an order granting final approval of the Settlement Agreement.

Dated: November 21, 2013

By: ___/s/ Jeffrey S. Klein_____

WEIL, GOTSHAL & MANGES LLP
Jeffrey S. Klein
Nicholas J. Pappas
Jared R. Friedmann
767 Fifth Avenue
New York, NY 10153
(212) 310-8000 (Phone)
(212) 310-8007 (Facsimile)

--and--

MAYER BROWN LLP
Lori E. Lightfoot
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600 (Phone)
(312) 701-7711 (Facsimile)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 21, 2013, she caused a copy of the foregoing DEFENDANT MERRILL LYNCH'S RESPONSE TO OBJECTION OF LA MAR GUNN TO THE PRELIMINARILY APPROVED SETTLEMENT AGREEMENT, the DECLARATION OF JOSEPH BUSH, the DECLARATION OF JARED FRIEDMANN, and all exhibits thereto to be filed electronically and served by e-mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties of record by operation of the court's electronic filing system. Parties may access this filing through the Court's ECF system.

Notice of this filing was sent separately via e-mail to:

> La Mar Gunn
> 2 Old North Road, #502
> Dover, DE 19934
> Telephone: (302) 218-6407
> lamargunn@me.com

By:    /s/ Lori E. Lightfoot

Lori E. Lightfoot