**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEORGE McREYNOLDS, MAROC HOWARD, LARUE GIBSON, JENNIFER MADRID, FRANKIE ROSS, MARVA YORK, LESLIE BROWNE, HENRY WILSON, LEROY BROWN, GLENN CAPEL, CHRISTINA COLEMAN, J. YVES LABORDE, MARSHELL MILLER, CARNELL MOORE, MARK JOHNSON, CATHY BENDER-JACKSON, and STEPHEN SMARTT, individually on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 05-C-6583<br><br>Hon. Robert W. Gettleman<br><br>Magistrate Judge Gilbert |

**CLASS COUNSEL'S RESPONSE TO OBJECTION OF LA MAR GUNN
TO THE CLASS ACTION SETTLEMENT**

Class Counsel hereby responds to the sole objection to the Settlement preliminarily

approved by this Court on September 4, 2013, asserted by La Mar Gunn (the "Objection").[1]

After eight years of hard-fought litigation, actively supervised by this Court, Merrill Lynch and

the Class Representatives agreed to the Settlement, which will provide significant injunctive

relief to African American Financial Advisors and Trainees currently employed by Merrill

Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), as well as substantial monetary relief to

---

[1] This memorandum incorporates by reference the definitions in the Settlement Agreement (Dkt. 585-1), and all capitalized terms not defined herein have the same meanings as set forth in the Settlement Agreement.

1

both former and current Settlement Class Members. The Objection does not state any basis that would justify rejecting this Settlement.

Rather than detracting from the Settlement, Mr. Gunn's Objection actually illustrates some of the unique benefits this Settlement will deliver to the Class. Mr. Gunn believes this case should proceed to trial on the disparate impact claim unless Merrill Lynch admits liability and increases the Settlement Fund from $160 million to $250 million. (Objection ¶¶ 1-2, 7.) Class Counsel sympathizes with these aspirations, but unfortunately, Mr. Gunn's expectations are unrealistic. Defendants rarely, if ever, admit liability as part of a settlement, and requiring an admission of liability as a condition of approval of class settlements "would defeat an important purpose of settlement." *Alliance to End Repression v. City of Chicago*, 561 F. Supp. 537, 554 (N.D. Ill. 1982). As the Seventh Circuit has explained:

> The essence of settlement is compromise. Each side gains the benefit of immediate resolution of the litigation and some measure of vindication for its position while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial.

*EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) (citations omitted); *accord Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (holding that objector "must do more than just argue that she would have preferred a different settlement structure").

Except for irrelevantly comparing this Settlement to the compensation of Merrill Lynch's former CEO,[2] Mr. Gunn does not explain why he believes the $160 million Settlement Fund is

---

[2] Mr. Gunn asserts that Merrill Lynch paid former CEO Stan O'Neal "more than $160 million in a forced resignation." (Objection ¶ 7) According to news reports, Mr. O'Neal did not receive any severance pay, but simply retained the stock he had earned while at Merrill Lynch, valued at approximately $130 to $160 million. David Ellis, *O'Neal out at Merrill*, CNN Money (Oct. 31, 2007), *available at* http://money.cnn.com/2007/10/30/news/companies/merrill_oneal.

inadequate. Far from being too small, this is one of the largest common funds ever achieved in settlement of an employment discrimination class action. (*See* Dkt. 596 at 5-7; Dkt. 596-2; Dkt. 600-1.) The size of the Settlement Fund provides no basis for rejecting this Settlement.

Moreover, if this Settlement were rejected, Mr. Gunn and many other Settlement Class Members would gain little from a class trial on disparate impact liability, because they are not members of the disparate impact class. Mr. Gunn left Merrill Lynch's employ more than two months before July 10, 2004 (Dkt. 607 at 2), and therefore he is a member of the Settlement Class but not the disparate impact class that the Court certified in 2012. (Dkt. 534.) In the absence of this Settlement, to obtain relief for any race discrimination he suffered, Mr. Gunn would have to file an individual lawsuit and prove that Merrill Lynch intentionally discriminated against him. Merrill Lynch could well take the position that such a lawsuit would be barred by the settlement and general release agreement Mr. Gunn signed in 2004 when he settled his race discrimination claims. (Dkt. 606 at 2-3.)

Mr. Gunn also believes that the Settlement should require Merrill Lynch to discipline or fire his former manager, William Leckey, and others. (Objection ¶¶ 3, 4, 6.) However, like Mr. Gunn, Mr. Leckey no longer works for Merrill Lynch; he retired in 2009.[3] And as Professor John C. Coffee, Jr. explained:

> This is an impossible standard. Although I do not doubt [Mr. Gunn's] sincerity, civil litigation cannot dispense the retribution and punishment he is seeking.

(Dkt. 600-1 ¶ 2 n.1.) More importantly, Mr. Gunn is incorrect to suggest that the Settlement is silent on the topic of discipline. Under Section IX.K of the Settlement, Mr. Gunn, and other Class Members, have the opportunity to meet with Merrill Lynch management to discuss their employment experiences, which could form the basis of disciplinary action or corrective action

---

[3] Broker Report of William Joseph Leckey, Financial Industry Regulatory Authority, *available at* brokercheck.finra.org.

against employees who behaved inappropriately.

Finally, Mr. Gunn complains that Class Counsel has not specified "an exact number for fees." (Objection ¶ 8.) But Class Counsel's Petition for Attorneys' Fees and Costs identifies the exact amount of fees requested, which are less than the amount permitted under the Settlement Agreement. (Dkt. 596; Ex. 1 § VIII.D.1; *see* Dkt. 600-1 ¶ 2 n.1 (noting that Mr. Gunn "does not appear even to know what the proposed fee award is" and concluding that the attorneys' fees sought are reasonable).) Mr. Gunn has not objected to the fee petition.

## Conclusion

For all the foregoing reasons, Class Counsel respectfully requests that the Court reject Mr. Gunn's Objection as not warranting disapproval of the Settlement.

Dated: November 21, 2013

Respectfully submitted,
**STOWELL & FRIEDMAN, LTD.**

By:    /s/ *Linda D. Friedman*
     Linda D. Friedman

303 W. Madison, Suite 2600
Chicago, Illinois 60606
(312) 431-0888 (tel)
(312) 431-0228 (fax)
Lfriedman@sfltd.com

## CERTIFICATE OF SERVICE

I, Suzanne E. Bish, an attorney, hereby certify that on November 21, 2013, I caused a true

and correct copy of Class Counsel's Response to Objection of La Mar Gunn to the Class Action

Settlement to be served via ECF on the following counsel of record:

| | |
|---|---|
| Jeffrey S. Klein | Stephen M. Shapiro |
| Nicholas J. Pappas | Timothy S. Bishop |
| Jared R. Friedmann | Lori E. Lightfoot |
| Weil, Gotshal & Manges LLP | Mayer Brown LLP |
| 767 Fifth Avenue | 71 S. Wacker Drive |
| New York, NY 10153 | Chicago, IL 60606 |
| phone: (212) 310-8000 | phone: (312) 782-0600 |
| fax: (212) 310-8007 | fax: (312) 701-7711 |
| | |
| Jeffrey.klein@weil.com | sshapiro@mayerbrown.com |
| Nicholas.pappas@weil.com | tbishop@mayerbrown.com |
| Jared.friedmann@weil.com | llightfoot@mayerbrown.com |

and by First Class mail on:

La Mar Gunn
2 Old North Road, #502
Dover, DE 19934

By: _____/s/ Suzanne E. Bish_____